Ethan Preston (263295)
PRESTON LAW OFFICES
1658 North Milwaukee Avenue, No. 253
(312) 492-4070 (phone)
(312) 262-1007 (facsimile)
ep@eplaw.us

David C. Parisi, Esq. (162248)
Suzanne Havens Beckman, Esq. (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (phone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiffs Timothy DuFour and
Kenneth Tanner, on their own behalves
and on behalf of all others similarly situated,*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| TIMOTHY DuFOUR and KENNETH TANNER, individuals, on their own behalves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BE., LLC, DYNAMIC SHOWCASES, LLC, California limited liability companies, MONTEREY FINANCIAL SERVICES, INC., MTS HOLDINGS GROUP, INC., California corporations, 1901 CO., a Nevada corporation, BE MARKETING LIMITED, a private limited company registered in England and Wales, ERIK DeSANDO, BARRY FALCK, JACOB STEINBECK, VITALY RASHKOVAN, and DOES 1-100, inclusive,<br><br>Defendants. | No. 09-03770-CRB<br><br>Judge Charles R. Breyer<br><br>**NOTICE OF MOTION; MOTION FOR PRELIMINARY INJUNCTION; NOTICE OF LODGING PROPOSED ORDER**<br><br>**Date:**    **November 13, 2009**<br>**Time:**    **10:00 am**<br>**Location:**    **Courtroom 8, 19th Floor**<br>               **450 Golden Gate Ave.**<br>               **San Francisco, CA 94102** |

**NOTICE OF MOTION**

NOTICE IS HEREBY GIVEN that Plaintiffs Timothy DuFour ("DuFour") and Kenneth Tanner ("Tanner") will move the Court for a preliminary injunction in the above referenced proceedings on November 13, at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at Courtroom 8, 19th Floor, 450 Golden Gate Ave., San Francisco, California 94102, before the Honorable Charles R. Breyer. Plaintiffs' requested relief is set forth below.

**MOTION FOR PRELIMINARY INJUNCTION**

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the authorities cited therein and the supporting declaration, oral argument of counsel, and any other matter that may be submitted at the hearing.

The Defendants in this action are Be., LLC ("Be LLC"), Dynamic Showcases, LLC ("Dynamic Showcases"), Monterey Financial Services, Inc. ("Monterey"), MTS Holdings Group, Inc. ("MTS"), 1901 Co., Be Marketing Ltd. ("Be UK"), Erik DeSando ("DeSando"), Barry Falck ("Falck"), Jacob Steinbeck ("Steinbeck"), Vitaly Rashkovan ("Rashkovan"), and Does 1 to 100, (collectively, "Defendants"). Defendants all perform various roles in an enterprise known variously as "Be Productions" or "Gonnabe.com."

As set forth in more detail in the supporting Memorandum, Be Productions makes various representations about how its services facilitate children's professional success in the entertainment industry. Be Productions charges up-front fees in the amount of several thousands dollars for these services, before its customers obtain any income from professional employment in the entertainment industry. These two facts bring Be Productions within the definition of an "advance-fee talent service" under California Labor Code chapter 1701.

As an advance-fee talent service, Be Productions' contracts were subject to California Labor Code section 1701.4, and failed to meet the statutory requirements – rendering the contracts void and unenforceable. The contracts are therefore deceptive, unlawful and/or unfair business acts, and constitute unlawful competition under California's unfair

competition law ("UCL") (Cal. Bus. & Prof. Code § 17200). Consequently, the sums paid to Be Productions under the contracts are subject to restitution under Business and Professions Code section 17203.

Defendants represented that Be Productions' customers could obtain auditions in front of entertainment industry professionals (i.e., talent agents, talent managers, and casting directors) through Be Productions, in exchange for an up-front fee. These representations concealed the material fact that California Labor Code section 1701.12 strictly prohibits charging such fees. Further, section 1701.12 broadly prohibits advance-fee talent services from making misleading or deceptive representations, including representations about the services their customers will receive. Finally, the damages remedy for violations of Labor Code chapter 1701 is "up to three times the damages actually incurred, but not less than the amount paid . . . to the advance-fee talent service." Cal. Lab. Code § 1701.16 (2009).

This Motion seeks an order requiring an accounting of all sums obtained under Be Productions' contracts with its customers, and imposing a constructive trust on that money. A constructive trust is available under California law when property is obtained in violation of the law. *See* Cal. Civ. Code § 2224 (2009) (whenever property is obtained "by fraud . . . or other wrongful act," the person holding the property is "an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it"). The accounting remedy is incident to the constructive trust; it is one of a constructive trustees' duties. This order will protect Be Productions' customers' money by requiring Defendants to (1) identify the monies obtained by Be Productions and (2) to place that in a segregated account pending the resolution of this action. These remedies are especially appropriate where the property at issue appears to have been dispersed between the Defendants, and where the Defendant primarily responsible for taking the money from Be Productions' customers (Be LLC) purports to be in severe financial difficulty.

Several of the Defendants have proved difficult to serve. To obviate disputes about proper notice, the relief sought in this Motion only directly applies against those Defendants who have been served with process as of the date of this Motion is filed (and for whom

plaintiffs' have filed proofs of service for the summons and complaint) ("Served Defendants"). However, the other Defendants may still be bound by the proposed injunction to the same degree as other non-parties are under Federal Rule 65(d)(2).

WHEREFORE, Plaintiffs respectfully request the Court enter an Order in favor of Plaintiffs and against Served Defendants that:

1.    Imposes a constructive trust on those sums of money ("Constructive Trust Funds") which is

    (a)    traceable to any sum paid to any of the Served Defendants under a contract with Be., LLC;

    (b)    for services which were represented to facilitate a child's professional success in the entertainment industry, which payments were in excess or prior to the child obtaining income from employment in the entertainment industry ;

    (c)    which Served Defendants and/or their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the Court's order, including the other Defendants ("Constructive Trustees") possess or control (directly or indirectly), or which are held by another for their benefit.

2.    Requires each Constructive Trustee no later than 10 days after the entry of the proposed Order to

    (a)    deposit all Constructive Trust Funds in their control as of the date of the proposed order, or which come into the control of the Constructive Trustees after the date of the proposed Order, into a segregated, interest-bearing fiduciary account maintained by a FDIC-insured financial institution; and

    (b)    to refrain and prevent any transfer of Constructive Trust Funds from such accounts while the proposed Order is in effect.

3.    Requires each Served Defendant

    (a)    to certify to the Court no later than 5 days after the entry of the proposed Order that they have provide notice of the proposed Order to any person which any Served Defendant knows or has reason to believe has possession or control over Constructive Trust Funds (including depository institution holding any funds on a Constructive Trustee's behalf);

    (b)    to certify to the Court no later than 10 days after the entry of the Court's order that all Constructive Trust Funds in their control as of the date of the Court's order, or which come into the control of the Constructive Trustees after the date of the Order, have been placed into a segregated, interest-bearing fiduciary account maintained by a FDIC-insured financial institution; and

1

2              (c)      to provide the Court and Plaintiff an accounting of all
       Constructive Trust Funds, no later than 30 days after the entry of
3      the Court's order.

4          4.    Sets the bond for this injunction for $2,000 under Federal Rule of Civil
       Procedure 65(c).

5                              **NOTICE OF LODGING PROPOSED ORDER**

6            Pursuant to General Order No. 45(VIII), Movants lodged with the Court the proposed

7      order below by emailing a Microsoft Word version of the order below to

8      "CRBpo@cand.uscourts.gov." *See* U.S. District Court for the Northern District of California,

9      *How do I...? / Where do I...?*, at

10     https://ecf.cand.uscourts.gov/cand/faq/how_do_i/how_do_i.htm (last updated Jun. 18, 2009).

