1  DAVID SHRAGA (SBN 229098)
   KAWAHITO & SHRAGA LLP
2  11845 W. Olympic Blvd. Suite 665
   Los Angeles, California 90064
3  Telephone: (310) 746-5300
   Facsimile: (310) 593-2520
4  david@kawahitoshraga.com

5  Attorneys for Defendant
   Jacob Steinbeck

6

7              UNITED STATES DISTRICT COURT

8       FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                 SAN FRANCISCO DIVISION

10 | TIMOTHY and JEANNE DuFOUR and | Case Number:  09-03770-CRB
11 | KENNETH TANNER, individuals, and on |
   | behalf of other members of the general public | [Assigned to the Hon. Charles R. Breyer]
12 | similarly situated, |
   |                                  | **DEFENDANT JACOB STEINBECK'S**
13 |          Plaintiffs,             | **OPPOSITION TO PLAINTIFFS' MOTION**
   |                                  | **FOR A PROTECTIVE ORDER;**
14 |     v.                           | **DECLARATION OF DAVID R. SHRAGA**
   |                                  | **IN SUPPORT**
15 | BE., LLC, DYNAMIC SHOWCASES, LLC, |
16 | California limited liability companies, | Date:  October 1, 2010
   | MONTEREY FINANCIAL SERVICES, INC., | Time:  10:00 a.m.
17 | a California corporations, BE MARKETING | Location:  Courtroom 8, 19th Floor
   | LIMITED, a private limited company |            450 Golden Gate Ave.
18 | registered in England and Whales, ERIK |            San Francisco, CA 94102
   | DeSANDO, BARRY FALCK, JACOB |
19 | STEINBECK, and DOES 1 through 10, |
20 | inclusive, |
21 |          Defendants.             |

22

23

24

25

26

27

28

KAWAHITO & SHRAGA LLP
11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 2

        A.      General Background ................................................................................ 2

        B.      Facts Relevant to this Motion ................................................................. 3

        C.      Document Requests at Issue and Meet and Confer Efforts ..................... 5

III.    THE COMMUNICATIONS AND DOCUMENTS SOUGHT BY THE REQUESTS ARE
        ALL HIGHLY RELEVANT ............................................................................... 6

IV.     THE ATTORNEY-CLIENT PRIVILEGE DOES NOT CONFER BLANKET
        PROTECTION ON ALL COMMUNICATIONS WITH ALL CLASS MEMBERS .......... 7

V.      THE ATTORNEY WORK PRODUCT DOCTRINE DOES NOT APPLY TO
        INFORMATION PROVIDED BY POTENTIAL CLASS MEMBERS ........................... 11

VI.     THE COMMON INTEREST PRIVILEGE DOES NOT APPLY TO
        COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS .................................... 12

VII.    PRIVACY CONSIDERATIONS DO NOT OUTWEIGH THE NEED FOR DISCLOSURE
        OF THE IDENTITIES OF CLASS MEMBERS WHO HAVE COME FORWARD WITH
        RELEVANT INFORMATION AND DOCUMENTS ................................................. 14

VIII.   PLAINTIFFS SHOULD PRODUCE A ROUTINE PRIVILEGE LOG ........................... 16

IX.     CONCLUSION ................................................................................................. 18

KAWAHITO & SHRAGA LLP
11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

OPPOSITION TO PLAINTIFFS'                                          NO. 09-3770 CRB
MOTION FOR A PROTECTIVE ORDER

**TABLE OF AUTHORITIES**

**Federal Cases**

American Floral Services, Inc. v. Florists Transworld Delivery Ass'n,
107 FRD 258 (N.D. IL 1985) ........................................................................ 12

Baker v. General Motors Corp.,
209 F.3d 1051 (8th Cir. 2000) ..................................................................... 11

Barton v. U.S. Dist. Court for Central Dist. Of Cal.,
410 F.3d 1104 (9th Cir. 2005) ............................................................. 8, 9, 10

Clarke v. American Commerce Nat'l Bank,
974 F.2d 127 (9th Cir. 1992) ......................................................................... 7

Fifty Six Hope Road Music, Ltd. v. Mayah Collections, Inc.,
No. 05-01059, 2007 WL 1726558 (D. Nev. June 11, 2007) ....................... 17

Fisher v. United States,
425 U.S. 391 (1976) ..................................................................................... 10

Foltz v. State Farm Mut. Auto. Ins. Co.,
331 F.3d 1122 (9th Cir. 2003) ....................................................................... 8

Goff v. Harrah's Operating Co., Inc.,
240 F.R.D. 659 (N.D. Cal. 2007) ................................................................ 11

Hartford Fire. Ins. Co. v. Garvey,
109 F.R.D. 323 (N.D. Cal. 1985) ............................................................. 7, 8

Hickman v. Taylor,
329 U.S. 495 (1947) ..................................................................................... 11

Holmgren v. State Farm Mut. Auto. Ins. Co,
976 F.2d 573 (9th Cir. 1992) ....................................................................... 11

In re Imperial Corp. of Am.,
174 F.R.D. 475 (S.D. Cal. 1997) ................................................................ 17

KAWAHITO & SHRAGA LLP
11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

**TABLE OF AUTHORITIES (CONT.)**

Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc.,

   212 F.R.D. 567 (E.D. Cal. 2002)...................................................................... 14

Schachar v. Am. Academy of Ophthalmology, Inc.,

   106 F.R.D. 187 (N.D. Ill. 1985) ..................................................................... 13

SEC v. Thrasher,

   No. 92-6987, 1996 WL 125661 (S.D.N.Y. Mar. 20, 1996) ....................................... 17

