Ethan Preston (263295)
PRESTON LAW OFFICES
21001 N. Tatum Blvd., Ste. 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866-509-1197 (facsimile)
ep@eplaw.us

Robert M. Bramson (102006)
Michael S. Strimling (96135)
BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
 (925) 945-0200 (telephone)
 (925) 945-8792 (facsimile)
rbramson@bramsonplutzik.com
mstrimling@bramsonplutzik.com

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| TIMOTHY and JEANNE DuFOUR and KENNETH TANNER, individuals, on their own behalves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BE., LLC, DYNAMIC SHOWCASES, LLC,  California limited liability companies, MONTEREY FINANCIAL SERVICES, INC., a California corporations, BE MARKETING LIMITED, a private limited company registered in England and Wales, ERIK DeSANDO, BARRY FALCK, JACOB STEINBECK, and DOES 1-100, inclusive,<br><br>Defendants. | No. 09-03770-CRB<br><br>Judge Charles R. Breyer<br><br>**PLAINTIFFS' NOTICE OF MOTION, AND MOTION TO COMPEL**<br><br>**Date:** October 22, 2010<br>**Time:** 10:00 am<br>**Location:** Courtroom 8, 19th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

**NOTICE OF MOTION**

NOTICE IS HEREBY GIVEN that Plaintiffs Timothy DuFour, Jeanne DuFour, and Kenneth Tanner ("Plaintiffs") will present this motion to compel pursuant to Rules 26 and 37 in the above referenced proceedings on October 22, 2010 at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at Courtroom 8, 19th Floor, 450 Golden Gate Ave., San Francisco, California 94102, before the Honorable Charles R. Breyer. **Pursuant to the Court's standing order, the Court will assign this Motion to a Magistrate Judge and reset the hearing on this motion.** Plaintiffs' requested relief is set forth below.

**MOTION TO COMPEL**

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the authorities cited therein and the supporting declaration, oral argument of counsel, and any other matter that may be submitted at the hearing.

Plaintiffs' reasons for filing this Motion are (1) to ensure that Defendant Jacob Steinbeck ("Steinbeck") has made a complete production of responsive documents; (2) to require to Steinbeck to produce documents in the format Plaintiffs have requested; and (3) to remedy and deter Steinbeck from further delaying discovery. The central issue of this Motion is that Steinbeck has produced a total of 130 pages of documents and it is painfully clear that Steinbeck has either not made a reasonable search for all responsive documents or has simply withheld documents. The most disturbing omission from Steinbeck's production are attached emails from Be employees, which tend to prove he was involved in Be's day-to-day operation.

Plaintiffs seek five remedies. First, they ask the Court to order Steinbeck to amend his responses to the RPDs to eliminate meritless objections as well as any ambiguity about whether Steinbeck is providing a complete production.

Second, Plaintiffs ask the Court order Steinbeck to authorize Yahoo! to respond to a subpoena seeking emails in Steinbeck's email account. The emails can be produced to an independent third party who is mutually agreeable to the parties, who can screen the emails for privilege, relevance, etc. but Steinbeck should pay for this review. Steinbeck should bear the cost of producing what he should have produced in the first place.

1    Third, Plaintiffs have negotiated extensively with Steinbeck's usual counsel, Mitchell

2  Silberberg Knupp ("MSK"), regarding compliance with a subpoena. MSK has indicated that

3  there are a variety of relevant documents in its files, but seeks to have Plaintiffs pay for the

4  entailing review and production. Steinbeck controls these documents and should have produced

5  them: again, Steinbeck should pay the costs of producing what he should have produced in the

6  first place.

7    Fourth, the Court should continue Plaintiffs' deadline to file an opposition brief to

8  Steinbeck's motion for summary judgment. Steinbeck's conduct has caused a variety of delays.

9  For instance, although Plaintiffs began negotiating a date for Steinbeck's deposition in July, the

10  earliest date Steinbeck would commit to a deposition is September 21 (which date he has already

11  cancelled). Continuing Plaintiffs' deadline alone will curb incentives for gamesmanship and

12  purposeful delay. Even discounting Steinbeck, Plaintiffs case depends on working with a variety

13  of third parties who are not bound to the Court's schedule. It is appropriate to continue Plaintiffs'

14  opposition so that Plaintiffs are not obliged to impose on third parties.

15    Finally, courts have recognized that the failure to produce responsive documents is

16  frequently sanctionable under Rule 26(g). At the very least, Plaintiffs deserve an adequate

17  explanation for the omissions described in this Motion. If Steinbeck cannot provide any

18  explanation demonstrating that his failure to produce the documents at issue was not

19  "substantially justified," Plaintiffs deserve an award of "reasonable expenses incurred in making

20  [this Motion], including attorney's fees" under Rule 37(a)(5).

21

22  Dated: September 16, 2010                By: _____/s/_____

23                                               Ethan Preston (263295)
                                                 PRESTON LAW OFFICES
                                                 21001 N. Tatum Blvd., Ste. 1630-430
24                                               Phoenix, Arizona 85050
                                                 (480) 269-9540 (telephone)
25                                               (866-509-1197 (facsimile)
                                                 ep@eplaw.us

26                                               Robert M. Bramson (102006)
27                                               Michael S. Strimling (96135)
                                                 BRAMSON, PLUTZIK, MAHLER &
                                                 BIRKHAEUSER, LLP
28                                               2125 Oak Grove Road, Suite 120

---

Walnut Creek, California 94598
(925) 945-0200 (telephone)
(925) 945-8792 (facsimile)
rbramson@bramsonplutzik.com
mstrimling@bramsonplutzik.com

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiffs*

Ethan Preston (263295)
PRESTON LAW OFFICES
21001 N. Tatum Blvd., Ste. 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866-509-1197 (facsimile)
ep@eplaw.us

Robert M. Bramson (102006)
Michael S. Strimling (96135)
BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
 (925) 945-0200 (telephone)
 (925) 945-8792 (facsimile)
rbramson@bramsonplutzik.com
mstrimling@bramsonplutzik.com

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

TIMOTHY and JEANNE DuFOUR and KENNETH TANNER, individuals, on their own behalves and on behalf of all others similarly situated,

Plaintiffs,

v.

 BE., LLC, DYNAMIC SHOWCASES, LLC,  California limited liability companies, MONTEREY FINANCIAL SERVICES, INC., a California corporations, BE MARKETING LIMITED, a private limited company registered in England and Wales, ERIK DeSANDO, BARRY FALCK, JACOB STEINBECK, and DOES 1-100, inclusive,

Defendants.

No. 09-03770-CRB

Judge Charles R. Breyer

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO COMPEL**

**Date:** October 22, 2010
**Time:** 10:00 am
**Location:** Courtroom 8, 19th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

## TABLE OF CONTENTS

I.      Introduction                                                                        1

II.     Steinbeck Has Withheld Responsive Documents                                         1
        A.      Breakdown in the Rule 26(f) Process                                          3
        B.      Steinbeck's Failure to Produce Documents in His Control                      5
        C.      Certification of Steinbeck's Discovery Responses Violated Rule 26(g)         6

III.    Steinbeck's Responses to the RPDs Must Be Amended                                   10
        A.      Steinbeck's Initial Response                                                 10
        B.      Steinbeck's First Supplemental Response                                      14
                1.      Qualification Related to Be's Business Operations                    15
                2.      Qualification Related to Finances                                    16
        C.      Steinbeck's Second Supplemental Response                                     16

IV.     Plaintiffs' Remedies                                                                17
        A.      Amendment of Steinbeck's Responses                                          18
        B.      Authorization of a Subpoena to Yahoo!                                        18
        C.      Taxing Costs of MSK's Subpoena Compliance                                    19
        D.      Continuing the Deadline for Plaintiffs' Opposition                           20
        E.      Sanctions                                                                    23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A. Farber & Ptnrs., Inc. v. Garber*,
234 F.R.D. 186 (C.D. Cal. 2006)............................................................ 10

*Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. and Barnum & Bailey Circus*,
233 F.R.D. 209 (D.D.C. 2006) ........................................................... 6, 19

*ASIS Internet Servs. v. Active Response Grp.*,
No. 07 6211, 2008 WL 2129417 (N.D. Cal. May 20, 2008) ............................... 13

*Bible v. Rio Props., Inc.*,
246 F.R.D. 614 (C.D. Cal. 2007)............................................................ 13

*Bob Barker Co., Inc. v. Ferguson Safety Prods., Inc.*,
No. 04-04813, 2006 WL 648674 (N.D. Cal. Mar. 9, 2006)............................16, 18

