Ethan Preston (263295)
PRESTON LAW OFFICES
21001 N. Tatum Blvd., Ste. 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866-509-1197 (facsimile)
ep@eplaw.us

Robert M. Bramson (102006)
Michael S. Strimling (96135)
BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
 (925) 945-0200 (telephone)
 (925) 945-8792 (facsimile)
rbramson@bramsonplutzik.com
mstrimling@bramsonplutzik.com

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| TIMOTHY and JEANNE DuFOUR and KENNETH TANNER, individuals, on their own behalves and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BE., LLC, DYNAMIC SHOWCASES, LLC,  California limited liability companies, MONTEREY FINANCIAL SERVICES, INC., a California corporations, BE MARKETING LIMITED, a private limited company registered in England and Wales, ERIK DeSANDO, BARRY FALCK, JACOB STEINBECK, and DOES 1-100, inclusive, <br><br> Defendants. | No. 09-03770-CRB <br><br> Judge Charles R. Breyer <br><br> **DECLARATION OF ETHAN PRESTON IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL** |

1.      My name is Ethan Preston. I am over the age of eighteen and am fully competent

to make this declaration. I make this declaration based upon personal knowledge. I am the

attorney for Plaintiffs in the above-titled action.

2.      **The Parties' Rule 26(f) Conference:** On May 11, 2010, Plaintiffs sent a nine

page letter to Steinbeck's counsel which outlined Plaintiffs' agenda for the Rule 26(f) conference

and asked Steinbeck's counsel to prepare accordingly. The parties held their Rule 26(f)

conference on May 17. Steinbeck's counsel would not discuss measures Steinbeck had taken to

identify, locate, and preserve relevant evidence. A transcript reflecting relevant portions of an

audio recording of the Rule 26(f) conference is set forth below:

> **Steinbeck's counsel:**    [M]y understanding is that there are some, some documents, some files, like hard copy documents that exist but I think it terms of, you're mentioning databases, and servers, and repositories, and things. [Inaudible] As far as my client's aware, the various servers and computers that were there either didn't work or a lot of them had been liquidated when they were winding up Be's operations which were one of these fire sales, it kinda sounds like, and so, so as far as I know there's, there's, there's some documents that are available, I don't know what the volume of those documents are, I don't know necessarily [inaudible] what the contents of those documents, they haven't been reviewed but, you know, they, they've been preserved. And as far as Mr. Steinbeck's, you know, emails also I think he's probably in a very similar position with your clients, in terms of, plaintiffs, in terms of, you know, using his email and preserving emails, you know, that relate to this case, you know, that, once he was aware of it, so I think that's, that's what we're aware of that exist in terms of documents and, you know, that kind of information you were just talking about.
>
> ...
>
> **Plaintiffs' counsel:**    Can you guys tell me what you've done to identify relevant documents? Documents you might need to preserve with respect to your, your individual clients?
>
> . . .
>
> **Plaintiffs' counsel:**    With respect to what the client actually did, can you explain to me, you know, what your clients have done to, to preserve, identify and preserve these documents?
>
> **Monterey's counsel:**    No, I don't think I want to get into that . . . I'm not sure that's [inaudible] scope of a Rule 26 conference. But I can tell you that we're complying with all of our obligations

1        . . .

2        Steinbeck's counsel:   I would agree with that as well.

3        **3.      SalesForce.com, Inc. Subpoena:** Plaintiffs issued a subpoena to SalesForce.com,

4 Inc., the operator of Be., LLC's ("Be") customer relationship management database. Plaintiffs'

5 understanding from interviews with former Be employees is that this database stored information

6 about Be's customers contact information and their payments to Be. SalesForce.com's written

7 response to the subpoena stated that "the data stored with our service by Be., LLC has been

8 deleted pursuant to our normal procedures and does not exist on backup tapes. Be., LLC ceased

9 being a customer in early 2009." The understanding of Plaintiffs' counsel from his conversation

10 with SalesForce.com's inhouse counsel is that SalesForce.com would have retained Be., LLC's

11 data for 90 days after Be., LLC ceased being a customer.

12       **4.      Plaintiffs' Amended First Set of Requests for Production of Documents:**

13 Plaintiffs served their First Amended Set of Requests for Production of Documents ("RPDs") to

14 Steinbeck on June 17.

15       5.      On May 7, 2010, the Court entered a case management order that stated "Rule 26

16 disclosures to go forward, no further discovery until motion to dismiss has been heard." (Dkt.

17 #86.) The Court held a hearing on the Defendants' motion to dismiss on May 28. (Dkt. #93.)

18 Ironically, counsel for Steinbeck sent an email on June 21 stating that they were "surprised by

19 your issuance of this discovery in light of the current stay that Judge Breyer has placed on all

20 discovery. . . . The discovery that has been issued is therefore premature and improper."

21       **6.      Steinbeck's Initial Response to the RPDs:** Steinbeck purports to have served his

22 initial response to the RPDs on July 16 (although the certificate of service is unsigned).

23 Steinbeck's initial response contained no documents and no privilege log. Steinbeck's counsel

24 signed the initial response.

25       7.      Steinbeck's initial response refused to produce documents because there was no

26 protective order in place. In Plaintiffs' May 11 letter and in the instructions to the RPDs,

27 Plaintiffs indicated that, in order to avoid precisely this delay, counsel would treat any

28 documents that were produced as though they were marked as confidential under the Northern

---

1    District's form Stipulated Protective Order ("SPO").

2          8.      Plaintiffs' counsel circulated the SPO to Defendants on July 20. Plaintiffs emailed

3    a request that Defendants consent to the SPO on July 22. Defendants objected to the language of

4    the SPO and demanded changes during the parties' July 30 conference. Plaintiffs were not able

5    to a protective order until August 5, when Steinbeck consented to a slightly altered version of the

6    SPO.

7          9.      **The Parties' First Rule 37(a) Conference:** On July 30, Steinbeck's counsel

8    refused to complete a Rule 37(a) conference as to Steinbeck's responses to Plaintiffs' First

9    RPDs. On August 2, Plaintiffs sent an eight page letter outlining in detail the deficiencies in

10   Steinbeck's responses to the RPDs. A true and correct copy is attached as Exhibit 1.

11         10.     Plaintiffs arranged for a call to complete the Rule 37(a) conference on August 2.

12   Steinbeck's counsel cancelled that conference call and obliged Plaintiffs to reschedule it for

13   August 3.

14         11.     Plaintiffs were not able to complete their agenda (including a discussion of

15   Steinbeck's search protocol) at the August 3 Rule 37(a) conference. Plaintiffs' counsel emailed

16   Steinbeck's counsel on August 4, August 8, and August 10 to ask when Steinbeck's counsel

17   could discuss Steinbeck's search protocol. Steinbeck's counsel sought to defer this discussion

18   until Plaintiffs reviewed Steinbeck's first supplemental response and did not respond to

19   Plaintiffs' August 10 email.

20         12.     **Steinbeck's First Supplemental Response to the RPDs:** Steinbeck served his

21   first supplemental response to the RPDs on August 9 (and Plaintiffs did not receive it until

22   August 11). Steinbeck's first supplemental response contained 81 pages of documents and no

23   privilege log. Steinbeck's counsel signed the first supplemental response.

24         13.     **The Parties' Second Rule 37(a) Conference:** On August 25, the parties held a

25   second Rule 37(a) conference to discuss Steinbeck's first supplemental response to the RPDs.

26   During the August 25 conference, Steinbeck's counsel asserted that Steinbeck had made a

27   complete production of all documents and declined to discuss Steinbeck's search protocol in a

28   meaningful way. A transcript reflecting relevant portions of an audio recording of the second

---

Rule 37(a) conference is set forth below:

Plaintiff's counsel:  We need to talk about Steinbeck's search protocol.

Steinbeck's counsel:  I'm not sure what you mean by that. I think, I'm not sure what you expect me to be able to say other than we've complied with what we believe our obligations [are]. If you want to speak with Steinbeck about what he did to search that seems to be more of a deposition issue but that's not something for me to make representations [about.]

Plaintiff's counsel:  Well, this is a Rule 26 issue. Everybody has obligations to make sure that their clients have complied with their obligations. Its not just incumbent on Mr. Steinbeck because he's not an attorney and he doesn't necessarily know what his obligations are but we're officers of the Court and we have an obligation to make sure that our clients do comply with discovery. And what I can tell you is I've been given a document production that as best I can tell contains no emails between DeSando and Falck, or Falck, and Steinbeck . . . I just want your representation that you're saying you've checked with your client, you've taken reasonable measures to make sure the client was you know making a full and complete disclosure and this is all the documents he has.

Steinbeck's counsel:  My understanding is that my client has made a reasonable search for documents and we have produced the documents that we agreed to produce in our discovery response.

Plaintiff's counsel:  OK.

Steinbeck's counsel:  I can tell you actually that [inaudible] a couple of additional documents that are related to like loans and corporate formation that I think will be produced but, you know, otherwise, you know, what we've said we'd do, we've done.

. . .

Plaintiff's counsel:  Is it your understanding from your answers that, you know, responsive documents would include emails between Steinbeck and Rashkovan, DeSando, and Falck.

Steinbeck's counsel:  I mean, I think that- I don't want- You know, I don't want- Our response said we would produce communications in different categories that relate to Be and third party [service providers.] I don't have the exact language in front of me, but you know we've produced the emails and communications in those categories.

Plaintiff's counsel:  OK, so if there were an email between DeSando or Falck and Steinbeck that related to Be, operations of Be, you're saying your responses indicate that you would produce that. I want to make sure that I understand I'm interpreting your responses correctly.

. . .

Steinbeck's counsel:   I think the responses speak for themselves. I'm not sure what else you want me to say. What we said we'd produce, for example, we did produce with respect to [inaudible] communications [inaudible]. Its just not much, you know?

Plaintiff's counsel:   It strains credibility, David.

Steinbeck's counsel:   You can ask Mr. Steinbeck about it.

. . .

Steinbeck's counsel:   Ethan, like I said when it comes to these communications and things, that's what he has, you know? He doesn't use a lot of email. He didn't use a lot of email. So you know these are things you can ask him about . . .

During this conference, Plaintiff's counsel first proposed issuing a subpoena to Yahoo! for emails between Steinbeck's email address (jaysteinbeck@yahoo.com) and any email address which incorporated the "gonnabe.com" domain name ("Emails").

14.   **Steinbeck's Second Supplemental Response to the RPDs:** Steinbeck served his second supplemental response to the RPDs on September 3. Steinbeck's second supplemental response contained 48 pages of documents and no privilege log. Steinbeck's counsel signed the second supplemental response.

15.   **No Privilege Log:** Plaintiffs have not received any privilege log from Steinbeck to date. Plaintiffs have not received any request for an extension on the time to prepare a privilege log from Steinbeck to date.

16.   **Negotiations For Steinbeck's Authorization to Subpoena Yahoo!, Inc.:** Plaintiffs continued to propose issuing a subpoena to Yahoo!, Inc. on August 25 after the second Rule 37(a) conference, when it became apparent that Plaintiffs would not be able to have a meaningful discussion of Steinbeck's search protocol.

17.   In emails dated August 27 and 31, Plaintiffs again proposed that (1) Steinbeck authorize the subpoena to Yahoo! for the Emails; (2) the Emails be produced to independent counsel who would screen the emails for irrelevant or privileged content; and (3) Plaintiffs would select the counsel and advance the cost of this review, but if the review yielded responsive documents that should have been produced, Plaintiffs would have the right to recoup those costs

1   from Steinbeck.

2       18.    On September 1, Steinbeck sent an email responding to Plaintiffs' proposed

3   response. A true and correct copy of this email is attached as Exhibit 2. In this September 1

4   email, Steinbeck stated he did "not see any basis to subpoena Yahoo," but that he "would be

5   willing to consider consenting to" Plaintiffs' proposed subpoena on the conditions that (1)

6   Plaintiffs demonstrate the "good cause" they would "offer the Court to support issuance of the

7   subpoena"; (2) "any documents produced by Yahoo would need to be produced directly to

8   [Steinbeck's counsel] so we can review them for privilege, confidentiality, privacy, or

9   relevance"; and (3) Plaintiffs would need to pay Steinbeck's counsel their "hourly fees incurred

10  in performing this review[.]"

11      19.    On September 2, Plaintiffs' counsel emailed to Steinbeck's counsel that the

12  September 1 email "indicates that you have not yet reviewed such emails . . . Do I understand

13  you correctly?" Steinbeck's counsel responded that "our client has performed a diligent search

14  and produced all responsive e-mails we said we would produce." Plaintiffs' counsel responded

15  that "the fact that you are asking for attorney fees to review those emails indicates that you have

16  not in fact reviewed those emails" and again asked whether Steinbeck's counsel had reviewed

17  the Emails. On September 7 and 8, Steinbeck's counsel declined to further indicate whether or

18  not it reviewed the Emails on the basis that this fact was privileged and/or work product.

19      20.    **The Parties' Negotiations Over Depositions:** Plaintiffs first sought to schedule a

20  conference to determine deposition dates on July 15. On July 12, counsel for Steinbeck indicated

21  via email that either July 14 or July 15 were acceptable dates. On July 13, Plaintiffs' counsel

22  committed to the July 15 date. On July 14, Steinbeck's counsel stated he was no longer available

23  on July 15. Steinbeck's counsel did not provide prior notice that there was a deadline for

24  Plaintiff's counsel to commit to the July 15 conference date.

25      21.    On July 27, Steinbeck's counsel filed a notice of unavailability indicating that

26  Steinbeck's lead counsel would be unavailable from August 11 through August 23. Steinbeck's

27  lead counsel travelled out of the country on a vacation during this time. This was the first notice

28  Plaintiffs had of these travel plans.

22.     Plaintiffs next sought to schedule a conference to determine deposition dates and to conduct a Rule 37 conference with respect to Steinbeck's discovery responses on July 30. At the July 30 conference, the parties indicated they would schedule depositions for early September and would finalize dates after Steinbeck and his counsel got back from their August vacations. Steinbeck's counsel indicated that Steinbeck would be out of the country until September 6.

23.     The parties held a subsequent conference to schedule depositions on August 25. Steinbeck's counsel was unprepared to commit to specific dates for Steinbeck's deposition at the August 25 conference. (While Plaintiffs were prepared to commit to specific dates at the August 25 conference, Defendants did not request any specific dates. Plaintiffs' counsel indicated that Plaintiffs would commit to specific dates (with the exception of certain identifying blackout dates) provided they were given at least two weeks' notice. Plaintiffs have not received any request for specific dates from any of the Defendants.)

24.     Steinbeck's counsel first proposed deposition dates for Steinbeck on September 1. On September 5, Steinbeck's counsel indicated that the earliest date Steinbeck would commit to a deposition was September 21. On September 7, Steinbeck's counsel set a deadline of September 8 for Plaintiffs to commit to taking Steinbeck's deposition on September 21. Steinbeck's counsel unilaterally cancelled the September 21 deposition because Plaintiffs did not meet the deadline.

25.     In an email dated September 8, Steinbeck's counsel indicated Steinbeck would not stipulate to (1) an additional deposition or stipulate to continuing his deposition if his deposition revealed documents that should have been produced but were not; (2) continuing the briefing schedule for the motions for summary judgment. A true and correct copy of this email is attached as Exhibit 3. On September 8, Plaintiffs requested additional dates for Steinbeck in early October in order to secure a reasonably early deposition that still provided Plaintiffs more time to gather relevant documents. Steinbeck did not respond until Plaintiffs sent a follow up email on September 14.

26.     **Steinbeck's "Objections" to Plaintiffs' Subpoenas:** Plaintiffs have issued an

1   estimated 20 subpoenas in this case to various third parties, seeking various both small and larger

2   productions. Steinbeck has subsequently mailed a letter of boilerplate objections to each

3   subpoena recipient. This has delayed and deterred third parties witnesses from complying with

4   the subpoenas. For instance, Plaintiffs served the Better Business Bureau of San Diego and

5   Imperial Counties ("BBB") with a subpoena in June which called for BBB to produce responsive

6   documents on July 2. Soon thereafter, the BBB and Plaintiffs negotiated a search and production

7   that satisfied Plaintiffs and was not burdensome on the BBB. However, the BBB delayed

8   production after Steinbeck faxed its objections to the BBB on July 1. The BBB delayed until July

9   20, after Plaintiffs forwarded a letter from Steinbeck which stated that "[n]othing in our

10   objections instructs the subpoena recipients to delay in responding in any manner." Steinbeck's

11   letters also delayed the production of, e.g., Administaff, Inc. (who produced valuable information

12   on where to find former Be employees).

13        27.   **Plaintiffs' Negotiations with Mitchell Silberberg Knupp:** On July 20, Plaintiffs

14   served a subpoena *duces tecum* on Mitchell Silberberg Knupp ("MSK"), Steinbeck's long-time

15   counsel. Plaintiffs began to meet and confer with MSK about its subpoena response on August

16   18. In Plaintiffs' conferences with MSK, MSK has indicated that (1) MSK acts as Steinbeck's

17   attorney on various matters; (2) MSK has custody of relevant privileged documents; (3) MSK

18   has custody of relevant documents that are not privileged; and (4) MSK expected to bill

19   Plaintiffs for the costs of searching for responsive documents, but would not bill Plaintiffs for

20   any review that Steinbeck had already requested MSK to perform. As an example of a relevant

21   MSK document, Plaintiffs independently obtained a letter from MSK on Be., LLC's behalf to the

22   Los Angeles-area Better Business Bureau. A true and correct copy of this letter is attached as

23   Exhibit 4.

24        28.   **Steinbeck's Failure to Comply with Discovery:** RPD No. 17 requested "All

25   documents concerning any agreement between Steinbeck, Monterey Financial Services, Inc.,

26   Be., LLC, Dynamic Showcases, LLC, Be Marketing Limited, 1901 Co., MTS Holdings Group,

27   Inc., Vitaly Rashkovan, Barry Falck, Ryan Falck, and/or Erik DeSando (and in particular, but

28   without limitation, any operating agreement, articles of incorporation, voting trust agreement,

1 security agreement, or any other agreement, whether formal or informal, concerning the

2 management or control of any legal entity)."

3      29.     Steinbeck has not produced the operating agreements for Be., LLC or Dynamic

4 Showcases, LLC, or Steinbeck's putative resignation from either limited liability company

5 (although he has produced a document titled "Summary of Terms" which refers to Be., LLC's

6 operating agreement as a separate document (JS 0087) and incorporation records related to a not

7 for profit corporation called "map empowerment inc" (JS0055-66)). A true and correct copy of

8 the California Secretary of State's file for Dynamic Showcases, LLC (dated March 17, 2010) is

9 attached as Exhibit 5.

10      30.     RPD No. 23 requested "All documents constituting communications between

11 Steinbeck and Be., LLC, and any of its agents, partners, attorneys, servants, employees,

12 assignees, lessees, affiliates, and/or anyone acting on behalf of it."

13      31.     Plaintiffs' counsel received a collection of emails from a former employee of

14 Rising Stars. In the middle of drafting this Motion, Plaintiffs' counsel located seven emails that

15 had not been produced by Steinbeck after completing a review of the email collection. A true and

16 correct of these copies is attached as Exhibit 6.

17      32.     Steinbeck's counsel has consistently maintained that Steinbeck has made a

18 reasonable and diligent search for documents, and has made a complete production of the

19 documents he committed to produce in his response. Steinbeck's counsel signed and thereby

20 certified under Rule 26(g) that Steinbeck's initial, first supplemental, and second supplemental

21 responses were complete and correct as to counsel's knowledge, information, and belief formed

22 after a reasonable inquiry.

23      33.     Plaintiffs' counsel has repeatedly pressed Steinbeck's counsel to describe the

24 scope of Steinbeck's search for documents. Steinbeck's counsel repeatedly deflected these

25 questions with bald assertions that Steinbeck has performed a complete search for documents.

26 Steinbeck's counsel made the following assertions on the following dates in emails to Plaintiffs'

27 counsel:

28      September 2:   "our client has performed a diligent search and produced all responsive e-

Declaration of Ethan Preston                    10                         No. 09-3770 CRB

mails we said we would produce."

September 7:  "while [Steinbeck's] efforts to locate responsive documents are ongoing, at this point he does not anticipate any further production."

September 8:  "our client has conducted a reasonable search and has complied with his discovery obligations."

September 8:  "Steinbeck has complied with his discovery obligations and agreed to produce all non-objectionable, relevant documents." (Ex. 3.)

34.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 15, 2010                    By:    s/Ethan Preston
                                                          Ethan Preston

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

# PRESTON LAW OFFICES

Ethan Preston                                          (480) 269-9540 (telephone)
21001 North Tatum Boulevard, Suite 1630-430            (866) 509-1197 (facsimile)
Phoenix, Arizona 85050                                             ep@eplaw.us

***VIA FACSIMILE***

David Shraga
Kawahito & Shraga LLP
11845 West Olympic Boulevard, Suite 665
Los Angeles, California 90064

August 2, 2010

Re: *DuFour v. Be., LLC, et al*, No. C 09-3770 (N.D. Cal.)

Mr. Shraga,

In our July 30, 2010 conference, you declined to complete a Rule 37 conference regarding Plaintiffs' First Amended Set of Requests for Production of Documents ("RPDs"). You indicated that you were unprepared for a Rule 37 conference at that time and needed to review Steinbeck's responses to the RPDs ("Responses") in order to prepare for today's conference.

You requested that Plaintiffs' counsel provide a written statement setting out the defects in the Response. Plaintiffs have provided this letter strictly as a professional courtesy; Plaintiffs are not required to show that the RPDs are valid. Rather, Steinbeck, as the party resisting discovery, bears the burden of producing evidence that he should not have to answer the RPDs. "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections," *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing, e.g., *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)), and "general or boilerplate objections such as 'overly burdensome and harassing' are [especially] improper . . . when a party fails to submit any evidentiary declarations supporting such objections." *A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006). Steinbeck has failed to provide such substantiation for even one of his objections. As all of the objections are defective, Plaintiffs seek Steinbeck to remedy each and every portion of the Response in today's Rule 37 conference.

Steinbeck has conducted discovery to delay Plaintiffs gathering evidence and to increase Plaintiffs' costs. You asserted in the May 17, 2010 conference that Steinbeck had very few documents (because most of the document repositories were either inoperative or liquidated in a fire sale). The limited universe of existing documents belies the Responses' portrayal of the purported difficulty in complying with the RPDs. Moreover, it is implausible that Steinbeck could not find a single document in his control that he could and should produce. Even if his objections had some validity, Steinbeck had a duty to produce any non-objectionable documents and failed to do so. Fed. R. Civ. P. 34(b)(2)(C) ("An objection to part of a request must specify

David Shraga
August 2, 2010
Page 2 of 8

the part and permit inspection of the rest").

## Boilerplate Objections

Steinbeck generally objects to the RPDs on the basis that they are vague, ambiguous, overbroad, and unduly burdensome ("Boilerplate Objection"). Steinbeck has failed to substantiate it's the Boilerplate Objections with any kind of declarations or other evidence, as set forth above.

Steinbeck contends that the RPDs' definition of "Steinbeck" is vague, ambiguous, and renders the RPDs overly burdensome. The RPDs' definition of "Steinbeck" is consistent with Rule 34, which applies to documents in Steinbeck's "possession, custody, or **control**." Fed. R. Civ. P. 34(a)(1) (emphasis added). Control means "the legal right to obtain documents upon demand." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). *See also Garber*, 234 F.R.D. at 189-190. Steinbeck generally objects to the RPDs (and specifically objects to RPD No. 15) on the basis that they purportedly "impose[] requirements on Defendant that are above and beyond those requirements imposed by law" or seek "documents that are not within Defendant's possession, custody or control[.]" This letter clarifies that Plaintiffs intend and construe the RPDs to request only those documents which Steinbeck has a legal right to demand, and were not intended to exceed that limitation. Conversely, Steinbeck's general objection that the RPDs "require production of materials from any entity or person other than [Steinbeck,] including but not limited to third parties" is contrary to the law.

Steinbeck generally objects to the RPDs' definition of the term "document" as "any communication, data, information, or expression which can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device, from any tangible medium." Again, this definition is consistent with Rule 34. In 2006, Rule 34 was amended to clarify that it "applies to information that is fixed in a tangible form and to information that is stored in a medium from which it can be retrieved and examined." Fed. R. Civ. P. 34(a) advisory committee note on 2006 amendment. This letter clarifies that Plaintiffs intend and construe the RPDs to seek information that is fixed in a tangible form and to information that is stored in a medium from which it can be retrieved and examined.

Steinbeck objects to the term "concerning" used RPDs Nos. 16 through 21 as vague and ambiguous. The RPDs define the term "concerning" as "referring to, describing, evidencing, or constituting," which is the same definition used by Local Rule 26.5(c)(7) for the District of Massachusetts. Obviously, this definition is sufficiently definite for the federal court in Massachusetts; it would seem that it is sufficiently definite for use in this case as well.

Steinbeck objects to various words and phrases in the RPDs as vague and ambiguous. Steinbeck challenges the terms "agreement" and "payments" (RPDs Nos. 17, 20, 21), and the phrases "concerning any agreement" (RPD No. 17), "concerning the revenue" (RPD No. 18), "from or

David Shraga
August 2, 2010
Page 3 of 8

on behalf" (RPD No. 19), "made on Steinbeck's behalf or for Steinbeck's benefit" (RPD No. 20), and "made, in whole or in part, to compensate Steinbeck" (RPD No. 21). Plaintiffs will answer any questions about the meaning of these terms in today's conference, but each of the challenged terms and phrases have readily ascertainable meanings and are in everyday use by ordinary people. It is very difficult to believe that any confusion about their meaning is genuine and unfeigned. (Indeed, Steinbeck's objection to RPD No. 21 that it is duplicative with RPD No. 19 strongly suggests that he understands what these RPDs are seeking.)

## Privilege Objections

Steinbeck objects generally and specifically to RPDs Nos. 15 through 27 on the basis that they seek "disclosure of any documents that are protected by the attorney client privilege, attorney work product doctrine, joint defense privilege, or any other applicable privilege" ("Privilege Objection"). Rule 26 requires a party withholding information under a claim of privilege to "describe the nature of the documents . . . not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim" -- namely, a privilege log. Fed. R. Civ. P. 26(b)(5)(A)(ii). Steinbeck's boilerplate assertion of a privilege is not sufficient to preserve this objection.

Steinbeck asserts that he is not in a position to provide a privilege log "because the vagueness, ambiguity, and overbreadth of the individual requests renders Defendant incapable of determining what documents are properly called for and what documents within that category may be subject to privilege." As stated above, Steinbeck's Boilerplate Objections are meritless. Steinbeck is not able to bootstrap his unsubstantiated Privilege Objections with equally unsubstantiated and baseless Boilerplate Objections.

At the parties' May 17, 2010 Rule 26(f) conference, the parties agreed that no privilege log would be required for communications between the parties and their current counsel. Of course, this does not exclude communications with former counsel and communications between separate defendants and their counsel. Moreover, given the potential issues of spoliation in this case, and the corresponding relevance of when Steinbeck had notice of this lawsuit, Plaintiffs reserve the right to except communications between Steinbeck and his current counsel prior to the point at which current counsel was formally retained.

## Confidentiality/Protective Order Objections

Steinbeck generally objects to the RPDs on the basis that they seek documents that are confidential, proprietary, or protected by a privacy interest under the California or federal Constitution, and specifically objects to RPDs Nos. 15 through 27 on the basis that they seek "personal, confidential, private, and sensitive information of individual putative class members, Defendant, or other parties or third parties" ("Confidential Objection"). The Confidential Objections fail because the Responses do not provide any supporting "declarations or other evidence to support [Steinbeck's] claim that the responsive documents are proprietary

David Shraga
August 2, 2010
Page 4 of 8

information and that their 'disclosure would be harmful to the party's interest in the property.'" *Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 619 (C.D. Cal. 2007) (citation, punctuation omitted). Likewise, Steinbeck has not provided sufficient information (or *any* information, for that matter) to demonstrate that third parties' rights to privacy under California law outweigh Plaintiffs' interest in discovery. Absent such a showing, Plaintiffs' interest in discovery trump any countervailing privacy interest. *Cf., e.g., McArdle v. AT&T Mobility LLC*, No. 09-1117, 2010 WL 1532334, at *3-6 (N.D. Cal. Apr. 16, 2010); *Sanbrook v. Office Depot*, No. 07-5938, 2009 WL 840019 (N.D. Cal. Mar. 30, 2009).

Steinbeck also asserts that he will only produce such documents under a protective order, and generally objects to the RPDs because they purport to require that Steinbeck "obtain a protective order prior to or in connection with interposing any objections or producing documents in response to the Request." Again, this is contrary to the law. If Steinbeck "truly believe[d] [he] has 'confidential' or 'proprietary information' that should be protected by a protective order, [he] should have entered into a stipulated protective order with [Plaintiffs] or filed a motion for a protective order *before* the date by which it was to respond to plaintiff's requests. *Bible*, 246 F.R.D. at 619 (emphasis in original, citing *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 690 (D. Kan. 2004)).

Steinbeck's delay in responding to Plaintiffs' attempts to negotiate a stipulated protective order smacks of a bad faith intent to prejudice Plaintiffs' opposition to his motion for summary judgment. Indeed, Plaintiffs took essentially every opportunity to avoid precisely this delay. On May 11, 2010, Plaintiffs sent a facsimile to Steinbeck's counsel that stated:

> Parties have the obligation [to] secure any protective order prior to the deadline for production. To moot any potential dispute over a stipulated protective order, we agree that we will keep all discovery "confidential" per the terms of the Northern District's default stipulated protective order until a protective order can be negotiated. We ask that your client(s) be prepared to respond to the proposals above at the Rule 26(f) conference.

Steinbeck failed to address or even raise the issue in the parties' Rule 26(f) conference. In the instructions for the First Set of RPDs (served June 17, 2010), Plaintiffs again sought to address the issue of a protective order:

> To the extent Steinbeck objects that the confidential or proprietary nature of any document prevents its production, it is Steinbeck's obligation to ensure that a protective order is entered in a timely fashion: i.e., prior to day on which Steinbeck's response to these Requests for Production of Documents are due. Plaintiffs will normally agree to the Northern District of California's sample Stipulated Protective Order. In order to eliminate disputes and delays, Plaintiffs

David Shraga
August 2, 2010
Page 5 of 8

agree to treat any documents as though they were designated "confidential" under the sample Stipulated Protective Order for a reasonable time to allow the parties to negotiate and obtain an appropriate stipulated protective order.

Finally, Plaintiffs took the extraordinary step of drafting a protective order for Steinbeck (using the Northern District's model stipulated protective order) and providing it to him by email on July 20, 2010. In that email, Plaintiffs warned Steinbeck that *he* needed to obtain the protective order prior to the discovery deadline – not the other way around.

> To the extent Defendants claim that a protective order is required, it is incumbent on them to obtain the protective order before their discovery deadlines expire:
>> [A]lthough Rule 26(c) is silent as to the time within which a protective order must be made, the courts have imposed the requirement that the motion be timely or seasonable. . . . [A] motion for a protective order is timely if made prior to the date set for producing the discovery. . . . Absent extraordinary circumstances, the outside limit within which a motion for a protective order for written discovery may be made is the time set for the response to a motion to compel written discovery.
>
> *Lexington Ins. Co. v. Swanson*, No. 05-1614, 2007 WL 1287938, at *2 (W.D. Wash. May 1, 2007) (citation, punctuation omitted, citing, e.g., *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C.1991) (simply objecting that protective order is required "turns the normal state of obligations on its head. The party seeking the protective order, who has the burden of requesting and supporting it, should also be responsible for initiating the process. Permitting that party to merely note its objections and then sit back and wait for a motion to compel can only serve to prolong and exacerbate discovery disputes").

Despite Plaintiffs' repeated efforts to head this issue off early, Steinbeck did not even respond to Plaintiffs' draft stipulated protective order until July 30, 2010 - five days after the Responses were due. Now, it appears that Steinbeck intends to further delay by demanding unwarranted deviations from the Northern District's tried-and-true model stipulated protective order. In short, Steinbeck delayed addressing the protective order issue until it began to delay Plaintiffs' receipt of discovery materials. The only explanation for this delay apparent to Plaintiffs is the pursuit of an unfair strategic advantage.

## Sequence of Discovery

The defects in Steinbeck's objections to RPDs Nos. 15 through 27 on the basis that they "improperly purport[] to conduct class and/or merits discovery and thus goes beyond the permissible scope of discovery at this juncture" are immediately apparent. The Court has not entered any order bifurcating discovery to either class issues or merits-based (a fact underscored

Steinbeck's apparent indecision about whether class-based discovery or merits-based discovery is supposed to be prohibited at this point). In any event, class and merits issues are inextricably intertwined in this matter and the two issues could not be effectively or practicably bifurcated.

Steinbeck's objection that "[d]iscovery pertaining to any individual other than the named Plaintiffs is inappropriate unless and until a class has been certified" strongly suggests that Steinbeck's counsel did not comply with the obligation "to pause and consider the reasonableness of his . . . objection." Fed. R. Civ. P. 26(g) advisory committee note on 1983 amendment. The Court's briefing schedule for Defendants' motions for summary judgment plainly contemplate discovery concerning Steinbeck, at the very least. Moreover, this objection contains a logical contradiction: class certification is almost always based on discovery about the putative class. Steinbeck asserts that there is a Catch-22 that prevents class discovery until class certification (and class certification obviously cannot take place until adequate class discovery has been taken).

## Duplicative Objection
Steinbeck generally objects to the RPDs on the basis that they seek documents that "are equally available to or already in the possession of Plaintiffs or are readily obtainable or compiled from publically available sources." Aside for failing to provide any specific examples of such duplicative documents, the law does not support this objection.

## Objection to Time and Place of Production
Steinbeck generally objects to the RPDs on the basis that "that the time and place demanded for inspection and copying is unreasonable and unduly burdensome, oppressive, and harassing." The RPDs asked Steinbeck to produce the requested documents "by mail or private courier at the offices of Plaintiffs' counsel on the same day that [his Response was] due." This is by far the most common manner of producing documents in discovery. There is no explanation as to why the time and place of this production is unreasonable; "objections should be plain enough and specific enough so that the court can understand in what way the [discovery is] alleged to be objectionable." *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981). In any event, Plaintiffs are willing to make copies at Steinbeck's residence or his offices.

## Prematurity Objection
Steinbeck generally objects to the RPDs on the basis that they were "issued prematurely" ("Prematurity Objection"). Again, the Court's written order stated "Rule 26 disclosures to go forward, no further discovery ***until motion to dismiss has been heard***." (Dkt. No. 86) (emphasis added). The RPDs were served on June 17, well after the May 28 hearing on the motion to dismiss. Moreover, you agreed to waive the Prematurity Objection in your June 29 email in exchange for an extension on the RPDs until July 25.

David Shraga
August 2, 2010
Page 7 of 8

## Exclusivity to *DuFour* Action

The Response states that it is "made solely for the purposes of this action." This is not consistent with the *Drago* court's case management order, which indicated that discovery in the *DuFour* case could be used in the *Drago* case. The Rule 37 conference should resolve whether Plaintiffs need to apply for appropriate relief in the *Drago* case.

## Response to RPD No. 16

The Response to RPD No. 16 indicates Steinbeck will produce responsive documents "to the extent they exist and are determined to be within Defendant's possession, custody, or control[.]" The Response is defective because does not indicate whether such documents actually exist. *See Jensen v. Boston Ins. Co.*, 20 F.R.D. 619, 621 (N.D. Cal. 1957) ("[i]f the documents sought are not in existence, it is incumbent upon the objecting party or parties to so state under oath," cited with approval by *CytoSport, Inc. v. Nature's Best, Inc.*, No. 06-1799, 2007 WL 1040993, 5 (E.D. Cal. Apr. 4, 2007)).

## Relevancy Objections

Steinbeck objects to RPDs Nos. 17 through 27 on the basis that these RPDs are not limited to "any subject matter or timeframe," and therefore are "not relevant to the claims or defenses not likely to lead to discovery of admissible evidence" ("Relevancy Objections"). There is no basis for these Relevancy Objections.

Every communication, agreement, or payment connecting Steinbeck with Be., LLC, Dynamic Showcases, LLC, and/or Be Marketing Limited is relevant, because Steinbeck's knowledge of the operations of Be., LLC, Dynamic Showcases, LLC, and/or Be Marketing Limited are now the most important factual issue in this case. Further, these operations were the only apparent connection between Steinbeck and the other persons identified in RPDs Nos. 17 through 27. As the party resisting discovery, Steinbeck again bears the burden of "show[ing] specifically how, despite the broad and liberal construction afforded the federal discovery rules, [discovery request] is not relevant[.]" *Johnson & Johnston v. R.E. Serv.*, No. 03-2549, 2004 WL 3174428, at *2 (N.D. Cal. Nov. 2, 2004) (quoting *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 298 (E.D. Pa. 1980)).

Unless Steinbeck provides a declaration that particular communications, agreements, and/or payments took place because of some other connection besides Be., LLC, Dynamic Showcases, LLC, or Be Marketing Limited, Plaintiffs are unable to narrow RPDs Nos. 17 through 27. Plaintiffs are not forced to limit their discovery to arbitrary categories that may fail to capture the most relevant documents simply because they do not know where the most relevant documents are: modern discovery services to make litigation "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).

\*      \*      \*

Steinbeck's conduct gives every appearance that he is committed to prevailing through undue delay, frustrating discovery, obfuscation, and unfair litigation tactics, and intends to make good on your previous statement this winter that you intended to litigate by frustrating and delaying discovery. Plaintiffs are equally committed to obtaining justice for the thousands of California families (some at the threshold of poverty and even bankruptcy) by recovering the money wrongly obtained by your clients.

Ethan Preston

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2

**From:** David Shraga <david@kawamitoshraga.com>
**To:** Ethan Preston <ep@eplaw.us>
**Cc:** 'morr@calljensen.com' <morr@calljensen.com>, 'dparisi@parisihavens.com'
<dparisi@parisihavens.com>, 'MStrimling@bramsonplutzik.com' <MStrimling@bramsonplutzik.com>
**Subject:** Discovery and Depo Issues
**Date:** 09/01/2010 10:55:57 PM

Ethan,


We have considered your request further, have not received any explanation from you concerning any specific evidence you have to support your belief documents that should have been produced were not, and do not see any basis to subpoena Yahoo.  As I expect you are aware, the Electronic Communications Privacy Act prohibits ISPs from disclosing the content of commuications in electronic storage.  (18 USC 2701(a)(1).)  Absent a court order, a nonparty ISP may not divulge stored electronic communications in response to a civil discovery subpoean.  Se In re Subpoena Duces Tecum to AOL, LLC (ED VA 2008) 550 F.Supp.2d 606, 611; O'Grady v. Sup. Ct (Apple Computer Inc.) (2006) 139 Cal. App. 4th 1423, 1441.  You have not articulated any reason why good cause exists to issue the subpoena, your request fundamentally impinges on Steinbeck's right of privacy, and your proposal to have a netural third party evaluate the documents to determine privilege, privacy, and relevance issues is inadequate to safeguard our client's rights.  However, in an attempt to compromise on this issue, we would be willing to consider consenting to your request on the following conditions:


1) We request you explain what good cause you would offer the Court to support issuance of the subpoena;


2) We would need to be provided with a copy of the actual subpoena you intend to serve, complete with definitions and instructions.  The category you have thus far described is still overbroad (because there is no limitation as to subject matter, or other information that is not subject to discovery at this point, or implicates privacy rights), and we cannot evaluate it in a vacuum.  Once we see the actual subpoena we can discuss narrowing the scope if necessary.  We will not agree to service of a subpoena whose scope we believe is overbroad, as it will needlessly drive up the cost and complexity of this process, which we do not believe is warranted anyway.


3) You would have to agree that any documents produced by Yahoo would need to be produced directly to us so we can review them for privilege, confidentiality, privacy, or relevance.


4) Our hourly fees incurred in performing this review will need to be paid for by Plaintiffs


In addition, my understanding now is that the following depo dates are tentatively available:


Mr. Newman on Sept. 13.

Mr. Falck on Sept. 16. (based on what we know from you)

Mr. Rashkovan on the 14th and 15th.

Mr. Steinbeck on the 17 or 20th.

You have also said you intend to depose Mr. DeSando and Monterey during the same timeframe.  Do you have any information concerning the dates that are contemplated?

You also said there are several other third parties you intend to depose.  I have repeatedly asked you to identify who they are and you have not done so yet.  What third parties and/or other parties do you intend to depose and what dates are contemplated?

Before we confirm any of these dates, we need to have information concerning Plaintiffs' availability in the last week of September or first week of October, as well as the information we have requested above.  We agreed we would try to work together to create a schedule of all parties and third parties that is mutually agreeable, and I have now provided general availability during the timeframes we previously discussed, but I am afraid that thus far we have received no information from you when it comes to the dates that you are supposed to be coordinating with us.  Please let me know where things stand so we can attempt to finalize an overall schedule.

-David

**From:** Ethan Preston [mailto:ep@eplaw.us]
**Sent:** Tuesday, August 31, 2010 10:59 AM
**To:** David Shraga
**Cc:** 'morr@calljensen.com'; 'dparisi@parisihavens.com'; 'MStrimling@bramsonplutzik.com'
**Subject:** RE: Concluding 8/25 Rule 37 conference

We first discussed the deposition schedule on 7/30. We delayed the 8/25 followup conference for over two weeks to accommodate your travel plans and the travel plans of your client. Given that delay, our expectation was that the parties would at least be able to commit to a deposition schedule at the 8/25 conference. My email below was prompted by the fact that Steinbeck was still unprepared at the 8/25 conference to commit to any particular date for his deposition. (As the recording of the 8/25 conference will confirm, Plaintiffs were prepared to do so but Defendants did not identify specific dates for their depositions. Plaintiffs will commit to specific dates provided they are given at least two weeks' notice.)

With respect to the proposed subpoena, Plaintiffs anticipate they will advance the cost of the review and will select the reviewing attorneys. However, if the review yields responsive documents that Steinbeck should have produced, or indicates that Steinbeck has deleted responsive documents, Plaintiffs will reserve the right to recoup those costs from Steinbeck. You do not indicate why a subpoena of documents between Steinbeck's email address and email addresses using the domain name "gonnabe.com" would be overbroad. Please advise.

On Tue, 2010-08-31 at 12:45 -0400, David Shraga wrote:


Ethan,


You know my client has been travelling.  We already agreed to endeavor to set the depos for the weeks beginning September 13 and 20.  I already told you I have been trying to get in touch with my client and will endeavor to tell you as soon as possible what dates he is available during the weeks we already agreed to.  We already agreed to extend the MSJ briefing schedule in light of scheduling conflicts related to travel.  Your suggestion that we are creating claimed delays is inaccurate, and many of the issues you raise could have been addressed by you sooner.


I am also not in a position yet to respond fully to your inquiry re the subpoena to Yahoo, and your suggestion that we must respond immediately without adequate time to consider and consult our client who has been out of town is unwarranted.  In addition, you still have not provided any dates for the availability of your clients for deposition.


With respect to the subpoena, you have yet to explain why you think a subpoena to Yahoo is warranted, or what grounds you have to believe emails have not been produced.  I already asked you to provide me with any emails in your possession that you believe we should have produced but did not, and you have not responded to my request or provided anything.  I take it from your silence that there are none.  It appears your only reason for wanting to subpoena Yahoo is because you expected a more voluminous production, yet you have not even talked to Mr. Steinbeck yet and appear to be acting upon mere speculation.  Also, you did not specify in your proposal below that Plaintiffs would be paying for the neutral evaluation.  Please let me know if that is the case or if you expect Mr. Steinbeck to be burdened with the cost of this fishing expedition.  Once we have answers to the foregoing questions I can tell you what our position will be on the Yahoo subpoena.  However, it seems apparent that this subpoena will simply be one more in a series of overbroad subpoenas that have been issued in a manner that harasses third parties in disregard of the parties' rights.


As for the supplemental response, it will be forthcoming this week, although I note I have already told you what it will say.  I will not waste time responding to your other rhetoric regarding traps, it is a bit silly already.


-David


**From:** Ethan Preston [mailto:ep@eplaw.us]
**Sent:** Monday, August 30, 2010 6:06 PM
**To:** David Shraga
**Cc:** 'morr@calljensen.com'; 'dparisi@parisihavens.com'; 'MStrimling@bramsonplutzik.com'
**Subject:** RE: Concluding 8/25 Rule 37 conference

David,

I did not receive any response to the email below. Will your client authorize the subpoena to Yahoo given the accommodation proposed below? When will Steinbeck provide a supplemental response? Steinbeck's deposition has been severely delayed by his vacation schedule. Even our attempts to meet and confer on dates for Steinbeck's availability have been delayed. Given the delay in this case, Plaintiffs are also looking for deposition dates in the week of September 6. Most importantly, what dates is Steinbeck available for deposition?

Ethan

On Fri, 2010-08-27 at 16:37 -0700, Ethan Preston wrote:


On Fri, 2010-08-27 at 18:35 -0400, David Shraga wrote:


Ethan,

We will provide a supplemental response.

When? For what RPDs? Plaintiffs do not waive any right to initiate a motion to compel, as Steinbeck's continual supplementation appears to be designed to delay motion practice and compress Plaintiffs' time to take discovery prior to the motion for summary judgment.


I have not been able to confirm availability of Steinbeck yet as he is out of town.  I will let you know when I have an update.  Newman is available to appear for 1901 Co. on September 13, and there are conflicts scheduling him after that for the rest of the week and the following week.  Rashkovan is generally available but earlier in the week is preferable.

Please provide written confirmation that Newman will appear on behalf of 1901 Co. on 9/13.


As for the subpoenas below, it is not clear to me whether you only intend to subpoena Yahoo and/or someone else.  And in any event, we don't see any reason for the subpoena(s).  We don't object to documents simply being preserved to the extent they exist.  However, to the extent that you will ask Yahoo or anyone else to provide "gonnabe.com" e-mails and/or Steinbeck emails in general, we will move for a protective order, as responsive documents could contain all kinds of irrelevant, personal, privileged, and/or other information that Plaintiffs are not entitled to.

At present, we intend to subpoena Yahoo.

There is no valid reason to withhold Steinbeck's authorization to the subpoena. If there are emails between Steinbeck and gonnabe.com email addresses that have not been produced, they certainly should be.

Because such emails reflect Steinbeck's knowledge and involvement in Be., LLC, they are plainly relevant or likely to lead to relevant information. "Personal" communications are not privileged from discovery, especially where there is a protective order in place. If any of these emails are subject to a valid privilege, Steinbeck

should produce a privilege log -- and as far as we can tell, no attorneys have ever used a gonnabe.com email address.

Nevertheless, to accommodate these concerns, we propose that Steinbeck consent to a subpoena to Yahoo! for any email to or from an email address using the gonnabe.com domain name, and that the documents will be produced to a neutral third party who will review the emails for irrelevant or privileged content. Plaintiffs will agree that such review will be subject to Federal Rule of Evidence 502(e).

Of course, we reserve all of our rights or remedies related to any subpoenas of any kind that may be issued, and nothing in this email is intended to be a waiver or relinquishment thereof.

David, please -- if Steinbeck is contemplating a claim under *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004) or related authority, you should be up front in disclosing that; otherwise, it looks as though you are attempting to spring a trap on Plaintiffs in bad faith, and it would reflect very poorly on you as an officer of the court.

During our call this week you also mentioned that there were two additional witnesses who may be deposed. Please let me know who you are referring to so we can take them into account with scheduling.

I remember referencing several other witnesses we are trying to nail down. When we have more information, we will provide it to you.

Regards,

-David

-----Original Message-----
From: Ethan Preston [mailto:ep@eplaw.us]
Sent: Thursday, August 26, 2010 2:46 PM
To: David Shraga
Cc: 'morr@calljensen.com'; 'dparisi@parisihavens.com'; 'MStrimling@bramsonplutzik.com'
Subject: Re: Concluding 8/25 Rule 37 conference

David,

Please advise on the availability of Steinbeck, Rashkovan, and Newman for the week of September 13. Barry Falck's attorney has confirmed availability for September 16. I am still negotiating with Erik DeSando's attorney.

Please advise on whether Steinbeck will serve a second supplemental response and on whether Steinbeck consents to either of the subpoenas below.

Ethan

On Wed, 2010-08-25 at 16:22 -0700, Ethan Preston wrote:

> David,
>
> The subpoena would seek all emails (whether in active use or on a backup
> tape) to or from any email address which used the domain name
> "gonnabe.com." If Steinbeck intends to object to such a subpoena, please
> explain the grounds.
>
> We intend to immediately issue a preservation subpoena to Yahoo that
> would not require Yahoo to produce responsive documents but would simply
> ensure their preservation. Again please alert us now if Steinbeck
> intends to object to a preservation subpoena, and explain the grounds.
>
> Ethan
>
> On Wed, 2010-08-25 at 16:32 -0400, David Shraga wrote:
> > Ethan,
> >
> > Until we see the subpoena we cannot tell you what objections, if any,
> > we may have. If the subpoena is similar in breath to the others that
> > have been served I would expect so, and reserve all rights. You have
> > also insinuated by this request that you believe there are responsive
> > emails we said we would produce but have not. If you are in possession
> > of any emails that you believe should have been produced but were not,
> > or have any other basis to justify your claim (other than your
> > apparent expectation more would be produced), then please provide me
> > with the emails or basis.
> >
> > David
> >
> > ----- Original Message -----
> > From: Ethan Preston <ep@eplaw.us>
> > To: David Shraga
> > Cc: Matt Orr <morr@calljensen.com>; David C. Parisi
> > <dparisi@parisihavens.com>; Michael Strimling
> > <MStrimling@bramsonplutzik.com>
> > Sent: Wed Aug 25 14:58:03 2010
> > Subject: RE: Concluding 8/25 Rule 37 conference
> >
> > Also, please let us know if your client will object to our subpoenaing
> > yahoo for responsive emails.
> >
>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

**From:** David Shraga <david@kawanitoshraga.com>
**To:** Matt Orr <morr@calljensen.com>, Ethan Preston <ep@eplaw.us>
**Cc:** dparisi@parisihavens.com <dparisi@parisihavens.com>, MStrimling@bramsonplutzik.com <MStrimling@bramsonplutzik.com>
**Subject:** RE: Discovery and Depo Issues
**Date:** 09/08/2010 12:03:04 PM

Ethan,

I don't think this issue is as complicated as you are making it. I am not saying underlying documents are privileged because they may have been given to me and I may have looked at them. All I am saying is I am not required to tell you what specific documents I have reviewed or looked at, that is privileged from disclosure because it asks for my work product. However, as I have previously said, you can ask Steinbeck at his deposition about what documents he located and the nature of his email usage.

As I have told you many times, Steinbeck did not have anywhere near the level of involvement in Be's affairs that you have claimed and lost significant money as a result of his involvement. He is defending himself in this litigation because he must, and your widespread abuse of the subpoena power, reflected manifestly in your desire to subpoena Yahoo seeking, *inter alia*, personal and non-relevant e-mails, without having deposed Steinbeck or any basis to claim that he has withheld documents, just drives up the costs of litigation and depletes limited resources.

You continue to mischaracterize our mutual efforts to schedule depositions. In late August (after we already agreed to extend the MSJ schedule in light of travel conflicts) we discussed commencing depos the week of Sept 13 and 20. By early September, I confirmed the specific dates different clients would be available during those weeks. We have more than cooperated and not created any delays. Any delays are solely the product of your dilatory conduct and failure to respond since being provided with those dates.

As for Steinbeck, I told you he is available on Sept 21. I did not specify that was the only date. If there are specific dates you had in mind let me know and I can confirm. (This answers your question 3 below). With respect to your question 2, as stated on numerous occasions, Steinbeck has complied with his discovery obligations and agreed to produce all non-objectionable, relevant documents. As such, we will not stipulate to any additional or continuing depositions at this time. You may certainly petition the Court to take his deposition for an additional day in the event further documents are located. With respect to question 4, we will not agree to continue the MSJ schedule at this point. You have had ample opportunity to conduct discovery and may continue to do so through November when your opposition is due. As you will learn at Mr. Steinbeck's deposition, he lost money in his limited involvement with Be, and your unfounded attempt to hold him personally liable for Be's alleged conduct continues to create a financial hardship on him. As such, Mr. Steinbeck wants to have his motion for summary judgment heard as soon as possible. I am sure you understand.

As for Mr. Newman, Mr. Falck, and Mr. Rashkovan, you said nothing in your email below about deposing them on the 13, 14 or 15, and 16, respectively. As Matt Orr noted in his last email, we need to know whether we can let these dates go. If you want me to find out about Newman and Rashkovan's availability in late September and early October then please let me know now.

Also, you have still not provided me with any dates for Plaintiffs' depos in late September.


-David




**From:** Matt Orr [mailto:morr@calljensen.com]
**Sent:** Wednesday, September 08, 2010 10:21 AM
**To:** Ethan Preston; David Shraga
**Cc:** dparisi@parisihavens.com; MStrimling@bramsonplutzik.com
**Subject:** RE: Discovery and Depo Issues



Guys,


I don't want to get involved in disputes that may exist between the two sides, however, I need to know whether depositions will be going forward next week and, if so, on what days, at what times, and at what locations. Please advise as soon as possible as I'd like to free up my schedule if they are not going forward.


Thanks

Matt



**Matt Orr**
*Shareholder*
**Call & Jensen**
**610 Newport Center Drive, Suite 700**
**Newport Beach, California 92660**
**Telephone: (949) 717-3000**
**Facsimile: (949) 717-3100**
**morr@calljensen.com**
**www.calljensen.com**

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information.  It is intended to be conveyed only to the designated recipient(s).  If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system.  Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.


**From:** Ethan Preston [mailto:ep@eplaw.us]

**To:** David Shraga
**Cc:** Matt Orr; 'dparisi@parisihavens.com'; 'MStrimling@bramsonplutzik.com'
**Subject:** RE: Discovery and Depo Issues

You have again misstated the question put to you: did your law firm review the emails between jaysteinbeck@yahoo.com and any email address which incorporates the gonnabe.com domain name? Your assertion that this is privileged information is erroneous for a variety of reasons, some of which are not set forth below.

Steinbeck did not make such emails privileged by providing them to your law firm. *Fisher v. United States*, 425 U.S. 391, 403-404 (1976) ("pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice"). Likewise, the attorney-client privilege only protects *communications* -- whether your law firm reviewed particular records is an underlying *fact*. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (attorney-client privilege "extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing"); *Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997) ("Acts or services performed by an attorney during the course of the representation are not within the privilege. They are not communications.") Moreover, the attorney-client privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher*, 425 U.S. at 403. Towards that end, questions about whether counsel has reviewed particular documents are not privileged. "[Q]uestions about the adequacy of [a document] search do not entail legal advice, the topic is not off limits just because an attorney plays a role. . . . There is no need for a privilege to cover information exchanged in the course of document searches, which are mostly mechanical yet which entail great risks of dishonest claims of complete compliance. Dropping a cone of silence over the process of searching for documents would do more harm than good." *Matter of Feldberg*, 862 F.2d 622, 627 (7th Cir. 1988).

Plaintiffs first sought to schedule depositions by conference dated July 15. You unilaterally cancelled that conference and delayed it until July 30. At the July 30 conference, you were not willing to set a deposition date for Steinbeck but indicated that he and you were travelling for the month of August. You then delayed scheduling depositions until August 25. At the August 25 conference, you were again unwilling to set a deposition date for Steinbeck. On September 1, you first proposed deposition dates for Steinbeck. On September 5, you indicated that September 21 was the only available date for Steinbeck's deposition. Under these circumstances, your deadline below is unreasonable.

Nonetheless, in an effort to meet your deadline, we ask that you reassess your answer the question above.

1. If you continue to assert the privilege, is it your position that your clients would be able to answer similar questions in a deposition?
Finally, there are some practical issues that should be addressed:
2. Will your clients stipulate to an additional deposition or stipulate to continuing their depositions in the event that Plaintiffs discover additional documents through the deposition?
3. When are the next deposition dates available for Steinbeck, assuming the dates proposed currently do not work?
4. Will Steinbeck stipulate to continue the briefing schedule for his motions for summary judgment to accommodate the additional delay from, e.g., his deposition?

On Tue, 2010-09-07 at 21:50 -0400, David Shraga wrote:

Ethan,

We were never served with a subpoena for 1901 Co. so I cannot tell you what documents may yet be produced.

It is also my understanding that one was never served on Mr. Newman either.

You have indicated in papers you filed that you expect to file a motion to compel relating to Steinbeck. Therefore, while his efforts to locate responsive documents are ongoing, at this point he does not anticipate any further production.

We objected to the subpoena to MTS weeks ago and have heard nothing.  We are willing to discuss narrowing the scope of the requests, which may result in production.

In response to your question below asking what work I have performed for my client in reviewing emails, that is privileged.  You may certainly ask Mr. Steinbeck at his deposition about his search and what he located.

It is already Tuesday Sept. 7th.  We never received any notices of deposition from you.  If you do not confirm by the close of business tomorrow that you intend to proceed next week with any of the depositions we discussed, then I will assume they are not going forward and adjust my schedule accordingly.

Regards,


-David




**From:** Ethan Preston [mailto:ep@eplaw.us]
**Sent:** Tuesday, September 07, 2010 10:20 AM
**To:** David Shraga
**Cc:** 'morr@calljensen.com'; 'dparisi@parisihavens.com'; 'MStrimling@bramsonplutzik.com'
**Subject:** RE: Discovery and Depo Issues


Please respond to the question from my September 2 email below. The timing of your clients' depositions are dependent in part on whether they will be producing additional documents after their deposition.

Towards that end, are Mr. Rashkovan, MTS Holdings Group, Inc., and/or 1901 Co. going to produce any documents? If not, we should arrange a meet and confer as to those persons as well.

On Thu, 2010-09-02 at 15:15 -0700, Ethan Preston wrote:


Your email below of course does not actually respond to my question whether your law firm has reviewed emails between jaysteinbeck@yahoo.com and any email address which incorporates the gonnabe.com domain name. The fact that you are asking for attorney fees to review those emails indicates that you have not in fact reviewed those emails. It would be deceptive and duplicitous to demand fees for a task that had already been performed.

Please answer the question that we have asked: did your law firm review the emails between jaysteinbeck@yahoo.com and email addresses which incorporates the gonnabe.com domain name? I do not see how you could possibly know whether your client has performed a diligent search and made a complete production without such a review.

On Thu, 2010-09-02 at 15:26 -0400, David Shraga wrote:


As I have previously indicated, our client has performed a diligent search and produced all responsive e-mails we said we would produce.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 4



Jill P. Rubin
Attorney-at-Law
(310) 312-3202 Phone
(310) 231-8422 Fax
jpr@msk.com

June 25, 2008

**VIA FACSIMILE AND U.S. MAIL**

William G. Mitchell
The Better Business Bureau
315 North La Cadena Drive
Post Office Box 970
Colton, California
92324-0814

**Re:**     **My Artist's Place LLC (Company ID 100064516)**

Dear Mr. Mitchell:

This letter is in response to your June 11, 2008 letter to Erik DeSando regarding the Better Business Bureau's decision to deny My Artist's Place LLC's membership application.  Please accept this letter as notice that My Artist's Place LLC intends to appeal this decision.

Additionally, as requested, we have provided some further information regarding My Artist's Place LLC in order to correct any misunderstandings regarding My Artist's Place LLC's business model.  We hope this information will assist you in the reconsideration of your decision.  As discussed below, pursuant to Section 1701, My Artist's Place LLC is not an advance fee talent agency, and therefore, not required to be licensed as such.

**1.      What Is An Advance Fee Talent Service/Section 1701 Company?**

An advance fee talent service is

> a person who charges, attempts to charge, or receives and advance fee from an artist for one or more of the following…
>
> (1) Procuring, offering, promising, or attempting to procure employment, engagements, or auditions for the artist.
>
> (2) Managing or directing the development or advancement of the artist's career as an artist.

11377 West Olympic Boulevard, Los Angeles, California  90064-1683
Phone: (310) 312-2000  Fax: (310) 312-3100  Website: www.msk.com

MITCHELL SILBERBERG & KNUPP LLP

(3) Career counseling, career consulting, vocational guidance, aptitude testing, evaluation, or planning, in each case relating to the preparation of the artist for employment as an artist.

*See* California Labor Code Section 1701(b).

**2.      My Artist's Place LLC Does Not Charge A Fee To Procure, Offer, Promise, Or Attempt To Procure Employment, Engagements, Or Auditions For The Artist.**

My Artist's Place LLC does not function as an agent, and does not procure or attempt to procure employment for its members. While My Artist's Place LLC does provide an online resume posting service, this service is open to the public and is free of charge to all.

In the context of its role as producer of the various television and music productions discussed more fully below, My Artist's Place LLC does not charge a fee for the promise of or offer of employment. Rather, My Artist's Place LLC is an equal opportunity employer which does not require paid membership in order to be eligible for employment. All members of the public are welcome to audition for its productions and to be considered for positions (indeed, the majority of members of its rock band, "The Buzz", have never paid any fees to My Artist's Place LLC).

**3.      My Artist's Place LLC Does Not Charge A Fee To Manage Or Direct The Development Of The Artist's Career As An Artist.**

My Artist's Place LLC simply negotiates bulk discounts with third party vendors who provide these services and then makes those discounts available to its members. This process is discussed more fully below. Members may decide to take advantage of these discounts and use the vendors, or not. The choice to use or not use any third party vendors is wholly up to the member.

**4.      My Artist's Place LLC Does Not Charge A Fee To Provide Career Counseling, Career Consulting, Vocational Guidance, Aptitude Testing, Evaluation, Or Planning, Relating To The Preparation Of The Artist For Employment As An Artist.**

As discussed above, My Artist's Place LLC simply negotiates bulk discounts with third party vendors who provide these services and then makes those discounts available to its members. Members may decide to take advantage of these discounts and use the vendors, or not. The choice to use or not use any third party vendors is wholly up to the member.

**5.      My Artist's Place Is Not An Advance Fee Talent Agency/Section 1701 Company.**

As My Artist's Place LLC does not provide services which fall into the three required categories of Section 1701, My Artist Place LLC is not an advance fee talent agency. As such, it is not required to be licensed under Section 1701. Instead, My Artist's Place LLC has primarily a two-fold business model which is squarely outside of the requirements of Section 1701.

MITCHELL SILBERBERG & KNUPP LLP

First, My Artist's Place LLC negotiates bulk discounts with various bona fide third party service providers (e.g. acting instructors, photographers) and then passes these discounts along to its members, who can voluntarily decide whether or not to take advantage of such discounts (although most members do choose to take advantage of the benefits). For example, My Artist's Place LLC has negotiated discounts with Blue Sky Studios (for photos, bioshots and a stylist), with Money Management Camp for Kids (for money management guidance), with Rising Stars (for much of the acting training), and with Dynamic Showcases (for showcases). None of the third parties are affiliated companies of My Artist's Place LLC, although My Artist's Place LLC knows these third party service providers. My Artist's Place LLC is not paid anything by the third party vendors and does not pay anything to the third party vendors. My Artist's Place LLC's only relationship with these third parties is its arms length negotiations for group discounts for these services.

Second, My Artist's Place LLC produces television shows, "Kids Unlimited" and "Say What", which can both be seen nationally on the G-4 Cable Network, and a rock band, "The Buzz", which can be seen at venues in California. As a producer, My Artist's Place LLC employs and pays artists according to the applicable labor codes. Both My Artist's Place LLC's members and non-members are eligible for employment in all of My Artist's Place LLC's productions. We will be happy to provide more specific information regarding any of My Artist's LLC's productions, should such information be helpful to you in your determination in this matter.

Critically, as demonstrated above, My Artist's Place LLC does not provide, charge, or try to charge to (a) procure or try to procure employment or auditions; (b) manage an artist's career; (c) do career counseling (Rising Stars and Money Management Camp for Kids provide this service) (d) list the artist for employment (this service is free of charge and open to the public), (e) create demo reels; (f) provide costumes; (g) provide lessons (Rising Stars provides this service); and (h) to provide auditions. My Artist's Place LLC does none of these things. *See* 1701 *et seq.* Instead, membership in My Artist's Place LLC provides access to the bulk discounts negotiated by My Artist's Place LLC. Furthermore, membership in My Artist's Place LLC neither guarantees, nor is required for, employment in one of My Artist's Place's LLC's productions.' I hope we have been able to clear up any misconceptions regarding My Artist's Place LLC's business model with respect to Section 1701. If there is any additional information we can provide in order to assist you with your reconsideration of this matter, please do not hesitate to let me know.

Sincerely,

Jill P. Rubin
MITCHELL SILBERBERG & KNUPP LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 5



# State of California
## Secretary of State

## LIMITED LIABILITY COMPANY
## ARTICLES OF ORGANIZATION

File # __200702910069__

**FILED**
In the office of the Secretary of State
of the State of California

JAN 0 2 2007

| A $70.00 filing fee must accompany this form. | |
|---|---|
| **IMPORTANT – Read instructions before completing this form.** | This Space For Filing Use Only |

**ENTITY NAME** (End the name with the words "Limited Liability Company," "Ltd. Liability Co.," or the abbreviations "LLC" or "L.L.C.")

1. NAME OF LIMITED LIABILITY COMPANY

Dynamic Showcases LLC

**PURPOSE** (The following statement is required by statute and may not be altered.)

2. THE PURPOSE OF THE LIMITED LIABILITY COMPANY IS TO ENGAGE IN ANY LAWFUL ACT OR ACTIVITY FOR WHICH A LIMITED LIABILITY COMPANY MAY BE ORGANIZED UNDER THE BEVERLY-KILLEA LIMITED LIABILITY COMPANY ACT.

**INITIAL AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and both Items 3 and 4 must be completed. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 3 must be completed (leave Item 4 blank).

3. NAME OF INITIAL AGENT FOR SERVICE OF PROCESS

My Corporation Business Services, Inc.

| 4. IF AN INDIVIDUAL, ADDRESS OF INITIAL AGENT FOR SERVICE OF PROCESS IN CALIFORNIA | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | CA | |

**MANAGEMENT** (Check only one)

5. THE LIMITED LIABILITY COMPANY WILL BE MANAGED BY:

☐ ONE MANAGER

☐ MORE THAN ONE MANAGER

☑ ALL LIMITED LIABILITY COMPANY MEMBER(S)

**ADDITIONAL INFORMATION**

6. ADDITIONAL INFORMATION SET FORTH ON THE ATTACHED PAGES, IF ANY, IS INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART OF THIS CERTIFICATE.

**EXECUTION**

7. I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

_____
SIGNATURE OF ORGANIZER

DATE 12/28/06

Meghan Record
TYPE OR PRINT NAME OF ORGANIZER

**RETURN TO** (Enter the name and the address of the person or firm to whom a copy of the filed document should be returned.)

| 8. NAME | Fulfillment Department |
|---|---|
| FIRM | MyCorporation.com |
| ADDRESS | 26520 Agoura Road |
| CITY/STATE/ZIP | Calabasas, CA 91302 |

LLC-1 (REV 03/2005)                                             APPROVED BY SECRETARY OF STATE



# State of California
## Secretary of State

*52*

### STATEMENT OF INFORMATION
(Limited Liability Company)

**L**

**FILED**
in the office of the Secretary of State
of the State of California

APR 1 2 2007

P.C.✓ This Space For Filing Use Only

| Filing Fee $20.00.  If amendment, see instructions. |
| --- |
| **IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM** |

**1.   LIMITED LIABILITY COMPANY NAME** (Please do not alter if name is preprinted.)

DYNAMIC SHOWCASES LLC

**DUE DATE:**

**FILE NUMBER AND STATE OR PLACE OF ORGANIZATION**

| 2.   SECRETARY OF STATE FILE NUMBER | 3. STATE OR PLACE OF ORGANIZATION |
| --- | --- |
| 200702910069 | CALIFORNIA |

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| 4.   STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | | ZIP CODE |
| --- | --- | --- | --- |
| 5900 Hollis Street, Suite R2 | Emeryville, CA | | 94608 |

| 5.   CALIFORNIA OFFICE WHERE RECORDS ARE MAINTAINED (DOMESTIC ONLY) | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| 5900 Hollis Street, Suite R2 | Emeryville | CA | 94608 |

**NAME AND COMPLETE ADDRESS OF THE CHIEF EXECUTIVE OFFICER, IF ANY**

| 6.   NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| --- | --- | --- | --- |
| Erik Desando | 5900 Hollis Street, Suite R2 | Emeryville, CA | 94608 |

**NAME AND COMPLETE ADDRESS OF ANY MANAGER OR MANAGERS, OR IF NONE HAVE BEEN APPOINTED OR ELECTED, PROVIDE THE NAME AND ADDRESS OF EACH MEMBER** (Attach additional pages, if necessary.)

| 7.   NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| --- | --- | --- | --- |
| Erik Desando | 5900 Hollis Street, Suite R2 | Emeryville, CA | 94608 |
| 8.   NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| Rebecca Whitman | 12724 Caswell Ave., #1 | Los Angeles, CA | 90066 |
| 9.   NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| Barry Falck | 1753 Malcolm Ave. | Westwood, CA | 90066 |

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California address.  If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 11 must be left blank.)

| 10.  NAME OF AGENT FOR SERVICE OF PROCESS |
| --- |
| My Corporation Business Services, Inc. |

| 11.  ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| C222444 | | CA | |

**TYPE OF BUSINESS**

| 12.  DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY |
| --- |
| Children Audition Showcases |

**13.  THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.**

| *Erik Desando* | | Member | 3/9/07 |
| --- | --- | --- | --- |
| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |

| LLC-12 (REV 07/2008) | APPROVED BY SECRETARY OF STATE |
| --- | --- |

112

2007029 10069

**Additional Members**

Of

# DYNAMIC SHOWCASES LLC

Members:

Jacob Steinbeck
P.O. Box 492531
Los Angeles, CA 90049

2/7



# State of California
## Secretary of State

STATEMENT OF INFORMATION
(Limited Liability Company)

L

**FILED**
In the office of the Secretary of State
of the State of California

JUN 2 0 2008

AEC

This Space For Filing Use Only

| Filing Fee $20.00. If amendment, see instructions. |
| --- |
| IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM |

1. LIMITED LIABILITY COMPANY NAME (Please do not alter if name is preprinted.)

DYNAMIC SHOWCASES LLC

**DUE DATE:**

**FILE NUMBER AND STATE OR PLACE OF ORGANIZATION**

| 2. SECRETARY OF STATE FILE NUMBER | 3. STATE OR PLACE OF ORGANIZATION |
| --- | --- |
| 200702910069 | California |

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | | ZIP CODE |
| --- | --- | --- | --- |
| 1841 N. Ave. 52 | Los Angeles, CA | | 90042 |

| 5. CALIFORNIA OFFICE WHERE RECORDS ARE MAINTAINED (DOMESTIC ONLY) | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| 1841 N. Ave. 52 | Los Angeles | CA | 90042 |

**NAME AND COMPLETE ADDRESS OF THE CHIEF EXECUTIVE OFFICER, IF ANY**

| 6. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| --- | --- | --- | --- |
| Ryan Falck | 1841 N. Ave. 52 | Los Angeles, CA | 90042 |

**NAME AND COMPLETE ADDRESS OF ANY MANAGER OR MANAGERS, OR IF NONE HAVE BEEN APPOINTED OR ELECTED, PROVIDE THE NAME AND ADDRESS OF EACH MEMBER** (Attach additional pages, if necessary.)

| 7. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| --- | --- | --- | --- |
| Ryan Falck | 1841 N. Ave. 52 | Los Angeles, CA | 90042 |
| 8. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| | | | |
| 9. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| | | | |

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California address. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 11 must be left blank.)

| 10. NAME OF AGENT FOR SERVICE OF PROCESS | | | |
| --- | --- | --- | --- |
| My Corporation Business Services, Inc. | | C 2232444 | |

| 11. ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| | | CA | |

**TYPE OF BUSINESS**

12. DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY

Showcases for children to audition for agents

13. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| Ryan Falck | Ryan Falck | CEO | 6/9/08 |
| --- | --- | --- | --- |
| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |

LLC-12 (REV 07/2006) MyCorporation Business Services, Inc  Los Angeles County 1 DA # 1 DA 2x0   APPROVED BY SECRETARY OF STATE



**Secretary of State**
Business Programs Division

1500 11th Street, 3rd Floor
P.O. Box 944260
Sacramento, CA 94244-2600

Certification and Records
(916) 657-5448

## LIMITED LIABILITY COMPANY STATUS INQUIRY

In response to your recent request, enclosed is a screen print of the entity record or a screen print of a list of names indicating this office has no record of the entity. Please refer to the reverse side of this notice for an example of a screen print of an entity record and below for an explanation of the information contained in the screen print.

1.  **FILE NUMBER** - The number assigned to an entity by the Secretary of State (SOS) at the time of filing.

2.  **DATE** - The formation date of a California entity, the qualification or registration date of a foreign (out-of-state or out-of-country) entity doing business in California or the date an entity converted from another type of entity.

3.  **STATUS** – The status code for an entity, described as follows:

    - **A** Active. A *California entity* is authorized to exercise all of its powers, rights and privileges in the State of California or a *foreign entity* is authorized to transact intrastate business in the State of California.

    - **B** Dishonored check. An entity's formation or registration filing was cancelled because the financial institution did not honor the remittance submitted as payment for the filing fee.

    - **C** Cancelled. An entity filed termination documents terminating a *California* entity's powers, rights and privileges or terminating a *foreign* entity's authority to transact intrastate business in California.

    - **D** Dissolved. An entity is still active but has voluntarily elected to wind up the business operations.

    - **F** FTB Suspended or FTB Forfeited. A *California* entity's powers, rights and privileges were suspended or a *foreign* entity's authority to transact intrastate business in California was forfeited by the Franchise Tax Board for failure to file a return and/or failure to pay taxes, penalties, or interest.

    - **M** Merged Out. An entity merged out of existence (in California) into another entity.

    - **O** Converted Out. An entity converted to another type of entity as provided by California statutes.

    - **P** Pending Cancellation. An entity filed a Certificate of Cancellation without a valid Tax Clearance Certificate prior to September 29, 2006 when the requirement for a Tax Clearance Certificate was eliminated from statute. To complete the cancellation process, the entity must file a final cancellation document pursuant to the revised statutes.

    - **S** SOS Suspended or SOS Forfeited. A *California* entity's powers, rights and privileges were suspended or a *foreign* entity's authority to transact intrastate business in California was forfeited by the SOS for failure to file the required Statement of Information.

    - **2** SOS/FTB Suspended or SOS/FTB Forfeited. A *California* entity's powers, rights and privileges were suspended or a *foreign* entity's authority to transact intrastate business in California was forfeited 1) by the SOS for failure to file the required Statement of Information; and 2) by the Franchise Tax Board for failure to file a return and/or failure to pay taxes, penalties, or interest.

4.  **TYPE** – Domestic (California) or Foreign (out-of-state or out-of-country) entity.

5.  **CALIF NAME** – The entity name as formed or registered in California.

6.  **FOREIGN NAME** (not applicable to domestic entities) – The entity name as filed in the state or country of jurisdiction.

7.  **LLC JURISDICTION** – The state in which the entity was organized.

8.  **EXEC OFFICE ADDRESS** – The address of the entity's principal executive office.

9.  **CALIF OFFICE ADDRESS** – The address of the entity's office in California, if any.

10. **AGENT NAME** – The name of the designated agent for service of process.

11. **AGENT ADDRESS** - The address of the designated agent for service of process. If the agent for service of process is a corporation, the address will be blank and a 1505 Agent File printout with the address of the agent will be included.

12. **NO. OF AMENDS** – The number of history record amendments for the entity.

13. **TOTAL PAGES** – The total number of pages contained in all documents filed with the SOS for the entity.

14. **LLC MGMT CODE** - Management structure (A -all members; S -single member; M -more than 1 manager; 1 -1 manager).

15. **BUSINESS TYPE** – The type of business in which the entity is engaged.

16. **GP/MGR/MEMB** - The name(s) of up to three of the entity's members or managers.

17. **GP/MGR/MEMB ADDRESS** - The address(es) of up to three of the entity's members or managers.

18. **MORE GP/MGR/MEMBS** – The number of additional managers or members of record or there are "no" more managers or members of record.

(PLEASE SEE REVERSE)

EXAMPLE OF SCREEN SHOT OF AN ENTITY RECORD

```
 SSLPHN0                    VIEW A LIMITED LIABILITY RECORD
 FILE NUMBER: [1]          DATE: [2]        STATUS: [3]            TYPE: [4]
 CALIF NAME:
              [5]

 FOREIGN NAME: [6]


 ELEC:                                LLC JURISDICTION: [7]
 EXEC OFFICE ADDRESS:    [8]
 EXEC OFFICE CITY:                    STATE/CNTRY:      ZIP CODE:

 CALIF OFFICE ADDRESS:   [9]
 CALIF OFFICE CITY:                                     ZIP CODE:

 ORIG NUMBER:                 ORIG DATE:            ORIG COUNTY:

 AGENT NAME: [10]
 AGENT ADDRESS: [11]

 AGENT CITY:                      STATE: CA        ZIP CODE:

 TERM/LP:                    NO. OF AMENDS: [12] TOTAL PAGES [13]
 LLC MGMT CODE: [14]    BUSINESS TYPE: [15]

 GP/MGR/MEMB: [16]

 GP/MGR/MEMB ADDRESS: [17]
 GP/MGR/MEMB CITY:                    STATE:      ZIP CODE:

 GP/MGR/MEMB: [16]

 GP/MGR/MEMB ADDRESS: [17]
 GP/MGR/MEMB CITY:                    STATE:      ZIP CODE:

 GP/MGR/MEMB: [16]

 GP/MGR/MEMB ADDRESS: [17]
 GP/MGR/MEMB CITY:                    STATE:      ZIP CODE:
 THERE ARE [18] MORE GP/MGR/MEMBS
    PF2=MODIFY REC    PF3=AMEND REC    PF9=AMENDMENT HISTORY    PF19=REDISPLAY LIST
                                                               CLEAR=MAIN MENU
```

Note: The **ORIG NUMBER**, **ORIG DATE**, **ORIG COUNTY** and **TERM/LP** fields do not apply to limited liability companies. Blank spaces indicate the information is not contained in the entity's file.

If a screen print of the entity's history is included, the following codes may be included on the screen print:

1. LC – Domestic or Foreign Limited Liability Company
2. LP – Domestic or Foreign Limited Partnership
3. DC – Domestic Corporation
4. FC – Foreign Corporation
5. GP – General Partnership
6. BT – Business Trust
7. RE – Real Estate Investment Trust
8. UA – Unincorporated Association

Instructions and fees for ordering copies of filed documents and certificates of status for an entity are available on the Secretary of State's website at www.sos.ca.gov under Business Entities.

Questions regarding the requirements to obtain relief from a Secretary of State suspension/forfeiture should be directed to the Secretary of State, Statement of Information Unit, P.O. Box 944230, Sacramento CA 94244-2300, (916) 657-5448.

Questions regarding the requirements to obtain relief from a Franchise Tax Board suspension/forfeiture should be directed to the Franchise Tax Board, Attention: Revivor Unit, P.O. Box 942857, Sacramento, CA 94257-2021, (800) 852-5711.

```
 SSLPHM0                VIEW A LIMITED LIABILITY RECORD
FILE NUMBER: 200702910069  DATE: 01/02/07  STATUS: A        TYPE: DOMESTIC
CALIF NAME:    DYNAMIC SHOWCASES LLC


FOREIGN NAME:


ELEC:                                 LLC JURISDICTION: CA
EXEC OFFICE ADDRESS: 1841 N AVE 52
EXEC OFFICE CITY: LOS ANGELES         STATE/CNTRY: CA ZIP CODE: 90042

CALIF OFFICE ADDRESS: 1841 N AVE 52
CALIF OFFICE CITY: LOS ANGELES                      ZIP CODE: 90042

ORIG NUMBER:                ORIG DATE:            ORIG COUNTY:

AGENT NAME: MY CORPORATION BUSINESS SERVICES, INC. (C2222444)
AGENT ADDRESS:

AGENT CITY:                           STATE: CA    ZIP CODE:

TERM/LP:                              NO. OF AMENDS: 2  TOTAL PAGES 3
LLC MGMT CODE: A    BUSINESS TYPE: SHOWCASES FOR CHILDREN TO AUDITION FOR A

GP/MGR/MEMB:    RYAN FALCK

GP/MGR/MEMB ADDRESS:    1841 N AVE 52
GP/MGR/MEMB CITY:    LOS ANGELES       STATE: CA  ZIP CODE: 90042

GP/MGR/MEMB:

GP/MGR/MEMB ADDRESS:
GP/MGR/MEMB CITY:                      STATE:     ZIP CODE:

GP/MGR/MEMB:

GP/MGR/MEMB ADDRESS:
GP/MGR/MEMB CITY:                      STATE:     ZIP CODE:
THERE ARE NO MORE GP/MGR/MEMBS
   PF2=MODIFY REC   PF3=AMEND REC   PF9=AMENDMENT HISTORY
                                                CLEAR=MAIN MENU
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 6

| From: | "Cristina Mendoza" <CristinaM@gonnabe.com> |
|---|---|
| Subject: | **Collecting Info for the "bumble"** |
| Date: | September 30, 2008 11:03:26 AM PDT |
| To: | "Kimberly Ocampo" <KimberlyO@gonnabe.com>, "Magi Pledger" <MagiP@gonnabe.com>, "Christina Ferra-Gilmore" <risingstars@socal.rr.com>, "Don Baker" <DonB@gonnabe.com>, "Katelyn Bobrow" <KatelynB@gonnabe.com>, "Nicolas Fordham" <NicolasF@gonnabe.com>, "Rebecca Whitman" <RebeccaW@gonnabe.com>, "Tanya Estrada" <TanyaE@gonnabe.com>, <vestermapp@yahoo.com>, <mbass@spellcom.com>, "Josh Zaretsky" <JoshZ@gonnabe.com>, "Emily Conti" <emily@gonnabe.com>, <risingstars_sanfran@yahoo.com>, <noelmarshall@live.com>, <jaysteinbeck@yahoo.com>, "Aerin Siller" <AerinS@gonnabe.com>, "Erin Lofstrom" <ErinL@gonnabe.com>, <maile@blueskysf.com>, "Tamara Rivera" <tamara@blueskypeople.com>, "Oliver Lollis" <oliverl@gonnabe.com>, "Nick Tabri" <nick@gonnabe.com>, "Paige Casamento" <PaigeC@gonnabe.com>, "Gene Gilmore" <genegilmore@msn.com>, "Joel Anderson" <JoelA@gonnabe.com>, "Martha Brown" <MarthaB@gonnabe.com>, "Jeremy Tardiff" <JeremyT@gonnabe.com>, "Martin Herrera" <Martin@urgeartists.com>, "Diane Perez" <diane@dperezentertainment.com>, <dhprestigiouspr@yahoo.com> |

Good Morning Everyone,

I am collecting information for this week's *bumble*.

- Please give me all of the Oct. Birthdays.
- Good News
- Success Stories

Thank you,

**Cristina Mendoza Lopez**
**Executive Assistant**
**310.432.0006**
**CristinaM@gonnabe.com**
**www.gonnabe.com**

From:   "Cristina Mendoza" <CristinaM@gonnabe.com>
Subject:   **Collecting info for this week's bumble.**
Date:   October 15, 2008 10:45:42 AM PDT
To:   "Kimberly Ocampo" <KimberlyO@gonnabe.com>, "Magi Pledger" <MagiP@gonnabe.com>, "Christina Ferra-Gilmore"
      <risingstars@socal.rr.com>, "Don Baker" <DonB@gonnabe.com>, "Katelyn Bobrow" <KatelynB@gonnabe.com>, <diane@urgeartists.com>,
      "Nicolas Fordham" <NicolasF@gonnabe.com>, "Rebecca Whitman" <RebeccaW@gonnabe.com>, "Tanya Estrada" <TanyaE@gonnabe.com>,
      <vestermapp@yahoo.com>, <mbass@spellcom.com>, "Josh Zaretsky" <JoshZ@gonnabe.com>, "Emily Conti" <emily@gonnabe.com>,
      <risingstars_sanfran@yahoo.com>, <noelmarshall@live.com>, <jaysteinbeck@yahoo.com>, "Aerin Siller" <AerinS@gonnabe.com>, "Erin
      Lofstrom" <ErinL@gonnabe.com>, <maile@blueskysf.com>, "Tamara Rivera" <tamara@blueskypeople.com>, "Oliver Lollis"
      <oliverl@gonnabe.com>, "Nick Tabri" <nick@gonnabe.com>, "Paige Casamento" <PaigeC@gonnabe.com>, "Gene Gilmore"
      <genegilmore@msn.com>, "Joel Anderson" <JoelA@gonnabe.com>, "Martha Brown" <MarthaB@gonnabe.com>, "Jeremy Tardiff"
      <JeremyT@gonnabe.com>, "Martin Herrera" <Martin@urgeartists.com>, <dhprestigiouspr@yahoo.com>

Good Morning Everyone,

I am collecting information for this week's bumble.   :o)

Please email me as soon as you can.

Thanks,

**Cristina Mendoza Lopez**
**Executive Assistant**
**310.432.0006**
**CristinaM@gonnabe.com**
**www.gonnabe.com**

| From: | "Cristina Mendoza" <CristinaM@gonnabe.com> |
|---|---|
| Subject: | **Collecting info for bumble.....** |
| Date: | October 22, 2008 10:24:16 AM PDT |
| To: | "Kimberly Ocampo" <KimberlyO@gonnabe.com>, "Magi Pledger" <MagiP@gonnabe.com>, "Christina Ferra-Gilmore" <risingstars@socal.rr.com>, "Don Baker" <DonB@gonnabe.com>, "Katelyn Bobrow" <KatelynB@gonnabe.com>, <diane@urgeartists.com>, "Nicolas Fordham" <NicolasF@gonnabe.com>, "Rebecca Whitman" <RebeccaW@gonnabe.com>, "Tanya Estrada" <TanyaE@gonnabe.com>, <vestermapp@yahoo.com>, <mbass@spellcom.com>, "Josh Zaretsky" <JoshZ@gonnabe.com>, "Emily Conti" <emily@gonnabe.com>, <risingstars_sanfran@yahoo.com>, <noelmarshall@live.com>, <jaysteinbeck@yahoo.com>, "Aerin Siller" <AerinS@gonnabe.com>, "Erin Lofstrom" <ErinL@gonnabe.com>, <maile@blueskysf.com>, "Tamara Rivera" <tamara@blueskypeople.com>, "Oliver Lollis" <oliverl@gonnabe.com>, "Nick Tabri" <nick@gonnabe.com>, "Paige Casamento" <PaigeC@gonnabe.com>, "Gene Gilmore" <genegilmore@msn.com>, "Joel Anderson" <JoelA@gonnabe.com>, "Martha Brown" <MarthaB@gonnabe.com>, "Jeremy Tardiff" <JeremyT@gonnabe.com>, "Martin Herrera" <Martin@urgeartists.com>, <dhprestigiouspr@yahoo.com> |

Good Morning Everyone,

I am collecting information for the bumble.  Please send me what you have for this week as soon as possible, I want to publish it by Thursday evening.

Any exciting news
Success Stories
New Classes
Progress Reports
any kids/employee's that excel
policy changes
shout outs
anything

Thank you guys!!!

**Cristina Mendoza Lopez**
**Executive Assistant**
**310.432.0006**
**CristinaM@gonnabe.com**
**www.gonnabe.com**

| | |
|---|---|
| **From:** | "Cristina Mendoza" <CristinaM@gonnabe.com> |
| **Subject:** | **Collecting Articles for this week's Bumble.** |
| **Date:** | November 25, 2008 12:23:12 PM PST |
| **To:** | "Kimberly Ocampo" <KimberlyO@gonnabe.com>, "Magi Pledger" <MagiP@gonnabe.com>, "Christina Ferra-Gilmore" <risingstars@socal.rr.com>, "Don Baker" <DonB@gonnabe.com>, "Katelyn Bobrow" <KatelynB@gonnabe.com>, "Nicolas Fordham" <NicolasF@gonnabe.com>, "Rebecca Whitman" <RebeccaW@gonnabe.com>, <vestermapp@yahoo.com>, <mbass@spellcom.com>, "Josh Zaretsky" <JoshZ@gonnabe.com>, "Emily Conti" <emily@gonnabe.com>, <risingstars_sanfran@yahoo.com>, <noelmarshall@live.com>, <jaysteinbeck@yahoo.com>, "Aerin Siller" <AerinS@gonnabe.com>, "Erin Lofstrom" <ErinL@gonnabe.com>, <maile@blueskysf.com>, "Tamara Rivera" <tamara@blueskypeople.com>, "Oliver Lollis" <oliverl@gonnabe.com>, "Nick Tabri" <nick@gonnabe.com>, "Paige Casamento" <PaigeC@gonnabe.com>, "Gene Gilmore" <genegilmore@msn.com>, "Joel Anderson" <JoelA@gonnabe.com>, "Martha Brown" <MarthaB@gonnabe.com>, "Jeremy Tardiff" <JeremyT@gonnabe.com>, "Martin Herrera" <Martin@urgeartists.com>, "Pablo Koguchi" <PabloK@gonnabe.com>, <dhprestigiouspr@yahoo.com> |

Hi Guys,

I am collecting articles for this week's bumble.  Yay!  :o)

Being that this is a short week, please send me your articles by tomorrow morning.  Today would be great, but tomorrow morning is fine too.  I will email the newsletter Wednesday afternoon/evening.

Thank you Guys!

*Cristina Mendoza Lopez*
*Executive Assistant*

*6005 Yolanda Ave.*
*Tarzana, CA 91356*
*T: (818) 578-7199*
*F: (818) 578-7290*
*cristinam@gonnabe.com*

*Hollywood is Here!*
*www.gonnabe.com*

| From: | "Cristina Mendoza" <CristinaM@gonnabe.com> |
|---|---|
| Subject: | **Collecting Articles for this wk's Bumble** |
| Date: | January 6, 2009 11:55:45 AM PST |
| To: | "Kimberly Ocampo" <KimberlyO@gonnabe.com>, "Magi Pledger" <MagiP@gonnabe.com>, "Christina Ferra-Gilmore" <risingstars@socal.rr.com>, "Don Baker" <DonB@gonnabe.com>, "Katelyn Bobrow" <KatelynB@gonnabe.com>, "Nicolas Fordham" <NicolasF@gonnabe.com>, "Rebecca Whitman" <RebeccaW@gonnabe.com>, <vestermapp@yahoo.com>, <mbass@spellcom.com>, "Josh Zaretsky" <JoshZ@gonnabe.com>, "Emily Conti" <emily@gonnabe.com>, <risingstars_sanfran@yahoo.com>, <noelmarshall@live.com>, <jaysteinbeck@yahoo.com>, "Aerin Siller" <AerinS@gonnabe.com>, "Erin Lofstrom" <ErinL@gonnabe.com>, <maile@blueskysf.com>, "Tamara Rivera" <tamara@blueskypeople.com>, "Oliver Lollis" <oliverl@gonnabe.com>, "Nick Tabri" <nick@gonnabe.com>, "Paige Casamento" <PaigeC@gonnabe.com>, "Gene Gilmore" <genegilmore@msn.com>, "Joel Anderson" <JoelA@gonnabe.com>, "Martha Brown" <MarthaB@gonnabe.com>, "Jeremy Tardiff" <JeremyT@gonnabe.com>, "Martin Herrera" <Martin@urgeartists.com>, "Pablo Koguchi" <PabloK@gonnabe.com>, <dhprestigiouspr@yahoo.com> |

Good Morning Everyone!!!

Happy New Year to all.   :o)

It's that time again.   Yes...it's bumble time!

Please send me your articles as soon as you can.  Preferably by Wednesday afternoon/evening.

- All Jan Birthdays
- Exciting News (Engagements, Baby News, Promotions, etc.)
- Shout Outs
- Be. Success Stories
- What's new at your comp./dept.
- Updated Info


Thank you lots!!!

*Cristina Mendoza Lopez*
*Executive Assistant*

*6005 Yolanda Ave.*
*Tarzana, CA 91356*
*T: (818) 578-7199*
*F: (818) 578-7290*
*cristinam@gonnabe.com*

*Hollywood is Here!*
*www.gonnabe.com*

| | |
|---|---|
| From: | "Cristina Mendoza" <CristinaM@gonnabe.com> |
| Subject: | **Collecting Articles for this week's bumble** |
| Date: | January 13, 2009 2:54:11 PM PST |
| To: | "Kimberly Ocampo" <KimberlyO@gonnabe.com>, "Magi Pledger" <MagiP@gonnabe.com>, "Christina Ferra-Gilmore" <risingstars@socal.rr.com>, "Don Baker" <DonB@gonnabe.com>, "Katelyn Bobrow" <KatelynB@gonnabe.com>, "Nicolas Fordham" <NicolasF@gonnabe.com>, "Rebecca Whitman" <RebeccaW@gonnabe.com>, <vestermapp@yahoo.com>, <mbass@spellcom.com>, "Josh Zaretsky" <JoshZ@gonnabe.com>, "Emily Conti" <emily@gonnabe.com>, <risingstars_sanfran@yahoo.com>, <noelmarshall@live.com>, <jaysteinbeck@yahoo.com>, "Aerin Siller" <AerinS@gonnabe.com>, "Erin Lofstrom" <ErinL@gonnabe.com>, <maile@blueskysf.com>, "Tamara Rivera" <tamara@blueskypeople.com>, "Oliver Lollis" <oliverl@gonnabe.com>, "Nick Tabri" <nick@gonnabe.com>, "Paige Casamento" <PaigeC@gonnabe.com>, "Gene Gilmore" <genegilmore@msn.com>, "Joel Anderson" <JoelA@gonnabe.com>, "Martha Brown" <MarthaB@gonnabe.com>, "Jeremy Tardiff" <JeremyT@gonnabe.com>, "Martin Herrera" <Martin@urgeartists.com>, "Pablo Koguchi" <PabloK@gonnabe.com>, <dhprestigiouspr@yahoo.com> |

Hello Everyone.

I hope everyone is having a wonderful week.  :o)

It's that time again.  Please send me your articles for the bumble no later than Thursday morning.

***It is very very important that I get all "new employee's emails" so that I can add them to the bumble distribution list.***

Thank you lots,

*Cristina Mendoza Lopez*
*Executive Assistant*

*6005 Yolanda Ave.*
*Tarzana, CA 91356*
*T: (818) 578-7199*
*F: (818) 578-7290*
[cristinam@gonnabe.com](mailto:cristinam@gonnabe.com)

*Hollywood is Here!*
[www.gonnabe.com](http://www.gonnabe.com)

| From: | "Cristina Mendoza" <CristinaM@gonnabe.com> |
|---|---|
| Subject: | **the bumble-articles** |
| Date: | April 21, 2009 5:24:11 PM PDT |
| To: | "Nicole Lewis" <NicoleL@gonnabe.com>, "Mike Chang" <MikeC@gonnabe.com>, "Christina Takahashi" <ChristinaT@gonnabe.com>, "Cheryl Bohling" <CherylB@gonnabe.com>, "Kimberly Ocampo" <KimberlyO@gonnabe.com>, "Shannon Gonzalez" <ShannonG@gonnabe.com>, "SJ My Artist's Place Coordinator" <sjcoordinator@gonnabe.com>, "Amy Wildrick" <AmyW@gonnabe.com>, "Christina Ferra-Gilmore" <risingstars@socal.rr.com>, "Ted Maston" <TedM@gonnabe.com>, "Olivia Lopez" <OliviaL@gonnabe.com>, "Melody Bahu" <MelodyB@gonnabe.com>, "Debra Mendoza" <DebraM@gonnabe.com>, "Don Baker" <DonB@gonnabe.com>, "Maybelline Gutierrez" <MaybellineG@gonnabe.com>, "Katelyn Bobrow" <KatelynB@gonnabe.com>, "Jennyfer Saenz" <JennyferS@gonnabe.com>, "Allyson Hayashi" <AllysonH@gonnabe.com>, "Sean Casamento" <SeanC@gonnabe.com>, "Barry Falck" <BarryF@gonnabe.com>, "Megan McClay" <MeganM@gonnabe.com>, "Anila Khan" <AnilaK@gonnabe.com>, "Rebecca Whitman" <RebeccaW@gonnabe.com>, "Nicolas Fordham" <NicolasF@gonnabe.com>, "Ludwig Minassian" <LudwigM@gonnabe.com>, "Kamri Collins" <KamriC@gonnabe.com>, "Jessica Pearce" <JessicaP@gonnabe.com>, "Kira Dahlgren Lancaster" <KiraL@gonnabe.com>, <vestermapp@yahoo.com>, "Phoebe Ly" <PhoebeL@gonnabe.com>, "Kevin Bobrow" <KevinB@gonnabe.com>, <mbass@spellcom.com>, "Josh Zaretsky" <JoshZ@gonnabe.com>, "Emily Conti" <emily@gonnabe.com>, "Teresa Lugo" <TeresaL@gonnabe.com>, "Barbara Wyner" <BarbaraW@gonnabe.com>, "Erika Ramos" <ErikaR@gonnabe.com>, "Adam Berman" <AdamB@gonnabe.com>, "Sal Hasanzada" <SalH@gonnabe.com>, "Barry Falck - External" <barry@atvd.com>, <risingstars_sanfran@yahoo.com>, <noelmarshall@live.com>, "Terry Cannon" <TerryC@gonnabe.com>, "Heather Hohenstein" <HeatherH@gonnabe.com>, "Courtney Hughes" <CourtneyH@gonnabe.com>, "Leah Ngo" <LeahN@gonnabe.com>, "Tyeshia Brown" <TyeshiaB@gonnabe.com>, "Courtney Furia" <CourtneyF@gonnabe.com>, "America Roberts" <AmericaR@gonnabe.com>, <jaysteinbeck@yahoo.com>, "Erin Lofstrom" <ErinL@gonnabe.com>, "Jessica Davis" <JessicaD@gonnabe.com>, "Therese Manalo" <ThereseM@gonnabe.com>, "Rachel Shifflett" <RachelS@gonnabe.com>, "Casting Associate" <CastingA@gonnabe.com>, "Alexander Emmert" <AlexanderE@gonnabe.com>, <maile@blueskysf.com>, "Tamara Rivera" <tamara@blueskypeople.com>, "Dana Cookson" <DanaC@gonnabe.com>, "Ryan Riedy" <RyanR@gonnabe.com>, "Courtney Broussard" <CourtneyB@gonnabe.com>, "Ej DeSando" <erik@idtalent.com>, "Nick Tabri" <nick@gonnabe.com>, "Lisa Morris" <LisaM@gonnabe.com>, "Brittney Johnson" <BrittneyJ@gonnabe.com>, "Dane Penick" <DaneP@gonnabe.com>, "Gene Gilmore" <genegilmore@msn.com>, "Joel Anderson" <JoelA@gonnabe.com>, "SJ My Artist's Place Scheduling" <sjscheduling@gonnabe.com>, "Aviva Gonzalez" <AvivaG@gonnabe.com>, "Martin Herrera" <Martin@urgeartists.com>, "Sharron McBride" <SharronM@gonnabe.com>, "Nicole Zorilla" <NicoleZ@gonnabe.com>, "Anthony Corder" <anthonycsd@gonnabe.com>, "Domingo Casanas" <DomingoC@gonnabe.com>, "Pablo Koguchi" <PabloK@gonnabe.com>, "Peter Ohsol" <PeterO@gonnabe.com>, <dhprestigiouspr@yahoo.com>, "EJ DeSando" <erikd@gonnabe.com> |

Hi Guys,

Please don't forget to send me your articles for the Bumble.

-Is there a reoccurring question that parents keep asking?  Send it to me and I'll post it on the bumble under FAQ's.
-Send me your shot outs and praises
-Updated Policies
-What your dept/comp is up too
-Birthdays...is your B-day coming up?

Don't stop sending me your articles.

Thanks guys!

*Cristina Mendoza Lopez*
*6005 Yolanda Ave.*
*Tarzana, CA 91356*
*Office: (818) 578-7190*
*Cell: (310) 904-2890*
*Fax: (818) 578-7290*
*cristinam@gonnabe.com*

**Hollywood is Here!**
www.gonnabe.com

**Service Line: (800) 974-9178**