Ethan Preston (263295)
PRESTON LAW OFFICES
21001 N. Tatum Blvd., Ste. 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866-509-1197 (facsimile)
ep@eplaw.us

Robert M. Bramson (102006)
Michael S. Strimling (96135)
BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
(925) 945-0200 (telephone)
(925) 945-8792 (facsimile)
rbramson@bramsonplutzik.com
mstrimling@bramsonplutzik.com

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| TIMOTHY and JEANNE DuFOUR and KENNETH TANNER, individuals, on their own behalves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BE., LLC, DYNAMIC SHOWCASES, LLC, California limited liability companies, MONTEREY FINANCIAL SERVICES, INC., a California corporations, BE MARKETING LIMITED, a private limited company registered in England and Wales, ERIK DeSANDO, BARRY FALCK, JACOB STEINBECK, and DOES 1-100, inclusive,<br><br>Defendants. | No. 09-03770-CRB<br><br>Judge Charles R. Breyer<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER**<br><br>**Date:** October 1, 2010<br>**Time:** 10:00 am<br>**Location:** Courtroom 8, 19th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

## TABLE OF CONTENTS

I. Introduction ................................................................................................................. 1

II. Steinbeck Misstates the Relief Sought in the Motion........................................................ 2

    A. Motion Only Seeks To Protect Class Members' Communications with Plaintiffs' Counsel ................................................................................................. 2

    B. An Abbreviated Privilege Log Is Appropriate Under the Circumstances ...... 3

III. The Identities of Class Members Who Have Contacted Plaintiffs' Counsel are Private ................................................................................................................................. 4

    A. The Privacy Interests of Class Members Who Have Contacted Plaintiffs' Counsel are as Strong as Those in *Tien* ........................................................... 5

    B. Steinbeck Has Not Shown a Countervailing Need for the Information .......... 6

IV. The Communications of Class Members Who Have Contacted Plaintiffs' Counsel are Privileged ............................................................................................................... 7

    A. Steinbeck's Attachments Do Not Support His Position ................................... 8

    B. Steinbeck Misstates How the Privilege Works ................................................. 9

V. The Common Interest Privilege Applies to Putative Class Members ....................... 11

VI. An Abbreviated Privilege Log Is Appropriate............................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Babbitt v. Albertson's Inc.*,
   No. 92-1883, 1993 WL 150300 (N.D. Cal. Mar. 31, 1993)..................................................... 9

*Barton v. U.S. Dist. Court for Central Dist. of Cal.*,
   410 F.3d 1104 (9th Cir. 2005) ...............................................................................3, 8, 9, 10

*Burlington Northern & Santa Fe Railway Co. v. U.S. Dist. Court for Dist. of Mont.*,
   408 F.3d 1142 (9th Cir. 2005) ...........................................................................................3, 4, 12

*Castaneda v. Burger King Corp.*,
   No. 08-4262, 2009 WL 2382688 (N.D. Cal. July 31, 2009)...................................................... 7

*DuFour v. Be., LLC*,
   No. 09-3770, 2009 WL 4730897 (N.D. Cal. Dec. 7, 2009) ...................................................... 6

*E.E.O.C. v. International Profit Assocs., Inc.*,
   206 F.R.D. 215 (N.D. Ill. 2002) ............................................................................................... 3

*Fox Indus., Inc. v. Gurovich*,
   No. 03-5166, 2006 WL 2882580 (E.D.N.Y. Oct. 6, 2006)....................................................... 1

*Griffith v. Davis*,
   161 F.R.D. 687 (C.D. Cal. 1995)............................................................................................. 12

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
   115 F.R.D. 308 (N.D. Cal. 1987) ............................................................................................ 11

*In re Convergent Tech. Sec. Litig.*,
   108 F.R.D. 328 (N.D. Cal. 1985) ............................................................................................. 3

*In re Grand Jury Investigation*,
   399 F.3d 527 (2d Cir. 2005)..................................................................................................... 10

*In re Napster, Inc. Copyright Litig.*,
   462 F. Supp. 2d 1060 (N.D. Cal. 2006)....................................................................................7

*Jaffee v. Redmond*,
   518 U.S. 1 (1996) ..................................................................................................................... 10

*Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc.*,
   212 F.R.D. 567 (E.D. Cal. 2002) ............................................................................................. 11

*Nidec Corp. v. Victor Co. of Japan*,
   249 F.R.D. 575 (N.D. Cal. 2007) ............................................................................................. 11

*Perry v. Schwarzenegger*,
   264 F.R.D. 576 (N.D. Cal. 2009) .......................................................................... 10

*Pioneer Elecs. (USA), Inc. v. Superior Court*,
   40 Cal. 4th 360 (2007) ............................................................................................ 6

*Schachar v. Am. Academy of Ophthalmology, Inc.*,
   106 F.R.D. 187 (N.D. Ill. 1985) ........................................................................... 11

*Speaker ex rel. Speaker v. County of San Bernardino*,
   82 F. Supp. 2d 1105 (C.D. Cal. 2000) ................................................................. 10

*Tien v. Superior Court*,
   139 Cal. App. 4th 528 (2006) .................................................................. 2, 5, 6, 13

*Tierno v. Rite Aid Corp.*,
   No. 05-02520, 2008 WL 2705089 (N.D. Cal. July 8, 2008) .......................... 2, 4, 7

**STATUTES**

Cal. Corp. Code § 17106(b) .......................................................................................... 7

Cal. Evid. Code § 950 ................................................................................................. 10

Cal. Lab. Code § 1701.13 (2009) .................................................................................. 6

Cal. Pen. Code § 135 .................................................................................................... 7

Fed. R. Civ. P. 26(b) .................................................................................................... 4

Fed. R. Civ. P. 26(c) .................................................................................................... 1

Fed. R. Civ P. 26(b)(5)(A) ........................................................................................ 2, 3

Rule 45 ......................................................................................................................... 1

**OTHER AUTHORITIES**

Bill Analysis, Assem. Bill 884, *available at* http://www.leginfo.ca.gov/pub/99-
   00/bill/asm/ab_0851-0900/ab_884_cfa_19990422_080433_ ................................. 6

California constitution .............................................................................................. 2, 5

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
## FOR PROTECTIVE ORDER

Plaintiffs Timothy DuFour, Jeanne DuFour, and Kenneth Tanner ("Plaintiffs") hereby respectfully submit their Reply brief in support of their Motion for a protective order under Federal Rule 26(c) as to Defendant Jacob Steinbeck's ("Steinbeck") discovery requests for certain communications between Plaintiffs' counsel and former customers of Be., LLC ("Be").

## I. INTRODUCTION

Plaintiffs did not want to file this Motion. They have done so in order to protect privileged communications to and from class members, and Steinbeck demanded that they file this Motion in lieu of simply accepting an abbreviated privilege log.

The backdrop to this Motion is hotly contested, discovery-intensive litigation which pits Plaintiffs against a looming November 15 deadline for their opposition to Steinbeck's motion for summary judgment, and a defendant who has not only withheld relevant documents, but has repeatedly, unequivocally, and vehemently denied that such documents exist. (Preston Decl., Dkt #113 ¶¶13, 19, 31, 33.) Steinbeck has also actively disrupted and delayed third party witnesses' compliance with Plaintiffs' subpoenas through misleading and improper "objections" to witnesses' productions. (*Id.* ¶26.) *Cf. Fox Indus., Inc. v. Gurovich*, No. 03-5166, 2006 WL 2882580, *8-10 (E.D.N.Y. Oct. 6, 2006) (sanctioning party which promised to file motion quash but instead sent letters to recipients of subpoenas that stated subpoenas were "null and void" because of supposed violations of Rule 45; it is not a party's "job to pass judgment" on subpoena outside of motion to quash).

Steinbeck now seeks to improperly interpose himself into one of Plaintiffs' most important sources of information in this case – confidential communications between prospective class members and class counsel. Steinbeck has taken any number of inconsistent positions on this and related matters: Steinbeck is not acting in good faith.[1] Steinbeck also seeks to impose an enormous – and essentially pointless – burden of compiling a privilege log with at least 450

---

[1] For instance, Steinbeck takes the *exact opposition position* in his own responses to Plaintiffs' requests for production 16, 18, 20, and 21 which object that "[d]iscovery pertaining to any individual other than the named Plaintiffs is inappropriate unless and until a class has been certified."

| Plaintiffs' Reply in Support of | 1 | No. 09-3770 CRB |
| Their Motion for Protective Order | | |

entries in order to protect these communications, at the same time he has refused to produce any privilege log whatsoever . Steinbeck now asserts that there are no responsive, privileged documents when it is perfectly clear that is not the case. (*Cf.* Dkt. #110 18 n.18 *with* #113 ¶27.)

## II.  STEINBECK MISSTATES THE RELIEF SOUGHT IN THE MOTION

Plaintiff's Motion presents two interrelated questions. First, what information should Plaintiffs' counsel withhold from Steinbeck? Second, what information does Plaintiffs' counsel need to provide under Rule 26(b)(5)(A) to show that they should withhold such information –or put more plainly, what kind of privilege log does Plaintiffs' counsel need to compile? Steinbeck's opposition mischaracterizes the issues in both questions.

### A.  Motion Only Seeks To Protect Class Members' Communications with Plaintiffs' Counsel

Steinbeck asserts that granting Plaintiffs' Motion "would improperly deny every class defendant the ability to obtain relevant information from any unrepresented witness class members who ever had any contact with a plaintiffs' counsel before certification." (Def.'s Opp. 1.) This is not true. What is at stake in Steinbeck's discovery – and what the law clearly protects – is the identity of specific class members *that contacted Plaintiffs' counsel* and their *communications* with Plaintiffs' counsel. Steinbeck is just as able to communicate with and take discovery from absent class members as Plaintiffs. Likewise, Steinbeck's assertion claim that the Motion seeks a "blanket privilege that protects all pre-certification communications between Plaintiffs' counsel and the putative class" is simply not true. (Def.'s Opp. 8.) Plaintiffs carefully screened the documents in their privilege log and are producing communications that are not privileged because of, e.g., confidentiality issues.

The case law is clear and it affords Steinbeck no access to communications between prospective class members and Plaintiffs' counsel. The right to privacy in the California constitution protects prospective class members' consultations with contacted Plaintiffs' counsel. *Tien v. Superior Court*, 139 Cal. App. 4th 528, 539 (2006). Likewise, the attorney client privilege applies to communications between prospective class member and Plaintiffs' counsel. *See, e.g., Tierno v. Rite Aid Corp.*, No. 05-02520, 2008 WL 2705089, *1 (N.D. Cal. July 8,

2008) (declarations by prospective class members "were protected by the attorney-client privilege because class members who sought them out to find out about the status of the case were seeking legal advice"); *E.E.O.C. v. International Profit Assocs., Inc.*, 206 F.R.D. 215, 219 (N.D. Ill. 2002) ("[c]ommunications between prospective class members and EEOC counsel and their agents are protected from disclosure by the attorney-client privilege"). The fact that Plaintiffs' counsel do not represent prospective class members prior to certification is not relevant, because both the prospective class members and Plaintiffs' counsel intend to create an attorney-client relationship by certifying the class. *Barton v. U.S. Dist. Court for Central Dist. of Cal.*, 410 F.3d 1104, 1111 (9th Cir. 2005) ("[p]rospective clients' communications with a view to obtaining legal services . . . regardless of whether they have retained [Plaintiffs' counsel], and regardless of whether they ever retain [Plaintiffs' counsel]").

Moreover, Steinbeck has (or should have) possession of the names of all class members, i.e., Be's customers. If does not, he should be sanctioned, not rewarded with breaching class members' privilege.

**B.  An Abbreviated Privilege Log Is Appropriate Under the Circumstances**

The second issue is what information needs to be included in Plaintiffs' privilege logs. Steinbeck has demanded Plaintiffs to turn to the Court for protection as required under *Burlington Northern & Santa Fe Railway Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142 (9th Cir. 2005). Steinbeck's refusal to agree to an abbreviated privilege log, or some other reasonable alternative, runs counter to the Court's admonishment that counsel should "take positions that force others to turn to the courts[] only in extraordinary situations that implicate truly significant interests." *In re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985). Here, the only issue at stake is communications with Plaintiffs' counsel – *not the underlying evidence in class members' control*.

The requirements for privilege logs under Rule 26(b)(5)(A) are flexible and intended to adapt appropriately to different situations:

> [Rule 26(b)(5)(A)] does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection.

> *Details concerning time, person, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.*

Fed. R. Civ. P. 26(b) advisory committee note on 1993 amendment (emphasis added). An abbreviated privilege log is appropriate here. Plaintiffs are in the midst of preparing their opposition to Steinbeck's motion for summary judgment which is due in eight weeks. (Preston Decl., Dkt. #107-1 ¶3.) Steinbeck has fought discovery tooth and nail, and Plaintiffs anticipate filing a motion to compel to get documents needed to prepare for the multiple depositions required in this case. (*Id.*) All of this will need to be completed in time for Plaintiffs to file a response to Steinbeck's motion for summary judgment *six weeks* after this Motion is heard. There are roughly 300 to 450 emails and 150 other documents implicated by the Motion. Given the briefing schedule for Steinbeck's motion for summary judgment, forcing Plaintiffs to prepare a document-by-document privilege log will sap substantial time and resources and thereby prejudice Plaintiffs' opposition to the motion for summary judgment. (*Id.*)

Other circumstances support an abbreviated privilege log. Any log that identifies class members by name would violate their right to privacy and the privilege. *Tierno*, 2008 WL 2705089, at *3-4 (names of class members who provided declarations to class counsel were covered by privilege). Likewise, Steinbeck has produced less than two hundred pages of documents and **has not provided any privilege log whatsoever**. If Plaintiffs had just followed Steinbeck's tack, they would have simply sat on discovery and ignored *Burlington Northern*.

Despite all this, Steinbeck contends that Plaintiffs "cannot articulate any specific burden [as to] why an abbreviated privilege log would be necessary." (Def.'s Opp. 16-17.) The Ninth Circuit has recognized that "compiling a privilege log within 30 days may be exceedingly difficult, even for counsel who are sophisticated, experienced, well-funded, and acting in good faith." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 n.3 (9th Cir. 2005). There is a clear case for an abbreviated privilege log here.

### III. THE IDENTITIES OF CLASS MEMBERS WHO HAVE CONTACTED PLAINTIFFS' COUNSEL ARE PRIVATE

The identities of class members who contacted Plaintiffs' counsel are protected under the

right to privacy in the California constitution. *See Tien v. Superior Court*, 139 Cal. App. 4th 528, 539-40 (2006). Steinbeck contends that this situation merits a different result than *Tien* because it presents a different balance between "the right of a civil litigant to discover relevant facts, on the one hand, and the right of the third parties to maintain reasonable privacy regarding their sensitive personal affairs, on the other." *Id*. at 539. Steinbeck fails to distinguish *Tien* on its facts.

### A. The Privacy Interests of Class Members Who Have Contacted Plaintiffs' Counsel are as Strong as Those in *Tien*

In *Tien*, the parties used a third party neutral to mail letters to the putative class members in order to resolve a discovery dispute over the plaintiffs' efforts to learn the identity of putative class members. *Id*. at 533. Although these letters indicated putative class members could contact the plaintiffs' counsel to learn more, the plaintiffs' counsel did not know the identity of the class members, and it is self-evident that *plaintiffs' counsel in* Tien *was attempting to obtain information from the putative class*. *Id*. Although Steinbeck attempts to obscure the fact, the flow of information in *Tien* was *functionally* the same as presented here: from class members to class counsel. Moreover, the direction in which information flowed is besides the point. "[C]ompelling disclosure of the identity of persons who consult with counsel implicates their right of privacy," no matter which way the information flows between class members and class counsel. *Id*. at 539.

Steinbeck discounts class members' privacy interests, contending that their privacy rights are less significant than the class members in *Tien*. Whenever putative class members contact plaintiffs' counsel, the "privacy rights of [putative] class members are significant. . . . The identity of an attorney's clients is sensitive personal information that implicates the clients' rights of privacy." *Id*. at 540 (quoting *Hooser v. Superior Court*, 84 Cal. App. 4th 997, 1005-06 (2000), punctuation omitted).

Class members' privacy rights are especially significant here because Defendants' conduct is still emotionally charged for class members. Defendants targeted class members' children. Class members who contacted Plaintiffs' counsel often express their utter *outrage* at Defendants' conduct (consistent with the documents attached to Steinbeck's opposition). (*Cf.* Ex. B, Shraga Decl., Dkt. #111 ("We understand many of you are upset with the Defendants' actions

and want to ensure you are included in the class action").) Indeed, the California Legislature criminalized this conduct precisely because it involved "the exploitation of children, their families, and their hopes and dreams."[2] Bill Analysis, Assem. Bill 884, *available at* http://www.leginfo.ca.gov/pub/99-00/bill/asm/ab_0851-0900/ab_884_cfa_19990422_080433_ asm_comm.html (Apr. 22, 1999). Further, many of the class members were dunned and harassed to pay the balances on Be's illegal contracts, and some were *even threatened with criminal prosecution* if they did not pay. (*See* Wilson Decl., Dkt. #71-1, ¶ 5.)

Under these emotionally charged circumstances, class members would have an especially keen – and legally protected interest – in not being exposed to unwanted communications from Defendants' counsel because they contacted Plaintiffs' counsel. **Steinbeck's own refusal to provide documents to Plaintiffs based on the very same constitutional right to privacy casts a pall of bad faith over Steinbeck's arguments on this point.** In contrast to a class members' interest in the privacy of his communications with plaintiffs' counsel, class representatives need to identify potential class members typically outweighs consumers' privacy interests in their relationship with a vendor/class defendant. *See Pioneer Elecs. (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 363 (2007). Steinbeck was a member of Be which the Court has already provisionally found to have violated California law in its December 7, 2009 ruling. Steinbeck's contention that class members' privacy interest in not being identified to Plaintiffs is stronger than their privacy interest in being identified to Steinbeck's counsel is not supported by the law.

### B. Steinbeck Has Not Shown a Countervailing Need for the Information

Finally, Steinbeck purports to distinguish his need for the information at issue with the defendant in *Tien*. The fact that Steinbeck is an individual rather than a corporation tells us nothing about his need for this information. (Def.'s Mem. 16.) Moreover, Plaintiffs vigorously contest Steinbeck's assertion that he "does not have knowledge of Be., LLC's policies [or] know who all of the potential witnesses are." (*Id*.) This is the unsworn assertion of Steinbeck's counsel

---

[2] *Cf. DuFour v. Be., LLC*, No. 09-3770, 2009 WL 4730897, at *4 (N.D. Cal. Dec. 7, 2009) (finding that Be's contracts violated AFTSA) *with* Cal. Lab. Code § 1701.13 (2009) ("A person who willfully violates *any* provision of this chapter is guilty of a misdemeanor") (emphasis added).

– Steinbeck himself has not submitted a declaration to support this assertion. Even if this were true, it would only justify Steinbeck's need to identify class members – it does not justify the need to identify the specific class members *who have contacted Plaintiffs' counsel*.

Moreover, the prospect that Steinbeck does not have control over the records necessary to identify the class members is profoundly troubling and due to his own illegal acts. *See* Cal. Pen. Code § 135 (criminalizing destruction of evidence). Steinbeck was a member of Be and had legal control over its records. *See* Cal. Corp. Code § 17106(b). More to the point, Steinbeck had *de facto* control over Be. Steinbeck had a duty to preserve those records for litigation. *See In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1066, 1068 (N.D. Cal. 2006) (citing cases). He should have those records. If Steinbeck committed or permitted spoliation of those documents, he should be sanctioned – not rewarded.

## IV. THE COMMUNICATIONS OF CLASS MEMBERS WHO HAVE CONTACTED PLAINTIFFS' COUNSEL ARE PRIVILEGED

In each communication on Plaintiffs' privilege log, the class member inquired about the role of Plaintiff's counsel in the class action or the status of the case or expressed an interest in joining, assisting, or being included in the class action ("Communication"). (Preston Decl., Dkt. #107-1 ¶ 3.) Each such Communication is privileged because it expresses or implies an interest in the professional services of Plaintiffs' counsel in this case. This Court has held that "[t]he fact that the putative class members in this case contacted Plaintiffs' counsel may create a privilege for their communications with class counsel," and has "*admonished* [defense counsel] *not to inquire into the substance of any communications between Plaintiffs' counsel and putative plaintiffs*[.]" *Castaneda v. Burger King Corp.*, No. 08-4262, 2009 WL 2382688, at *6 (N.D. Cal. July 31, 2009) (emphasis added). *See also Tierno*, 2008 WL 2705089, at *1 (declarations by prospective class members "were protected by the attorney-client privilege because class members who sought them out to find out about the status of the case were seeking legal advice").

The Ninth Circuit has focused on the application of the attorney-client privilege to prospective class members and class counsel. The attorney-client privilege applies when a person

supplies information to an attorney would be "***likely to think that he is requesting that the law firm include him in [a] class action***" – even if the information was sent under an express disclaimer that there was no attorney-client relationship, and there was no assurance that any such relationship would *ever* be formed. *Barton*, 410 F.3d at 1111 (emphasis added). Class members' communications with Plaintiffs' counsel are privileged because both intend to *create* an attorney-client relationship by certifying the class.

### A. Steinbeck's Attachments Do Not Support His Position

The documents attached to Steinbeck's opposition support the application of the privilege under *Barton*. (*Cf*. Def.'s Opp. 3-5.) The first exhibit was a public webpage on Plaintiffs' counsel's website which simply asks potential Be members to provide information so Plaintiffs' counsel could evaluate them as potential class representatives (while explaining that absent class members would not necessarily need to hire their own attorney). (Ex. A Shraga Decl., Dkt. #111.) This communication is functionally indistinguishable the website questionnaire at issue in *Barton* (except it does not include the disclaimer at the root of the controversy in that case. *Cf. Barton*, 410 F.3d at 1110.) The other documents attached to Steinbeck's opposition indicate that both Plaintiffs' counsel and class members *intend to create an attorney-client relationship through class certification*:

> You do not need to contact us at this time *to ensure that you are included in the class action*. . . . We understand many of you are upset with the Defendants' actions and **want to ensure you are included in the class action** . . .

(Ex. B, Shraga Decl., Dkt. #111 (emphasis added). *See also* Ex. C, Shraga Decl., Dkt. #111 ("we are planning to ask the Court to certify the case as a class action."))

Steinbeck relies almost exclusively on the fact that Plaintiffs' counsel do not have an attorney-client relationship with the class to distinguish *Barton*. This of course misses *Barton*'s central point. An attorney-client relationship between unrepresented class members and Plaintiffs' counsel wants only class certification, and both the class members and counsel intend to cement the relationship by certifying a class. It is true that the class has not been certified (and, in theory, might never be certified), but the attorney-client privilege "plainly" covers "[p]rospective clients' communications with a view to obtaining legal services . . . regardless of

whether they have retained the lawyer, **and regardless of whether they ever retain the lawyer**." *Barton*, 410 F.3d at 1111. The formation of an attorney-client relationship is not, and cannot be, a prerequisite for the privilege. Without a privilege for communications *prior* to the attorney-client relationship, "people could not safely bring their problems to lawyers unless the lawyers had already been retained." *Id*.

Steinbeck also argues that there can be no privilege because Plaintiffs' counsel "disclaim[ed] the existence of any attorney client relationship with potential class members." (Def.'s Opp. 5.) This is simply the truth: there is nothing inconsistent with disclaiming an attorney-client with a prospective class member but asserting a privilege. *See Babbitt v. Albertson's Inc.*, No. 92-1883, 1993 WL 150300, at *6 (N.D. Cal. Mar. 31, 1993) (plaintiff's counsel properly labeled letters to putative class members as "privileged" even though they indicated no attorney-client relationship prior to certification "because the privilege attaches whenever a person consults an attorney for the purpose of obtaining legal advice, and if a class action is certified, all potential class members will be clients"). In *Barton*, the communications were privileged even though they were submitted under a disclaimer that required the submitter to acknowledge that they were "not 'forming an attorney client relationship' by sending in the answers." *Barton*, 410 F.3d at 1111. *Barton* found that California law "***requires*** that the attorney-client privilege apply, even though the plaintiffs [submitted information] **before the law firm represented them** and **with no assurance that it would**." *Id*. (emphasis added). The attorney-client *privilege* exists even when class counsel explains to prospective class members that there is no attorney-client *relationship* prior to certification.

### B.     Steinbeck Misstates How the Privilege Works

Steinbeck presents a few red herrings to distort how the attorney-client privilege actually functions in this case. Steinbeck stresses that he "should be allowed to review the contracts and marketing materials of potential class members [and] to interview them concerning their experiences related to the allegations" and urges that communications between defendants and putative class members "are presumptively allowed." (Def.'s Opp. 7, 8.) *These things are simply not at issue in this Motion.* Steinbeck is absolutely free to contact class members and collect

evidence from them, whether the Motion is granted or not. The Motion only seeks to protect *class members' communications with Plaintiffs' counsel* from Steinbeck's discovery. These are two very different issues; Steinbeck's contention is a complete red herring.

Lastly, Steinbeck stresses how relevant these communications are and how much Steinbeck needs them, and suggests that these are factors that should be weighed in determining whether the attorney-client privilege applies: "the need for the Communications and documents exchanged is far more compelling because they admittedly reflect information from percipient witnesses regarding Plaintiffs' allegations." (Def.'s Opp. 9. *See also id*. 6-7) The factors *Barton* considered related to the clients' subjective belief – because that is critical factor for establishing the attorney-client privilege under California law. *Barton*, 410 F.3d at 1107 ("More important than what the law firm intended is what the clients thought").[3] If the attorney-client privilege applies, it is not subject to "a balancing test, or other[] rule whereby a generalized assertion of privilege must yield to the demonstrated, specific need for evidence." *In re Grand Jury Investigation*, 399 F.3d 527, 535 (2d Cir. 2005) (citation, punctuation omitted). If it were otherwise, Plaintiffs certainly would be entitled to all of Steinbeck's communications with *his* attorneys. The privilege is "an absolute bar against disclosure" and does not involve "balancing of the [other party's] need for the information." *Perry v. Schwarzenegger*, 264 F.R.D. 576, 579 (N.D. Cal. 2009) (in comparison with First Amendedment privilege). Such balancing tests are inappropriate for a privilege like the attorney-client privilege because

> [m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the [privilege] and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. . . . [I]f the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."

*Jaffee v. Redmond*, 518 U.S. 1, 17-18 (1996) (recognizing psychotherapist privilege, quoting

---

[3]   *Cf*. Cal. Evid. Code § 950 ("lawyer" defined to include person "reasonably believed by the client to be authorized" to practice law); Cal. Evid. Code § 950 ("confidential communication" defined as communication "which, so far as the client is aware," is not disclosed to third party) *with Speaker ex rel. Speaker v. County of San Bernardino*, 82 F. Supp. 2d 1105, 1112 (C.D. Cal. 2000) (client's belief defines privilege under federal law as well).

*Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)). The purported relevance of the communications at issue is a red herring as well – the privilege applies to the relevant communications because they were made under the anticipation class certification by both class members and Plaintiffs' counsel.

## V. THE COMMON INTEREST PRIVILEGE APPLIES TO PUTATIVE CLASS MEMBERS

It has also been held there is sufficient "mutuality of interest" between a putative class representative and a putative class member who files his or her own lawsuit "for a joint privilege to arise regarding work product and attorney-client confidences" when "the factual bases for the two cases are sufficiently similar that the attorneys should be allowed to coordinate prosecution efforts to some extent without jeopardizing the confidentiality of their work product or their shared confidences." *Schachar v. Am. Academy of Ophthalmology, Inc.*, 106 F.R.D. 187, 192 (N.D. Ill. 1985).

Steinbeck seeks to distinguish *Schachar* by arguing that the common interest privilege cannot apply because "putative class members are not yet even *parties* to the litigation." (Def.'s Opp. 12 (emphasis in original).) But "there need not be actual litigation" for the common interest privilege to apply: the privilege "can extend to interested third parties who have a community of interests with respect to the subject matter of the communications." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (citation, punctuation omitted). Further:

> The protection of the privilege under the community of interest rationale, however, is not limited to joint litigation preparation efforts. It is applicable whenever parties with common interests joint forces for the purpose of obtaining more effective legal assistance.

*Id.* (same). Thus, courts routinely recognize that common interest privilege extends to nonparties. *See Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 571-73 (E.D. Cal. 2002) (common interest privilege applied to communications with defendant's non-party liability insurer); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 309 (N.D. Cal. 1987) (common interest privilege applied to defendants' communications with non-party who was potential purchaser of defendant's division that allegedly infringed on patent at issue).

Steinbeck also suggests that there is no common interest because putative class members

1  may not "always have the same interests" and "often times members of a class will be directly at
2  odds with the representative when, for example, the terms of a settlement are objected to."
3  (Def.'s Opp. 12-13.) This argument also fails: "[t]he interests of the parties involved in a
4  common defense need not be identical, and, indeed may even be adverse in some respects."
5  *Griffith v. Davis*, 161 F.R.D. 687, 692 n.6 (C.D. Cal. 1995) (quoting *Hunydee v. United States*,
6  355 F.2d 183, 185 (9th Cir. 1965) (application of joint defense privilege where "co-defendants
7  generally had a significant conflict of interest"); *Eisenberg v. Gagnon*, 766 F.2d 770, 787-88 (3d
8  Cir. 1985) (recognition that "communications to an attorney to establish a common defense
9  strategy are privileged even though the attorney represents another client with some adverse
10 interests")). While Steinbeck speculates at potential conflicts, this is just a scattershot argument:
11 it is clear that common interest privilege survives even serious, real conflicts (such as between
12 Steinbeck and *his* co-Defendants).

### VI. AN ABBREVIATED PRIVILEGE LOG IS APPROPRIATE

14      There are three equally expedient remedies available to the Court. Plaintiffs have already
15 provided a satisfactory abbreviated privilege log. Moreover, it is clear that an *in camera* review
16 would be required before any Communication is produced to Steinbeck. Before devoting these
17 judicial resources, the Court may find it more expedient to continue discovery into the
18 Communications until after Steinbeck's motion for summary judgment is briefed (and then
19 compiling a document-by-document privilege log, if necessary), or simply continue the briefing
20 on Steinbeck's motion for summary judgment until the disputes over the Communications are
21 resolved.

22      Plaintiffs have amply explained why an abbreviated privilege log is appropriate above
23 and in their opening brief. While Steinbeck asserts that the burdens presented by Plaintiffs are
24 "unpersuasive," the fact is that this case cannot be funded or staffed like a massive securities or
25 antitrust class action. Steinbeck's own resistance to discovery, motions, and threatened motions
26 continue to require an undue amount of time and attention. *Cf. Burlington N.*, 408 F.3d at 1149
27 n.3 (compiling timely privilege log "may be exceedingly difficult, even for counsel who are
28 sophisticated, experienced, well-funded, and acting in good faith"). Further, Plaintiffs have

already adequately described the contents of these Communications. (Preston Decl., Dkt. #107-1 ¶ 3.) Plaintiffs cannot disclose the identities of the class members who have contacted Plaintiffs' counsel under *Tien*. A document-by-document log would only provide dates and pages numbers, if anything – the incremental value would be nil.

Finally, Steinbeck has failed to provide any privilege log whatsoever and has fought discovery tooth and nail, to the point of withholding relevant documents. (Preston Decl., Dkt #113 ¶¶31.) He should be not permitted to press Plaintiffs for any sort of log. Steinbeck now makes the bewildering claim that, although he "asserted the privilege" in his discovery responses, "he has never indicated that any privileged documents were withheld from the production of responsive documents that he agreed to produce." (Def.'s Opp.18 n.18.) Steinbeck's tortured syntax demonstrated the bad faith in his instant arguments and in his own discovery. Plaintiffs are negotiating compliance with a subpoena with Steinbeck's other counsel, Mitchell Silberberg Knupp, who have indicated that they possess many privileged documents relevant to this case. Steinbeck's statement only indicates that he has manipulated the language in his responses so that he has "agreed to produce" nothing while making it appear that he has agreed to produce all relevant documents. This is not litigating in good faith.

Dated: September 17, 2010

By:   s/Ethan Preston
Ethan Preston (263295)
PRESTON LAW OFFICES
21001 N. Tatum Blvd., Ste. 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866-509-1197 (facsimile)
ep@eplaw.us

Robert M. Bramson (102006)
Michael S. Strimling (96135)
BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
(925) 945-0200 (telephone)
(925) 945-8792 (facsimile)
rbramson@bramsonplutzik.com
mstrimling@bramsonplutzik.com

David C. Parisi (162248)
Suzanne Havens Beckman (188814)

| | |
|---|---|
| 1 | |
| 2 | PARISI & HAVENS LLP |
| 3 | 15233 Valleyheart Drive |
| 4 | Sherman Oaks, California 91403 |
| 5 | (818) 990-1299 (telephone) |
| 6 | (818) 501-7852 (facsimile) |
| 7 | dcparisi@parisihavens.com |
| 8 | shavens@parisihavens.com |

PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiffs*