Ethan Preston (263295)
PRESTON LAW OFFICES
21001 N. Tatum Blvd., Ste. 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866-509-1197 (facsimile)
ep@eplaw.us

Robert M. Bramson (102006)
Michael S. Strimling (96135)
BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
 (925) 945-0200 (telephone)
 (925) 945-8792 (facsimile)
rbramson@bramsonplutzik.com
mstrimling@bramsonplutzik.com

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| TIMOTHY and JEANNE DuFOUR and KENNETH TANNER, individuals, on their own behalves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BE., LLC, DYNAMIC SHOWCASES, LLC, California limited liability companies, MONTEREY FINANCIAL SERVICES, INC., a California corporations, BE MARKETING LIMITED, a private limited company registered in England and Wales, ERIK DeSANDO, BARRY FALCK, and DOES 1-100, inclusive,<br><br>Defendants. | No. 09-03770-CRB<br><br>Judge Charles R. Breyer<br><br>**PLAINTIFFS' NOTICE OF MOTION, AND MOTION FOR LEAVE TO AMEND**<br><br>**Date:** December 17, 2010<br>**Time:** 10:00 am<br>**Location:** Courtroom 8, 19th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that Plaintiffs Timothy DuFour, Jeanne DuFour, and Kenneth Tanner ("Plaintiffs") will present this motion for leave to file the attached Second Amended Complaint pursuant to Rule 15(a)(2) in the above referenced proceedings on December 17, 2010 at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at Courtroom 8, 19th Floor, 450 Golden Gate Ave., San Francisco, California 94102, before the Honorable Charles R. Breyer. Plaintiffs' requested relief is set forth below.

## MOTION FOR LEAVE TO AMEND

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the authorities cited therein and the supporting declaration, oral argument of counsel, and any other matter that may be submitted at the hearing.

This case concerns the operations of Be., LLC and its violations of the Advance-Fee Talent Services Act, Cal. Lab. Code §§ 1701-1701.20 (2009) ("AFTSA"). On the basis of the evidence presented in Plaintiffs' motion for preliminary injunction, the Court determined that Be's contracts with its customers violated AFTSA. The illegality of Be's contracts is central to the claims Plaintiffs assert against Monterey in the proposed Second Amended Complaint ("SAC"). Be assigned its rights to collect payment on many of these contracts to Monterey Financial Services, Inc. ("Monterey"). Monterey collected a significant sum of money under these contracts. When Be's customers resisted collection, Monterey engaged in a variety of illegal practices (including reporting the unpaid balance on the contract to credit reporting agencies).

The SAC makes only cosmetic changes to those claims from the First Amended Complaint ("FAC") which the Court found to be legally sufficient. (*See* SAC ¶¶ 1-160.) However, the SAC also includes new claims against Monterey which expressly omit any allegation that Monterey had actual knowledge that Be was violating the law. (*See id.* ¶¶ 161, 168, 179, 185, 189, 203, 210, 216.)  The FAC's current claims require the proof of Monterey's knowledge. Establishing the viability of the SAC's new claims will do much to advance this case

towards resolution, while allowing the Court and the parties to avoid the cost and expense of the

aggressive litigation associated with the kind of discovery inherent in proving a defendant's state

of mind. In turn, this will permit the parties to narrow the relevant factual issues, and focus their

resources on the efficient and expeditious resolution of this case.

Dated: November 5, 2010          By: ___s/Ethan Preston_____
                                 Ethan Preston (263295)
                                 PRESTON LAW OFFICES
                                 21001 N. Tatum Blvd., Ste. 1630-430
                                 Phoenix, Arizona 85050
                                 (480) 269-9540 (telephone)
                                 (866-509-1197 (facsimile)
                                 ep@eplaw.us

                                 Robert M. Bramson (102006)
                                 Michael S. Strimling (96135)
                                 BRAMSON, PLUTZIK, MAHLER &
                                 BIRKHAEUSER, LLP
                                 2125 Oak Grove Road, Suite 120
                                 Walnut Creek, California 94598
                                 (925) 945-0200 (telephone)
                                 (925) 945-8792 (facsimile)
                                 rbramson@bramsonplutzik.com
                                 mstrimling@bramsonplutzik.com

                                 David C. Parisi (162248)
                                 Suzanne Havens Beckman (188814)
                                 PARISI & HAVENS LLP
                                 15233 Valleyheart Drive
                                 Sherman Oaks, California 91403
                                 (818) 990-1299 (telephone)
                                 (818) 501-7852 (facsimile)
                                 dcparisi@parisihavens.com
                                 shavens@parisihavens.com

                                 *Attorneys for Plaintiffs*

---

Plaintiffs' Motion for Leave to Amend                              No. 09-3770 CRB

Ethan Preston (263295)
PRESTON LAW OFFICES
21001 N. Tatum Blvd., Ste. 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866-509-1197 (facsimile)
ep@eplaw.us

Robert M. Bramson (102006)
Michael S. Strimling (96135)
BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
 (925) 945-0200 (telephone)
 (925) 945-8792 (facsimile)
rbramson@bramsonplutzik.com
mstrimling@bramsonplutzik.com

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| TIMOTHY and JEANNE DuFOUR and KENNETH TANNER, individuals, on their own behalves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BE., LLC, DYNAMIC SHOWCASES, LLC, California limited liability companies, MONTEREY FINANCIAL SERVICES, INC., a California corporations, BE MARKETING LIMITED, a private limited company registered in England and Wales, ERIK DeSANDO, BARRY FALCK, JACOB STEINBECK, and DOES 1-100, inclusive,<br><br>Defendants. | No. 09-03770-CRB<br><br>Judge Charles R. Breyer<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND**<br><br>**Date:** December 17, 2010<br>**Time:** 10:00 am<br>**Location:** Courtroom 8, 19th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND

Plaintiffs Timothy DuFour, Jeanne DuFour, and Kenneth Tanner ("Plaintiffs") seek leave to file the attached proposed Second Amended Complaint under Rule 15(a)(2).

### I.    Introduction

The operations of Be., LLC ("Be") and its violations of the Advance-Fee Talent Services Act ("AFTSA," (Cal. Lab. Code §§ 1701-1701.20 (2009)) are at the core of this case. On December 4, 2009, this Court entered an order evaluating Be., LLC's ("Be") contracts with its customers and Be's marketing materials: "Based on the evidence attached to Plaintiffs' motion for preliminary relief, Be LLC does indeed qualify as an Advance-Fee Talent Service." *DuFour v. Be., LLC*, No. 09-3770, 2009 WL 4730897, at *4 (N.D. Cal. Dec. 7, 2009). The Court further found that Plaintiffs' contracts with "Be LLC violated [various] provisions of California Labor Code § 1701.4." *Id.*

The probable illegality of Be's contracts is central to Plaintiffs' claims against Monterey. Be assigned its rights to collect payment on many of these contracts to Monterey, and Monterey collected a significant sum of money under these contracts. Monterey also violated other California statutes when it sought to collect from Be customers who resisted further payments.

The first half of the proposed Second Amended Complaint ("SAC") realleges those claims from the First Amended Complaint ("FAC") which the Court already found to be sufficient in essentially the same manner as they were alleged before. (*Cf.* SAC ¶¶ 1-161 *with DuFour v. Be., LLC*, No. 09-3770, 2010 WL 2560409 (N.D. Cal. June 22, 2010) ("*DuFour III*").) The second half of the proposed SAC states a variety of claims, each of which "expressly omits any allegation that Monterey had actual knowledge of Be's misconduct alleged herein." (*See* SAC ¶¶ 161, 168, 179, 185, 189, 203, 210, 216.) Establishing that these claims are viable at the outset will greatly advance the resolution of this action because it will help the parties to avoid the fact-intensive discovery inherent in proving a defendant's state of mind (discovery which the FAC's existing claims require).

The SAC also drops a variety of Defendants, including some which were voluntarily dismissed by stipulation (*see* Dkt. #121), and Erik DeSando (who filed for Chapter 7 bankruptcy

in July 2010).

## II.     The Applicable Standard for Leave to Amend

Rule 15 provides for amending complaints and other pleading by leave of court after a party's time to amend by right has passed. Leave to amend should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation, punctuation omitted). Rule 15(a)'s policy of "extreme liberality" should be applied here.

### A.     Futility Is the Only Issue Before the Court

Leave to amend should be granted, subject to the following factors: "'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 615 F.3d 1217, 1232 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

> Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend. . . . A simple denial of leave to amend without any explanation by the district court is subject to reversal. Such a judgment is "not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

*Eminence Capital*, 316 F.3d at 1052 (quoting *Foman*, 371 U.S. at 182) (emphasis in original). Denial of leave requires "a contemporaneous specific finding of" one or more of these *Foman* factors. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). As Plaintiffs can address the other *Foman* factors summarily, they only need to focus on the last one – futility – here.

#### 1.     There Is No Prejudice to Monterey

Monterey, as the party opposing amendment, "bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). Monterey has stipulated to a case management order that expressly contemplated the proposed amendment and stayed discovery as between the parties. Further, the proposed amendment may effectively eliminate disputed factual matters from discovery (i.e., Monterey's actual knowledge of Be's activities).

Given this procedural posture, there is little room for potential prejudice. *Cf. Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (amendment did not cause prejudice because it did not delay the proceedings or require any additional discovery); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) (no evidence of prejudice where amendment occurred when case was "still at the discovery stage with no trial date pending" or pretrial conference scheduled).

### 2.       There Is No Undue Delay

The proposed amendment has not been unduly delayed: Plaintiffs make this Motion fourteen months after this case was filed and only five months after they were permitted to start discovery. This is a reasonable interval to explore new theories of liability in the face of new facts. In *Hurn v. Retirement Fund Trust of Plumbing, Heating and Piping Industries of Souther California*, 648 F.2d 1252 (9th Cir. 1981), the Ninth Circuit indicated that intervals of two years and even five years between the amendment and initiation of the case did not constitute "undue delay" for amendment under Rule 15(a). *See id*. at 1254-55. In any event, "undue delay by itself is insufficient to justify denying a motion to amend." *Owens*, 244 F.3d at 712-13 (quoting *Bowles*, 198 F.3d at 758, punctuation omitted).

### 3.       There Is No Repeated Failure to Cure Deficiencies by Amendment Previously Granted

The SAC does not reflect any "repeated failure to cure deficiencies by amendments previously allowed." *Foman*, 371 U.S. at 182. The Court held the FAC sufficiently stated a number of claims. *DuFour III*, 2010 WL 2560409, at *6-7, *10-12. The SAC simply realleges those same surviving claims in virtually the same manner, with the addition of some entirely new claims.[1] (SAC ¶¶ 1-160.)

However, Plaintiffs do take care to distinguish the Unruh Act claim in the proposed SAC from the allegations in the FAC. (*Id*. ¶¶ 203-09.) In the FAC, the Plaintiffs alleged an AFTSA

---

[1]    The existing complaint (the FAC) certainly realleged claims that were dismissed from the *original* complaint, but those claims were dismissed without prejudice and had to be realleged in order for Plaintiffs to preserve them for appeal. *Cf. Parrino v. FHP, Inc.*, 146 F.3d 699, 704 (9th Cir. 1998).

claim against Monterey under the theory that AFTSA applied to Monterey *under the Unruh Act*, even though Monterey was not an advance-fee talent service itself. The Court found that the Unruh Act only "subjects the assignee to all 'equities and defenses'" and therefore did not provide for "an independent action for damages." *Id.* at *8. (quoting Cal. Civ. Code § 1804.2). In short, the Court's construction of the Unruh Act does not permit Plaintiffs to use it as a bootstrap to bring an AFTSA claim against Monterey.

The SAC does not repeat the FAC's AFTSA claim for damages which alleged liability under the Unruh Act. Instead, the SAC alleges a claim directly under the Unruh Act seeking equitable remedies. (*See* SAC ¶ 209.) While the Court has foreclosed a *damages* claim under the Unruh Act, it recognized authority supporting *equitable* remedies (including rescission) under the Unruh Act. *Id.* at *9 (quoting *Vasquez v. Superior Court*, 4 Cal.3d 800, 811 n.23 (1971)). The Unruh Act both expressly provides for equitable claims against an assignee and limits the assignee's liability on such claims. *Cf.* Cal. Civ. Code § 1804.2 ("the assignee's liability may not exceed the amount of the debt owing to the assignee at the time of the assignment"). The Court's previous order closes a door on a damages claim under the Unruh Act, but opened a window to equitable relief: the SAC goes through that window.

## B.     The Proposed Amendments Are Not Futile

The only *Foman* factor that requires further argument is futility. "A proposed amendment is futile if it would not survive a motion to dismiss for failure to state a claim." *Bowler v. Home Depot USA Inc.*, No. 09-05523, 2010 WL 3619850, *2 (N.D. Cal. Sept. 13, 2010) (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988) ("[A] proposed amendment is futile only if no set of facts could be proved under the amendment to the pleadings that would constitute a valid and sufficient claim")). "In this sense, the standard for futility of amendment is 'identical' to the standard applied in a Rule 12(b)(6) challenge." *Soghomonian v. United States*, 82 F. Supp. 2d 1134, 1141 (E.D. Cal. 1999) (citing *Miller*, 845 F.2d at 214). *See also ABM Indus., Inc. v. Zurich Am. Ins. Co.*, 237 F.R.D. 225, 227 (N.D. Cal. 2006) ("Futility of proposed amendments is evaluated under the Federal Rule of Civil Procedure 12(b)(6)

standard."). In short, amendment under Rule 15 provides a mechanism to evaluate the legal

sufficiency of the SAC's new claims. As shown below, the new claims are sufficient.

## II.     The SAC's New Claims Are Legally Sufficient

The SAC asserts eight claims, each of which "expressly omits any allegation that

Monterey had actual knowledge of Be's misconduct alleged herein." (*See* SAC ¶¶ 161, 168, 179,

185, 189, 203, 210, 216.) The claims include:

1.     An action for declaratory judgment under 28 U.S.C. § 2201 finding that the contracts which Be assigned to Monterey are invalid and unenforceable (*id.* ¶¶ 161-67);

2.     A claim asserting that Monterey's collection of the unpaid balances on Be's contracts violated the Rosenthal Fair Debt Collection Practices Act (*id.* ¶¶ 168-78);

3.     A claim for restitution and/or unjust enrichment (*id.* ¶¶ 179-84);

4.     In the alternative to restitution, a claim for rescission (*id.* ¶¶ 185-88);

5.     A claim under the Consumer Legal Remedies Act (*id.* ¶¶ 189-202);

6.     A claim under the Unruh Act (*id.* ¶¶ 203-09);

7.     A claim under the Consumer Credit Reporting Act (*id.* ¶¶ 210-15); and

8.     A claim alleging direct liability under the unfair and illegal prongs of California's unfair competition law for the statutory violations identified above (*id.* ¶¶ 216-22).

Because Plaintiffs do not have to demonstrate any actual knowledge on Monterey's part to

sustain these claims, the amendment proposed in the SAC is not futile but rather will facilitate

the resolution of this case.

Before individually examining these claims, Plaintiffs point out that it is immaterial

under California law whether Monterey knew about AFTSA or its impact on Be's contracts. "It

is an emphatic postulate of both civil and penal law that ignorance of a law is no excuse for a

violation thereof." *People v. Honig*, 48 Cal. App. 4th 289, 337 (1996). In an exhaustively-

researched ruling, *Arthur Andersen v. Superior Court*, 67 Cal. App. 4th 1481 (1998) restated the

consensus of California courts that "[a] lack of legal knowledge . . . is quite a different matter"

than ignorance of the facts." *Id.* at 1506.

> *It was established long ago that ignorance of the law does not excuse one from the consequences of the law.* [many citations omitted] . . . Other cases have stated the same concept in different language. [citing *Anderson v. Superior Court*, 11 Cal. 4th 1152, 1161 (1995) for proposition that "all of us are presumed to know the law," many other citations omitted] It is thus clear that *the legal effect of a statute cannot be avoided merely by pleading ignorance of the statute.* If it could, the Legislature's efforts to shape public policy and the judiciary's efforts to interpret the statutory law and to shape the common law could easily be frustrated either by deliberate maintenance of ignorance or by false claims of it. [A defendant] is charged with knowledge of the law . . . whether [it] actually was aware of the law or not.

*Id*. at 1506-07 (emphasis added). While Monterey's ignorance of facts might establish a defense to some of the claims alleged in the FAC, its ignorance of the law could never be a defense. The claims analyzed below extend this basic principle, because they do not depend on Monterey's actual knowledge of the facts of Be's operations, let alone Monterey's knowledge of the legal implications of those facts.

### A. Plaintiffs Do Not Need to Prove Actual Knowledge to Prevail on Their CLRA and UCL Claims

The Court has found that the FAC's claim against Monterey for aiding and abetting Be's UCL violation requires Plaintiffs to prove that Monterey "took this active role in reorganizing [Be] despite knowing that the contracts were illegal." *DuFour III*, 2010 WL 2560409, at *10. This actual knowledge element reflects the requirements for an aiding and abetting claim. *See id*.

However, the new claims in the SAC allege Monterey *directly* violated the UCL and CLRA. The scope of liability under the SAC's claims is thus set by the relevant statutory language, and courts have declined to read elements regarding the defendant's state of mind into the UCL or CLRA.

> In drafting the [UCL], the Legislature deliberately traded the attributes of tort law for speed and administrative simplicity. As a result, to state a claim under the act one need not plead and prove the elements of a tort. Instead, one need only show that "members of the public are likely to be deceived."

*Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266-67 (1992) (citation omitted). Also,

> "[r]elief under the CLRA is available to those consumers who suffer 'damage *as a result of* the use or employment by any person of a method, act, or, practice declared to be unlawful under section 1770.' . . . Thus, for a misrepresentation to be actionable under section 1770 it need only 'result' in damage to the consumer.

*Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082, 1097 (N.D. Cal. 2006) (quoting Cal. Civ.

Code § 1780(a)) (emphasis in original). Courts have recognized that imposing additional elements of proof on these claims would blunt their remedial impact. Thus, the UCL "imposes strict liability when property or monetary losses are occasioned by conduct that constitutes an unfair business practice." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 181 (2000). This lower burden of proof "reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (quoting *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 332 (1998), other citations omitted). Similarly, the CLRA is "not a fraud statute": requiring "plaintiffs [to] prove more than the statute itself requires would undercut the intent of the legislature in creating a remedy separate and apart from common-law fraud." *Nordberg*, 445 F. Supp. 2d at 1097.

Consequently, Plaintiffs do not need to prove Monterey's state of mind to prevail on their UCL and CLRA claims. "'A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. ***None of these elements are required to state a claim for injunctive relief*' under the UCL**." *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009) (quoting *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 332 (1998)) (emphasis added). Likewise, "only ***three of the five elements of fraud are necessary to state a claim under the CLRA***: misrepresentation, reliance, and damages." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009) (emphasis added). Unlike their deceit claim, Plaintiffs do not need to establish either Monterey's knowledge or intent to prove their CLRA claim. *Cf. id.* at 997. *See also Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005) (defendant's intent to deceive is a "tort element" that is "not required to state a claim under the CLRA"). The UCL and CLRA claims alleged in Plaintiffs' SAC are sufficiently pled.

## B.     Plaintiffs' Claims Under the Rosenthal Act Do Not Depend on Monterey's Actual Knowledge

The SAC asserts a claim under the Rosenthal Act, which incorporates the prohibitions under sections 1692b to 1692j and the remedies under section 1692k of the federal Fair Debt

1    Collections Practices Act and applies them against RFDPCA's broader definition of debt

2    collectors. *See* Cal. Civ. Code § 1788.17; *Alkan v. Citimortgage, Inc.*, 336 F. Supp. 2d 1061,

3    1065 (N.D. Cal. 2004). The FDCPA prohibits "conduct the natural consequence of which is to

4    harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. §

5    1692d, and false representations about "the character, amount, or legal status of any debt." 15

6    U.S.C. § 1692e(2)(B). The collection of unenforceable debts violates these provisions. *See, e.g.*,

7    *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1174, 1177, 1178 (9th Cir.

8    2006); *Riley v. Giguiere*, 631 F. Supp. 2d 1295, 1309 (E.D. Cal. 2009) ( "acts to enforce a debt

9    that was not authorized by law" could "be found to have violated § 1692e(2), as

10    misrepresentations of the legal status of a debt"). By collecting unpaid balances on the Be's

11    contracts, Monterey violated Cal. Civ. Code § 1788.17. (*See* SAC ¶¶ 169, 172.) The sums

12    Monterey collected from class members would be recoverable as actual damages caused by such

13    violations.

14         Certainly, FDCPA section 1692k incorporates a *bona fide* error defense. *See* 15 U.S.C. §

15    1692k(c). However, "[m]istake[s] of law [are] explicitly excluded from the *bona fide* error

16    defense." *Irwin v. Mascott*, 112 F. Supp. 2d 937, 963 (N.D. Cal. 2000) ("[s]ince proof of intent is

17    not necessary to establish an FDCPA violation, Defendants may not shoehorn an advice-of-

18    counsel defense into the statute"). *See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich

19    LPA*, 130 S. Ct. 1605 (2010). Plaintiffs do not need to allege or prove that Monterey knew that

20    Be's contracts were invalid to maintain a damages claim under the Rosenthal Act for sums

21    Monterey collected from those contracts.

22         **C.     Plaintiffs' CCRAA Claims Do Not Depend on Monterey's Actual Knowledge**

23         Plaintiffs can establish liability under the CCRAA and, indeed, achieve every element of

24    relief they seek under the CCRAA without proving what Monterey actually knew about Be's

25    operations. The CCRAA prohibits furnishing information "to any consumer credit reporting

26    agency if the person knows or should know the information is incomplete or inaccurate." Cal.

27    Civ. Code § 1785.25(a). The CCRAA provides a variety of remedies including actual damages

28

1   and statutory punitive damages for "willful" violations. Cal. Civ. Code § 1785.31(a). The

2   CCRAA also explicitly provides for punitive damages in the context of a class action:

3           Notwithstanding any other provision of this section, any person who willfully
            violates any requirement imposed under this title may be liable for punitive

4           damages in the case of a class action, in an amount that the court may allow.

5   Cal. Civ. Code § 1785.31(c).

6           Monterey reported unpaid balances on Be's contracts to credit reporting agencies in a

7   manner that indicated that the Be contracts were enforceable debts, i.e., Monterey's information

8   was "incomplete or inaccurate." The CCRAA certainly imposes a knowledge requirement, but it

9   is equally certain that *constructive* knowledge, that "the person knows *or should know* the

10  information is incomplete or inaccurate," supports CCRAA liability. Cal. Civ. Code § 1785.25(a)

11  (emphasis supplied). As stated above, Monterey necessarily had constructive notice that the

12  debts associated with Be's contracts were invalid. "Everyone is presumed to know the law."

13  *Benson v. Cal. Coastal Com'n*, 139 Cal. App. 4th 348, 355 (2006) (citing *Arthur Andersen*, 67

14  Cal. App. 4th at 1506). Moreover, it is sufficient for Plaintiffs to prove that Monterey

15  intentionally placed the balance of the Be contracts on their credit reports to support punitive

16  damages under Cal. Civ. Code § 1785.31:

17          In civil cases, the word "willful," as ordinarily used in courts of law, does not
            necessarily imply anything blamable, or any malice or wrong toward the other

18          party, or perverseness or moral delinquency, but merely that the thing done or
            omitted to be done was done or omitted intentionally. It amounts to nothing more

19          than this: That the person knows what he is doing, intends to do what he is doing,
            and is a free agent.

20  *Ibrahim v. Ford Motor Co.*, 214 Cal. App. 3d 878, 894 (1989) (citation, punctuation omitted).

21  Plaintiffs do not have to show Monterey actually knew it was violating the CCRAA or that Be

22  violated AFTSA to recover statutory punitive damages under Cal. Civ. Code § 1785.31. Under

23  California law, Monterey should have known. Plaintiffs need only show that Monterey knew that

24  it was reporting the unpaid balances on Be's contracts to credit reporting agencies.

25          **D.    Plaintiffs' Contract-Based Claims Do Not Require Allegation or Proof of
                    Monterey's Knowledge**

26

27          The common underlying basis for Plaintiffs' claims for declaratory judgment, restitution

28

---

(or rescission), and under the Unruh Act is the illegality, and resulting invalidity, of the contracts which Be assigned to Monterey. The (in)validity of these contracts rests on the contracts' content, not on Monterey's subjective understanding of the contracts. California employs the "objective theory of contracts," under which "it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Cedars-Sinai Med. Ctr. v. Shewry*, 137 Cal. App. 4th 964, 980 (2006) (citation, punctuation omitted). This general rule applies to a contract's validity as well: "[t]he test of the validity of the contract thus does not turn on the subjective contemplation of the parties . . . but upon the objective language of the contract itself." *In re Marriage of Dawley*, 17 Cal. 3d 342, 350 (1976). Thus, for example, the invalidation of a contract for usury "does not require a conscious attempt, with knowledge of the law, to evade it." *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 798 (1994) (citation, punctuation omitted). *See also McClung v. Saito*, 4 Cal. App. 3d 143, 153 (1970) (usurer's "mistaken belief [that a contract] would be legal and enforceable does not make it so"). This same analysis extends to Monterey:

> If the contract is void it is both void as to the assignor and the assignee, for the assignee stands in the shoes of his assignor and take subject to all equities and defenses existing in favor of the obligor prior to notice of the assignment. It is not material that the assignee had no notice or knowledge of the equities or defenses.

*Rosman v. Cuevas*, 176 Cal. App. 2d Supp. 867, 870 (1959). Monterey's state of mind is simply immaterial to whether the contracts which Be assigned to Monterey are invalid. For the same reason, Plaintiffs do not need to prove or allege Monterey's state of mind to obtain the remedies sought in their claims for declaratory judgment, restitution, rescission, or under the Unruh Act. These claims are sufficiently pled.

## III.   Conclusion

There is no visible basis for Monterey to object to the proposed SAC (particularly where Monterey stipulated to an order which expressly contemplated this Motion). The only *Foman* factor that requires any extended discussion is futility, and the proposed SAC is not futile: it is clear that the new claims advanced in the SAC do not require Plaintiffs to allege or to prove that Monterey had actual knowledge about Be's operations.

Dated: November 5, 2010      By:   s/Ethan Preston

Ethan Preston (263295)
PRESTON LAW OFFICES
21001 N. Tatum Blvd., Ste. 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866-509-1197 (facsimile)
ep@eplaw.us

Robert M. Bramson (102006)
Michael S. Strimling (96135)
BRAMSON, PLUTZIK, MAHLER &
BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
(925) 945-0200 (telephone)
(925) 945-8792 (facsimile)
rbramson@bramsonplutzik.com
mstrimling@bramsonplutzik.com

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiffs*