```
 1                          PAGES 1 - 18

 2                   UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
 3           BEFORE THE HONORABLE CHARLES R. BREYER, JUDGE

 4   TIMOTHY DUFOUR AND KENNETH
     TANNER, INDIVIDUALS, ON THEIR OWN
 5   BEHALVES AND ON BEHALF OF ALL OTHERS
     SIMILARLY SITUATED,
 6                PLAINTIFFS,

 7     VS.                                NO. C 09-03770 CRB
     BE., LLC, DYNAMIC SHOWCASES,
 8   LLC, CALIFORNIA LIMITED LIABILITY
     COMPANIES,  MONTEREY FINANCIAL
 9   SERVICES, INC., MTS HOLDINGS
     GROUP, INC., CALIFORNIA CORPORATIONS,
10   1901 CO., A NEVADA CORPORATION, BE
     MARKETING LIMITED, A PRIVATE LIMITED
11   COMPANY REGISTERED IN ENGLAND AND WALES,
     ERIK DESANDO, BARRY FLACK, JACOB STEINBECK,
12   VITALY RASHKOVAN, AND DOES 1-100,
     INCLUSIVE,
13                                       SAN FRANCISCO, CALIFORNIA
                  DEFENDANTS.             FRIDAY
14                                        FEBRUARY 25, 2011
     _____   10:00 O'CLOCK A.M.
15

16                     **TRANSCRIPT OF PROCEEDINGS**

17   **APPEARANCES:**

18   **FOR PLAINTIFF**S:         PRESTON LAW OFFICES
     (BY PHONE)                  21001 NORTH TATUM BLVD.
19                               SUITE 1630-430
                                 PHOENIX, AZ. 85050
20                               866-509-1197
                            BY:  **ETHAN MARK PRESTON, ESQUIRE**
21   FURTHER APPEARANCES ON NEXT PAGE
     *REPORTED BY:    KATHERINE WYATT, CSR 9866, RMR, RPR*
22            *OFFICIAL REPORTER - US DISTRICT COURT*
                *COMPUTERIZED TRANSCRIPTION BY ECLIPSE*
23

24

25


          KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212-5224
```

```
 1  FURTHER APPEARANCES:
 2  ALSO FOR PLAINTIFFS:
 3  BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER
 4  2125 OAK GROVE ROAD, SUITE 120
 5  WALNUT CREEK, CALIFORNIA 94598
 6  925-945-8792
 7  BY:  MICHAEL S. STRIMLING, ESQUIRE
 8
 9  FOR THE DEFENDANT MONTEREY FINANCIAL SERVICES:
10  CALL & JENSEN
11  610 NEWPORT CENTER DRIVE
12  SUITE 700
13  NEWPORT BEACH, CALIFORNIA 92660
14  BY:  MATTHEW R. ORR, ESQUIRE
15
16
17
18
19
20
21
22
23
24
25
```

```
 1   FEBRUARY 25, 2011                            10:00 O'CLOCK  A.M.
 2
 3                         P R O C E E D I N G S
 4           THE CLERK:  CALLING CASE C 09-3770, TIMOTHY DUFOUR
 5   VERSUS BE, LLC.
 6           APPEARANCES, COUNSEL.
 7           MR. ORR:  GOOD MORNING, YOUR HONOR.  MATTHEW ORR ON
 8   BEHALF OF DEFENDANT MONTEREY FINANCIAL SERVICES, INC.
 9           MR. STRIMLING:  GOOD MORNING, YOUR HONOR.  MICHAEL
10   STRIMLING FOR PLAINTIFFS.
11           AND I BELIEVE ETHAN PRESTON IS ALSO ON THE TELEPHONE.
12           THE COURT:  OKAY.
13           THE CLERK:  COUNSEL, PLEASE MAKE YOUR APPEARANCE.
14           MR. PRESTON (BY PHONE):  THIS IS ETHAN PRESTON ON
15   BEHALF OF THE PLAINTIFFS, THE DUFOURS AND KENNETH TANNER.
16           THE COURT:  OKAY.  THANK YOU.
17           WELL, THIS IS A MOTION TO DISMISS THE SECOND-AMENDED
18   COMPLAINT.  AND I HAD SOME QUESTIONS ABOUT IT I WANTED TO ASK.
19           THIS IS AGAINST MONTEREY. MONTEREY IS A DEBT
20   COLLECTOR.
21           MR. STRIMLING:  YOUR HONOR, THEY WERE MUCH MORE
22   INTIMATELY INVOLVED THAN THAT.  THEY WOULD HELP SET UP THE
23   SYSTEMS.  THEY SUPPLIED THE CONTRACTS THAT WERE SIGNED.  THEY
24   WERE MUCH MORE INVOLVED AS THE SECOND-AMENDED COMPLAINT ALLEGES.
25           THE COURT:  WELL, I SORT OF TRIED TO LOOK AT IT
```

```
 1  FROM -- I KNOW THIS ISN'T QUITE THE ORTHODOX WAY OF LOOKING AT
 2  IT, BUT THEY ARE AT THE VERY LEAST A DEBT COLLECTOR.
 3             MR. STRIMLING:  YES, YOUR HONOR, AT THE VERY LEAST.
 4             THE COURT:  AND THE QUESTION IS:  AS A DEBT COLLECTOR
 5  UNDER THE ROSENTHAL ACT HAVE THEY RUN AFOUL OF THAT,
 6  ESSENTIALLY?
 7             MR. STRIMLING:  RIGHT.
 8             THE COURT:  AND THERE ARE OTHER THINGS THAT MAY
 9  FOLLOW, AND SO FORTH AND SO ON.  BUT THAT WOULD BE THE EASIEST
10  CASE TO MAKE OUT FROM THE PLAINTIFFS' POINT OF VIEW.
11             MR. STRIMLING:  YES, YOUR HONOR.  THAT ONE IS A
12  WINNER.
13             THE COURT:  WELL, I DON'T KNOW. I MEAN, LET'S TALK
14  ABOUT THAT. IT SEEMED TO ME -- AND I WANTED TO SEE WHETHER I GOT
15  THE ALLEGATIONS CORRECT IN THE COMPLAINT THAT -- LET ME APPROACH
16  IT THIS WAY.
17             THE DEFENSE SAYS:
18                "LOOK, THERE WAS NO REPUDIATION OF THE
19             CONTRACT. AND THERE HAS TO BE THAT."
20             THEY SAY:
21                "THESE CONTRACT ARE VOIDABLE AND AT THE
22             DISCRETION OF THE ARTIST."
23             AND I THINK THAT'S PROBABLY RIGHT. BUT THEY SAY:
24                "VOIDABLE, AND IT HASN'T -- IT HASN'T -- THERE'S
25             BEEN NO ELECTION TO VOID IT."
```

1          AND THAT STRUCK ME AS A BIT ODD FOR A COUPLE OF
2  REASONS. NUMBER ONE IS I WOULD THINK THE FILING OF A LAWSUIT FOR
3  STARTERS IS NOTICE THAT YOU DO NOT INTEND TO HONOR THE TERMS OF
4  THE CONTRACT.
5          NUMBER TWO, EVEN BEFORE THE FILING OF THE LAWSUIT IF
6  YOU NOTIFY THE COLLECTOR THAT YOU ARE WITHDRAWING THE
7  AUTHORIZATION TO COLLECT FUNDS, THAT IS ALSO A REPUDIATION OR AN
8  ATTEMPTED REPUDIATION OF A CONTRACT.
9          SO I LOOKED AT IT, AND I THOUGHT:
10             "ALL RIGHT. THOSE ARE TWO INDICATIONS THAT THE
11             CONTRACT WAS REPUDIATED."
12         NOW, WHAT HAPPENED AFTER EITHER OF THOSE EVENTS?  I
13 THINK WHAT HAPPENED AFTER EITHER OF THOSE EVENTS IS THAT
14 MONTEREY TOOK THE POSITION THAT THEY WERE OWED THE MONEY, AND
15 THEY TRIED TO COLLECT THE MONEY. AND THAT WOULD BE AN ARGUMENT
16 THAT THEY WERE SUPPORTING THE EXISTENCE OF A DEBT WHEN, IN FACT,
17 THE ARTISTS THEMSELVES WERE CANCELLING THE CONTRACT, WHICH WAS
18 THEIR RIGHT TO DO UNDER THE ARTISTS -- WHATEVER THAT ACT IS --
19 TALENT ACT.
20         **MR. STRIMLING**: AFTSA, YES.
21         **THE COURT**: YES. SO I THOUGHT GIVEN THE EASY CASE
22 WHERE YOU'RE NOT LOOKING AT SECONDARY LIABILITY. YOU'RE JUST
23 SORT OF SITTING THERE SAYING:
24             "OKAY. YOU CAN PROCEED AGAINST MONTEREY."
25         I THOUGHT, YEAH, I THINK YOU CAN PROCEED AGAINST

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212-5224

1   MONTEREY, AT LEAST AS TO THE SIMPLE CASE OR AS TO THE EASY CASE.
2           **MR. STRIMLING:**  RIGHT.
3           **THE COURT:**  AND THEN, I THOUGHT:
4               "WELL, IF THAT'S TRUE, THEN WHY NOT JUST LET THE
5           CASE GO FORWARD?  SEE HOW IT ALL COMES OUT IN THE
6           WASH IN TERMS OF THE DISCOVERY, AND THEN SEE WHERE WE
7           ARE IN TERMS OF SUMMARY JUDGMENT?"
8           **MR. STRIMLING:**  YES, YOUR HONOR.  I BELIEVE THAT'S
9   WISE, BECAUSE I THINK SUMMARY JUDGMENT WILL SHOW THAT THERE'S A
10  LOT OF EVIDENCE OF --
11          **THE COURT:**  I HAVE NO IDEA.  THESE ARE NOW
12  ALLEGATIONS.  YOU KNOW, YOU TAKE A MOTION TO DISMISS AND YOU
13  DEAL WITH THE ALLEGATIONS.
14          **MR. STRIMLING:**  RIGHT.
15          **THE COURT:**  NOW, IT IS VERY DETAILED.  THE COMPLAINT
16  IS VERY DETAILED. AND WHETHER THE EVIDENCE WILL SUPPORT IT OR
17  NOT IS WHAT WE HAVE. THAT'S WHAT THE LAWSUIT IS ABOUT.
18          SO --
19          **MR. STRIMLING:**  YES, YOUR HONOR.
20          **THE COURT:**  -- I THINK I SHOULD TALK TO MONTEREY
21  COUNSEL AND FIND OUT WHAT THEY THINK IS WRONG WITH MY REASONING.
22          **MR. ORR:**  SURE.  SURE, YOUR HONOR.
23              I'M LOOKING IN THE COMPLAINT, AND I'M TRYING TO FIND
24  AN ALLEGATION IN WHICH THE PLAINTIFFS ALLEGE THAT MONTEREY
25  COLLECTED MONIES FROM THEM AFTER A REPUDIATION OF THE CONTRACT.

1       **THE COURT:** WELL, AFTER WHAT? I DON'T KNOW THAT IT
2  WOULD BE -- I THINK IT WOULD GO BEYOND JUST COLLECTING THE
3  MONEY. I THINK IT WOULD BE THE ATTEMPTED COLLECTION OF THE
4  MONEY UNDER THE ROSENTHAL ACT.
5       **MR. STRIMLING:** THEY ACTUALLY DID KEEP COLLECTING
6  AND ACTUALLY RECEIVING FUNDS AFTER WE FILED THE LAWSUIT.
7       **MR. ORR:** AGAIN, YOUR HONOR, WE'RE TALKING ABOUT THE
8  INDIVIDUAL PLAINTIFFS. AND I DON'T SEE ANY ALLEGATION --
9       **THE COURT:** WELL, LET'S SEE WHERE WE ARE.
10      **MR. ORR:** -- MONTEREY DID THAT AGAINST THE INDIVIDUAL
11 PLAINTIFFS IN THIS CASE.
12      **THE COURT:** LET'S TAKE A LOOK AT THE INDIVIDUAL
13 PLAINTIFFS FOR A MINUTE.
14      **MR. ORR:** SURE.
15      **THE COURT:** LET'S FIND THE PARAGRAPH.
16      NOW, LOOKING AT -- HERE. OKAY. LOOK AT PARAGRAPH 37,
17 OKAY?
18      AND I'M REALLY FOCUSING ON LINE 13. IT SAYS:
19          "IN LATE JUNE OR EARLY JULY, 2009, TANNER
20      CANCELLED MONTEREY'S AUTHORIZATION TO DEBIT FEES FROM
21      HIS BANK ACCOUNT. BEGINNING ON OR ABOUT JULY 6,
22      MONTEREY BEGAN TO CALL TANNER AND HIS FAMILY
23      VERTICALLY DAILY TO DEMAND THAT HE CONTINUE TO PAY
24      UNDER HIS CONTRACT WITH BE."
25      WELL, ISN'T THAT A VIOLATION OF THE ROSENTHAL ACT?

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212-5224

```
 1   I'M NOT SAYING --
 2            MR. ORR:  RIGHT.  YOUR HONOR, I DON'T BELIEVE IT IS.
 3            THE COURT:  YOU DO NOT?
 4            MR. ORR:  I DO NOT.  UNDER AFTSA, THE SPECIFIC
 5   LANGUAGE SAYS THAT THESE CONTRACTS ARE VOIDABLE AT THE ELECTION
 6   OF THE ARTIST AGAINST THE ADVANCED FEE TALENT AGENCY.
 7            NOW, MONTEREY, WHERE MONTEREY'S LIABILITY COMES IN,
 8   IF AT ALL, IS UNDER THE LENDER IN DUE COURSE LANGUAGE WITH THEIR
 9   CONTRACTS WITH THE ARTISTS.  SO WHETHER THE --
10            THE COURT:  WAIT.  WITH THE ARTIST?  YOU DON'T MEAN
11   WITH THE ARTIST.  YOU MEAN WITH THE MANAGEMENT.  I'M SORRY.  I'M
12   NOT FOLLOWING.
13            MR. ORR:  WE HAVE FINANCING CONTRACTS WITH THE
14   ARTISTS IN WHICH WE COLLECTED THESE FUNDS. AGAIN, THE HOLDER IN
15   DUE COURSE -- AS THIS COURT HAS PREVIOUSLY RULED, THE HOLDER IN
16   DUE COURSE LANGUAGE UNDER THOSE CONTRACTS DID NOT ALLOW THESE
17   ARTISTS TO USE THAT LANGUAGE AS A SWORD TO TRY TO SEEK DAMAGES
18   FROM MONTEREY, BUT AS A SHIELD TO PROTECT AGAINST COLLECTIONS ON
19   THESE AMOUNTS.  THAT'S UNDERSTOOD.
20            HOWEVER, TRYING TO COLLECT UNDER THESE AMOUNTS I
21   DON'T THINK IT CONSTITUTES ANY ILLEGALITY OR ANY UNLAWFUL
22   CONDUCT, BECAUSE THE CONTRACTS ARE ONLY VOID, THE SPECIFIC
23   LANGUAGE OF THE STATUTE IS AGAINST THE ADVANCE-FEE TALENT
24   SERVICE.
25            SO THOSE CONTRACTS ARE NOT VOID AS TO MONTEREY.
```

1   **THE COURT:** IF THE -- WELL, IF THE ARTIST -- LET'S
2   SAY THE ARTIST, MR. TANNER, TANNER GOES TO BE, WHO IS -- LET'S
3   SAY THEY ARE STILL IN BUSINESS, WHICH THEY ARE NOT.
4       BUT HE GOES TO BE AND SAYS:
5           "I CANCEL IT."
6       NOW, BE HAS ALREADY MADE ITS ARRANGEMENT WITH
7   MONTEREY. OKAY. SO HE SAYS:
8           "I CANCEL IT. HERE. HERE'S A PIECE OF PAPER.
9       I CANCEL IT. IT'S UNEQUIVOCAL. I CANCEL IT."
10      AND CAN MONTEREY, NOTWITHSTANDING THAT, CAN MONTEREY
11  ATTEMPT TO COLLECT THE DEBT FROM TANNER?
12      **MR. STRIMLING:** YOUR HONOR --
13      **THE COURT:** I'M ASKING -- I THINK I HAVE TO ASK
14  MONTEREY THIS.
15      **MR. ORR:** YOUR HONOR, I DON'T THINK THAT THAT'S THE
16  FACTS OF THIS CASE. I MEAN, THAT'S NOT OBVIOUSLY WHAT HAPPENED
17  HERE. THERE WAS NOT A CANCELLATION OF THE CONTRACT.
18      **THE COURT:** WELL --
19      **MR. ORR:** BUT ASSUMING YOUR HYPOTHETICAL --
20      **THE COURT:** YES.
21      **MR. ORR:** -- I THINK MONTEREY COULD PROBABLY TRY TO
22  COLLECT UNDER THAT CONTRACT. THE CONTRACT'S NOT VOID.
23      **THE COURT:** WELL, I GO TO MACY'S AND I BUY A
24  REFRIGERATOR.
25      **MR. ORR:** RIGHT.

1   **THE COURT:** AND THEY DELIVER THE REFRIGERATOR, AND
2   IT'S ALL FINANCED, RIGHT? AND MONTEREY IS HOLDING THE
3   COLLECTION --
4   **MR. ORR:** RIGHT.
5   **THE COURT:** -- OF MY MACY'S DEBT. AND I GET THE
6   REFRIGERATOR, AND I GO:
7   "THIS IS NOT WHAT I WANT."
8   I SEND IT BACK, AND I SAY:
9   "I'M NOT BUYING IT."
10  OKAY? PERIOD. END OF MY DEALINGS WITH MACY'S. AND
11  THEN, MONTEREY COMES IN AND SAYS:
12  "YOU OWE MONEY FOR THE REFRIGERATOR."
13  **MR. STRIMLING:** YOUR HONOR?
14  **THE COURT:** I OWE MONEY ON THE CONTRACT.
15  **MR. STRIMLING:** THEY HAVE A DEFENSE THAT THEY CAN --
16  IF THEY CAN REALLY VALIDATE THAT DEFENSE, THAT'S NOT A
17  DISMISSAL.
18  **THE COURT:** THAT'S RIGHT. NO. NO. YOU HAVE A
19  DEFENSE. YOU HAVE THE DEFENSE OF GOOD FAITH. IN OTHER WORDS, IF
20  YOU WANT TO ARGUE THAT IN GOOD FAITH YOU BELIEVED THAT THE DEBT
21  CONTINUED OR THE DEBT WAS A VALID DEBT, AND YOU WERE COLLECTING
22  ON A VALID DEBT, THAT MAY BE -- THAT MAY BE THE CASE.
23  BUT THAT'S NOT THIS CASE AT THIS STAGE.
24  **MR. STRIMLING:** AT THIS STAGE.
25  **THE COURT:** THIS CASE AT THIS STAGE IS WHETHER OR NOT

1   THEY CAN SAY THAT YOU COULDN'T COLLECT ON THE DEBT BECAUSE THE
2   DEBT WAS VOIDED, AMONG OTHER THINGS.
3           AND I'M TAKING -- WHAT I AM TRYING TO DO IS TAKE THE
4   SIMPLE CASE RATHER THAN THE COMPLICATED CASE.
5           **MR. ORR:**  I UNDERSTAND THAT, YOUR HONOR, AND I
6   APPRECIATE THAT.
7           AGAIN, THIS CASE IS THE ALLEGATIONS THAT'S SET FORTH
8   IN THE COMPLAINT.  AND THE ONLY ALLEGATION WE HAVE IS THAT --
9   THE ONLY NOTICE WHATSOEVER THAT MONTEREY COULD HAVE POSSIBLY HAD
10  THAT THESE CONTRACTS WERE VOIDABLE OR VOID OR ANYTHING ELSE IS
11  THE FACT THAT WE'VE GOT A CLASS MEMBER, A NAMED PLAINTIFF,
12  CANCELLING AUTHORIZATION FROM MONTEREY TO DEBIT THEIR ACCOUNT.
13          **THE COURT:**  WELL, THAT'S A PRETTY GOOD EXAMPLE, ISN'T
14  IT?
15          **MR. ORR:**  WELL, IT COULD BE AN EXAMPLE OF PLAINTIFF
16  SAYING:
17              "I DON'T WANT TO PAY.  I CAN'T AFFORD IT."
18          **THE COURT:**  IT COULD.
19          **MR. ORR:**  I WOULD THINK THERE HAS TO BE MORE IN THE
20  ALLEGATIONS OF THE COMPLAINT THAN A SIMPLE:
21              "I CANCEL" --
22          **THE COURT:**  I DON'T KNOW, BECAUSE IF THE PERSON -- I
23  DON'T KNOW, BECAUSE IF THE PERSON HAS THE RIGHT TO CANCEL, I
24  MEAN, YOU COULD SAY:
25              "YOU DON'T HAVE THE RIGHT TO CANCEL.  THEY

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212-5224

```
 1              DIDN'T HAVE THE RIGHT TO CANCEL."
 2              BUT WHAT YOU CAN'T SAY IS:
 3                  "THEY DIDN'T CANCEL IT." AND THAT'S A DIFFERENT
 4    THING.  THEY MAY NOT HAVE HAD THE RIGHT TO CANCEL, BUT YOU CAN
 5    ARGUE THEY DIDN'T HAVE THE RIGHT TO CANCEL.  BUT IT'S NOT CLEAR,
 6    AND I HAVE TO HAND IT TO THE PLAINTIFFS. I MEAN, I THINK THE
 7    SECOND-AMENDED COMPLAINT THEY ARE AS CLEAR AS THEY CAN BE, OR
 8    APPEAR TO BE RELATIVELY CLEAR IN TERMS OF THEIR ALLEGATIONS.
 9              LOOK, I'M NOT SAYING YOU DON'T HAVE A GOOD FAITH
10    DEFENSE. I'M NOT SAYING THAT THE EVIDENCE WON'T COME OUT YOUR
11    WAY AND SO FORTH AND SO ON, BECAUSE I HAVE NO IDEA.
12              BUT WE'RE AT A MOTION TO DISMISS.  AND IT SEEMS TO ME
13    THERE'S ENOUGH HERE, YOU KNOW, TAKING THE SIMPLE CASE.  THE
14    COMPLICATED CASE, I DON'T KNOW. I DON'T KNOW, BECAUSE I DON'T
15    KNOW ENOUGH REALLY ABOUT THE SO-CALLED INTERRELATIONSHIPS AND
16    EVIDENCE BACK AND FORTH ON ALL OF THESE OTHER THINGS.
17              AND I THOUGHT RATHER THAN TRY TO SWIM THROUGH IT,
18    SINCE THE CASE IS GOING TO BE ALIVE WHEN YOU WALK OUT OF HERE,
19    LET YOU GUYS SWIM THROUGH IT.  AND THEN, YOU COME IN WITH YOUR
20    SUMMARY JUDGMENT MOTIONS, AND THEY WILL EITHER BE -- YOU'RE
21    EITHER RIGHT OR WRONG AS A MATTER OF LAW.
22              THERE EITHER ARE GOING TO BE OR NOT FACTUAL DISPUTES,
23    BUT MAYBE THERE WON'T BE ON A NUMBER OF THINGS. YOU KNOW?
24              **MR. STRIMLING**:  RIGHT, YOUR HONOR.
25              **THE COURT**:  AND I THINK PROBABLY, IN PART, JUST TO
```

1  SORT OF DIFFUSE THE SITUATION, SURE I'VE LOOKED AT THIS A NUMBER
2  OF TIMES, AND I'VE GIVEN SOME OPINIONS AND SO FORTH.
3              BUT WHAT I ALWAYS -- ALMOST ALWAYS -- NOT ALWAYS, BUT
4  ALMOST ALWAYS DO IS ALLOW A PARTY TO FILE AN AMENDED COMPLAINT
5  WITHOUT PASSING ON THE MERITS OF THE COMPLAINT IN THE DECISION
6  AS TO WHETHER OR NOT THEY ARE PERMITTED TO FILE, YOU KNOW.
7  BECAUSE IT ALWAYS STRUCK ME THAT THAT'S LIKE A TWO-STEP PROCESS
8  WHERE YOU DON'T NEED BOTH STEPS.
9              IT'S SORT OF -- SO NOTWITHSTANDING WHATEVER YOU WANT
10 TO READ INTO WHAT I'VE DONE BEFORE, I REALLY THINK THAT IT'S
11 BEFORE ME IN THE RIGHT POSTURE.  AND LOOKING AT IT, I THINK THAT
12 IT GOES FORWARD.
13             **MR. STRIMLING:**  I UNDERSTAND THAT, YOUR HONOR.  WE
14 TRIED TO BE MORE SPECIFIC, YOUR HONOR, YES.
15             **MR. ORR:**  JUST TO MAKE ONE LAST ARGUMENT ON MY WAY
16 OUT OF DOOR, YOUR HONOR, JUST TO MAKE SURE THAT I'M HEARD -- AND
17 MAYBE THIS IS FOR THE RECORD -- AGAIN, I THINK OUR POSITION IS
18 THAT EVEN IF THESE UNDERLYING CONTRACTS WERE UNENFORCEABLE AND
19 VOID AS TO THE ADVANCED FEE SERVICE, ADVANCE-TALENT FEE SERVICE,
20 WHICH IS WHAT THE CONTRACT SAYS, MONTEREY COULD STILL TRY TO
21 COLLECT ON THOSE CONTRACTS.
22             IT WOULDN'T BE A VIOLATION OF THE ROSENTHAL ACT OR
23 ANY OTHER ACTS. WHAT THE ARTIST COULD SAY IS IS THAT:
24                  "HEY, THE HOLDER IN DUE COURSE LANGUAGE IN YOUR
25             CONTRACT ALLOWS ME TO USE THE SAME DEFENSES THAT I

1           USED WITH RESPECT TO BE IN YOUR EFFORTS TO COLLECT

2           AGAINST THIS CONTRACT."

3           SO MONTEREY -- AGAIN, I DON'T BELIEVE THAT MONTEREY WOULD VIOLATE, EVEN IF -- AND THIS IS NOT WHAT THE FACTS REFLECT OR ANYTHING AT ALL. THIS IS PLEADING STAGE HERE. BUT EVEN IF PLAINTIFFS ALLEGE THAT MONTEREY HAD ACTUAL KNOWLEDGE THAT THE PLAINTIFFS IN THIS CASE --

8           **THE COURT:** SO --

9           **MR. ORR:** -- VOID CONTRACTS, MONTEREY COULD STILL TRY TO COLLECT.

11          **THE COURT:** REALLY?

12          **MR. ORR:** THEY COULD THEN USE THAT.

13          **THE COURT:** SO EXPLAIN THIS TO ME. I GO TO MACY'S. I BUY MY REFRIGERATOR. I DON'T LIKE MY REFRIGERATOR. I TURN AROUND AND RETURN IT WITHIN THE SPECIFIED PERIOD OF TIME, AND YOU HOLD THE PAPER. I OWE YOU THE MONEY?

17          **MR. ORR:** NO, YOU DON'T. BUT WHAT YOU WOULD DO IS YOU WOULD THEN ASSERT THAT AS A DEFENSE.

19          WHAT I'M SAYING IS IF THE FINANCE COMPANY WERE ATTEMPTING TO COLLECT ON THAT, THAT WOULD NOT BE A VIOLATION OF ROSENTHAL OR UNFAIR COMPETITION LAW. THEY ARE STILL COLLECTING ON A DEBT THAT AS TO THEM IS A VALID DEBT.

23          NOW, AS TO, YOU KNOW, MACY'S OR SEARS, OR WHOEVER ELSE, THAT MAY BE A VOIDABLE OR A VOID DEBT. WHAT THE CONSUMER WOULD THEN SAY IS:

1                    "HEY, IN THIS CONTRACT IT SAYS THAT I CAN ASSERT
2              ALL THE DEFENSES I HAVE WITH MACY'S AGAINST
3              MONTEREY."
4          AND THAT'S WHAT WOULD HAPPEN HERE. MONTEREY DID NOT
5    COLLECT ANY MONEY FROM A SINGLE -- AS FAR AS I UNDERSTAND -- A
6    SINGLE INDIVIDUAL WHO REPUDIATED OR CANCELLED THEIR CONTRACT.
7          IF THEY TRY TO COLLECT -- AGAIN, I DON'T THINK THAT'S
8    A VIOLATION OF ROSENTHAL.  I DON'T THINK IT VIOLATES AN UNFAIR
9    COMPETITION LAW, BECAUSE THAT CONTRACT PURSUANT TO THE STATUTE,
10   AFTSA, IS ONLY VOIDABLE AT THE ELECTION OF THE ARTIST.  AND IT
11   SPECIFICALLY SAYS:
12                 "SHALL NOT BE ENFORCEABLE BY THE ADVANCE-FEE
13             TALENT SERVICE."
14         AGAIN, MONTEREY --THIS COURT HAS ALREADY HELD THAT
15   MONTEREY IS NOT AN ADVANCE-FEE TALENT SERVICE.  THEY ALSO SAID
16   THERE'S NO SECONDARY LIABILITY.
17         SO MONTEREY'S LIMITED IN THEIR -- THE WAY THAT THEY
18   ARE NOT ABLE TO GO AND COLLECT ON A DEBT THAT, YOU KNOW, IS NOT
19   OWED AS TO THE TALENT SERVICE IS THAT THESE CONSUMERS CAN SAY:
20                 "HEY, HOLDER IN DUE COURSE, YOU'RE NOT ALLOWED
21             TO COLLECT THAT DEBT."
22         I CAN USE THESE SAME DEFENSES AGAINST MONTEREY.
23         I JUST WANTED TO MAKE THAT POINT CLEAR, YOUR HONOR.
24         **THE COURT:**  WELL, I DON'T KNOW WHETHER YOU ARE RIGHT.
25   YOU MIGHT BE RIGHT.  BUT BE THAT AS IT MAY, I THINK I WANT TO

1  LET THE CASE GO FORWARD AT THIS POINT, BECAUSE NOW THAT YOU SORT
2  OF DEALT WITH THE SIMPLE CASE, THE MORE COMPLICATED CASE IS THAT
3  YOU WERE, QUOTE, "PART AND PARCEL IN WITH THEM," RIGHT?  AND
4  THAT'S -- YOU KNOW, WE WILL WAIT AND SEE WHETHER THAT'S THE
5  CASE.
6          **MR. ORR:**  UNDERSTOOD, YOUR HONOR.
7          **MR. STRIMLING:**  AND, YOUR HONOR, THEY WERE
8  THREATENING PEOPLE'S CREDIT.  THEY WERE REPORTING PEOPLE TO
9  CREDIT AGENCIES.  IT'S NOT LIKE THEY DESISTED.  AND THEY DID
10 KEEP COLLECTING AGAINST CLASS MEMBERS SO --
11         **THE COURT:**  WELL, I DON'T -- ANYWAY, IT'S ENOUGH
12 TO -- THE MOTION TO DISMISS IS DENIED.
13         AND HOW DO YOU WANT TO PROCEED?  I MEAN, YOU ARE
14 GOING TO DO DISCOVERY.  HAVE YOU AGREED ON DISCOVERY?
15         **MR. ORR:**  WE'VE GOT A MOTION FOR SUMMARY JUDGMENT
16 DATE THIS COURT SET PREVIOUSLY. I THINK THAT WE MAY REVISIT
17 THAT.  I'M NOT SURE IN TERMS OF THE TIMING.  BUT WE HAVE NOT --
18 WE'VE KIND OF HELD DISCOVERY IN ABEYANCE TO KIND OF SEE,
19 OBVIOUSLY, IF THIS CASE WAS GOING TO PROCEED.
20         WE WILL MEET AND CONFER ON IT.  WE HAVE HAD A PRETTY
21 GOOD RELATIONSHIP WITH PLAINTIFFS' COUNSEL.  WE WILL MEET AND
22 CONFER, MOVE FORWARD WITH THE DISCOVERY.  AND THEN, EITHER FILE
23 A MOTION FOR SUMMARY JUDGMENT OR GET A CLASS CERTIFICATION
24 MOTION ON CALENDAR.
25         **THE COURT:**  OKAY.  SO WHY DON'T YOU COME BACK HERE IN

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212-5224

```
 1  90 DAYS OR SO AND TELL ME WHAT YOU'RE DOING.
 2              MR. STRIMLING:  OKAY.  YOU WANT TO SET A DATE?
 3              THE COURT:  FOR A STATUS CONFERENCE.
 4              MR. STRIMLING:  SURE.
 5              THE CLERK:  MAY 27.
 6              MR. PRESTON (BY PHONE):  YOUR HONOR?
 7              THE COURT:  YES.
 8              MR. PRESTON (BY PHONE):  DOES YOUR HONOR INTEND TO
 9  ISSUE KIND OF A FULL WRITTEN OPINION?
10              THE COURT:  NO, YOU'VE HEARD THE FULL WRITTEN
11  OPINION.  THAT'S IT.
12              MR. PRESTON (BY PHONE):  VERY GOOD, YOUR HONOR.
13              THE COURT:  IT'S A MOTION TO DISMISS.  I DON'T WRITE
14  OPINIONS ON NONDISPOSITIVE ORDERS.  OKAY.
15              MR. STRIMLING:  THANK YOU VERY MUCH, YOUR HONOR.
16              MR. ORR:  SAME TIME ON MAY 27?
17              MR. STRIMLING:  WHAT TIME?
18              THE CLERK:  8:30.
19              MR. STRIMLING:  8:30.
20              MR. ORR:  THANK YOU VERY MUCH.
21              THE COURT:  AND IF YOU WANT CO-COUNSEL TO APPEAR BY
22  TELEPHONE, THAT'S FINE.
23              MR. STRIMLING:  OKAY.  THANK YOU VERY MUCH, YOUR
24  HONOR.
25              THE COURT:  OKAY.  THANKS.
```

1   **MR. ORR:** THANK YOU.

2   **MR. PRESTON (BY PHONE):** THANK YOU, YOUR HONOR.

3   (THEREUPON, THIS HEARING WAS CONCLUDED.)

4   CERTIFICATE OF REPORTER

5   I, KATHERINE WYATT, THE UNDERSIGNED, HEREBY CERTIFY

6   THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED

7   SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED BY ME INTO

8   TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE

9   RECORD OF SAID PROCEEDINGS.

10   I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR

11   ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING

12   PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE

13   OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

14   THE FEE CHARGED AND THE PAGE FORMAT FOR THE

15   TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL

16   CONFERENCE.

17   IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS

18   18H DAY OF MARCH, 2011.

19

20   _____

21   /S/ KATHERINE WYATT

22

23

24

25

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212-5224