11     Dated: October 9, 2009

12                                             By: _s/Ethan Preston_____
                                                    Ethan Preston (263295)
13                                                  PRESTON LAW OFFICES
                                                    1658 North Milwaukee Avenue, No. 253
14                                                  (312) 492-4070 (phone)
                                                    (312) 262-1007 (facsimile)
15                                                  ep@eplaw.us

16                                                  David C. Parisi, Esq. (162248)
                                                    Suzanne Havens Beckman, Esq. (188814)
17                                                  PARISI & HAVENS LLP
                                                    15233 Valleyheart Drive
18                                                  Sherman Oaks, California 91403
                                                    (818) 990-1299 (phone)
19                                                  (818) 501-7852 (facsimile)
                                                    dcparisi@parisihavens.com
20                                                  shavens@parisihavens.com

21

22

23

24

25

26

27

28

1  Ethan Preston (263295)
   PRESTON LAW OFFICES
2  1658 North Milwaukee Avenue, No. 253
   (312) 492-4070 (phone)
3  (312) 262-1007 (facsimile)
   ep@eplaw.us
4
   David C. Parisi, Esq. (162248)
5  Suzanne Havens Beckman, Esq. (188814)
   PARISI & HAVENS LLP
6  15233 Valleyheart Drive
   Sherman Oaks, California 91403
7  (818) 990-1299 (phone)
   (818) 501-7852 (facsimile)
8  dcparisi@parisihavens.com
   shavens@parisihavens.com
9
   *Attorneys for Plaintiffs Timothy DuFour and*
10 *Kenneth Tanner, on their own behalves*
   *and on behalf of all others similarly situated,*
11

12              **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
13                    **SAN FRANCISCO DIVISION**

14 TIMOTHY DuFOUR and KENNETH         No. 09-03770-CRB
   TANNER, individuals, on their own behalves
15 and on behalf of all others similarly situated,   Judge Charles R. Breyer

16                Plaintiffs,        **MEMORANDUM OF POINTS AND**
                                     **AUTHORITIES SUPPORTING**
17         v.                        **PLAINTIFFS' MOTION FOR**
                                     **PRELIMINARY INJUNCTION**
18 BE., LLC, DYNAMIC SHOWCASES, LLC,
   California limited liability companies,
19 MONTEREY FINANCIAL SERVICES, INC.,   **Date:      November 13, 2009**
   MTS HOLDINGS GROUP, INC., California  **Time:      10:00 am**
20 corporations, 1901 CO., a Nevada corporation,  **Location:  Courtroom 8, 19th Floor**
   BE MARKETING LIMITED, a private limited         **450 Golden Gate Ave.**
21 company registered in England and Wales,        **San Francisco, CA 94102**
   ERIK DeSANDO, BARRY FALCK, JACOB
22 STEINBECK, VITALY RASHKOVAN, and
   DOES 1-100, inclusive,
23
                Defendants.
24

25

26

27

28

**Table of Contents**

Page

I.   **Defendants Violated Labor Code Chapter 1701 and the UCL** …...........................1

    A.   Plaintiffs Paid Advance Fees To Defendants…...........................................2

    B.   Be LLC, Be UK, and Dynamic Showcases Are Advance-Fee Talent Services ...2

        1.   Be LLC Marketed Career Management Services to Its Customers ….......4

        2.   Be LLC Marketed Its Services As Providing Access to Auditions ….......5

        3.   Be LLC Marketed Its Services As Providing Access to Professional Evaluations …...............................................................................6

        4.   Be LLC Marketed Its Services As Offering the Prospect of Employment to Its Customers …............................................................................7

    C.   Be LLC and Dynamic Showcases Violated Chapter 1701 …..............................8

    D.   Defendants Violated the UCL …......................................................................9

    E.   The Other Defendants Are Liable Under a Claim for Aiding and Abetting …..11

II.   **Given the Evidence, Plaintiffs Are Entitled to a Constructive Trust and Accounting** …................................................................................................13

    A.   The Proposed Injunction Is Authorized Under California Law …......................14

    B.   Plaintiffs Have No Adequate Legal Remedy and Are Faced With Irreparable Harm.. …...................................................................................................15

    C.   The Balance of Harms Favors Granting the Injunction, Because a Constructive Trust Is an Inherently Balanced Remedy ….......................................................17

    D.   The Court Should Require No Bond or a Minimal Bond …................................19

III.   **Conclusion** ….....................................................................................................20

1

**Table of Authorities**

2

**Federal Cases**                                                                                **Page**

*Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999) …..………………………....20

3

*United States v. Bluitt*, 815 F. Supp. 1314 (N.D. Cal. 1992)…....…………………...16 n.3

4

*CFTC v. Forex Liquidity LLC*,
     No. 07-01437, 2009 WL 2231684 (C.D. Cal. July 23, 2009) …...…………………..18

5

6    *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467 (9th Cir. 1994) …16-17

7    *In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006)…….……….……………11

8    *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984) …....…………………..17 n.4

9    *FTC v. Crittenden*, 823 F. Supp. 699 (C.D. Cal. 1993)…….…………………………18 n.5

10   *FTC v. H. N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982)…....……………………………13

11   *FTC v. Productive Marketing, Inc.*, 136 F. Supp. 2d 1096 (C.D. Cal. 2001) …......………18

12   *Gerling Global Reinsurance Corp. of Am. v. Low*, 240 F.3d 739 (9th Cir. 2001)…....………14

13   *Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003) ….....…………………………19-20

14   *Justin v. City of Los Angeles*,
     No. 00-12352, 2000 WL 1808426 (C.D. Cal. Dec. 5, 2000) …....……………………20

15

     *Kaiser Trading Co. v. Associated Metals & Minerals Corp.*,
16       321 F. Supp. 923 (C.D. Cal. 1970) …....…………………………………………13

17   *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007) …....……………10

18   *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782 (9th Cir. 2005) ….....……14

19   *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482 (C.D. Cal. 2006) ….....……9 n.2

20   *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003) ….....………11

21   *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*,
     475 F. Supp. 2d 995 (C.D. Cal. 2007) …....…………………………………17 n.4

22

23   *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387 (9th Cir. 1995) …....………………18, 19

24   *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552 (9th Cir. 1992)…....……………17

25   *Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988) …....………………19

     *Saga Int'l, Inc. v. John D. Brush & Co., Inc.*, 984 F. Supp. 1283 (C.D. Cal. 1997) …...……18

26

27   *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113 (9th Cir. 2005)…....……………13-14, 20

     *SEC v. Homa*, 514 F.3d 661 (7th Cir. 2008) …....…………………………………………18

28

     *Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643 (9th Cir. 1988)                              13

Plaintiffs' Memorandum of Points and Authorities  iii                        No. 09-03770-CRB
Supporting Motion for Preliminary Injunction

**Table of Authorities**

**Federal Cases**                                                             **Page**

*Snepp v. United States*, 444 U.S. 507 (1980) ……………………………………………19

*Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036 (C.D. Cal. 2008)……………………10

*Towers v. Titus*, 5 B.R. 786 (N.D. Cal. 1979) ……………………………………………15

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) ……………………………………17 n.4

*Walker v. Pierce*, 665 F. Supp. 831 (N.D. Cal. 1987) ………………………………………20

**California Cases**                                                         **Page**

*Casey v. U.S. Bank Nat'l Ass'n*,
    127 Cal. App. 4th 1138, 26 Cal. Rptr. 3d 401 (2005)……………………………………11

*Church v. Bailey*, 90 Cal. App. 2d 501, 203 P.2d 547 (Cal. Ct. App. 1949)………………18-19

*Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 58 Cal. Rptr. 2d 308 (Cal. Ct. App. 1996)…………11

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163, 973 P.2d 527 (1999) …………………………………………9-10, 10-11

*Communist Party v. 522 Valencia, Inc.*,
    35 Cal. App. 4th 980, 41 Cal. Rptr. 2d 618 (Cal. Ct. App. 1995)……………………………15

*GHK Assocs. v. Mayer Group, Inc.*,
    224 Cal. App. 3d 856, 274 Cal. Rptr. 168 (Cal. Ct. App. 1990)……………1, 13, 15-16

*Heckmann v. Ahmanson*,
    168 Cal. App. 3d 119, 214 Cal. Rptr. 177 (Cal. Ct. App. 1985)…………14-15, 16, 17

*Hicks v. Clayton*, 67 Cal. App. 3d 251, 136 Cal. Rptr. 512 (Cal. Ct. App. 1997) …………16 n.3

*Imperial Merchant Servs., Inc. v. Hunt*, 47 Cal. 4th 381, 212 P.3d 736 (2009) ………………3

*In re Jesusa V.*, 32 Cal. 4th 588, 85 P.3d 2 (2004)……………………………………………4

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 63 P.3d 937 (2003) …………10

*Leoni v. State Bar*, 39 Cal.3d 609, 704 P.2d 183 (1985)……………………………………9

*Mass. Mutual Life Ins. Co. v. Superior Court*,
    97 Cal. App. 4th 1282, 119 Cal. Rptr. 2d 190 (Cal. Ct. App. 2002)……………………9

*Ornbaun v. Main*, 198 Cal. App. 2d 92, 17 Cal. Rptr. 631 (Cal. Ct. App. 1961) ……………15

*Pena v. Toney*, 98 Cal. App. 3d 534, 160 Cal. Rptr. 4 (Cal. Ct. App. 1979)…………………18 n.5

*Smith v. Superior Court*, 39 Cal. 4th 77, 137 P.3d 218 (2006) …………………………………3

*In re Tobacco II Cases*, 46 Cal. 4th 298, 207 P.3d 20 (2009) …………………………………9, 10

*People v. Toomey*, 157 Cal. App. 3d 1, 203 Cal. Rptr. 642 (Cal. Ct. App. 1984) ……………12

1

**Table of Authorities**

2

**California Cases** **Page**

*Vasquez v. Superior Court*, 4 Cal.3d 800, 484 P.2d 964 (1971) …...........................................3

3

*People v. Wesley*, 198 Cal. App. 3d 519, 243 Cal. Rptr. 785 (Cal. Ct. App. 1988)…...............3

4

**California Statutes** **Page**

5    Cal. Bus. & Prof. Code § 17200 (2009) …...........................................................................2, 9

6    Cal. Bus. & Prof. Code § 17203 (2009) …...............................................................................14

7    Cal. Civ. Code § 2224 (2009) …..............................................................................................15

8    Cal. Lab. Code § 1701(2009)…........................................................................2-3, 4, 5, 6, 7

9    Cal. Lab. Code § 1701.4 (2009) …........................................................................................8, 9

10   Cal. Lab. Code § 1701.12 (2009) …........................................................................................8

11   Cal. Lab. Code § 1701.16 (2009) …........................................................................................14

12   **Miscellaneous** **Page**

Black's Law Dictionary (6th ed. 1990) …................................................................................4

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THE MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Timothy DuFour ("DuFour") and Kenneth Tanner's ("Tanner") Complaint alleges that Defendants Be., LLC ("Be LLC"), Dynamic Showcases, LLC ("Dynamic Showcases"), Monterey Financial Services, Inc. ("Monterey"), MTS Holdings Group, Inc. ("MTS"), 1901 Co., Be Marketing Ltd. ("Be UK"), Erik DeSando ("DeSando"), Barry Falck ("Falck"), Jacob Steinbeck ("Steinbeck"), Vitaly Rashkovan ("Rashkovan") participate in an enterprise called "Be Productions" or "Gonnabe.com."

Plaintiffs' claims include statutory violations of California Labor Code chapter 1701 (Cal. Lab. Code § 1701-1701.20) and California's unfair competition law ("UCL") (Cal. Bus. & Prof. Code § 17200-17204). Both statutes authorize flexible injunctive relief, which includes the constructive trust and accounting sought in this motion. Under California law, "a constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled." *GHK Assocs. v. Mayer Group, Inc.*, 224 Cal. App. 3d 856, 878, 274 Cal. Rptr. 168, 182 (Cal. Ct. App. 1990) (citation, punctuation omitted). Further, there is an urgency here arising from the fact that Be LLC appears to financially unstable.

I.    **Defendants Violated Labor Code Chapter 1701 and the UCL**

Plaintiffs' essential claim is that Defendants participated in violations of Labor Code chapter 1701 and the UCL through an enterprise known as Be Productions. Below, Plaintiffs present evidence below that their children were "artists," that they were charged "advance fees," so that of the Defendants are "advance-fee talent services" under the chapter 1701's statutory definitions.

Chapter 1701 requires advance-fee talent services to place certain provisions in their contracts with customers (or the contracts cannot be enforced by the advance-fee talent services). Defendants' contracts with Plaintiffs did not contain those provisions. Chapter 1701 broadly prohibits misleading and/or deceptive representations about advance-fee talent services. Defendants concealed material information about Be Productions' services, in particular that chapter 1701 renders it illegal to charge for arranging auditions in front of

entertainment industry professionals. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 (2009). Here, Defendants' conduct unlawful (in that it violated chapter 1701), unfair (in that, at the very least, it violated a legislative policy tethered to chapter 1701), and deceptive. As set forth below, Plaintiffs present more than adequate evidence to sustain a likelihood of prevailing at trial on these claims.

### A.     Plaintiffs Paid Advance Fees To Defendants

Plaintiffs' children used Be Productions' services in order to improve their chances of obtaining professional success in the entertainment industry, bringing them under chapter 1701's broad definition of "artists." (DuFour Decl. ¶ 2, 7; Tanner Decl. ¶¶ 2, 6.) *Cf.* Cal. Lab. Code § 1701(c) (2009) ("persons who seek to become . . . actors or actresses . . . and other . . . persons rendering professional services in motion picture, theatrical, radio, television, and other entertainment enterprises").

Plaintiffs entered into contracts with Be Productions on February 5, 2009 and March 7, 2009, respectively. (DuFour Decl. ¶ 3; Tanner Decl. ¶ 3.) Both Plaintiffs made payments to Be LLC and Monterey under these contracts. (DuFour Decl. ¶ 8; Tanner Decl. ¶ 7.) Neither Plaintiffs' children have received income from professional employment in the entertainment industry. (DuFour Decl. ¶ 7; Tanner Decl. ¶ 6.) Hence, the fees paid to Be LLC and Monterey are "advance fees" under chapter 1701:

> any fee due from or paid by an artist prior to the artist obtaining actual employment as an artist or prior to the artist receiving actual earnings as an artist or that exceeds the actual earnings received by the artist as an artist.

Cal. Lab. Code § 1701(a)(1) (2009).

### B.     Be LLC, Be UK, and Dynamic Showcases Are Advance-Fee Talent Services

Certain of the Defendants – the core of Be Productions – can be proved to be advance-fee talent services based on their representations about their services. Chapter 1701 defines an "advance-fee talent service" as:

> a person who charges, attempts to charge, or receives an advance fee from an artist for one or more of the following, or for the purchase of any other product

1    or service . . . *in order to obtain from or through the service* one or more of
     the following:
2    (1) Procuring, offering, promising, or attempting to procure employment,
     engagements, or auditions for the artist.
3    (2) Managing or directing the development or advancement of the artist's
     career as an artist.
4    (3) Career counseling, career consulting, vocational guidance, aptitude testing,
     evaluation, or planning, in each case relating to the preparation of the artist for
5    employment as an artist.

6    Cal. Lab. Code § 1701(b) (2009) (emphasis added). The emphasized phrase above is critical to

7    chapter 1701's sweeping scope, and its applicability to the evidence presented below.

8         When interpreting California's statutes, the statutory language must be given its

9    "'usual and ordinary meaning.'" *Imperial Merchant Servs., Inc. v. Hunt*, 47 Cal. 4th 381, 387,

10   212 P.3d 736, 740 (2009) (citation, punctuation omitted). Statutory language "must be

11   construed in the context of the statute as a whole and the overall statutory scheme, and we

12   give significance to every word, phrase, sentence, and part of an act in pursuance of the

13   legislative purpose." *Smith v. Superior Court*, 39 Cal. 4th 77, 83, 137 P.3d 218, 221 (2006)

14   (citation, punctuation omitted).

15        The phrase "in order to obtain" in Labor Code subsection 1701(b) imparts an element

16   of subjective purpose or belief on the artist's part. "The ordinary meaning of the phrase 'in

17   order to' is to delineate a purpose." *People v. Wesley*, 198 Cal. App. 3d 519, 522, 243 Cal.

18   Rptr. 785, 787 (Cal. Ct. App. 1988). The artist must have used an advance-fee talent services

19   for the purpose of obtaining, i.e., career management and/or evaluation, or offers to procure

20   employment. The attached Declarations present direct evidence of Plaintiffs' purpose in

21   paying Be Productions' fees, but Be Productions' representations are still more persuasive

22   evidence about its customers' motivations:

23        The fact of reliance upon . . . representations may be inferred from the
          circumstances attending the transaction which oftentimes afford much stronger
24        and more satisfactory evidence of the inducement which prompted the party . . .
          to enter into the contract than his direct testimony to the same effect.
25
     *Vasquez v. Superior Court*, 4 Cal.3d 800, 814, 484 P.2d 964, 972 (1971) (citation, punctuation
26
     omitted). Even without Plaintiffs' direct testimony, the intent and belief of Be Productions'
27
     customers when they purchased its services can be readily inferred from its marketing
28
     material.

Under the phrase "from or through the service," the artist's purpose may to be to receive the services outlined in subsections (b)(1) to (b)(3) indirectly from third parties, by means of the advance-fee talent service. *Cf.* Black's Law Dictionary 1481 (6th ed. 1990) (defining "through" as "[b]y means of . . . [b]y the intermediary of"); *In re Jesusa V.*, 32 Cal. 4th 588, 622, 85 P.3d 2, 24 (2004) (ordinary meaning of word "or" is disjunctive: "the function of the word 'or' is to mark an alternative such as 'either this or that'") (citation, punctuation omitted). Thus, it is not necessary to show that Plaintiffs believed or intended to obtain career management or offers to procure employment directly from Be LLC – it is enough to show that Plaintiffs believed or intended to obtain employment by means of Be LLC's services.

**1.     Be LLC Marketed Career Management Services to Its Customers**

Be LLC is an advance-fee talent service because it charged advance fees for "[m]anaging or directing the development or advancement of the artist's career as an artist," and "[c]areer counseling, career consulting, . . . evaluation, or planning . . . relating to the preparation of the artist for employment as an artist." Cal. Lab. Code § 1701(b)(2), (3) (2009). Each of Be LLC's contracts contain the following description of its services:

> We are an entertainment company that offers a membership comprised of a collection of resources, discounts and a support system designed to help individuals get started on a pathway to success.

(Tanner Decl. ¶ 3; DuFour ¶ 3.) The disclaimer found in each of these contracts eliminates any possible question about where that promised "pathway to success" leads:

> Purchaser acknowledges and agrees that none of the offerings of be. [sic] include any promise or guarantee of ***employment in the entertainment industry***, whether oral or written, expressed or implied.

(DuFour Decl. ¶ 3; Tanner Decl. ¶ 3) (emphasis added). Even in its contracts, Be LLC markets its services as facilitating the professional success of its clients in the entertainment industry ("a support system designed to help individuals get started on a pathway to success"). Of course, Be LLC markets its services other ways. Be LLC's website, Gonnabe.com indicates that Be Productions gives "young artists the resources, services, experience and exposure that they need *in order to succeed in the entertainment industry*." (Preston Decl. ¶ 4) (emphasis

1  added). Likewise, Gonnabe.com states that Be Productions is "a proven game plan in which

2  the artist gets to work with top entertainment pros that who will prepare them to be evaluated"

3  by entertainment industry professionals, and that if its customers "*want*[ed] *to get their career*

4  *launched in the entertainment industry*, you've come to THE right place." (*Id*. ¶ 5) (emphasis

5  added). "Remember there are a lot of things *you will need to prepare before you can get*

6  *started in TV, film and commercials! Here at BE, we'll help you with the details of everything*

7  *you'll need to know.*" (*Id*.) (emphasis added). These representations are clear evidence that the

8  "support system" which Be LLC marketed and for which Plaintiffs and other customers paid

9  an advance fee included career management and/or career consulting in the entertainment

10  industry. (DuFour Decl. ¶ 7; Tanner Decl. ¶ 6.) Be LLC falls under subsection 1701(b) for that

11  reason alone.

12            **2.      Be LLC Marketed Its Services As Providing Access to Auditions**

13         Dynamic Showcases meets chapter 1701's definition of an advance-fee talent service

14  because of it charged Be LLC customers for attending auditions in front of talent agents, talent

15  managers, and casting directors. *Cf.* Cal. Lab. Code § 1701(b)(1) (2009) (advance-fee talent

16  service charges advances fees for "[p]rocuring, offering, promising, or attempting to procure

17  employment, engagements, or auditions for the artist"). In Plaintiffs' contracts, Be LLC offers

18  purported "discounts" on its service providers' fees, including "Talent Showcases" from

19  Dynamic Showcases. (Tanner Decl. ¶ 3; DuFour ¶ 3.) Be LLC distributed the instruction

20  manual to all of its customers, and it clearly and unambiguously markets the "Talent

21  Showcases" as "real audition[s]":

22

23         Agents, managers and casting directors are always looking for new talent.
           Talent showcases are your opportunity to interview with several of these
24         professionals at once *with the goal of gaining representation*. Showcases give
           you a chance to experience *a real audition*. You will gain access to and benefit
25         from the opinions of top industry professionals. Each showcase has a $25
           registration fee. . . . DYNAMIC SHOWCASES wants every member to have a
26         chance to acquire an agent! . . . DYNAMIC SHOWCASES works with top
           agents and managers, helping in the showcase process of thousands of kids in
27         the industry.

28  (DuFour Decl. ¶ 5; Tanner Decl. ¶ 4) (emphasis added). As the quotation above shows, Be

    LLC's marketing indicated that Dynamic Showcases charged an advance fee for these

auditions.

Be LLC is an advance-fee talent service because its services were marketed as providing access to Dynamic Showcases' auditions. Even though Dynamic Showcases actually charged a fee specifically attributable to these auditions, the most significant part of Be LLC's services (as confirmed by its contracts and marketing) was access to Dynamic Showcases' auditions. (DuFour ¶ 3, 7; Tanner Decl. ¶¶ 3, 6.) Hence, Plaintiffs and Be LLC's other customers paid Be LLC advance fees in order to obtain auditions by means of the Be LLC's "support system." *Cf.* Cal. Lab. Code § 1701(b) (2009) (advance fee talent service receives advance fee "in order to obtain" auditions, etc. "from or through the service") with DuFour Decl. ¶ 7; Tanner Decl. ¶ 6.)

### 3.   Be LLC Marketed Its Services As Providing Access to Professional Evaluations

Be LLC also falls within the definition of an advance-fee talent service because the "support system" it marketed and charged an advance fee for included "evaluation . . . relating to the preparation of the artist for employment as an artist." Cal. Lab. Code § 1701(b)(3) (2009). The evaluations were an integral part of Be LLC's marketing:

> Be. Provide's [sic] a proven game plan in which the artist gets to work with top entertainment pros that who will prepare them to be evaluated by top agents, managers and casting directors in San Francisco and Hollywood.

(Preston Decl. ¶ 5.) Likewise, Be LLC's promotional pamphlets marketed its evaluations as "PRICELESS." (DuFour Decl. ¶ 4.) Per the instruction manuals, these evaluations were provided in connection with the Dynamic Showcases auditions:

> [The professionals participating in Dynamic Showcases' auditions will] complete a thorough evaluation of your child's talent and email it to you, stating your child's strengths and *the actions that need to be taken in order to be presented up by a manager or agent*. . . . Agents and managers will offer helpful tips for improvement via mail. You can take this valuable feedback to your ongoing classes with Rising Stars.

(Tanner Decl. ¶ 4; DuFour ¶ 4) (emphasis added). The instruction manual explicitly described these evaluations as relating to the preparation of Be LLC's customers for professional employment in the entertainment industry. Even though the actual evaluation was provided by third-party agents and managers, Be LLC marketed the evaluation as part of its "support

system." Plaintiffs and Be LLC's other customers purchased Be LLC's services to receive these evaluations, inasmuch as they were necessary to obtain professional employment. (DuFour Decl. ¶ 7; Tanner Decl. ¶ 6.) Be LLC is an advance-fee talent service under Labor Code subsection 1701(b)(3).

### 4. Be LLC Marketed Its Services As Offering the Prospect of Employment to Its Customers

Finally, Be LLC and Be UK are advance-fee talent services because Plaintiffs and other Be LLC customers paid them advance fees in order to obtain offers for, or attempts to procure, employment in the entertainment industry through the Be LLC "support system." (DuFour Decl. ¶ 7; Tanner Decl. ¶ 6.) Be UK purports to operate the Gonnabe.com website. (Preston Decl. ¶ 6.) However, Be LLC plainly uses Gonnabe.com to markets its services. Each of Gonnabe.com's webpages explicitly solicits talent agents to browse its member profiles for potential actors: "Are You an AGENT Looking for Talent? Looking for talent for your next big production? CLICK HERE." (*Id*. ¶¶ 4-6, 8, 13.) Gonnabe.com also devotes an entire webpage to soliciting entertainment industry professionals to provide employment for Be Productions members. (*Id*. ¶ 7.)

Even where Be LLC's "support system" offers the prospect of employment in the entertainment industry indirectly – through auditions with Dynamic Showcases or through a profile on Gonnabe.com, and then through representation with an agent, it falls within the broad definition of an advance-fee talent service. *Cf*. Cal. Lab. Code § 1701(b)(1) (2009) (advance-fee service includes person paid advance fee "in order to obtain . . . *through* the service . . . [p]rocuring, offering, promising, or attempting to procure . . . engagements, or auditions for the artist"). It is irrelevant that Be LLC's contracts disclaim "any promise or guarantee of employment in the entertainment industry" (particularly where Gonnabe.com touts the Be LLC's "support system" as providing access to agents and managers who can procure Be LLC customers employment in the entertainment industry.)[1] While Be LLC and Be

---

[1] Are you an Agency?
NO, we are not an agency nor do we procure jobs for our members. *However, we are the source for meeting 100's of agents, managers, casting directors, and producers that are responsible for signing and helping our members work each year.*

UK offer employment in the entertainment industry indirectly – through agents and managers – chapter 1701 still applies to them.

### C.    Be LLC and Dynamic Showcases Violated Chapter 1701

Labor Code section 1701.4 imposes specific requirements on advance-fee talent services' contracts with their customers. Cal. Lab. Code § 1701.4(a) (2009). Be LLC's contracts do not comply with Labor Code section 1701.4. (DuFour Decl. ¶ 3; Tanner Decl. ¶ 3.) Specifically, Be LLC's contracts do not identify "the representative executing the contract on behalf of the advance-fee talent service," "[a] description of the services to be performed, a statement when those services are to be provided," or the elaborate refund provision required by section 1701.4. Cal. Lab. Code § 1701.4(a)(1), (2), (4) (2009). Under chapter 1701 refund provision, if customer demands a refund because the advance-fee talent service does not provide the services required, and the customer does not receive the refund within 48 hours, "the advance-fee talent service shall pay the artist an additional sum equal to the amount of the fee." Cal. Lab. Code § 1701.4(e)(1) (2009). Where an advance-fee talent services' contract does not comply with Labor Code section 1701.4, it is "voidable at the election of the artist and, in that case, shall not be enforceable by the advance-fee talent service." Cal. Lab. Code § 1701.4(c) (2009).

Dynamic Showcases violated section 1701.12 by charging "an artist for providing auditions for the artist." Cal. Lab. Code § 1701.12(i) (2009). Any advances fees Dynamic Showcases collected from Be LLC customers for its auditions were in violation of subsection 1701.12(i).

Be LLC violated section 1701.12 by making "misleading [and] deceptive" representations "concerning the services the artist will receive or the costs the artist will incur." Cal. Lab. Code § 1701.12(a) (2009). Be LLC's representations about Dynamic Showcases' auditions were misleading, because they concealed the material information (a) that Plaintiffs had a right to a refund under Labor Code subsection 1701.4(a)(4); and (b) that Dynamic Showcases' fees violated section 1701.12 and were illegal. Courts have interpreted

(Preston Decl. ¶ 8) (emphasis added).

consumer protection statutes prohibiting "misleading" representations to also prohibit material

omissions – these statutes prohibit "not only [representations] which [are] false, but also

[representations] which although true, [are] either actually misleading or which [have] a

capacity, likelihood or tendency to deceive or confuse the public." *Leoni v. State Bar*, 39

Cal.3d 609, 626, 704 P.2d 183, 194 (1985) (UCL jurisprudence used to interpret provision of

Rules of Professional Conduct prohibiting misleading advertising). *See also Mass. Mutual*

*Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1289, 119 Cal. Rptr. 2d 190, 194 (Cal.

Ct. App. 2002) (UCL prohibits even "perfectly true statement[s] couched in such a manner

that [they are] likely to mislead or deceive the consumer, such as by failure to disclose other

relevant information"); *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144-46 (N.D.

Cal. 2005) (UCL, Consumer Legal Remedies Act prohibit material omissions in

representations). There can be little doubt that Be LLC's omissions were material. *See In re*

*Tobacco II Cases*, 46 Cal. 4th 298, 327, 207 P.3d 20, 39 (2009) (misrepresentation is material

if "a reasonable man would attach importance to its existence or nonexistence in determining

his choice of action in the transaction in question," citation omitted). Plaintiffs are disgruntled

customers who do not believe they have received the services they were promised; had they

known about the refund procedure under subsection 1701.4(a)(4), they would have used it to

get their money back. (DuFour Decl. ¶ 7; Tanner Decl. ¶ 6.) Likewise, had they known that

Dynamic Showcases' fees were illegal, they would have been unwilling to pay Be LLC's fees

to obtain access to Dynamic Showcases' auditions. (DuFour Decl. ¶ 7; Tanner Decl. ¶ 6.)[2]

### D.   Defendants Violated the UCL

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal.

Bus. & Prof. Code § 17200 (2009). Because this provision is "written in the disjunctive, it

establishes three varieties of unfair competition – acts or practices which are unlawful, or

---

[2]  *Cf. Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 491-92 & n.10 (C.D. Cal. 2006) ("reliance can be shown where it provides the 'common sense' or 'logical explanation'" for plaintiffs' behavior, quoting *Peterson v. H & R Block*, 174 F.R.D. 78, 85 (N.D. Ill. 1997) (plaintiffs' reliance on representations about availability of defendant's services was "only logical explanation" for transaction, where it was "inconceivable" that plaintiffs "would rationally choose to pay a fee for a service they knew was unavailable")).

unfair, or fraudulent. [A] practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and *vice versa*." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 973 P.2d 527, 540 (1999).

Plaintiffs' UCL claims asserts all three bases of unfair competition. As explained above, Be LLC's representations about its services were misleading. These representations violated the UCL's "fraudulent" prong, which requires only that (1) "members of the public are likely to be deceived" by the misleading statements, and that (2) "the misrepresentation was an immediate cause of the [Plaintiffs'] injury-producing conduct, [but not necessarily] the sole or even the predominant or decisive factor influencing his conduct." *In re Tobacco II Cases*, 46 Cal. 4th at 312, 327, 207 P.3d at 29, 39 (citation, punctuation omitted). Be LLC's failure to disclose that Plaintiffs' had a right to demand a refund under Labor Code subsection 1701.4(a)(4) and that Dynamic Showcases' fees were illegal was misleading and deceptive, in light of its marketing. Further, Be LLC's violations of chapter 1701 – including both its misleading misrepresentations and its contracts' failure to comply with Labor Code subsection 1701.4(c) – also necessarily violate the "unlawful" prong of the UCL. The UCL's unlawful prong "borrows violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143-44, 63 P.3d 937, 943 (2003) (citation, punctuation omitted).

Finally, Be LLC's violations of chapter 1701 violate the UCL's "unfair" prong. A variety of competing standards have emerged since *Cel-Tech* with respect to "unfair" conduct in consumer actions. *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007). The Ninth Circuit has found that courts may apply any of these standards, at least until the California Supreme Court clarifies liability under the UCL's "unfair" prong in consumer actions. *Id*. The most restrictive standard requires that "any finding of unfairness . . . be tethered to some legislatively declared policy." *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1045 (C.D. Cal. 2008) (quoting *Cel-Tech Commc'ns*, 20 Cal. 4th at 187, 973 P.2d at 544). This means that the unfair conduct must "violate[] the policy or spirit of [a law] because its effects are comparable to or the same as a violation of the law . . ." *Cel-Tech*

*Commc'ns*, 20 Cal. 4th at 187, 973 P.2d at 544. Here, even if Defendants argue that Plaintiffs' claims fail to satisfy some narrow technical element required by chapter 1701, the conduct still comes close enough to the line to violate the UCL's "unfairness" prong.

    **E.**    **The Other Defendants Are Liable Under a Claim for Aiding and Abetting**

    The other Defendants have participated in and profited from Be LLC and Dynamic Showcases' violations of chapter 1701 and the UCL. There is ample evidence to demonstrate that the other Defendants are liable for these violations under an aiding and abetting claim.

    California follows the Restatement (Second) of Torts on liability for aiding and abetting intentional torts. *Cf.*, *e.g.*, *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144, 26 Cal. Rptr. 3d 401, 405 (2005) (following Restatement (Second) of Torts § 876(b) (1976)); *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325-26, 58 Cal. Rptr. 2d 308, 312 (Cal. Ct. App. 1996) (same). Liability for aiding and abetting arises where the defendant "knows the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (quoting, following *Casey*, 127 Cal. App. 4th at 1144, 26 Cal. Rptr. 3d at 405, which in turn analyzes and follows *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003)). The knowledge element is satisfied when abettors have "actual knowledge of the specific primary wrong the defendant substantially assisted." *Casey*, 127 Cal. App. 4th at 1145, 26 Cal. Rptr. 3d at 406. Knowledge can be inferred from the primary tortfeasor's interactions with the abettors' business operations. *Neilson*, 290 F. Supp. 2d at 1120 (atypical banking procedures for primary defendant "rais[ed] . . . inference that [alleged abettor-banks] knew of [primary defendant's] Ponzi scheme and sought to accommodate it by altering their normal ways of doing business"). Likewise, it is

> common sense . . . that even 'ordinary business transactions' [that a commercial entity] performs for a customer can satisfy the substantial assistance element of an aiding and abetting claim if the [commercial entity] actually knew those transactions were assisting the customer in committing a specific tort.

*Casey*, 127 Cal. App. 4th at 1145, 26 Cal. Rptr. 3d at 406 (quoted, followed by *In re First Alliance Mortg. Co.*, 471 F.3d at 994-95). Plaintiffs' evidence establishes the substantial

assistance element and raises a strong inference for the knowledge element.

Hence, there is a strong likelihood that Plaintiffs will prevail on their aiding and abetting claims. DeSando, Falck, and Steinbeck are or were managers of Be LLC. Given their position in the company, it is fair to infer that they personally participated in Be LLC's contracts and representations to its clients. *Cf. People v. Toomey*, 157 Cal. App. 3d 1, 15, 203 Cal. Rptr. 642, 651 (Cal. Ct. App. 1984) (corporate officer liable under UCL where he participated or aided and abetted corporation's unfair competition).

On July 2, 2008, Steinbeck and 1901 Co. registered security interests in "[a]ll of Debtor's [that is, Be LLC's] right, title and interest (whether presently existing or hereafter arising and wherever located) in and to all of the personal property of Debtor." (Preston Decl. ¶ 9.) The only rational inference from this evidence is that, in exchange for these security interests, Steinbeck and 1901 Co. loaned substantial sums of money to Be LLC which was used to expand and maintain Be LLC's operations. It is further fair to infer from Steinbeck and 1901 Co.'s financial relationship with Be LLC that these Defendants are at least aware of the content of Be LLC's contracts and quite likely have done sufficient due diligence to be aware of Be LLC's representations to its customers.

Monterey purchased Be LLC's account receivables and collects unpaid fees from Be LLC's customers. (DuFour Decl. ¶ 8; Tanner Decl. ¶ 7; Preston Decl. ¶ 10.) Monterey is plainly aware of the content of Be LLC's contracts, as it produced a copy of DuFour's signed contract. (DuFour Decl. ¶ 8.)

While Be LLC plainly uses Gonnabe.com to market and provide its services, Be UK purports to operate the Gonnabe.com website. (Preston Decl. ¶ 6.) The only rational inference is that Be UK knew of the misleading representations regarding Be LLC's services on Gonnabe.com.

Finally, Gonnabe.com indicates that an entity named "My Talent Services . . . was contracted by Be LLC to provide the services to which our members are entitled." (*Id*. ¶ 13.) MTS Holdings Group, Inc. ("MTS") registered a "My Talent Service" as a fictitious business name with the County of Los Angeles, listing Vitaly Rashkovan as the "owner" of MTS. (*Id*. ¶

1   2.) Vitaly Rashkovan is also listed as MTS's authorized agent for service of process with the

2   California Secretary of State. (*Id.* ¶ 3.) Finally, "My Talent Services" uses the domain name

3   "mytalentservice.com" to  communicate with existing Be LLC customers via email; as of June

4   23, 2009, the domain name registration for mytalentservice.com listed one "[V]ic

5   [R]ashkovan" as the administrative and technical contact for that domain name. (*Id.* ¶ 11.)

6   Again, the only rational inference from this evidence is that Rashkovan and MTS are familiar

7   with the content of Be LLC's contracts and its misrepresentations about its services, and

8   facilitates Be LLC's violations by servicing its contracts.

9

10  **II.   Given the Evidence, Plaintiffs Are Entitled to a Constructive Trust and Accounting**

11      The Court sits in diversity jurisdiction, so it is California law – not federal law – that

12  controls whether the injunctive relief Plaintiffs seek is available. *See, e.g., Sims Snowboards,*

13  *Inc. v. Kelly*, 863 F.2d 643, 647 (9th Cir. 1988). "Rule 65 concerns the procedure for issuing a

14  preliminary injunction. The substantive basis and the jurisdictional authority for use of this

15  procedure must be sought elsewhere." *FTC v. H. N. Singer, Inc.*, 668 F.2d 1107, 1109 (9th

16  Cir. 1982). The Court should "look to [California] law to determine if a preliminary injunction

17  is permissible," and then "look to federal law to determine whether the court should exercise

18  its discretion" to issue the injunction. *Kaiser Trading Co. v. Associated Metals & Minerals*

19  *Corp.*, 321 F. Supp. 923, 931 n.14 (C.D. Cal. 1970). As detailed below, constructive trusts

20  may imposed under California law in "practically any case where there is a wrongful

21  acquisition of property to which another is entitled." *GHK Assocs.*, 224 Cal. App. 3d at 878,

22  274 Cal. Rptr. at 182 (citation, punctuation omitted). California law permits the injunctive

23  relief sought by Plaintiffs.

24      Both California and federal precedent support the exercise of discretion to grant the

25  injunction. The Ninth Circuit has provided two tests applicable to all motions under Federal

26  Rule 65. The traditional criteria are 1) likelihood of success on the merits, 2) risk of

27  irreparable injury without a preliminary injunction, 3) a balance of hardships favoring the

28  movant, and 4) advancement of the public interest. *Save Our Sonoran, Inc. v. Flowers*, 408

---

F.3d 1113, 1120 (9th Cir. 2005). Alternatively, the movant may demonstrate "*either* a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Id*. (emphasis in original, citations omitted). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." *Id*.

With respect to the likelihood of prevailing, Plaintiffs have presented evidence to support their claims. Without countervailing evidence from Defendants, Plaintiffs' Motion should not be denied on the basis of likelihood of prevailing. The initial ruling on a motion for preliminary injunction is reviewed for abuse of discretion, which arises if the ruling is based "on a clearly erroneous assessment of the evidence." *Gerling Global Reinsurance Corp. of Am. v. Low*, 240 F.3d 739, 743 (9th Cir. 2001). An assessment of the evidence is "clearly erroneous" where "the record contains no evidence to support it[.]" *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 794 (9th Cir. 2005) (citing *Oregon Natural Res. Council v. Marsh*, 52 F.3d 1485, 1492 (9th Cir. 1995)). Where the initial ruling "rests solely on a premise of law" and the facts are "undisputed," the initial ruling can be reviewed *de novo*. *Save Our Sonoran*, 408 F.3d at 1121. Further, this memorandum explains below why both the balance of interim harm and the public interest also support the proposed preliminary injunction.

## A.     The Proposed Injunction Is Authorized Under California Law

The Defendants obtained the fees of Plaintiffs and the other Be LLC customers through their participation in Be LLC's violations of chapter 1701 and the UCL: this suffices to impose a constructive trust under California law. Chapter 1701 and the UCL authorize injunctive remedies on Plaintiffs' claims. Cal. Bus. & Prof. Code § 17203 (2009) (authority to enjoin persons engaged in unfair competition; restitution); Cal. Lab. Code § 1701.16 (2009) (injunctive remedy). A constructive trust is available as a preliminary injunction. *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 135-36, 214 Cal. Rptr. 177, 188-89 (Cal. Ct. App. 1985)

(constructive trust imposed as preliminary injunction). Likewise, California's Civil Code

section 2224 provides that

> [o]ne who gains a thing by fraud . . . or other wrongful act, is, unless he or she
> has some other and better right thereto, an involuntary trustee of the thing
> gained, for the benefit of the person who would otherwise have had it.

Cal. Civ. Code § 2224 (2009). Section 2224 provides "[t]he only conditions necessary to

create a constructive trust" under California law. *GHK Assocs.*, 224 Cal. App. 3d at 878, 274

Cal. Rptr. at 182 (quoting *Martin v. Kehl*, 145 Cal. App. 3d 228, 238, 193 Cal. Rptr. 312, 317

(Cal. Ct. App. 1983) ). *See also Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980,

990, 41 Cal. Rptr. 2d 618, 623-24 (Cal. Ct. App. 1995) (section 2224 defines elements for

constructive trust). Consequently, "constructive trust[s] may be imposed in practically any

case where there is a wrongful acquisition or detention of property to which another is

entitled." *GHK Assocs.*, 224 Cal. App. 3d at 878, 274 Cal. Rptr. at 182. *See also Ornbaun v.

Main*, 198 Cal. App. 2d 92, 99, 17 Cal. Rptr. 631, 635 (Cal. Ct. App. 1961) (same).

   The other relief sought by Plaintiffs is an equitable accounting, a remedy naturally and

rationally incident to a constructive trust. An equitable accounting "involves a scrutiny of

business records to calculate the amount of rents, profits, and other payments captured by a

wrongful grantee," and is "frequently a component of a constructive trust." *Towers v. Titus*, 5

B.R. 786, 793 (N.D. Cal. 1979) (accounting "integral part[] of a constructive trust"). The duty

to perform an equitable accounting "incumbent upon a constructive trustee" is the "firmest

remaining ground for" an accounting. *Id*. at 794.

## B.   Plaintiffs Have No Adequate Legal Remedy and Are Faced With Irreparable Harm

   Irreparable harm and lack of adequate legal remedy are implied where there are

grounds for a constructive trust under Civil Code section 2224. "In California, . . . an action in

equity to establish a constructive trust does not depend on the absence of an adequate legal

remedy. . . . A constructive trust is the usual theory upon which a plaintiff recovers wrongfully

acquired assets. " *Heckmann*, 168 Cal. App. 3d at 134, 214 Cal. Rptr. at 187. *See GHK

Assocs.*, 224 Cal. App. 3d at 878, 274 Cal. Rptr. at 182 (rejecting argument that "because a

constructive trust is an equitable remedy, the plaintiff's remedy at law must be inadequate," following *Heckmann*). California courts have presumed irreparable harm where a constructive trust is otherwise available because

> [m]oney damages are . . . inadequate [if they are limited to] a judgment equal to the amount of money defendant wrongfully acquired plus the legal rate of interest. The purpose of the constructive trust remedy is to prevent unjust enrichment and to prevent a person from taking advantage of his own wrong. . . . Thus, under a constructive trust upon money, the plaintiff is entitled to trace the fund to its ultimate product or profit. . . . By the time plaintiff obtains a final judgment, the original fund may have grown far greater than the legal rate of interest would recognize. To allow the defendant to pocket the difference would reward the defendant for his wrongdoing.

*Heckmann*, 168 Cal. App. 3d at 135, 214 Cal. Rptr. at 188. This same reasoning applies with equal force to an accounting incident to such a constructive trust. Thus, while money damages may be available to Plaintiffs, that does not mean such damages are an adequate substitute for the constructive trust and accounting sought in the attached Motion.[3]

Moreover, as a practical matter, there is evidence that Be LLC is financially unstable and will not be able to satisfy any money damages judgment that Plaintiffs may ultimately obtain. In an email apparently sent to complaining Be LLC customers, DeSando stated:

> the company has been taken over by a conservatorship by the biggest debtor who has a UCC filing on any assets...*meaning there is nothing left to return to customers*. . . . my recommendation is to use the services and discounts still available and not waste your time trying to get money from *a company that is on the verge of bankrupcy* [sic].

(Preston Decl. ¶ 12) (emphasis added).[4] "[A] district court has authority to issue a preliminary

---

[3] "[T]he 'mere existence' of [a remedy for damages] is not sufficient to warrant denial of equitable relief: 'In order to preclude the granting of relief by the equity court, an available remedy at law must be plain, clear and certain, prompt or speedy, sufficient, full and complete, practical, efficient to the attainment of the ends of justice, and final.'" *United States v. Bluitt*, 815 F. Supp. 1314, 1317-18 (N.D. Cal. 1992) (quoting *Interstate Cigar Co. v. United States*, 928 F.2d 221, 223 (7th Cir. 1991), punctuation omitted). California law is in accord: a remedy at law is only adequate where it is
> speedy, adequate, and efficacious to the end in view[,] reach[es] the whole mischief and secure[s] the whole right of the party in a perfect manner at the present time and not in the future. Otherwise, equity will interfere and give such relief and aid as the exigencies of the case may require.
*Hicks v. Clayton*, 67 Cal. App. 3d 251, 264, 136 Cal. Rptr. 512, 520 (Cal. Ct. App. 1997) (quoting *Quist v. Empire Water Co.*, 204 Cal. 646, 653, 269 P. 533, 535 (1928), punctuation omitted).
[4] It is possible this statement would not be admissible at trial. However, the Federal Rules of Evidence apply with substantially less force at a hearing on a motion for preliminary injunction than they do at trial. "The urgency of obtaining a preliminary injunction

injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant[.]" *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994). More broadly, California state courts impose constructive trusts as preliminary injunctions if events might threaten the ultimately efficacy of the constructive trust remedy. "An injunction against disposing of property is proper if disposal would render the final judgment ineffectual." *Heckmann*, 168 Cal. App. 3d at 136, 214 Cal. Rptr. at 189. "[T]he equitable remedy of constructive trust would be ineffectual if the trustee were permitted to defeat recovery by wrongfully permitting the *res* to be dissipated [or] if plaintiffs are unable to trace the trust property into its succeeding transfigurations." *Id*. This is also the rule in federal courts. Federal courts have "the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies." *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (constructive trust in trademark infringement action, quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988) (constructive trust in civil RICO action)). While the application of the constructive trust remedy is extremely broad under California law, there is specific reason to believe that Be LLC may be or may become insolvent shortly. This impending insolvency plainly constitutes irreparable harm under either California or Ninth Circuit precedent.

### C.   The Balance of Harms Favors Granting the Injunction, Because a Constructive Trust Is an Inherently Balanced Remedy

The proposed preliminary injunction's effect and its precise terms are central to a clear analysis of the parties' respective hardships. The proposed injunction imposes a constructive trust on any money which is traceable to the fees paid by Plaintiffs and Be LLC's other

---

necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight. . . . " *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (quoted by *Republic of Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988)). *See also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394-95 (1981) (procedures for preliminary injunction "are less formal and evidence that is less complete than in a trial on the merits"; a movant is "not required to prove his case in full at a preliminary-injunction hearing"); *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 475 F. Supp. 2d 995, 1000 n.1 (C.D. Cal. 2007) (inadmissible hearsay was evidentiary ground for preliminary injunction).

customers, so that the constructive trust's res must be transferred into a bank account and cannot be transferred out until the Court lifts the injunction. The constructive trust order would be enforced retrospectively, like any other injunction: if one of the Defendants was found to have violated the order, it would be subject to civil contempt. *Cf. CFTC v. Forex Liquidity LLC*, No. 07-01437, 2009 WL 2231684, at *5-7 (C.D. Cal. July 23, 2009) (contempt order against defendant's officer who violated receivership order by failing to transfer assets over to receiver).

The proposed constructive trust order follows Rule 65(d)(2) and applies to the Defendants which have been served and "those persons in active concert or participation with them who receive actual notice of the Court's order" (i.e., "Constructive Trustees"). This language "is no more than a way of saying that an injunction binds only the party to the suit, as well as those who aid and abet the party's violation of the injunction." *Saga Int'l, Inc. v. John D. Brush & Co., Inc.*, 984 F. Supp. 1283, 1286-88 (C.D. Cal. 1997). The Rule 65(d)(2) language reinforces the constructive trust's efficacy, by prohibiting those non-parties essential to dissipating the *res* (such as banks and other depository institutions) from doing so on pain of civil contempt. *Cf. SEC v. Homa*, 514 F.3d 661 (7th Cir. 2008). Likewise, injunctions can be enforced against third parties nationally. *Cf. Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391-92 (9th Cir. 1995) (citing *Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985) with approval).

Because the proposed injunction validly applies to third parties, it is proper without Plaintiffs' valid aiding and abetting claims against the non-Be LLC Defendants. It is within the Court's power to require third parties to turn over any portion of a constructive trust's *res* that they hold at the preliminary injunction stage. *FTC v. Productive Marketing, Inc.*, 136 F. Supp. 2d 1096, 1106 (C.D. Cal. 2001) (injunction requiring third party holding receivership funds "to turn those assets over to the Receiver is necessary to achieve the purposes of the receivership"). Further, at final adjudication, Plaintiffs have superior title to the constructive trust's *res* against anyone who is not a *bona fide* purchaser for value.[5] "One who wrongfully

---

[5]   *See also FTC v. Crittenden*, 823 F. Supp. 699, 702-04 (C.D. Cal. 1993) (constructive trust

1  detains funds of another is an involuntary trustee thereof for the benefit of the owner, and a

2  trust will be impressed upon property acquired with such funds unless the same is held by a

3  bona fide purchaser for value without notice in good faith." *Church v. Bailey*, 90 Cal. App. 2d

4  501, 504, 203 P.2d 547, 549 (Cal. Ct. App. 1949) (citing, e.g., Cal. Civ. Code § 2224).

5      While the proposed order has a broad scope, however, a constructive trust is an

6  inherently balanced remedy which limits the potential harm to Constructive Trustees. A

7  constructive trust remedy "deals fairly with both parties by conforming relief to the

8  dimensions of the wrong." *Snepp v. United States*, 444 U.S. 507, 515 (1980).

9
           [T]he trust remedy simply requires [the trustees] to disgorge the benefits of
10         [their statutory violations]. Since the remedy is swift and sure, it is tailored to
           deter those who would [violate the UCL and chapter 1701 of the Labor Code.]
11         And since the remedy reaches only funds attributable to [these statutory
           violations], it cannot saddle [the trustees] with exemplary damages out of all
12         proportion to [their] gain.

13  *Id.* at 515-16. The proposed injunction requires the Constructive Trustees sequester the

14  constructive trust funds "into a segregated, interest-bearing fiduciary account maintained by a

15  FDIC-insured financial institution." The proposed constructive trust does not impose

16  significant out-of-pocket expenses on Defendants; indeed, if the dispute is resolved in their

17  favor, they will not have incurred any expense, and can simply resume using the sequestered

18  funds. Courts have often found that the balance of harms posed by preliminary injunctions

19  freezing a defendant's assets favors the movants. *See Marnatech Enters.*, 970 F.2d at 562-63;

20  *Republic of the Philippines*, 862 F.2d at 1362. While the origin and some of the features of the

21  constructive trust remedy varies from the asset freeze orders in *Marnatech* and *Republic of the*

22  *Philippines*, the constructive trust remedy sought here is entirely consistent with those cases.

23      **D.    The Court Should Require No Bond or a Minimal Bond**

24      Federal Rule of Civil Procedure 65(c) requires that a movant for a preliminary

25  injunction give "security . . . in such sum as the court deems proper" before any preliminary

26  injunction issues. Fed. R. Civ. P. 65(c). "Rule 65(c) invests the district court 'with discretion

27  _____
    claimed by FTC from funds wrongfully obtained from consumers was superior to IRS tax
28  lien); *Pena v. Toney*, 98 Cal. App. 3d 534, 542, 160 Cal. Rptr. 4, 8-9 (Cal. Ct. App. 1979)
    (where car was purchased with money stolen from plaintiff, plaintiff had superior title to
    defendant who was not car's bona fide purchaser).

as to the amount of security required, *if any.*'" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citing *Barahona-Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir. 1999)) (emphasis in original). A district court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id. See also Justin v. City of Los Angeles*, No. 00-12352, 2000 WL 1808426, at *2 (C.D. Cal. Dec. 5, 2000) (bonds under Rule 65(c) have "been dispensed with entirely where there was no proof of likelihood of harm to the party enjoined"). Conversely, there is "long-standing precedent that requiring nominal bonds is perfectly proper in public interest litigation." *Save Our Sonoran*, 408 F.3d at 1126. *See also Walker v. Pierce*, 665 F. Supp. 831, 843-44 (N.D. Cal. 1987) (waiving bond requirement for class representative). Plaintiffs are both presently unemployed, and their families cannot realistically afford more than a $1,000 bond. (DuFour Decl. ¶ 9; Tanner Decl. ¶ 8.) Plaintiffs' status as class representatives, their inability to absorb the expenses of large commercial enterprises like the Defendants, the minimal costs of complying with the proposed injunction, and the public interest features of the relief sought all weigh in favor of a minimal bond, or no bond at all. *Cf. Barahona-Gomez*, 167 F.3d at 1237 (affirming district court's discretion to require only nominal bond of $1,000); *Justin*, 2000 WL 1808426, at *13 (where injunction on constitutional claim "pose[d] no risk of pecuniary injury . . . from being restrained and enjoined," class representative exempted from bond)).

## III.     Conclusion

The Court should grant the proposed constructive trust. This remedy is appropriate under California law. Even without California's broad application of the constructive trust remedy, Be LLC's apparent financial instability is a sufficient basis to grant the requested relief.

Dated: October 9, 2009

By:   s/Ethan Preston
        Ethan Preston (263295)
        PRESTON LAW OFFICES
        1658 North Milwaukee Avenue, No. 253
        (312) 492-4070 (phone)
        (312) 262-1007 (facsimile)
        ep@eplaw.us

1

2          David C. Parisi, Esq. (162248)
           Suzanne Havens Beckman, Esq. (188814)
3          PARISI & HAVENS LLP
           15233 Valleyheart Drive
4          Sherman Oaks, California 91403
           (818) 990-1299 (phone)
5          (818) 501-7852 (facsimile)
           dcparisi@parisihavens.com
6          shavens@parisihavens.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28