United states ex rel. Bagley v. TRW, Inc.,

   212 F.R.D. 554 (C.D. Cal. 2003) ..................................................................... 14

United States v. Bergonzi,

   216 F.R.D. 487 (N.D. Cal. 2003) ..................................................................... 12

Weil v. Investment/Indicators, Research & Mgmt,

   647 F.2d 18 (9th Cir. 1981) ............................................................................ 7

Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,

   671 F.2 100 (3d Cir. 1982) ............................................................................ 7

**State Cases**

Tien v. Superior Court, 139 Cal. App. 4th 528 (2006)............................................*passim*

**Federal Statutes**

Fed. Rules of Civ. Proc. § 26(b)(1) ...................................................................... 6, 8

Fed. Rules of Civ. Proc. § 26(b)(3)(A) ................................................................ 11

**State Statutes**

Evid. Code § 951 ............................................................................................ 7

Evid. Code § 952 ............................................................................................ 7

**Other Authorities**

Manuel for Complex Litigation, 4th, § 21.12 (2010)................................................ 8

Kawahito & Shraga LLP
11845 West Olympic Boulevard, Suite 665, Los Angeles, California 90064

OPPOSITION TO PLAINTIFFS'
MOTION FOR A PROTECTIVE ORDER

NO. 09-3770 CRB

# I.      **INTRODUCTION**

Plaintiffs' Motion for a Protective Order is based on the overbroad and inaccurate contention that the attorney client privilege and work product doctrines confer blanket protection on all of Plaintiffs' counsel's communications with all potential class members in this case.  None of the cases cited by Plaintiffs support such a sweeping proposition that would deny Defendant his presumptive right to discovery concerning witnesses with relevant knowledge.  Acceptance of Plaintiffs' contention would lead to an absurd result, because it would improperly deny every class defendant the ability to obtain relevant information from any unrepresented witness class members who ever had any contact with a plaintiffs' counsel before certification.

Plaintiffs' counsel has made numerous posts on internet web and blog pages seeking information about this case from potential class members, and has appeared on television to discuss the case.  Plaintiffs' counsel subsequently was contacted by approximately 150 class members who provided various contracts and marketing materials solicited by counsel.  Defendant's document requests seek communications and documents from these self identifying witnesses.  Even though Plaintiffs concede that the documents sought are relevant, they have refused to produce them on baseless grounds of privilege, work product, and privacy.  *Moreover, in the very posts and emails sent by Plaintiffs' counsel, they expressly state that they do not represent any putative class members other than the named Plaintiffs.* [1]

Notwithstanding these admissions, Plaintiffs make the baseless claim that communications with class members are all privileged.  There is no legal support for Plaintiffs' overbroad contentions, and the cases they cite make clear that the blanket protection sought does not exist.  Indeed, were Plaintiffs' contentions accepted, it would eviscerate the Court's inherent power to regulate communications between counsel and putative class members, including possible improper solicitations.  Communications with all potential class members are not automatically privileged, and to demonstrate a real claim of privilege, Plaintiffs must show all of these witnesses

---

[1] It bears noting that Plaintiffs' counsel have not even attempted to argue they were retained by any putative class members, nor have they produced any retainer agreements that would support such a claim if it had even been made.

KAWAHITO & SHRAGA LLP
11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

OPPOSITION TO PLAINTIFFS'
MOTION FOR A PROTECTIVE ORDER

NO. 09-3770 CRB

1   responded to the blogs with the primary purpose of attempting to retain counsel.  Plaintiffs fail to

2   meet this burden justifying the privilege, and expressly concede in their counsel's declaration in

3   support of the Motion that they were not contacted for this specific purpose.

4        Plaintiffs also cannot demonstrate the existence of any privacy interest that outweighs

5   Defendant's presumptive right to discovery concerning these witnesses with knowledge.  Nor can

6   they show the existence of any work product protection for the requested underlying

7   communications and documents, and they should therefore all be produced.

8        Alternatively, to the extent Plaintiffs' counsel can identify specific communications that fit

9   within the narrowly defined exception to the general rule that no privilege exists, they should have

10  to identify them on a standard log so the claim of privilege can be evaluated.  Plaintiffs have not

11  offered any detail to explain the burden justifying their request to provide an abbreviated log, and

12  a standard privilege log should therefore be provided.

13  **II.    FACTUAL BACKGROUND**

14       A.    General Background

15       This case involves claims by two plaintiffs on behalf of a putative class, where the central

16  claim in the case is that defendant Be., LLC's ("Be") conduct and contracts violated Labor Code

17  section 1701, which governs advanced fee talent services ("AFTSA").  Plaintiffs originally filed

18  this case in August 2009, and have pursued a shotgun approach to the litigation, suing virtually

19  every individual and third party with any connection to Be., LLC's operations (including third

20  parties who provided contract services, and alleged officers of the entity).  Be., LLC has not

21  responded and is apparently no longer conducting business.  Defendant Jacob Steinbeck is one of

22  the few defendants remaining in the case,[2] and is alleged to have been a member and officer of

23  Be., LLC, and controlled and been personally involved in Be., LLC's alleged improper conduct.

24

_____

25  [2] Several rounds of motions to dismiss have been heard, with the Court dismissing most of
    Plaintiffs' claims as to most of the defendants.  Monterey Financial Services is the only other party
26  who has responded.  Defaults have been sought with respect to other companies and individuals.
    The Court has invited defendants to file summary judgment motions, and Defendant's motion is
27  set for hearing in December.  Declaration of David R. Shraga in support hereof ("Shraga Decl.") at
    ¶ 3.

28

Kawahito & Shraga LLP
11845 West Olympic Boulevard, Suite 665, Los Angeles, California 90064

KAWAHITO & SHRAGA LLP

11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

1  He is also alleged to have participated in a RICO conspiracy with the remaining named

2  defendants.[3]  Although not named as defendants, Plaintiffs have claimed that companies called

3  Rising Stars and Blue Sky were supposedly involved in providing acting classes and other services

4  to Be., LLC customers in connection with Be., LLC's operations that allegedly violated AFTSA.[4]

5       B.      Facts Relevant to this Motion

6       During the course of the litigation Mr. Steinbeck's counsel learned that Plaintiffs' counsel

7  had posted messages on the internet (and/or sent emails to putative class members that were

8  subsequently posted on the internet/blogs), asking Be., LLC's former customers to provide them

9  with information concerning Be., LLC and the other defendants.  Specifically, Plaintiffs' counsel

10  wrote on a web page in June 2009, prior to filing the lawsuit:

11       "Preston Law Offices, LLC and Parisi & Havens LLP are investigating potential

12       claims against companies that provide or attempt to provide children auditions

13       related to employment in the entertainment industry…We are evaluating bringing a

14       class action against one or more of the companies we are investigating. In a class

15       action, *our clients would act as class representatives* and could recover damages

16       and other remedies on behalf of all other people with similar claims (*without those*

17       *people having to necessarily hire an attorney*). Click here to read more about class

18       actions. *If you or someone you know have signed a contract with such a company,*

19       *please contact us using the form to the right*."[5]

20  While the litigation was ongoing, Plaintiffs' counsel Ethan Preston then sent an email to

21  putative class members dated February 4, 2010, and that was posted:

22       "Dear Parents,

23            ….We are writing to update you on the progress of the case because you

24       have contacted one of the attorneys at my firm, or at the co-counsel firms also

25       involved in the case…. We are currently focused on the following Defendants:

26  _____

27  [3] Docket entry no. 50; First Amended Complaint filed March 2, 2010, at ¶ 71-73, 130-133.
[4] Docket entry no. 50; First Amended Complaint at ¶ 93 *et seq*.  See also Shraga Decl. at ¶ 4.

28  [5] Exh. A to Shraga Decl. (emphasis added).

OPPOSITION TO PLAINTIFFS'                                              NO. 09-3770 CRB
MOTION FOR A PROTECTIVE ORDER

KAWAHITO & SHRAGA LLP
11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

Monterey Financial Services, LLC., 1901 Co., *Jacob Steinbeck*, My Talent Services (also known as MTS Holdings Group, Inc.), and its owner Vitaly Rashkovan. *We would like to hear from anyone with any additional information about these Defendants* (beyond what is in the Complaint). *If you have any information about these Defendants, please email me with a brief description at your earliest convenience.* It is important that you email us, so that we can assign the right person to speak with you as efficiently as possible. One of our priorities is gathering information from anyone interacted with My Talent Services….

*You do not need to contact us at this time to ensure that you are included in the class action. You do not need to "opt-in" to the class at this time.* (Please understand that hundreds of people have contacted us. We understand many of you are very upset with the Defendants' actions and want to ensure you are included in the class action, but there is no need to do so and individually speaking with each parent would take a significant amount of time away from the legal work that needs to be done in this case.) *We will do our best to keep you informed on the general status, but because we do not directly represent each of you (prior to class certification), we have to be careful not to divulge information protected by the attorney-client privilege.*

*While we do seek to represent all of the customers that paid money to Be., LLC, at the current time we only represent the two clients individually named in the lawsuit…* "[6]

A follow up email was subsequently sent by Mr. Preston which specified:

*…We are asking you to please send us copies of your contracts with Be., LLC and or Monterey Financial Services, LLC. Additionally, some of you may have marketing materials from Be., LLC. Please email us your contracts and other materials…* "[7]

---

[6] Exh. B to Shraga Decl. (emphasis added).
[7] Exh. C. to Shraga Decl. (emphasis added).

- 4 -

1    These posts make clear that Plaintiffs' counsel already has clients to act as representatives

2    (*i.e.*, "our client would acts as class representatives"), that no one need contact them to be in the

3    class, expressly request information and documentation relating to Mr. Steinbeck, and expressly

4    disclaim the existence of any attorney client relationship with potential class members.

5    C.    Document Requests at Issue and Meet and Confer Efforts

6    Defendant has therefore requested the following ten categories of documents at issue:

7    • documents, photographs or videos provided to Plaintiffs' counsel by any class members

8    that relate to any of the allegations in the First Amended Complaint (RFP 5, 13, 14[8]);

9    • communications between Plaintiffs' counsel and any class members or customers of Be.,

10   LLC relating to Be., LLC, defendants, the allegations of the First Amended Complaint, or their

11   participation in this lawsuit or any other lawsuit involving any of the defendants (RFP 7, 8, 59);

12   • communications between Plaintiffs' counsel and anyone who was ever a customer of

13   Rising Stars or Blue Sky that relate to the allegations in the First Amended Complaint (RFP 73,

14   75); and

15   • copies of all contracts or agreements between any class members or any defendants, and

16   all documents that support Plaintiffs' contention that the contracts of all class members were the

17   same in all material respects (RFP 22, 46).[9]

18   During the meet and confer efforts leading to this Motion, Defendant's counsel made clear

19   that they did not seek communications between Plaintiffs' counsel and Plaintiffs themselves.

20   Nonetheless, Plaintiffs' counsel has refused to produce any communications with any putative

21   class members whatsoever, or any contracts or other documents they received from any class

22   members, on the grounds that they are all protected by the attorney client privilege and work

23   product doctrine, and refused to provide a standard privilege log.  Plaintiffs have also claimed that

---

24   [8] The document requests are set forth in Defendant's First Set of Requests for Production to

25   Plaintiffs, which are attached to the Declaration of Ethan Preston filed concurrently with the
     Motion (yet incorrectly styled as the "Declaration in Support of Motion for New Case

26   Management Order").

27   [9] The specific requests at issue are collectively referred to herein as the "Requests."  The
     communications sought by these requests are referred to in Plaintiffs' Motion as the

28   "Communications," and for the sake of simplicity Defendant will utilize the same convention.

OPPOSITION TO PLAINTIFFS'                                              NO. 09-3770 CRB
MOTION FOR A PROTECTIVE ORDER

KAWAHITO & SHRAGA LLP
11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

1   information concerning the identities of the class members is protected by the right of privacy.

2    In order to minimize burdens related to resolution of this Motion, Defendant agreed to

3   waive Plaintiffs' deadline to have the Motion heard prior to serving discovery responses.  In

4   addition, Defendant agreed that Plaintiffs need not provide a privilege log until after the Court

5   rules on the instant Motion and provides guidance regarding (1) whether the communications and

6   documents are subject to disclosure; and (2) the requirements of an appropriate privilege log to the

7   extent any privilege is found to exist.

8   **III.**   **THE COMMUNICATIONS AND DOCUMENTS SOUGHT BY THE REQUESTS**

9      **ARE ALL HIGHLY RELEVANT**

10    The scope of discovery is broad, and Defendant is entitled to discovery that is relevant to

11   any of the claims or defenses, and any information likely to lead to the discovery of admissible

12   evidence.  FRCP 26(b)(1). The identities of witnesses with relevant information or who may

13   possess relevant documents is presumptively discoverable.  FRCP 26(b)(1).

14    In this case, Defendant seeks communications between Plaintiffs' counsel and potential

15   class members who utilized Be., LLC's services.  Plaintiffs' counsel used the internet to solicit

16   information from these witnesses regarding their interactions with the various defendants

17   (individuals and entities).  Plaintiffs' counsel also asked them to provide copies of the contracts

18   they entered into, as well as copies of any marketing materials they might still possess.  These

19   requests were made in connection with Plaintiffs' counsel's purported efforts to investigate the

20   activities of the defendants, to evaluate potential claims, and to address the viability of class

21   certification based upon a comparison of the contracts at issue.

22    Plaintiffs do not even dispute in their papers that all of the information, documents, and

23   Communications sought by the Requests are relevant to determining the identities of witnesses,

24   the nature of Be.,LLC and the other defendants' sales and marketing activities and operations

25   (including with respect to Rising Stars and Blue Sky), and the similarity between the contracts that

26   Plaintiffs claim are identical.  Indeed, Plaintiffs concede that "most of the Communications

27   ultimately involved an exchange of information relevant to the Be customers' claims."  (Motion at

28

OPPOSITION TO PLAINTIFFS'                                    NO. 09-3770 CRB
MOTION FOR A PROTECTIVE ORDER

KAWAHITO & SHRAGA LLP
11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

5:2-3.)

Defendant is entitled to this information and should be allowed to review the contracts and marketing materials of potential class members to evaluate the claims at issue, should be allowed to interview them concerning their experiences related to the allegations, and to evaluate both class certification issues and the merits of the claims against Mr. Steinbeck.[10]

## IV.   THE ATTORNEY-CLIENT PRIVILEGE DOES NOT CONFER BLANKET PROTECTION ON ALL COMMUNICATIONS WITH ALL CLASS MEMBERS

Plaintiffs' motion for a protective order is based upon the flawed notion that all communications with potential class members are privileged.  None of the cases cited by Plaintiffs support this sweeping proposition, and Plaintiffs can offer no facts to show that the privilege applies to the communications sought by Defendant's Requests.

The attorney client privilege protects confidential communications between a client and an attorney from disclosure, and applies "when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney."  Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992).   The privilege applies to confidential communications between client and lawyer, and includes any person who consults a lawyer for the purpose of retaining the lawyer or securing advice.  See Hartford Fire. Ins. Co. v. Garvey, 109 F.R.D. 323, 327 (N.D. Cal. 1985) (attorney client privilege applies to confidential communications by a client (or person who sought to become one), made for primary purpose of securing legal advice or services). [11]  Federal policy favors broad discovery, and the privilege should be narrowly construed because it has the effect of withholding relevant information from the fact finder.  See, e.g., Weil v. Investment/Indicators, Research & Mgmt, 647 F.2d 18, 24 (9th Cir. 1981).  When moving for a protective order, the proponent of the privilege carries the burden of establishing all

[10] As noted in Section VII, below, privacy considerations that might be applicable at this stage under certain circumstances are not applicable to the instant Requests.

[11] Where state law and federal claims are joined, as in this case, claims of privilege are determined under federal law.  Wm. T. Thompson Co. v. General Nutrition Corp., Inc., 671 F.2d 100, 104 (3d Cir. 1982).  State privilege law, discussed in cases infra, is substantially the same.  Evid. Code § 951, 952.

- 7 -

KAWAHITO & SHIRAGA LLP
11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

1  elements, including confidentiality (which is not presumed), and has the burden of showing good

2  cause for the issuance of the order.  FRCP 26(c)(1); Hartford, 109 F.R.D. at 327.  Broad

3  allegations of harm that are not supported by specific examples or an articulated explanation do

4  not satisfy the requirements of Rule 26(c).  Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d

5  1122, 130 (9th Cir. 2003).

6       Prior to certification class members are net yet the Plaintiffs' counsel's clients, both parties

7  can contact them, and as explained in the Manual for Complex Litigation, courts have inherent

8  powers under Rule 23 to fashion various orders to ensure that pre-certification communications

9  with potential class members are not improper.  Manuel for Complex Litigation, 4th, Section

10 21.12 (2010) (collecting various cases that limit communications by plaintiff and defense counsel

11 with potential class members to ensure improper solicitations are not occurring, intimidation is not

12 used, etc…).  The fact that courts have the power to limit the nature of plaintiff and defense

13 counsel's communications with potential class members necessarily means that they are not yet

14 clients of a plaintiffs' counsel before certification, such contacts are presumptively allowed, and

15 there is no blanket privilege that protects all pre-certification communications between Plaintiffs'

16 counsel and the putative class.

17      In the face of these basic discovery standards and the Court's inherent powers, Plaintiffs

18 have failed to meet their burden to demonstrate any of the communications sought are privileged.

19 Plaintiffs rely primarily on Barton v. U.S. Dist. Court for Central Dist. Of Cal., 410 F.3d 1104,

20 1111 (9th Cir. 2005) to support their claim that the Communications should be broadly classified

21 as protected communications with prospective clients that were made primarily to secure legal

22 representation.  However, Plaintiffs' reliance on Barton is misplaced and fails to acknowledge that

23 the facts of Barton are starkly different, and Plaintiffs have not shown the Communications were

24 made with the intention of securing legal representation.

25      In Barton the plaintiff's counsel had requested via its webpage that potential plaintiffs

26 respond to a questionnaire asking about their experiences with a drug so the lawyers could find a

27 client and decide whether or not to bring a claim.  During discovery the defendants asked for

28

- 8 -

Kawahito & Shraga llp
11845 West Olympic Boulevard, Suite 665, Los Angeles, California 90064

1  copies of the questionnaires submitted by the four named class representatives who had actually

2  responded to the post, retained the law firm and filed suit.  The <u>Barton</u> court found that the

3  questionnaires were privileged because they appeared to have been submitted with a view to

4  securing legal representation.  <u>Id.</u> at 1109.

5       Although the court found applicability of the privilege was not "without doubt," it

6  reasoned that the scales tipped in favor of non-disclosure because all of the plaintiffs whose

7  questionnaires were sought ultimately retained the counsel, all provided confidential information

8  concerning their medical histories, all provided it in the context of a lawsuit that had not yet been

9  brought, and at least one plaintiff indicated it did so in order "to get into the class action."  <u>Id.</u>  The

10 need for the information was also questionable, as the questionnaires were only sough to test

11 whether they conflicted with the plaintiffs' deposition testimony.  Ultimately, these factors

12 outweighed the countervailing considerations that the questionnaire itself disclaimed the existence

13 of the formation of an attorney client relationship, the responses of other potential class members

14 showed they were merely providing information and trying to help, and the law firm's statement

15 that it was seeking to gather information (and not that they were soliciting clients).  <u>Id.</u> at 1110.

16      In this case, all of the factors that weighed in favor of disclosure are present, whereas none

17 of the factors favoring the privilege are seen.  Here the need for the Communications and

18 documents exchanged is far more compelling because they admittedly reflect information from

19 percipient witnesses regarding Plaintiffs' allegations.  Moreover, in contrast to <u>Barton</u>, Defendant

20 does not seek any communications between anyone that retained Plaintiffs' counsel.  Nor is there

21 any indication that any private or confidential personal information was provided to Plaintiffs'

22 counsel by any class members.[12]  In addition, Plaintiffs' counsel's original posting in July 2009

23 specifies that they already have clients, are seeking information and evaluating claims, and that

24 class members need not retain counsel to be involved in the suit.  Nowhere does the posting say

25 that Plaintiffs' counsel is soliciting any clients.  Moreover, in a subsequent post after filing suit

26

27 [12] To the extent any contracts were provided that reflect personal financial information, that
   information can be easily redacted.  The contract itself is not confidential, and is not akin to a
28 personal medical history on a private questionnaire where the entire document is confidential.

- 9 -

KAWAHITO & SHRAGA LLP
11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

KAWAHITO & SHRAGA LLP
11845 West Olympic Boulevard, Suite 665, Los Angeles, California 90064

1   Plaintiffs' counsel reiterates that they are simply seeking information, and explicitly state that they

2   do not represent any putative class members prior to certification.

3          Plaintiffs cannot have it both ways, and in light of the foregoing, there is no basis to

4   believe that any class member was responding to Plaintiffs' requests for information primarily in

5   order to personally secure legal representation.   Moreover, Mr. Preston's declaration in support of

6   the Motion, at paragraph 3, concedes as much, when he specifically states the putative members

7   communicated with Plaintiffs' counsel (i) to inquire about participating, assisting, or joining in the

8   class; (ii) to inquire about Plaintiffs' counsel's role in the class action; and (iii) to inquire about the

9   status of the case in order to find out how to potentially benefit. [13]   Nowhere does he indicate that

10  any of the class members communicated with the intent to seek representation, and Barton does

11  not support a sweeping application of the privilege to the Communications at issue.[14]

12         However, to the extent Plaintiffs can specifically identify any Communications that clearly

13  demonstrate that the responding class member had this intention, such communications should be

14  described on a privilege log that includes the specific language used to reflect this intention so the

15  applicability of the privilege can be evaluated.   Alternatively, they should be reviewed *in camera*

16  to determine if they should be deemed privileged.   Otherwise, all Communications between

17  Plaintiffs' counsel and any class members should be produced.

18         In addition, regardless of whether or not any of the Communications themselves could be

19  privileged, any actual contracts and other documents that may have been provided to Plaintiffs'

20  counsel should be produced.   Those documents are evidence, and not rendered privileged merely

21  because they were provided to counsel.   See, e.g., Fisher v. United States, 425 U.S. 391, 403-404

22  (1976) (documents which could have been obtained by court process from client when he was in

---

[13] While Plaintiffs' counsel has vaguely claimed some class members indicated they "wanted to get in the class action," in contrast with Barton, no showing has been made that any of these members submitted any confidential information, ever retained Plaintiffs' counsel, or ever subjectively believed they may retain Plaintiffs' counsel.  In fact, they had already been advised by Plaintiffs' counsel that they need not to so in order to participate.

[14] As noted by Plaintiffs, Barton applied state privilege law, which is substantially the same as federal law.  The narrowly defined privilege under state law should therefore be no broader under federal law.

- 10 -

1   possession may also be obtained from attorney by similar process following transfer by client in

2   order to obtain legal advice; transfer of documents to lawyer does not render them privileged).

3   **V.      THE ATTORNEY WORK PRODUCT DOCTRINE DOES NOT APPLY TO**

4   **          INFORMATION PROVIDED BY POTENTIAL CLASS MEMBERS**

5          Plaintiffs have also failed to demonstrate how communications between counsel and

6   potential class members, or the documents provided to counsel by those class members, could

7   constitute attorney work product.  The work product doctrine protects trial preparation materials

8   that reveal an attorney's strategy, mental processes, evaluation of strengths and weaknesses,

9   intended lines of proof, and inferences drawn from interviews.  <u>Hickman v. Taylor</u>, 329 U.S. 495,

10  511 (1947).  It applies to "documents and tangible things that are prepared in anticipation of

11  litigation or for trial" by or on behalf of a party, and is governed by federal law, even in diversity

12  cases, because it is a doctrine and not a privilege.  FRCP 26(b)(3)(A); <u>Baker v. General Motors</u>

13  <u>Corp.</u>, 209 F.3d 1051 (8th Cir. 2000); <u>Goff v. Harrah's Operating Co., Inc.</u>, 240 F.R.D. 659, 660-

14  61 (N.D. Cal. 2007).  The purpose of the work product doctrine is to protect the privacy of the

15  attorneys' thought processes and to prevent parties from borrowing the wits of their adversaries.

16  <u>Holmgren v. State Farm Mut. Auto. Ins. Co</u>, 976 F.2d 573, 576 (9th Cir. 1992).

17         Communications with potential class members, and the copies of contracts or marketing

18  materials that they provided to Plaintiffs' counsel, do not constitute work product that reflects the

19  mental processes or strategies of counsel, nor are they documents prepared by counsel in

20  anticipation of trial.  They are merely documentary evidence reflecting information possessed by

21  various witnesses, and Defendant is entitled to this raw information. Defendant seeks nothing

22  prepared by counsel, nothing reflecting its strategies, and nothing that would reflect its strategies.

23         Equally hollow is Plaintiffs' argument that the information gathered as a result of

24  Plaintiffs' counsel's posts on webpages and blogs is the result of counsel's hard work and industry

25  and therefore should not be shared with Defendant.  Plaintiffs' counsel did little more than post

26  messages on blogs and websites, and email back and forth with some potential class members in

27  order to obtain information and documents.  In this digital age such tasks are trivial, and the

28

OPPOSITION TO PLAINTIFFS'                                                      NO. 09-3770 CRB
MOTION FOR A PROTECTIVE ORDER

Kawahito & Shraga LLP
11845 West Olympic Boulevard, Suite 665, Los Angeles, California 90064

1   requests at issue do no seek any protected work product that was created as a result of labor by

2   counsel.  Even though significant work may go into locating witnesses, their identity is not work

3   product.  <u>See</u> <u>American Floral Services, Inc. v. Florists Transworld Delivery Ass'n</u>, 107 FRD 258,

4   260 (N.D. IL 1985).

5       The work product doctrine is designed to safeguard the labor resulting from Plaintiffs'

6   counsel's mental processes – not to shelter all relevant information it gathered from witnesses –

7   and Plaintiffs have failed to meet their burden to show the applicability of the doctrine.  If

8   Plaintiffs' theory were accepted, it would lead to the unreasonable result that all evidence it

9   gathered from any potential class member would always be privileged, when Rule 26(b) makes

10  clear that such evidence is presumptively discoverable.

11  **VI.     THE COMMON INTEREST PRIVILEGE DOES NOT APPLY TO**

12  **COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS**

13      Plaintiffs' attempt to invoke the common interest privilege in order to avoid disclosure is

14  equally without merit.  As Plaintiffs concede, the common interest privilege applies to

15  communications made by separate *parties* in the course of a matter of common interest, where the

16  communications are designed to further that effort and the privilege has not been waived.  <u>United</u>

17  <u>States v. Bergonzi</u>, 216 F.R.D. 487, 495 (N.D. Cal. 2003).  While Plaintiffs claim there is a

18  common interest among themselves and the putative class members, they ignore the key fact that

19  the putative class members are not yet even *parties* to the litigation.  Therefore, there can be no

20  privilege that attaches to their communications with Plaintiffs' counsel.

21      Indeed, if this Court were to accept Plaintiffs' argument it would lead to another absurd

22  result, as the common interest privilege could therefore be invoked to shield communications

23  between an actual litigant and any third party who has some tangential interest in the litigation.

24  This tangential interest does not lead to a common interest in prosecution of a matter, and as a

25  practical matter, it is not even the case that putative class members always have the same interests.

26  Class cases can consist of subclasses that have differing claims, and often times members of a

27  class will be directly at odds with the representative when, for example, the terms of a settlement

28

KAWAHITO & SHRAGA LLP
11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

OPPOSITION TO PLAINTIFFS'
MOTION FOR A PROTECTIVE ORDER

NO. 09-3770 CRB

1   are objected to.  There is therefore no basis in fact or law to claim the existence of a common

2   interest privilege among named plaintiffs in a case and non-party putative class members who

3   have no involvement in the joint prosecution of any action.

4        Plaintiffs have cited no cases that support their expansive theory.  Instead, they resort to

5   mischaracterization of the law when citing Schachar v. Am. Academy of Ophthalmology, Inc.,

6   106 F.R.D. 187, 192 (N.D. Ill. 1985) for the proposition that "federal courts have found that

7   putative class members have a common interest with class representatives such that the common

8   interest privilege applies."  (Motion at 6:1-3.)  Schachar made no such sweeping generalizations.

9        In Schachar, two cases were pending, where a lawyer in the direct action (the Schachar

10  case) represented a plaintiff who was also a named plaintiff in a class action (the Vest action).  In

11  addition, other named plaintiffs in the direct action were also members of the putative class in the

12  other case.  Factual issues overlapped between the cases, and the lawyers in the two cases had

13  been coordinating prosecution efforts.  Defendants in the direct action sought the communications

14  between the lawyers in the different cases.  Id. at 191-92.  Without citation to any authority, the

15  district court in Illinois reasoned that the communications between counsel should be shielded

16  from disclosure because the plaintiffs were in effect parties to both cases, stood to stand from

17  successful prosecution of the class case also, and given the factual similarity of the cases, the

18  overlapping lawyers involved should have been allowed to coordinate efforts without jeopardizing

19  their confidences.  Id.

20       By contrast, this case does not involve coordination of efforts among lawyers who

21  represent overlapping *parties* in ongoing litigations, nor does Defendant seek communications

22  between cooperating counsel in ongoing litigation.  Schachar is not binding or based on binding

23  authority, and does not remotely stand for the proposition put forward by Plaintiffs or apply to

24  these facts.  No authority is offered to show a common interest between a class representative and

25  putative class members before certification, such that it could be basis for denying discovery, and

26  Plaintiffs have failed to demonstrate the applicability of this privilege.[15]

27  ───────────────

28  [15] It hardly bears noting that Plaintiffs also seek to rely on cases involving the common interest
    between an insured and *Cumis* counsel paid for by the insurer, or between the government and a

KAWAHITO & SHRAGA LLP
11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

- 13 -

KAWAHITO & SHIRAGA LLP
11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

**VII.   PRIVACY CONSIDERATIONS DO NOT OUTWEIGH THE NEED FOR DISCLOSURE OF THE IDENTITIES OF CLASS MEMBERS WHO HAVE COME FORWARD WITH RELEVANT INFORMATION AND DOCUMENTS**

Equally unavailing is Plaintiffs' attempt to claim that its communications with potential class members who contacted them to be witnesses are protected by the right of privacy, even if the privilege does not exist.  When determining whether a party or third party's right of privacy outweighs the litigant's need for disclosure, courts apply a balancing test that considers the purpose of the information sought, the effect disclosure would have on the affected persons, the nature of the objections of the party resisting discovery, and the availability of less intrusive means to obtain the requested information."  Tien v. Superior Court, 139 Cal. App. 4th 528 (2006)

Compelling reasons justify the discovery sought because Plaintiffs concede the Communications involve witnesses who have come forward with relevant information, and have provided documents and marketing materials that are relevant and possibly no longer available from the defunct Be., LLC entity.  None of the information sought is highly sensitive or confidential, as it does not involve personal medical histories or similar information.  At most, credit card, social security numbers, or bank information is provided, which can all be redacted.  Thus, on balance the equities weigh heavily in favor of disclosure, as it can be accomplished with no intrusion and is justified by compelling reasons.[16]

---

relator in a False Claims Act action.  United states ex rel. Bagley v. TRW, Inc., 212 F.R.D. 554, 562 (C.D. Cal. 2003); Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc., 212 F.R.D. 567, 571-73 (E.D. Cal. 2002).  Those relationships obviously bear no resemblance to the circumstances here involving communications between putative class members who are not yet parties to any case, not sheltered by the policy aims of a federal whistleblower statute, and not jointly prosecuting an action with their insurer's involvement.

[16] Defendant notes that discovery regarding putative class members and their personal contracts would generally not be allowed at this stage, and without an adequate mechanism in place to ensure their privacy rights are accommodated (before wholesale disclosure of their personal information to Plaintiffs' counsel and other parties).  Indeed, Plaintiffs have already overbroadly asked for all of this information in discovery without any limitation, and Defendant has objected on the foregoing grounds.  By contrast, however, the information sought by Defendant's Requests is specifically limited to self identifying witnesses who have already identified themselves to Plaintiffs.  There is therefore no inconsistency in Defendant's positions that discovery concerning witnesses who have come and the nature of their communications with Plaintiffs' counsel forward

- 14 -

KAWAHITO & SHRAGA LLP

11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

1    Plaintiffs' Motion does not offer an analysis of the factors to be balanced, nor does it cite

2    any cases that support their sweeping generalization that the contents of all of the

3    Communications are entirely private.  Instead, Plaintiffs rely exclusively on <u>Tien v. Superior</u>

4    <u>Court</u>, which does not support such a sweeping proposition.  At most, it holds that in limited

5    circumstances the identity of class members responding to a court approved mailing may be

6    private.

7    In <u>Tien</u>, plaintiff filed a wage and hour class action against the healthcare provider Tenet.

8    During the course of the litigation the parties agreed on a mechanism to have a third party send

9    neutral post cards to class members informing them that they could contact plaintiff's counsel if

10   they would like information about the case (Tenet provided the names to the third party without

11   disclosing  them to the plaintiffs).  Some employees responded, and Tenet served interrogatories

12   demanding plaintiffs identify the names (and only the names) of the responding employees.  The

13   <u>Tien</u> court explained that the discovery was relevant because it was reasonable to assume some

14   responding members had information about the issues in the case, that no privilege attached to the

15   communications because the names of clients are not privileged, and that the work product

16   doctrine also did not apply to disclosure of their names.  <u>Tien</u> at 537-39.

17   However, when balancing relevance with privacy considerations, the court ultimately

18   found against disclosure, reasoning that <u>Tenet</u> had offered no compelling need for the names since

19   the letter did not solicit information from class members but instead *offered* information, Tenet

20   had provided the names to begin with, and Tenet already was aware of the facts relevant to the

21   policies it utilized.  Withholding the names therefore would not affect Tenet's ability to defend

22   itself.  On the other hand, the court explained the privacy rights at issue were significant because

23   in *some contexts* the identity of a potential class member can be sensitive information.  The court

24   explained specifically that in an employment context the identity of a potential class member who

25   comes forward is sensitive because employees are reluctant to engage in acts which their employer

26

27   is appropriate, whereas widespread disclosure of information to Plaintiffs regarding all other class

28   members is not.

OPPOSITION TO PLAINTIFFS'                                                    NO. 09-3770 CRB
MOTION FOR A PROTECTIVE ORDER

1   may deem adversarial, and which may cause adverse consequences.  Id. at 541.

2          In this case, by contrast, there is no such concern regarding privacy.  This is not an

3   employment case where disclosure of an employee's name could lead to retaliation.  This case

4   simply involves a consumer contract to provide services relating to the entertainment industry, and

5   there are no adverse consequences from disclosure of self identifying witness's identities.  In

6   addition, unlike Tien, in this case the communications with putative class members were sent to

7   solicit information, not offer it.  Nor is this a case where Defendant can defend itself without the

8   information sought.  Defendant is an individual, does not have knowledge of Be., LLC's policies,

9   and does not know who all of the potential witnesses are.  He therefore needs access to the

10  witnesses and Communications so he can defend this action.

11         As such, the need for disclosure tips heavily in favor of relevance, and Plaintiffs have

12  again failed to meet their burden to show privacy considerations justify withholding this

13  admittedly relevant information.

14  **VIII.   PLAINTIFFS SHOULD PRODUCE A ROUTINE PRIVILEGE LOG**

15         Plaintiffs have failed to demonstrate why any of the Communications are privileged, or

16  why any of the documents provided to them by potential class members are confidential or

17  protected work product.  There is therefore no need for the Court to make an order limiting the

18  nature of the privilege log because all of the Communications and documents sought should be

19  produced, and there is nothing that needs to be logged.

20         Alternatively, to the extent the Court finds there could be a limited privilege for specific

21  confidential Communications that were made prior to the filing of the lawsuit, and clearly reflect a

22  belief on the part of a potential class member that the primary intention of the communication was

23  to personally secure legal representation and/or serve as class representative, Plaintiffs should be

24  required to identify this subset of Communications on a privilege log.  The log should describe in

25  general terms why the Communication reflects such an intention, because without doing so there

26  is no way for Defendant to test whether or not the privilege is properly asserted.  Plaintiffs cannot

27  articulate any specific burden in doing so or why an abbreviated privilege log would be necessary.

28

OPPOSITION TO PLAINTIFFS'                                              NO. 09-3770 CRB
MOTION FOR A PROTECTIVE ORDER

**KAWAHITO & SHRAGA LLP**
11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064

1   They have identified at most a few hundred communications, but have not shown that anywhere

2   near the majority of those communications reflect an actual intent to try and secure legal

3   representation.

4       While Plaintiffs seek an order allowing them to provide an abbreviated, summary privilege

5   log comparable to that ordered in <u>SEC v. Thrasher</u>, No. 92-6987, 1996 WL 125661 (S.D.N.Y.

6   Mar. 20, 1996), or <u>Fifty Six Hope Road Music, Ltd. v. Mayah Collections, Inc.</u>, No. 05-01059,

7   2007 WL 1726558 (D. Nev. June 11, 2007), they have shown no basis for such a log.  <u>Thrasher</u>

8   involved a case where all communications between counsel for all defendants in a multiparty suit

9   were sought, and where the responsive documents were "extremely voluminous."  <u>Mayah</u>

10  <u>Collections</u> involved a request to produce communications between plaintiffs and their counsel

11  potentially numbering in the thousands.

12      In those cases there was no threshold question as to the applicability of the privilege, and a

13  the general representations concerning the applicability of the privilege and the broad

14  identification of withheld documents was therefore adequate.  By contrast, in this case there is a

15  question regarding application of the privilege based upon whether the content of the

16  communication arguably shows an intent to secure legal representation.  Identifying the specific

17  basis for asserting the privilege on a log therefore offers "a material benefit to the discovering

18  party in assessing whether the privilege claim is well grounded."  <u>In re Imperial Corp. of Am.</u>, 174

19  F.R.D. 475, 478 (S.D. Cal. 1997).

20      Moreover, the volume of documents in those cases was far greater than could possibly be

21  asserted here.  Plaintiffs' claims regarding the burdens in providing this log, and the affect it

22  would supposedly have on its ability to prepare for summary judgment, are unpersuasive.  Three

23  different law firms represent the Plaintiffs.  Surely among them they can prepare for summary

24  judgment briefing that is not due until months from now in mid November,[17] while also finding

25  time to provide a privilege log for what appears to be at most a fractional subset of a few hundred

26

27

28  _____
    [17] Shraga Decl. at ¶ 4.

- 17 -

Kawahito & Shraga llp
11845 West Olympic Boulevard, Suite 665, Los Angeles, California 90064

1   emails.[18]

2   **IX.   <u>CONCLUSION</u>**

3        For the foregoing reasons, Plaintiffs should be required to produce all Communications

4   and documents responsive to the Requests.  Alternatively, to the extent any Communications only

5   could be shown to be privileged, they should be reflected on a standard privilege log.  With

6   respect to any documents provided to Plaintiffs by any potential class members, they should all be

7   produced, and at most, personal financial information should be redacted (while still providing the

8   names of the witnesses as identified on any such documents).

9

10  Dated: September 10, 2010

11                                              Respectfully submitted,

12                                              KAWAHITO & SHRAGA LLP

13

14                                              By: /s/David R. Shraga_____
15                                                    David R. Shraga
                                                      *Attorney for Defendant Jacob Steinbeck*

16

17

18

19

20

21

22   _____

23   [18] Plaintiffs other rhetorical attempts to vilify Defendant for seeking information about these
     witnesses and relevant documents, or to concoct the appearance of some nefarious strategy to
24   burden Plaintiffs, are apocryphal at best.  While Plaintiffs claim Defendant seeks a privilege log
     when he has provided none, they fail to acknowledge that although Defendant has asserted the
25   privilege in response to overbroad document requests, he has never indicated that any privileged
     documents were withheld from the production of responsive documents that he agreed to produce.
26   At base it seems Plaintiffs simply do not want to disclose communications that may be improper
     solicitations of class members, or reflect facts to refute the claims.  Whether that is the case or not
27   remains to be seen, but in any event, there is no privilege or other basis to hide behind in order to
     keep this information from Defendant.

28
                                              - 18 -

KAWAHITO & SHRAGA LLP
11845 WEST OLYMPIC BOULEVARD, SUITE 665, LOS ANGELES, CALIFORNIA 90064