*Brittain v. Stroh Brewery Co.*,
136 F.R.D. 408 (M.D.N.C.1991) *Lexington Ins. Co. v. Swanson*, No. 05-1614, 2007 WL 1287938, at *2 (W.D. Wash. May 1, 2007)) ................................................. 20

*Burlington N. & Santa Fe Ry. v. U.S. Dist. Court for Dist. of Mont.*,
408 F.3d 1142 (9th Cir. 2005)...........................................................12, 18

*Charles O. Bradley Trust v. Zenith Capital LLC*,
No. 04-2239, 2005 WL 1030218 (N.D. Cal. May 3, 2005).............................. 16

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
482 F.3d 1091 (9th Cir. 2007).............................................................. 3

*Crispin v. Christian Audigier, Inc.*,
No. 09-9509, 2010 WL 2293238 (C.D. Cal. May 26, 2010) ............................... 8

*Danis v. USN Commc'ns, Inc.*,
No. 98-7482, 2000 WL 1694325 (N.D. Ill. Oct. 23, 2000)................................2

*Doe v. District of Columbia*,
230 F.R.D. 47 (D.D.C. 2005)............................................................... 9

*Dufour v. Be LLC*,
No. 09-03770, 2010 WL 2560409 (N.D. Cal. June 22, 2010) ("DuFour III") ...................... 1

*DuFour v. Be., LLC*,
No. 09-3770, 2009 WL 4730897 (N.D. Cal. Dec. 7, 2009)................................. 1

*Duran v. Cisco Sys., Inc.*,
    258 F.R.D. 375 (C.D. Cal. 2009)..................................................................................... 10

*E.E.O.C. v. California Psychiatric Transitions*,
    258 F.R.D. 391 (E.D. Cal. 2009)..................................................................................... 16

*Eureka Fin. Corp. v. Hartford Acc. & Indem. Co.*,
    136 F.R.D. 179 (E.D. Cal. 1991)..................................................................................... 23

*Fox Indus., Inc. v. Gurovich*,
    No. 03-5166, 2006 WL 2882580 (E.D.N.Y. Oct. 6, 2006)................................................ 21

*Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*,
    224 F.R.D. 644 (N.D. Cal. 2004) ...................................................................................... 9

*Garcia v. City of El Centro*,
    214 F.R.D. 587 (S.D. Cal. 2003)..................................................................................... 10

*Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*,
    No. 03-5340, 2007 WL 1848665 (N.D. Cal. June 27, 2007)............................................... 9

*Green v. Baca*,
    225 F.R.D. 612 (C.D. Cal. 2005)..................................................................................... 23

*Housing Rights Ctr. v. Sterling*,
    No. 03-859, 2005 WL 3320739 (C.D. Cal. Mar. 2, 2005).................................................. 22

*In re Convergent Tech. Sec. Litig.*,
    108 F.R.D. 328 (N.D. Cal. 1985) ...................................................................................... 3

*In re eBay Seller Antitrust Litig.*,
    No. 07-01882, 2007 WL 2852364 (N.D. Cal. Oct. 2, 2007)................................................ 9

*In re Excel Innovations, Inc.*,
    502 F.3d 1086 (9th Cir. 2007)......................................................................................... 12

*In re Seroquel Prods. Liab. Litig.*,
    244 F.R.D. 650 (M.D. Fla. 2007) ................................................................................. 5, 22

*Johnson & Johnston v. R.E. Serv.*,
    No. 03-2549, 2004 WL 3174428 (N.D. Cal. Nov. 2, 2004) .............................................. 11

*Lexington Ins. Co. v. Swanson*, No. 05-1614, 2007 WL 1287938, at *2 (W.D. Wash. May
    1, 2007))....................................................................................................................... 20

*Matter of Feldberg*,
    862 F.2d 622 (7th Cir. 1988).......................................................................................... 9

*McArdle v. AT&T Mobility LLC,*
    No. 09-1117, 2010 WL 1532334 (N.D. Cal. Apr. 16, 2010) ................................ 14

*Moon v. SCP Pool Corp.,*
    232 F.R.D. 633 (C.D. Cal. 2005)........................................................................ 21

*Nat'l Ass'n of Radiation Survivors v. Turnage,*
    115 F.R.D. 543 (N.D. Cal. 1987) .................................................................... 2, 7

*O'Grady v. Superior Court,*
    139 Cal. App. 4th 1423 (2006)........................................................................ 18

*Oakes v. Halvorsen Marine Ltd.,*
    179 F.R.D. 281 (C.D. Cal. 1998) ..................................................................... 16

*OpenTV v. Liberate Techns.,*
    219 F.R.D. 474 (N.D. Cal. 2003) ................................................................. 8, 20

*Phoenix Four, Inc. v. Strategic Resources Corp.,*
    No. 05-4837, 2006 WL 1409413 (S.D.N.Y. May 23, 2006) ...........................................4

*Pioneer Elecs. (USA), Inc. v. Superior Court,*
    40 Cal. 4th 360 (2007) ................................................................................... 13

*Qualcomm Inc. v. Broadcom Corp.,*
    No. 05-1958, 2008 WL 66932 (S.D. Cal. Jan. 7, 2008)...........................................7

*Qualcomm Inc. v. Broadcom Corp.,*
    No. 05-1958, 2010 WL 1336937 (S.D. Cal. Apr. 2, 2010).......................................... 7

*Rodriguez v. City of Fresno,*
    No. 05-1017, 2006 WL 903675 (E.D. Cal. Apr. 7, 2006) .................................. 16

*Spectra-Physics Lasers, Inc. v. Uniphase Corp.,*
    144 F.R.D. 99 (N.D. Cal. 1992) ................................................................12, 16

*Televisa, S.A. de C.V. v. Univision Commc'ns, Inc.,*
    No. 05-3444, 2008 WL 4951213 (C.D. Cal. Nov. 17, 2008)............................. 21

*Thomas v. Cate,*
    No. 05-01198, 2010 WL 671254 (E.D. Cal. Feb. 19, 2010).............................. 11

*Tien v. Superior Court,*
    139 Cal. App. 4th 528 (2006) ......................................................................... 13

*Trevino v. ACB Am., Inc.,*
    232 F.R.D. 612 (N.D. Cal. 2006) ................................................................... 13

*United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO,*
    870 F.2d 1450 (9th Cir. 1989) ................................................................. 6

*United States v. San Francisco,*
    No. 07-1300, 2009 WL 648043 (E.D. Cal. Mar. 10, 2009) ................................ 18

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981) ............................................................................. 9

*Wingnut Films, Ltd. v. Katja Motion Pictures Corp.,*
    No. 05-1516, 2007 WL 2758571 (C.D. Cal. Sept. 18, 2007) ....................... 7, 19

*Zubulake v. UBS Warburg LLC,*
    229 F.R.D. 422 (S.D.N.Y. 2004) ................................................................4

**STATUTES**

Cal. Corp. Code § 17058(a) ....................................................................... 5

Cal. Corp. Code § 17061(e) ..................................................................... 11

Cal. Corp. Code § 17106(b) ....................................................................... 6

Cal. Labor Code § 1701 ....................................................................... 5, 19

Fed. R. Civ. P. 26(b)(2)(B), (C)(iii) ............................................................ 20

Fed. R. Civ. P. 26(b)(5)(A)(ii) ................................................................... 12

Fed. R. Civ. P. 26(d)(2) ............................................................................ 12

Fed. R. Civ. P. 26(f) ........................................................................... 3, 4, 5

Fed. R. Civ. P. 26(g) ..................................................................... passim

Fed. R. Civ. P. 34(a)(1) .................................................... 5, 12, 16, 17

Fed. R. Civ. P. 37(a)(1) ........................................................................... 23

Fed. R. Civ. P. 37(a)(5)(A) ....................................................................... 23

Fed. R. Civ. P. 37(a)(5)(A)(ii) ................................................................... 23

Fed. R. Civ. P. 37(c) ................................................................................ 17

Fed. R. Civ. P. 37(e) ................................................................................ 17

Fed. R. Civ. P. 45 ............................................................................... 8, 21

**OTHER AUTHORITIES**

8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2047 (3d ed.
  2010) ................................................................................................................................. 12

8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2051.1 (3d ed.
  2010) ..................................................................................................................................4

Local Rule 26.5(c)(7)............................................................................................................ 10

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION TO COMPEL**

Plaintiffs Timothy DuFour, Jeanne DuFour, and Kenneth Tanner ("Plaintiffs") seek an order under Federal Rules 26 and 37 compelling Defendant Jacob Steinbeck's ("Steinbeck") to make full and complete responses to Plaintiffs' requests for production of documents and to remedy and deter Steinbeck's delay of discovery in this case.

## I.    Introduction

This case centers on the activities of Be., LLC ("Be") and its affiliate, Dynamic Showcases, LLC ("Dynamic"). On a motion for preliminary injunction, the Court found that Be's contracts with its customers violated the California Labor Code. *DuFour v. Be., LLC*, No. 09-3770, 2009 WL 4730897, *5 (N.D. Cal. Dec. 7, 2009). Plaintiffs have alleged, e.g., that Be's contracts also violate the UCL's unlawful prong, and that Be's marketing practices where a fraudulent scheme that misrepresented to Be's customers that they were selected on the basis of their "talent and possibility of success" but in fact "[e]verybody who could pay was selected." *Dufour v. Be LLC*, No. 09-03770, 2010 WL 2560409, *5 (N.D. Cal. June 22, 2010) ("DuFour III"). Plaintiffs' claims against Steinbeck depend on evidence that Steinbeck was an officer or director of Be, that he "controlled Be and directed its activities," "participate[d] in [Be's] conduct [which] violate[d] the UCL," and he "knew of [Be's] scheme and participated in it." *Id.*, at *6, 10, 11.

Plaintiffs served their First Amended Set of Requests for Production of Documents ("RPDs") on June 17, 2010. Notwithstanding Plaintiffs' extensive efforts to confer with Steinbeck about his deficient response, Steinbeck has only produced 130 pages of documents. (Preston Decl. ¶¶ 12, 14.)

## II.    Steinbeck Has Withheld Responsive Documents

Steinbeck failed to produce responsive documents. Plaintiffs have found seven emails from a Be employee to Steinbeck's Yahoo! email address (jaysteinbeck@yahoo.com, *see* Dkt. #74, Ex. 5) which requested information from Steinbeck and some other individuals involved in Be's operations which would be included in Be's periodic internal email newsletter. (*Id.* ¶31; Ex

6.) Steinbeck did not produce these emails despite Plaintiffs' request for "[a]ll documents constituting communications between Steinbeck and Be., LLC, and any of its agents . . . servants, employees, . . . and/or anyone acting on behalf of it." (*Id.* ¶¶30-31.) These emails tend to prove that Steinbeck was involved in Be's daily operations and to rebut any contention that he was merely a passive investor. More significantly, they confirm that Steinbeck's search and/or production of documents was incomplete.

   Although there are other obvious gaps in Steinbeck's production, the omission of these seven emails is the most disturbing omission. This Court has held it "must presume" that, when a party identifies documents like the seven emails above that should have been produced but were not, they "represent but a fraction of the responsive materials which defendant controls but has not produced." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987). When parties wrongfully withhold documents, it erodes society's faith in the civil litigation system's ability to produce fair results:

> Day in and day out, in countless courts throughout this country, courts resolve disputes of every kind imaginable. *Even when disappointed (or outraged) by the outcome, the parties to these disputes do not engage in lawlessness or self-help.* Having had their day in court, the parties accept judgment and move on with their lives. *They would not do so unless they had faith in the integrity of our judicial system.* Not a faith that the system is perfect and will never err, but rather a faith that the system will give the parties a fair opportunity to be heard.
>
> This fair opportunity to be heard is achieved through [compliance with the duty to produce documents within the parameters of Rule 26.] This broad duty of disclosure extends to all documents that fit the definition of relevance for the purposes of discovery – whether the documents are good, bad, or indifferent. While it may seem contrary to the adversarial process to require such "self-reporting," it is in fact a central tenet of our discovery process. . . . Suffice it to say, there is no "bad document" exception to these duties of preservation and production. These twin obligations are so ingrained in our system, and in the lawyers and parties who operate within it, that the obligations routinely are discharged without question. Parties and attorneys frequently are called upon to preserve and produce documents that are against their interest in a particular case. And when they do so, the parties and the attorneys uphold the integrity of our litigation system and inspire confidence in it.

*Danis v. USN Commc'ns, Inc.*, No. 98-7482, 2000 WL 1694325, at *1 (N.D. Ill. Oct. 23, 2000). Conversely, when a party wrongly withholds documents from discovery, "it is a charge that strikes at the core of our civil litigation system." *Id.* at *2.

   This case has been heavily litigated, and Plaintiffs do not put yet another motion before

the Court lightly. Counsel recognizes the Court's admonition that it "simply do[es] not have the resources to police closely the operation of the discovery process," and that counsel should "turn to the courts . . . only in extraordinary situations that implicate truly significant interests." *In re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985). Here, the November 15 deadline for Plaintiffs' opposition to Steinbeck's motion is looming closer and closer. (Dkt. #95, 104.) Steinbeck has refused to continue the briefing schedule for his motion for summary judgment and stated he "wants to have his motion for summary judgment heard as soon as possible." (*See* Preston Decl. Ex. 3.) Plaintiffs cannot effectively defend against Steinbeck's motion, or generally represent their interests and the interests of the class, unless there is genuine, good faith compliance with Steinbeck's discovery obligations. The flip side of the *In re Convergent* coin is that lax enforcement of discovery rules works real injustice:

> Sometimes courts respond to contumacious refusal to produce required discovery or comply with orders compelling discovery with suggestions that lawyers "quit squabbling like children" and work things out for themselves. That can operate to the advantage of a dishonest, noncompliant party, and can prevent the truth from coming out.

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007). The documents at issue are essential to proving Plaintiffs' case and Plaintiffs face a looming deadline for their opposition brief. Steinbeck has not performed a complete document search despite Plaintiffs' best efforts to prompt him to do so; Plaintiffs can no longer blindly trust that Steinbeck comply with discovery without court intervention.

## A.     Breakdown in the Rule 26(f) Process

The discovery problems at issue in this Motion started with the breakdown in the parties' Rule 26(f) process. Plaintiffs sent a letter providing a detailed agenda for the Rule 26(f) conference on May 11, which specifically asked Steinbeck to identify, locate, and preserve relevant documents as part of the discussion about "preserving discoverable information." Fed. R. Civ. P. 26(f)(2). (Rule 26(f) also directs parties to discuss "any issues about disclosure or discovery of electronically stored information[.]" Fed. R. Civ. P. 26(f) (3)(C).) Preservation of documents logically includes first identifying where documents are located. The duty to preserve

1   includes "mak[ing] certain that all sources of potentially relevant information are identified[.]"

2   *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004)

3
4   > To do this, counsel must become fully familiar with her client's document retention policies, as well as the client's data retention architecture. This will invariably involve speaking with information technology personnel . . . It will also involve communicating with the "key players" in the litigation, in order to understand how they stored information.
5

6   *Id.* (citation, punctuation omitted). This duty "is not confined to a request for documents; the duty is

7   to search for *sources* of information." *Phoenix Four, Inc. v. Strategic Resources Corp.*, No. 05-

8   4837, 2006 WL 1409413, at *5 (S.D.N.Y. May 23, 2006) (emphasis in original). Indeed, Rule 26(f)

9   expressly contemplates the informal exchange of information about potential sources of digital

10  documents.

11
12  > It may be important for the parties to discuss [the parties' information systems during the Rule 26(f) conference,] and accordingly important for counsel to become familiar with those systems before the conference. . . . [The parties may] identify the various sources of such information within a party's control that should be searched for electronically stored information. . . . Failure to address preservation issues early in the litigation increases uncertainty and raises a risk of disputes.
13

14

15  Fed. R. Civ. P. 26(f) advisory committee note on 2006 amendment. The exchange of this

16  information is mandatory, not voluntary. "It is no longer acceptable for the parties to defer good

17  faith discussion of how to approach discovery of electronic records . . . . counsel have a duty to

18  take the initiative in meeting and conferring to plan for appropriate discovery of electronically

19  stored information at the commencement of any case in which electronic records will be sought."

20  8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2051.1 (3d ed. 2010)

21  (quoting *Hopson v. Mayor and City Council of Baltimore*, 232 F.R.D. 228, 245 (D. Md. 2005)).

22      Steinbeck would not discuss what he had done to identify, locate, and preserve relevant

23  evidence at the May 17 Rule 26(f) conference. (Preston Decl. ¶2.) Steinbeck's recalcitrance

24  frustrates the intended effect of the 2006 amendments to Rule 26(f):

25
26  > Identifying relevant records and working out technical methods for their production is a cooperative undertaking, not part of the adversarial give and take. . . . [P]arties [can] have reasonable disputes regarding the scope of discovery [but] such disputes should not entail endless wrangling about simply identifying what records exist and determining their format. . . . It is not appropriate to seek an advantage in the litigation by failing to cooperate in the identification of basic evidence.
27

28

*In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 660 (M.D. Fla. 2007). If Steinbeck had cooperated with the Rule 26(f) conference in good faith, it is likely that this Motion, as well as much of the discovery Plaintiffs have served in this case, would have been avoided.

### B.   Steinbeck's Failure to Produce Documents in His Control

In addition to the seven emails discussed above, there are other obvious gaps in Steinbeck's production of documents. Plaintiffs requested "documents concerning any agreements between Steinbeck, Monterey Financial Services, Inc., Be., LLC, Dynamic Showcases, LLC [and/or] Ryan Falck[.]" (*Id.* ¶28.) Steinbeck has failed to produce responsive documents which are central to this case:

1.   Steinbeck admitted he "was a member of Be., LLC" in his Answer. (Dkt. #97 ¶7.) Steinbeck has produced documents indicating that a separate operating agreement exists but he has not produced it, nor has he provided any evidence that he actually resigned from Be. (Preston Decl. ¶29.)

2.   Steinbeck was a member of Be's affiliate Dynamic Showcases, LLC ("Dynamic Showcases") until June 20, 2008 (when Barry Falck's son, Ryan Falck, became the sole member), but he has not produced any operating agreement for Dynamic Showcases or any evidence of his resignation from Dynamic Showcases. (*Id.*)

3.   Monterey has produced a variety of agreements between itself, Be, and its principles, some of which Steinbeck *actually signed*. (*See* MON0802 0036, 0043.) Steinbeck has not produced any documents regarding his agreements with Monterey.

4.   Plaintiffs have negotiated extensively with Steinbeck's usual counsel, Mitchell Silberberg Knupp ("MSK"), regarding compliance with a subpoena. MSK has custody of relevant documents (both privileged and unprivileged) that Steinbeck has not reviewed – MSK intends to bill Plaintiffs for the cost of such review. (Preston Decl. ¶27.) Plaintiffs have independently obtained a letter MSK sent on Be's behalf to the Better Business Bureau concerning allegations that Be violated Labor Code chapter 1701. (*Id.* Ex 4.)

The existence of the documents in MSK and Monterey's possession is self-evident. Moreover, Be and Dynamic Showcases had a legal obligation to retain a wide variety of records, including a list of their members, their articles of organization, any written operating agreement, and their records as they relate to their "internal affairs." *See* Cal. Corp. Code § 17058(a).

Under Rule 34, Steinbeck had an obligation to produce these documents. Rule 34 requires production of documents in Steinbeck's "possession, custody, or *control*." Fed. R. Civ. P. 34(a)(1) (emphasis added). The Ninth Circuit has defined control in this context "as the legal

1   right to obtain documents upon demand." *United States v. Int'l Union of Petroleum & Indus.*

2   *Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). Certainly, Steinbeck was a member of

3   Be and Dynamic Showcases and had control over their records. (Dkt. #97 ¶7 (admitting to being

4   member of Be) *with* Cal. Corp. Code § 17106(b).) Likewise, Steinbeck controls documents in

5   MSK's custody. "Because a client has the right, and the ready ability, to obtain copies of

6   documents gathered or created by its attorneys pursuant to their representation of that client, such

7   documents are clearly within the client's control." *Am. Soc'y for Prevention of Cruelty to Animals v.*

8   *Ringling Bros. and Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.D.C. 2006) (citing cases). The

9   gaps in Steinbeck's production demonstrate a violation of his discovery obligations.

10              **C.      Certification of Steinbeck's Discovery Responses Violated Rule 26(g)**

11           Rule 26(g) provides that each discovery response must be certified "to the best of the

12   person's knowledge, information, and belief formed after a reasonable inquiry" that, e.g., the

13   discovery response is "complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1).

14   Steinbeck's counsel certified all of the responses at issue in this Motion under Rule 26(g).

15   (Preston Decl. ¶¶6, 12, 14.) But Steinbeck's counsel gone beyond *pro forma* certifications: it has

16   repeatedly and unequivocally stated that Steinbeck's production was complete. (*Id.* ¶¶2, 13, 19, 32,

17   33.) Steinbeck's counsel has affirmatively and unambiguously stated that Steinbeck "agreed to

18   produce all non-objectionable, relevant documents," but that only 130 pages of relevant documents

19   exist. (*Id.* Ex. 3.)

20              I think the responses speak for themselves. . . . What we said we'd produce . . . we
            did produce . . . *Its just not much, you know?* . . . [W]hen it comes to these
21           communications and things, *that's what he has, you know?*

22   (*Id.* ¶13) (emphasis added). Steinbeck's counsel has also stated that "Steinbeck did not have

23   anywhere near the level of involvement in Be's affairs that you have claimed[.]" (*Id.* Ex.3.)

24           It is clear now that Steinbeck did not produce all the responsive documents. Plaintiffs

25   presume that if Steinbeck's counsel had reviewed the Emails between Steinbeck and Be, Steinbeck

26   would have produced the seven Emails at issue. Cal. Rule Prof'l Conduct, rule 5-220 ("A member

27   shall not suppress any evidence that the member or the member's client has a legal obligation to

28   reveal or to produce"). Rather, Steinbeck's counsel chose to uncritically parrot false assertions that

1  Steinbeck produced all responsive documents. This violated Rule 26(g), which requires counsel to

2  make "a reasonable effort to assure that the client has provided all the information and

3  documents available to him that are responsive to the discovery demand." Fed. R. Civ. P. 26(g)

4  advisory committee note on 1983 amendment. Counsel who choose "not to look in the correct

5  locations for the correct documents, to accept the unsubstantiated assurances of an important client

6  that its search was sufficient, [and] to ignore the warning signs that the document search and

7  production were inadequate" face sanctions under Rule 26(g). *Qualcomm Inc. v. Broadcom Corp.*,

8  No. 05-1958, 2008 WL 66932 (S.D. Cal. Jan. 7, 2008). [1]

9         Here, there were many warning signs that Steinbeck's flimsy 130-page production was not

10  complete. Steinbeck invested or loaned several hundred thousand dollars into Be and was a member

11  since 2006. Moreover, Be was not some moribund organization – it had hundreds of employees and

12  thousands of customers. As the seven emails make clear, Steinbeck was not simply a passive

13  investor but was involved in Be's day-to-day operations. Given the length of Steinbeck's

14  relationship with Be, and his active involvement in Be's operations, it is simply unrealistic that there

15  are a grand total of 130 pages of responsive documents. *Cf. Wingnut Films, Ltd. v. Katja Motion

16  Pictures Corp.*, No. 05-1516, 2007 WL 2758571, at *5-12, 17, 19 (C.D. Cal. Sept. 18, 2007)

17  (imposing sanctions for incomplete document production after counsel "expressed skepticism" that

18  certification that document production was complete: "[w]e . . . know from experience in this case

19  and other cases that it's not going to be a third of a box. It can't possibly be"). Where parties

20  identify "unproduced documents which were responsive to various discovery requests," this

21  Court has held it "must presume that these particular documents, obtained by plaintiffs despite

22  the defendant's noncompliance, represent but a fraction of the responsive materials which

23  defendant controls but has not produced." *National Ass'n of Radiation Survivors*, 115 F.R.D. at

24  556.

25

26

27  _____
   [1]  *But see Qualcomm Inc. v. Broadcom Corp.*, No. 05-1958, 2010 WL 1336937, *2, 4 (S.D.
   Cal. Apr. 2, 2010) (declining to ultimately sanction attorneys based on evidence of

28  "significant efforts to comply with their discovery obligations," including "an incredible lack
   of candor" by client and attorneys' repeated attempts to learn true facts).

There is more evidence that Steinbeck's counsel did not perform a reasonable investigation into Steinbeck's responses. Plaintiffs sought to resolve the impasse over Steinbeck's discovery by proposing to subpoena Steinbeck's email provider. These negotiations ultimately revealed that Steinbeck's counsel did not review emails between Steinbeck and Be. On August 25, Plaintiff proposed that Steinbeck authorize a subpoena to his email provider for any emails between his email address (jaysteinbeck@yahoo.com) and any email address which used Be's domain name (gonnabe.com) ("Emails"). (Preston Decl. ¶13.) (Steinbeck's authorization, whether voluntary or compelled by the Court, is a prerequisite for an enforceable subpoena under the Stored Communications Act.)[2] Plaintiffs committed to advancing the costs of an independent third party to review the Emails for responsive documents in confidence, but indicated that Steinbeck should pay if any responsive documents were identified. (*Id.* ¶17.)

Ultimately, Steinbeck concluded that Plaintiffs would need to pay for the "hourly fees [Steinbeck's counsel] incurred in" reviewing the Emails for "privilege, confidentiality, privacy, or relevance" even if Plaintiffs had independent *evidence of "good cause" to issue the subpoena.* (*Id.* ¶18.) This condition is plainly unacceptable and contrary to the law. Steinbeck controls the Emails in his Yahoo! account, and is responsible for producing them on his own. Parties responding to discovery "must bear the expense of complying with discovery requests," particularly including the search for and production of documents. *OpenTV v. Liberate Techns.*, 219 F.R.D. 474, 476 (N.D. Cal. 2003) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)). There is no reason whatsoever for Plaintiffs to bear Steinbeck's attorneys' fees for producing documents that Steinbeck should have produced in the first place.

But more to the point Steinbeck's insistence that his counsel review the Emails prior to production raised the question: did Steinbeck's counsel review the Emails to ensure Steinbeck's discovery response was complete? *How could Steinbeck's counsel have any reasonable basis to say that Steinbeck's production was complete unless it asked for and reviewed emails between*

---

[2] The Stored Communications Act prevents civil litigants from obtaining emails directly from an email provider through a Rule 45 subpoena, without authorization from the email user. *See Crispin v. Christian Audigier, Inc.*, No. 09-9509, 2010 WL 2293238, *6-7 (C.D. Cal. May 26, 2010).

*Steinbeck and Be*? It is now clear that Steinbeck's counsel did not review the Emails (unless, of course, Steinbeck's counsel suppressed the Emails from production). The negotiations over the Yahoo! subpoena raise serious questions about whether Steinbeck's counsel made "a reasonable effort to assure that [Steinbeck] provided all the information and documents available to him that are responsive to the discovery demand." Fed. R. Civ. P. 26(g) advisory committee note on 1983 amendment. At this point in the briefing schedule, these questions are very pressing: Plaintiffs need this discovery and they need it now.

There are no good reasons not to have these questions answered in open Court. Steinbeck's counsel has exacerbated this issue by refusing to indicate whether it reviewed the Emails or not on the basis that the fact of whether such review occurred is privileged. (*See* Preston Decl. Ex. 3.) The attorney-client privilege only protects "communications and not . . . facts. A fact is one thing and a communication concerning that fact is an entirely different thing." *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). "[Q]uestions about the adequacy of [a document] search do not entail legal advice, the topic is not off limits just because an attorney plays a role." *Matter of Feldberg*, 862 F.2d 622, 627 (7th Cir. 1988).

> There is no need for a privilege to cover information exchanged in the course of document searches, which are mostly mechanical *yet which entail great risks of dishonest claims of complete compliance. Dropping a cone of silence over the process of searching for documents would do more harm than good.*

*Id*. (emphasis added). Indeed, this Court has recognized that what parties do to locate, preserve, and produce evidence is not privileged from discovery. *In re eBay Seller Antitrust Litig.*, No. 07-01882, 2007 WL 2852364, *2 (N.D. Cal. Oct. 2, 2007) ("[a]lthough plaintiffs may not be entitled to probe into what exactly eBay's employees were *told* by its attorneys, they are certainly entitled to know what eBay's employees are doing with respect to collecting and preserving [documents]"). *See also*, *e.g.*, *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. 03-5340, 2007 WL 1848665, *3 (N.D. Cal. June 27, 2007); *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 650 (N.D. Cal. 2004); *Doe v. District of Columbia*, 230 F.R.D. 47, 56 (D.D.C. 2005) (discovery into "to what extent defendant is meeting its discovery obligations" not protected by attorney client privilege). Likewise, the work product doctrine "does not protect

facts concerning the creation of work product or facts contained within the work product." *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003) (citations, punctuation omitted). The work product doctrine only protects facts "which inherently reveal the attorney's mental impression." *Id.* (same).

### III.    Steinbeck's Responses to the RPDs Must Be Amended

Steinbeck has provided three rounds of responses to the RPDs. These responses are replete with the kind of boilerplate objections that make discovery a tedious, unduly time-consuming chore for both opposing counsel and the courts. "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections," *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing, e.g., *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)), and "general or boilerplate objections such as 'overly burdensome and harassing' are [especially] improper . . . when a party fails to submit any evidentiary declarations supporting such objections." *A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006). Steinbeck has not provided any substantiation for any of his objections – including any sort of a privilege log. Plaintiffs are nonetheless obliged to address each of these defective objections.

#### A.    Steinbeck's Initial Response

Steinbeck's original responses were supposedly served on June 16. Steinbeck's original responses to RPDs Nos. 16, 18, 20, and 21 still stand. They are replete with baseless, boilerplate objections.

**Vagueness Objection:** Steinbeck asserts that RPDs Nos. 16, 18, 20, and 21 are "overbroad and unduly burdensome [because] the term 'concerning' is vague and ambiguous." The RPDs use the definition of the term "concerning" (meaning "referring to, describing, evidencing, or constituting") in the Local Rule 26.5(c)(7) for the District of Massachusetts. This definition is presumably sufficiently definite for the federal court in Massachusetts; it would seem that it is sufficiently definite for use in this Court as well.

Likewise, Steinbeck's responses to RPDs Nos. 18, 20, and 21 asserts that the ordinary

1   and straightforward phrases "concerning the revenue" in RPD No. 18, "payments" and "made on

2   Steinbeck's behalf or for Steinbeck's benefit" in RPD Nos. 20 and 21, are vague and ambiguous.

3   Steinbeck has the "burden to show such vagueness or ambiguity by demonstrating that 'more

4   tools beyond mere reason and common sense are necessary to attribute ordinary definitions to

5   terms and phrases.'" *Thomas v. Cate*, No. 05-01198, 2010 WL 671254, *12 (E.D. Cal. Feb. 19,

6   2010) (citing, e.g., *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 655 (D. Kan. 2006)).

7   These are straightforward phrases in everyday language; nothing more than reason and common

8   sense is necessary to understand what Plaintiffs request.

9          **Relevance Objection:** Steinbeck asserts that RPDs 18, 20, and 21 "are not relevant to the

10  claims or defenses and not likely to lead to discovery of admissible evidence." RPDs No. 18

11  seeks documents concerning the revenue of Be, Dynamic Showcases, and other corporate

12  Defendants, while RPDs Nos. 20 and 21 seek documents concerning payments by other

13  Defendants to (or on behalf of) Steinbeck. Steinbeck again bears the burden of "show[ing]

14  specifically how, despite the broad and liberal construction afforded the federal discovery rules,

15  [discovery request] is not relevant[.]" *Johnson & Johnston v. R.E. Serv.*, No. 03-2549, 2004 WL

16  3174428, at *2 (N.D. Cal. Nov. 2, 2004) (quoting *Roesberg v. Johns-Manville Corp.*, 85 F.R.D.

17  292, 298 (E.D. Pa. 1980)).

18         Steinbeck has not carried this burden. Plaintiffs have offered to exclude documents

19  relating to relationships and events outside of Plaintiffs' allegations if Steinbeck offered evidence

20  that such relationships existed or events took place. These documents are plainly relevant to

21  Steinbeck's interactions with the other Defendants and particularly Be, which are now the most

22  important issue in Plaintiffs' case against Steinbeck. These documents have a particular

23  relevance to determining whether the Defendants have complied with the constructive trust the

24  Court imposed on Be. (Dkt. #26.) Plaintiffs have a statutory rights to these documents. *See* Cal.

25  Corp. Code § 17061(e).

26         **Sequence Objection:** Steinbeck asserts that RPDs 16, 18, 20, and 21 are "premature"

27  because they seek "class and/or merits discovery and thus goes beyond the permissible scope of

28  discovery at this juncture." Once the "moratorium on discovery" under Rule 26(d) has ended "all

1  parties are allowed to use the discovery devices when and how they choose." 8A Charles Alan

2  Wright & Arthur R. Miller, Federal Practice & Procedure § 2047 (3d ed. 2010). Cf. Fed. R. Civ. P.

3  26(d)(2) ("methods of discovery may be used in any sequence"). While the *Court* may order the

4  bifurcation of discovery, it has not done so, and there is no evidence whatsoever that "bifurcation

5  will promote judicial economy and avoid inconvenience or prejudice to the parties." *Spectra-*

6  *Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992). Instead, class and

7  merits issues are inextricably intertwined in this case and the two issues could not be effectively

8  or practicably bifurcated.

9        Additionally, Steinbeck objects that "[d]iscovery pertaining to any individual other than

10  the named Plaintiffs is inappropriate unless and until a class has been certified." Contrary to Rule

11  26(g), Steinbeck's counsel did not "pause and consider the reasonableness of [this] objection."

12  Fed. R. Civ. P. 26(g) advisory committee note on 1983 amendment. Plaintiffs are plainly

13  permitted to take discovery from the Defendants. To the extent Steinbeck meant to assert that no

14  discovery should be had as to other *class members*, it is a plainly illogical Catch-22 to prevent

15  discovery as to class members until a class has been certified.

16        **Privilege Objection:** Steinbeck objects to RPDs 16, 18, 20, and 21 to the extent they

17  seek privileged documents. Rule 26 requires a party withholding information under a claim of

18  privilege to "describe the nature of the documents . . . not produced or disclosed . . . in a manner

19  that . . . will enable other parties to assess the claim" – namely, a privilege log. Fed. R. Civ. P.

20  26(b)(5)(A)(ii). Steinbeck has not produced any privilege log and has even suggested that he has

21  no responsive documents that are privileged. (Dkt. #110 18 n.18.)

22        Steinbeck's boilerplate objection does not effectively assert any privilege. As "the party

23  asserting attorney-client privilege," Steinbeck "has the burden of establishing all of the elements

24  of the privilege." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1099 (9th Cir. 2007). "[A] proper

25  assertion of privilege must be more specific than a generalized, boiler-plate objection. . . .

26  [B]oilerplate objections or blanket refusals inserted into a response to a Rule 34 request for

27  production of documents are insufficient to assert a privilege." *Burlington N. & Santa Fe Ry. v.*

28  *U.S. Dist. Court  for Dist. of Mont.*, 408 F.3d 1142, 1147, 1149 (9th Cir. 2005). Here, Steinbeck

1   "has not met its burden of demonstrating any particular document falls within the attorney-client

2   privilege or work product protection. Indeed, [Steinbeck] has not even identified any documents

3   as privileged!" *Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 620 (C.D. Cal. 2007).

4          **Confidential Objection:** Steinbeck objects to RPDs 16, 18, 20, and 21 because it seeks

5   documents "that reflect personal, confidential, private, and sensitive information of individual

6   putative class members, [Steinbeck], or other parties or third parties."

7          First, "there is no absolute privilege for confidential information," and here Steinbeck has

8   once again failed to "provide any supporting declarations or other evidence to support" his claim

9   that the disclosure of responsive documents would be harmful. *Bible*, 246 F.R.D. at 619 (citation

10  omitted). Moreover, the stipulated protective order put to bed any concern about the disclosure of

11  "confidential" documents. *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 617 (N.D. Cal. 2006).

12         Nor does the California right to privacy impede Plaintiffs discovery. The Court "take[s]

13  into account state privileges as a matter of comity" even where (as here) there are federal claims

14  and so federal privilege law controls. *ASIS Internet Servs. v. Active Response Grp.*, No. 07 6211,

15  2008 WL 2129417, *4 (N.D. Cal. May 20, 2008) (quoting *Leon v. County of San Diego*, 202

16  F.R.D. 631, 635 (S.D. Cal. 2001)).

17              The California right to privacy "is not an absolute right, but a right subject to
                invasion depending upon the circumstances. Moreover, courts have frequently
18              found that a party's need for the information may outweigh whatever privacy
                rights, if any, another party may have."
19
20  *Id*. (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal. 1998)). *Tien v.*

21  *Superior Court*, 139 Cal. App. 4th 528 (2006) recognized that class members' privacy interest in

22  communicating with class counsel outweighed the defendant's interest as a party in those

23  communications. Conversely,

24              [c]ontact information regarding the identity of potential class members is
                generally discoverable, ***so that the lead plaintiff may learn the names of other***
25              ***persons who might assist in prosecuting the case***. . . . Such disclosure involves
                no revelation of personal or business secrets, intimate activities, or similar private
26              information, and threatens no undue intrusion into one's personal life, such as
                mass-marketing efforts or unsolicited sales pitches.

27  *Pioneer Elecs. (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 373 (2007) (citations, punctuation

28  omitted, emphasis added). By withholding class member identities from Plaintiffs on the basis of

---

the right to privacy, while simultaneously pursuing the identities of class members who have communicated with counsel in opposing the motion for protective order, strongly "suggests that [his] concern about the privacy rights of the potential class members is actually driven more by [his] own self-interest." *McArdle v. AT&T Mobility LLC*, No. 09-1117, 2010 WL 1532334, at *5 (N.D. Cal. Apr. 16, 2010). Steinbeck cannot hold both these positions in good faith.

**Scope Objection:** Steinbeck objects to RPDs 18, 20, and 21 on the basis that their scope is too broad, "without reference to any subject matter or timeframe." This objection requires reference to the specific RPDs.

RPD No. 18 seeks documentation of the revenue of Be, Dynamic Showcases, Be Marketing Limited ("Be UK"), U.S. Parts Corporation, and MTS Holdings Group, Inc ("MTS"). U.S. Parts Corporation's revenue is to relevant to Steinbeck's finances, a topic which is discussed below. As to the other entities, Plaintiffs have offered to narrow the scope of this RPD if Steinbeck produced some evidence that Be, Dynamic Showcases, Be UK, or MTS had activities outside of those alleged in Plaintiffs' complaint. These entities were created to operate Be's business, and (as far as Plaintiffs are aware) do not have any other revenue-generating activities other than those alleged by Plaintiffs.

RPDs Nos. 20 and 21 seek documentation of payments that various Defendants made "on Steinbeck's behalf or for Steinbeck's benefit," or "in whole or in part, to compensate Steinbeck." Again, Plaintiffs are not aware that Steinbeck has any relationship with these Defendants outside of the events alleged in their complaint, and has offered to curtail these RPDs if presented with evidence of such relationship.

Steinbeck has not responded to Plaintiffs offer and Plaintiffs are left to presume that all of the revenue of Be, Dynamic Showcases, Be UK, and MTS, as well as any payment for Steinbeck from Monterey Financial Services, Inc., Be, Dynamic Showcases, Be UK, MTS, or 1901 Co., are all relevant to this action.

### B. Steinbeck's First Supplemental Response

Steinbeck served his first supplemental response to RPDs Nos. 17, 19, and 22-27 on August 9. These responses contain improper limits and qualifications on Steinbeck's responses.

### 1.     Qualification Related to Be's Business Operations

Steinbeck's first supplemental responses agreed to produce responsive documents but inserted the following qualifying language:

> that relate to the business operations of Be., LLC, or its and any third parties' provision of related services to Be., LLC or its members, with the exception of documents that are unrelated to class certification and liability issues (including those related to damages issues and/or that are otherwise related to a party's or third party's finances).

This language is not problematic if it is given its plain and ordinary meaning. Certainly, Steinbeck's counsel has explicitly stated that Steinbeck "agreed to produce all non-objectionable, relevant documents[.]" ) (Preston Decl. Ex. 3.) The fact remains, however, that Steinbeck has not turned over responsive documents in his control, such as the seven Emails identified above or the letter from MSK to the BBB discussing Be's business. (*Cf.* Preston Decl. Exs. 4, 6.)

Steinbeck has hinted several times that he has hidden some linguistic sleight of hand that purports to exclude relevant documents. For instance, Steinbeck has not provided any privilege log at all. Steinbeck's explanation is that "although [he] has asserted the privilege [in his responses to the RPDs] he has never indicated that any privileged documents were withheld from the production of responsive documents that he agreed to produce." (Dkt. #110 18 n.18. *See also* Preston Decl. ¶¶19, 33.) This tortured syntax suggests that the scope of documents Steinbeck "agreed to produce" somehow excludes relevant documents. If Steinbeck is engaged in some kind of linguistic game to cover outright failure to produce responsive documents, it violates Rule 26(g). "Rule 26(g) is designed to curb discovery abuse" by creating "a deterrent to [discovery] evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery . . . response thereto[.]" Fed. R. Civ. P. 26(g) advisory committee note on 1983 amendment.

Steinbeck should amend his responses to eliminate doubts about the scope of the documents he has agreed to produce. The "inherent vice" of boilerplate objections and qualified responses is

> [not only that] the propounding party is left to speculate whether any documents have been withheld in reliance on the objections, but are also of little use to the

responding party in light of the provisions of [Rule 34] which require the responding party to indicate whether or not production or inspection of the requested documents will be permitted.

*Rodriguez v. City of Fresno*, No. 05-1017, 2006 WL 903675, *2 (E.D. Cal. Apr. 7, 2006). *See also Bob Barker Co., Inc. v. Ferguson Safety Prods., Inc.*, No. 04-04813, 2006 WL 648674, *4 (N.D. Cal. Mar. 9, 2006) (ordering defendant to amend responses which indicated it did not maintain types of documents "contemplated by the document requests"; even if defendant did not possess requested documents, response did "not establish that all responsive documents that may exist have been produced"). Plaintiffs deserve clarity on as to what documents Steinbeck's responses have committed to producing.

### 2. Qualification Related to Finances

Steinbeck has excluded documents related to his finances and the finances of third parties. Responsive financial information is relevant to Steinbeck's involvement and control over Be and other defendants, as well as to whether the Defendants have complied with the constructive trust the Court imposed on Be. (Dkt. #26.) Likewise, Steinbeck's overall finances are relevant to Plaintiffs' claim for punitive damages (FAC ¶183) and there is ample authority for the proposition that there is no reason to delay such discovery after a stipulated protective order has been signed. *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 394-95 (E.D. Cal. 2009); *Charles O. Bradley Trust v. Zenith Capital LLC*, No. 04-2239, 2005 WL 1030218, *1-5 (N.D. Cal. May 3, 2005); *Oakes*, 179 F.R.D. at 284-85. In any event, the Court has not entered any order bifurcating or phasing damages discovery, and Steinbeck has not even presented evidence that it would "promote judicial economy." *Spectra-Physics Lasers*, 144 F.R.D. at 101 (burden of persuasion on party seeking bifurcation).

### C. Steinbeck's Second Supplemental Response

Steinbeck served his second supplemental response to RPD No. 15 on September 3. RPD No. 15 requested "[a]ll documents referenced in Steinbeck's Rule 26(a)(1) disclosures, or which should have been identified in Steinbeck's Rule 26(a)(1) disclosures." Steinbeck both objects to RPD No. 15 in his original response and agrees to produce a limited set of documents in his

second supplemental response.

Rule 26 requires the parties to exchange initial disclosures which include a copy, or a description of, all documents "the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Fed. R. Civ. P. 26(a)(1). If a party fails to identify documents in its Rule 26(a)(1) disclosure, it is presumptively "not allowed to use that information [as] evidence on a motion, at a hearing, or at a trial[.]" Fed. R. Civ. P. 37(e). "This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence." Fed. R. Civ. P. 37(c) advisory committee note on 1993 amendment.

Plainly, the intended operation of Rule 26(a)(1) is require parties to exchange documents supporting their case. Certainly, parties do not waive objections about privilege, word product, or undue burden by identifying documents in their Rule 26(a)(1). Fed. R. Civ. P. 26(a)(1) advisory committee note on 1993 amendment. However, the Rule expressly contemplated "accelerat[ing] the exchange of basic information about the case and . . . eliminat[ing] the paper work involved in requesting such information, and the rule should be applied in a manner to achieve those objectives." Likewise, "other parties are expected to obtain the documents desired by proceeding under Rule 34 or through informal requests." *Id*.

Steinbeck's objections are exact reproductions of the boilerplate that Plaintiffs addressed above. They have no merit. Steinbeck's second supplemental response commits to producing only a limited subset of documents to which Plaintiffs are entitled. Steinbeck should produce every document he "may use to support [his] claims or defenses [.]" Fed. R. Civ. P. 26(a)(1).

## IV.   Plaintiffs' Remedies

Plaintiffs request five remedies to address the issues identified in this Motion. Plaintiffs ask for an order that (1) requires Steinbeck to amend his responses; (2) ensures a complete production has been made from Steinbeck's email account; (3) requires Steinbeck to pay any expenses his attorneys, MSK, may tax to Plaintiffs in producing responsive documents; (4) continues the time for Plaintiffs to file their opposition to Steinbeck's motion for summary judgment; and (5) absent a compelling and justifiable explanation of why Steinbeck failed to

produce the seven Emails at the heart of this Motion, awards attorneys fees incurred in the filing of this Motion.

### A. Amendment of Steinbeck's Responses

Steinbeck's responses are riddled with meritless objections and ambiguous, qualified statements about what will be produced. Where "boilerplate objections and qualified responses" make it "impossible to determine whether the responding party is withholding any documents based upon the stated objections," courts have ordered parties to "provide a complete response that unequivocally states whether, after a reasonable search, all documents have been produced." *United States v. San Francisco*, No. 07-1300, 2009 WL 648043, *1 (E.D. Cal. Mar. 10, 2009). *See also Bob Barker Co.*, 2006 WL 648674, at *4 (ordering amended responses to remedy ambiguous responses).

The Court should order Steinbeck to amend his responses to eliminate existing objections and commit to providing complete responses. Steinbeck should not be permitted to assert privilege for any responsive documents. Steinbeck has not produced a privilege log. Indeed, Steinbeck has asserted that "although [he] has asserted the privilege . . . he has never indicated that any privileged documents were withheld from the production of responsive documents that he agreed to produce." (Dkt. #110 18 n.18.) Inasmuch as Steinbeck has averred that there are no privileged documents, he should not be permitted to assert any privilege now. *Burlington N.*, 408 F.3d at 1149 (waiver of privilege through failure to provide timely privilege log).

### B. Authorization of a Subpoena to Yahoo!

Plaintiffs cannot issue an enforceable subpoena to Yahoo! without Steinbeck's authorization. However the Court can require Steinbeck to authorize Yahoo!, Inc. to respond to the subpoena, on pain of an adverse inference that the Yahoo! emails would have established liability. "Where a party to the communication is also a party to the litigation, it would seem within the power of a court to require his consent to disclosure on pain of discovery sanctions." *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1446 (2006).

The subpoena should seek emails between Steinbeck and the following email addresses:

1  erik@idtalent.com, erik@urge-entertainment.com, bfalck@familyproductsllc.com, and any

2  email address which incorporates any of the following domain names: "gonnabe.com,"

3  "myartistsplace.com," and "mytalentservice.com." These email addresses correspond to Erik

4  DeSando, Barry Falck, and the employees of Be and MTS.

5       Yahoo!'s production should be reviewed for privilege, relevance, etc. by independent

6  counsel who do not have any connection with Plaintiffs, Defendants, or their counsel. (To

7  Plaintiffs' knowledge, no attorney ever used any gonnabe.com, myartistsplace.com, or

8  mytalentservice.com email address. This will simplify screening for privilege.) Steinbeck should

9  pay for the expenses of this review; Steinbeck controls those emails and should bear the costs of

10 producing what he should have produced in the first place.

11      Plaintiffs urge the Court not to take half measures with respect to Steinbeck's emails.

12 They are an absolutely essential source of evidence for Plaintiffs' case, and there are no grounds

13 for Plaintiffs to have any confidence that Steinbeck will voluntarily provide a complete

14 production. Plaintiffs have "fortuitously discovered the existence of specific responsive

15 documents that had not been produced." *Wingnut Films*, 2007 WL 2758571, at *5. Plaintiffs may

16 not continue to be so lucky, while a defendant who is determined to continue withholding

17 important documents will produce just enough documents to explain away evidence that prior

18 searches were incomplete.

19            **C.  Taxing Costs of MSK's Subpoena Compliance**

20      Steinbeck should have produced the responsive documents in MSK's custody. (Preston

21 Decl. ¶27.) Steinbeck has control over the documents in MSK's custody. "Because a client has

22 the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys

23 pursuant to their representation of that client, such documents are clearly within the client's

24 control." *Am. Soc'y for Prevention of Cruelty to Animals*, 233 F.R.D. at 212. There is no question

25 that the documents in MSK's custody are responsive; Plaintiffs are already in possession of a letter

26 from MSK on Be., LLC's behalf to the Los Angeles-area Better Business Bureau concerning

27 allegations that Be's operations violated Labor Code chapter 1701. (Preston Decl. Ex. 4.)

28      Steinbeck should be ordered to pay any expenses MSK seeks to tax Plaintiffs for this

review. Again, Steinbeck controls the responsive documents in MSK's custody and should bear the costs of producing what he should have produced in the first place. Certainly, Plaintiffs should not be saddled with Steinbeck's costs for complying with his discovery obligations. *OpenTV*, 219 F.R.D. at 476 (quoting *Oppenheimer Fund*, 437 U.S. at 358). To the extent Steinbeck contends that Plaintiffs discovery has created excessive costs, he has ready remedies. Fed. R. Civ. P. 26(b)(2)(B), (C)(iii).

### D.    Continuing the Deadline for Plaintiffs' Opposition

The Court should continue the deadline for Plaintiffs' opposition to Steinbeck's motion for summary judgment. Steinbeck has used a number of tactics to run out the clock:

**Putative Completion of Document Production:** Steinbeck served his initial response to the RPDs on July 16, but did not produce his "final" 48 pages until September 3. (Preston Decl. ¶¶6, 14.) It took Steinbeck 49 days to produce 130 pages.

Although Plaintiff flagged the issue as early as May 11, and repeatedly offered to treat produced documents as confidential, Steinbeck still delayed producing documents until August 9 because there was no protective order in place. (*Id*. ¶¶7, 12.) Plaintiffs circulated a draft stipulated protective order on July 20, but Steinbeck did not respond to the draft order until July 30 and did not sign it until August 5. (*Id*. ¶¶7-8.) To the extent that Steinbeck needed a stipulated protective order, it was his obligation to secure one in a timely fashion. *Cf. Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C.1991) (simply objecting that protective order is required "turns the normal state of obligations on its head. The party seeking the protective order, who has the burden of requesting and supporting it, should also be responsible for initiating the process. Permitting that party to merely note its objections and then sit back and wait for a motion to compel can only serve to prolong and exacerbate discovery disputes," cited by *Lexington Ins. Co. v. Swanson*, No. 05-1614, 2007 WL 1287938, at *2 (W.D. Wash. May 1, 2007)).

**"Objections" to Plaintiffs' Subpoenas:** Much of the relevant evidence lies in the hands of third parties (not least because so little has been forthcoming from the Defendants). Plaintiffs have issued subpoenas to about 20 third parties. (Preston Decl. ¶26.) Steinbeck has mailed letters

1    which purport to object to the subpoenas to each of these third parties. These letters are entirely

2    improper. "A party **cannot** object to a subpoena *duces tecum* served on a nonparty, but rather,

3    **must** seek a protective order or make a motion to quash." *Moon v. SCP Pool Corp.*, 232 F.R.D.

4    633, 636 (C.D. Cal. 2005) (emphasis added). If Steinbeck really had a problem with Plaintiffs'

5    subpoena, his remedy was to go to Court and file a motion to quash or for a protective order.

6    Fed. R. Civ. P. 45(c) (3). One reason Steinbeck did not do that is because there were no valid

7    grounds to do so: "a party has standing to move to quash a subpoena only if it alleges that the

8    information sought is privileged or the subpoena subjects the moving party to undue burden. . . .

9    Otherwise put, a party may not quash a subpoena served upon a non-party on any grounds other

10    than privilege." *Televisa, S.A. de C.V. v. Univision Commc'ns, Inc.*, No. 05-3444,  2008 WL

11    4951213, *1 (C.D. Cal. Nov. 17, 2008).

12         Moreover, Steinbeck's letters have worked substantive harm by deterring third parties

13    from complying with the subpoena. (Preston Decl. ¶26.) For example, the BBB of San Diego

14    delayed its production for weeks until Steinbeck stated in writing that "[n]othing in our

15    objections instructs the subpoena recipients to delay in responding in any manner." (*Id.*) Of

16    course, there is no coherent explanation for Steinbeck's objections except that Steinbeck

17    intended them to delay and deter compliance with the subpoenas. Laymen reading Steinbeck's

18    would – and did – understand them as directives not to produce documents, and because the

19    letters had no valid basis for any of their boilerplate objections (privilege, undue burden,

20    vagueness), they are sanctionable. *Cf. Fox Indus., Inc. v. Gurovich*, No. 03-5166, 2006 WL

21    2882580, *8-10 (E.D.N.Y. Oct. 6, 2006).

22         **Completion of the Rule 37 Process:** Plaintiffs initiated their Rule 37 conference on July

23    30; despite Plaintiffs' counsel's best efforts, the Rule 37 conference process was not completed

24    until August 25. (*Id.* ¶¶9-13, 21.)

25         **Steinbeck's Deposition Date:** Plaintiffs began negotiating a date for Steinbeck's

26    deposition before July 15, but the first date they were offered was September 21 (which was

27    subsequently cancelled). (*Id.* ¶¶20-25.)

28         These delays exacerbate the looming deadline for Plaintiffs' opposition to the motion for

1  summary judgment. Although Plaintiffs have identified these delays and requested Steinbeck

2  stipulate to continue the deadline for Plaintiffs' opposition to the motion for summary judgment,

3  Steinbeck has refused. (Preston Decl. ¶26.) There is an obvious incentive for Defendants to

4  engage in "purposeful sluggishness" in discovery while Plaintiffs face a deadline on November

5  15: there is the possibility that Plaintiffs will simply run out of time and be forced to file a

6  deficient opposition. *In re Seroquel*, 244 F.R.D. at 661. "Purposeful sluggishness in responding

7  to discovery responsibilities" is inconsistent with the parties' duties under the Federal Rules.

8  *Housing Rights Ctr. v. Sterling*, No. 03-859, 2005 WL 3320739, at *8 (C.D. Cal. Mar. 2, 2005)

9  (citing *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 110 (2d Cir.

10  2002)). One simple way to curb such an improper incentive is to continue Plaintiffs' deadline for

11  opposition for six months.

12       A continuance is appropriate regardless of any fault on Steinbeck's part. It is clear that

13  complete document production will simply take more time than the briefing schedule allows.

14  Monterey Financial Services, Inc. ("Monterey") has evidence relevant to Steinbeck. (*See*

15  MON0802 0025-52.) Monterey first answered RPDs Nos. 1-14 on August 5, but did not produce

16  documents until August 23. Monterey has indicated it has more documents relevant to other

17  Defendants, including Steinbeck, which it has not yet produced. Monterey and Plaintiffs have

18  delayed much of their discovery in order to conserve resources in advance of mediation. (Dkt.

19  #108, 109.) Pressuring Monterey to immediately produce complete discovery would frustrate

20  these mediation plans. Likewise, the opposition deadline limits Plaintiffs' ability to minimize the

21  burdens their subpoenas pose on third parties which have relevant evidence.

22       The Court should continue the deadline for Plaintiffs' opposition to Steinbeck's motion

23  for summary judgment by six months. This will remedy past delay and deter future delay by

24  Steinbeck, as well as allow Plaintiff to deal with Monterey and third party witnesses in a manner

25  that minimizes Plaintiffs' consumption of their resources.

26         **E.**    **Sanctions**

27       Rule 37 provides that a party "may move for an order compelling disclosure or

28  discovery." Fed. R. Civ. P. 37(a)(1). If a motion to compel is granted

or if the disclosure or requested discovery is provided after the motion was filed — the court must . . . require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5)(A). The court must not award expenses if the non-disclosure was "substantially justified[.]"Fed. R. Civ. P. 37(a)(5)(A)(ii). There is no evidence of any substantial justification here. Steinbeck's failure to review and to produce the Emails was unreasonable, certainly after the issue was pressed. Steinbeck's failure to produce documents in MSK's custody was unreasonable. Substantial justification exists if "reasonable people could disagree as to whether the requested discovery" had to be produced. *Eureka Fin. Corp. v. Hartford Acc. & Indem. Co.*, 136 F.R.D. 179, 186 (E.D. Cal. 1991). A finding of "bad faith" is not "a prerequisite to an award of 'reasonable expenses' to the moving party." *Green v. Baca*, 225 F.R.D. 612, 614 (C.D. Cal. 2005) (citation omitted). Reasonable people could not disagree on whether the seven Emails identified above had to be produced.

Steinbeck's conduct in this litigation has imposed undue costs on Plaintiffs, and he should not be permitted to shift the expense of this motion to Plaintiffs. Steinbeck avoided service of this action for months, he has adopted positions forcing Plaintiffs to seek a protective order, has refused to continue the briefing schedule, and the while documents were withheld from his production. Steinbeck should bear the costs of forcing Plaintiffs to file this Motion.

Dated: September 16, 2010              By: _____/s/_____

Ethan Preston (263295)
PRESTON LAW OFFICES
21001 N. Tatum Blvd., Ste. 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866-509-1197 (facsimile)
ep@eplaw.us

Robert M. Bramson (102006)
Michael S. Strimling (96135)
BRAMSON, PLUTZIK, MAHLER &
BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
(925) 945-0200 (telephone)
(925) 945-8792 (facsimile)
rbramson@bramsonplutzik.com
mstrimling@bramsonplutzik.com

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiffs*