Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866-509-1197 (facsimile)
ep@eplaw.us

Robert M. Bramson (102006)
Michael S. Strimling (96135)
BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
 (925) 945-0200 (telephone)
 (925) 945-8792 (facsimile)
rbramson@bramsonplutzik.com
mstrimling@bramsonplutzik.com

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| TIMOTHY and JEANNE DuFOUR and KENNETH TANNER, individuals, on their own behalves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BE., LLC, DYNAMIC SHOWCASES, LLC,  California limited liability companies, MONTEREY FINANCIAL SERVICES, INC., a California corporations, BE MARKETING LIMITED, a private limited company registered in England and Wales, ERIK DeSANDO, BARRY FALCK, JACOB STEINBECK, and DOES 1-100, inclusive,<br><br>Defendants. | No. 09-03770-CRB<br><br>Judge Charles R. Breyer<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION**<br><br>Date:          March 29, 2013<br>Time:         10:00 a.m.<br>Location:   Courtroom 6, 17th Floor<br>                   450 Golden Gate Avenue<br>                   San Francisco, CA 94102 |

# TABLE OF CONTENTS

I.  Plaintiffs' Class Claims............................................................................................... 1

    A.  Be's Contracts Violated California Law.................................................................. 1

    B.  Monterey Is Liable for Be's Violations ................................................................. 2

II.  Plaintiffs' Proposed Class Meets the Requirements of Rule 23 ......................................... 3

    A.  The Class Is Readily Ascertainable ...................................................................... 4

    B.  The Class Is Numerous ..................................................................................... 4

    C.  The Class Satisfies Rule 23(a)(2)'s Commonality Requirement............................................ 5

        1.  As a Matter of Ninth Circuit Law, Variations in Class Members'
            Damages Do Not Preclude Class Certification............................................ 6

        2.  All Material Aspects of Be's Performance of the Contracts Are
            Subject to Common Proof.............................................................. 7

        3.  Variations in Be or Monterey's Enforcement of the Contracts Do
            Not Preclude Certification ........................................................... 9

        4.  Variations in Class Members' State of Mind Do Not Preclude
            Class Certification of the Contract-Based Class Claims............................... 9

        5.  Monterey's Knowledge Is Immaterial to the Contract-Based Class
            Claims ............................................................................. 13

        6.  For the Class's Scienter-Based Claims, the Court Can Infer
            Classwide Reliance ................................................................. 14

        7.  Variations in Monterey's Scienter and Be's Marketing Practices
            Do Not Preclude Class Certification................................................. 16

    D.  The DuFours Satisfy Rule 23(a)(3)'s Typicality Requirement............................... 17

    E.  The DuFours Are Adequate Class Representatives ............................................. 19

    F.  Plaintiffs' Counsel Are Adequate ......................................................... 19

    G.  The Class Meets the Requirements of Rule 23(b) ............................................ 20

        1.  The Class Meets the Requirements of Rule 23(b)(2)................................. 20

        2.  The Class Meets the Requirements of Rule 23(b)(3)................................. 22

III.  Conclusion ............................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Akaosugi v. Benihana Nat. Corp.*
  282 F.R.D. 241 (N.D. Cal. 2012) ..........................................................................23

*Alkan v. Citimortgage, Inc.*
  336 F. Supp. 2d 1061 (N.D. Cal. 2004) ................................................................13

*Alonzo v. Maximus, Inc.*
  275 F.R.D. 513 (C.D. Cal. 2011) ..........................................................................20

*Amchem Prods., Inc. v. Windsor*
  521 U.S. 591 (1997) ..............................................................................................24

*Armstrong v. Davis*
  275 F.3d 849 (9th Cir. 2001) ....................................................................6, 17, 18

*Arnold v. United Artists Theatre Circuit, Inc.*
  158 F.R.D. 439 (N.D. Cal. 1994) ..........................................................................22

*Bateman v. Am. Multi-Cinema, Inc.*
  623 F.3d 708 (9th Cir. 2010) ................................................................................24

*Blackie v. Barrack*
  524 F.2d 891 (9th Cir. 1975) ........................................................................ passim

*Brown v. NFL Players Ass'n*
  281 F.R.D. 437 (C.D. Cal. 2012) ............................................................................4

*Californians for Disability Rights, Inc. v. California Dep't. of Transp.*
  249 F.R.D. 334 (N.D. Cal. 2008) ....................................................................19, 20

*Campbell v. First Am. Title Ins. Co.*
  269 F.R.D. 68 (D. Me. 2010) ................................................................................19

*Clark v. Capital Credit & Collection Servs., Inc.*
  460 F.3d 1162 (9th Cir. 2006) ..............................................................................13

*Costa v. Nat'l Action Fin. Servs.*
  634 F. Supp. 2d 1069 (E.D. Cal. 2007) ................................................................14

*Cruz v. Int'l Collection Corp.*
  673 F.3d 991 (9th Cir. 2012) ................................................................................14

*Cummings v. Connell*
    316 F.3d 886 (9th Cir. 2003) ........................................................................19

*Del Campo v. Am. Corrective Counseling Servs., Inc.*
    254 F.R.D. 585 (N.D. Cal. 2008) .................................................................22

*Dilts v. Penske Logistics, LLC*
    267 F.R.D. 625 (S.D. Cal. 2010) ...................................................................3

*DuFour v. Be., LLC*
    No. 09-3770, 2009 WL 4730897 (N.D. Cal. Dec. 7, 2009)......................1, 7, 9

*Duran v. Credit Bureau of Yuma, Inc.*
    93 F.R.D. 607 (D. Ariz. 1982) .....................................................................11

*Evon v. Law Offices of Sidney Mickell*
    688 F.3d 1015 (9th Cir. 2012) .......................................................................8

*General Tel. Co. of Sw. v. Falcon*
    457 U.S. 147, 102 S. Ct. 2364 (1982)..........................................................17

*Haley v. Medtronic, Inc.*
    169 F.R.D. 643 (C.D. Cal. 1996) ...................................................................4

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ................................................6, 19, 23, 24

*Hernandez v. Balakian*
    251 F.R.D. 488 (E.D. Cal. 2008) .................................................................18

*Herrera v. LCS Fin. Servs. Corp.*
    274 F.R.D. 666 (N.D. Cal. 2011)...................................................................8

*Holman v. Experian Info. Solutions, Inc.*
    No. 11-0180, 2012 WL 1496203 (N.D.Cal. Apr. 27, 2012)...........................8

*Hunt v. Check Recovery Sys., Inc.*
    05-04993, 2007 WL 2220972 (N.D. Cal. Aug. 1, 2007) ..............................22

*Hunt v. Check Recovery Systems, Inc.*
    241 F.R.D. 505 (N.D. Cal. 2007)..................................................................11

*In re Chase Bank USA, N.A. CHECK LOAN Contract Litig.*
    274 F.R.D. 286 (N.D. Cal. 2011)...................................................................7

*In re Data Access Sys. Sec. Litig.*
    103 F.R.D. 130 (D.N.J. 1984) ......................................................................19

*In re Ferrero Litig.*
    278 F.R.D. 552 (S.D. Cal. 2011) ...................................................16

*In re First Alliance Mortg. Co.*
    471 F.3d 977 (9th Cir. 2006) ..............................................16, 17

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*
    268 F.R.D. 652 (S.D. Cal. 2010) ...................................................16

*In re Park West Galleries, Inc.*
    732 F. Supp. 2d 1181 (W.D. Wash. 2010)........................................15

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*
    527 F. Supp. 2d 1053 (N.D. Cal. 2007) .........................................23

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*
    571 F.3d 953 (9th Cir. 2009) .......................................................22

*Johns v. Bayer Corp.*
    280 F.R.D. 551 (S.D. Cal. 2012) ...................................................23

*Joint Equity Comm. of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real*
    *Estate Corp.*
    281 F.R.D. 422 (C.D. Cal. 2012) ...................................................16

*Kamar v. Radio Shack Corp.*
    254 F.R.D. 387 (C.D. Cal. 2008) .............................................23, 24

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. 2001) ................................................23, 24

*Lymburner v. U.S. Fin. Funds, Inc.*
    263 F.R.D. 534 (N.D. Cal. 2010) ...................................................23

*Marlo v. United Parcel Serv. Inc.*
    251 F.R.D. 476 (C.D. Cal. 2008) .....................................................3

*Marolda v. Symantec Corp.*
    672 F. Supp. 2d 992 (N.D. Cal. 2009) ...........................................13

*Mazza v. Am. Honda Motor Co., Inc.*
    666 F.3d 581 (9th Cir. 2012) .........................................................5

*McKenzie v. Federal Exp. Corp.*
    275 F.R.D. 290 (C.D. Cal. 2011) ...............................................4, 20

*McPhail v. First Command Fin. Planning, Inc.*
    247 F.R.D. 598 (S.D. Cal. 2007) ...................................................17

*Molski v. Gleich*
  318 F.3d 937 (9th Cir. 2003) ........................................................................19

*Narouz v. Charter Commc'ns, LLC*
  591 F.3d 1261 (9th Cir. 2010) ........................................................................4

*Nat'l Fed'n of Blind v. Target Corp.*
  582 F. Supp. 2d 1185 (N.D. Cal. 2007) .......................................................18

*Negrete v. Allianz Life Ins. Co. of N. Am.*
  238 F.R.D. 482 (C.D. Cal. 2006) ...............................................................4, 15

*Nordberg v. Trilegiant Corp.*
  445 F.Supp.2d 1082 (N.D. Cal. 2006) .........................................................13

*Norris-Wilson v. Delta-T Group, Inc.*
  270 F.R.D. 596 (S.D. Cal. 2010) .....................................................................3

*O'Connor v. Boeing N. Am., Inc.*
  180 F.R.D. 359 (C.D. Cal. 1997) .....................................................................5

*Peterson v. H & R Block*
  174 F.R.D. 78 (N.D. Ill. 1997) .......................................................................15

*Phelps v. 3PD, Inc.*
  261 F.R.D. 548 (D. Or. 2009) ........................................................................22

*Plascencia v. Lending 1st Mortg.*
  259 F.R.D. 437 (N.D. Cal. 2009) ...................................................................15

*Ries v. Arizona Beverages USA LLC*
  No. 10-01139, 2012 WL 5975247 (N.D.Cal. Nov. 27, 2012) ......................21

*Riley v. Giguiere*
  631 F. Supp. 2d 1295 (E.D. Cal. 2009) .........................................................13

*Rodriguez v. Hayes*
  591 F.3d 1105 (9th Cir. 2010) ...................................................................5, 18

*Smith v. Univ. of Wa. Law Sch.*
  2 F. Supp. 2d 1324 (W.D. Wash. 1998) ........................................................18

*Stearns v. Ticketmaster Corp.*
  655 F.3d 1013 (9th Cir. 2011) .........................................................................7

*Stickrath v. Globalstar, Inc.*
  No. 07-1941, 2008 WL 5384760 (N.D. Cal. Dec. 22, 2008) ........................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Thomasson v. GC Servs. Ltd. P'ship*
    275 F.R.D. 309 (S.D. Cal. 2011) ........................................................8

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) .........................................................24

*Vinole v. Countrywide Home Loans, Inc.*
    571 F.3d 935 (9th Cir. 2009) ....................................................22, 24

*Wal-Mart Stores, Inc. v. Dukes*
    131 S. Ct. 2541 (2011) ...............................................................6, 21

*Walters v. Reno*
    145 F.3d 1032 (9th Cir. 1998) .......................................................21

*Wiener v. Dannon Co., Inc.*
    255 F.R.D. 658 (C.D. Cal. 2009) ...............................................9, 18

*Wolin v. Jaguar Land Rover N. Am., LLC*
    617 F.3d 1168 (9th Cir. 2010) .........................................................4

*Xavier v. Philip Morris USA Inc.*
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) ...................................3, 4, 20

*Xiufang Situ v. Leavitt*
    240 F.R.D. 551 (N.D. Cal. 2007) ...............................................5, 18

**CALIFORNIA CASES**

*Aron v. U-Haul Co. of Cal.*
    143 Cal.App.4th 796 (2006) ..........................................................12

*Cedars-Sinai Med. Ctr. v. Shewry*
    137 Cal.App.4th 964 (2006) ..........................................................14

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
    20 Cal.4th 163 (1999) ...................................................................12

*Cortez v. Purolator Air Filtration Prods. Co.*
    23 Cal.4th 163 (2000) ...................................................................13

*Duffens v. Valenti*
    161 Cal.App.4th 434 (2008) ..........................................................10

*Eden Tp. Healthcare Dist. v. Sutter Health*
    202 Cal.App.4th 208 (2011) ..........................................................10

*Gattuso v. Harte-Hanks Shoppers, Inc.*
    42 Cal.4th 554 (2007) ...................................................................11

*Gentry v. Superior Court*
   42 Cal.4th 443 (2007) .............................................................................11

*Ghirardo v. Antonioli*
   8 Cal.4th 791 (1994) ...............................................................................14

*In re Marriage of Dawley*
   17 Cal.3d 342 (1976) ...............................................................................14

*In re Tobacco II Cases*
   46 Cal.4th 298 (2009) .............................................................................13

*Lafferty v. Wells Fargo Bank*
   13 Cal. Daily Op. Serv. 1397, 2013 WL 412900 (Feb. 4, 2013) ...............................2

*McClung v. Saito*
   4 Cal.App.3d 143 (1970) ..........................................................................14

*Music Acceptance Corp. v. Lofing*
   32 Cal.App.4th 610 (1995) ........................................................................2

*People ex rel. State of Cal. v. Drinkhouse*
   4 Cal.App.3d 931 (1970) ..........................................................................10

*Rosman v. Cuevas*
   176 Cal.App.2d Supp. 867 (1959) ............................................................14

*Vasquez v. Superior Court*
   4 Cal.3d 800 (1971) ..................................................................................2

*Waisbren v. Peppercorn Productions, Inc.*
   41 Cal.App.4th 246 (1995) ......................................................................10

*Yoo v. Robi*
   126 Cal.App.4th 1089 (2005) ..................................................................11

**OTHER CASES**

*Mutual Finance Co. v. Martin*
   63 So.2d 649 (Fla. 1953).............................................................................2

**FEDERAL STATUTES**

FCRA .............................................................................................................9

FDCPA ........................................................................................................13

15 U.S.C. § 1692e(2) ..................................................................................14

15 U.S.C. § 1692g(a) ........................................................................................9

15 U.S.C. § 1692k ...........................................................................................13

CALIFORNIA STATUTES

Advance Fee-Talent Services Act......................................................................1

BUS. & PROF. CODE § 17200 ...........................................................................3

CAL. CIV. CODE § 1788.17 .............................................................................9, 13

CAL. GOV'T CODE § 1092 .................................................................................10

CAL. GOVT. CODE  § 1090 .................................................................................10

CAL. LAB. CODE § 1701.4(d) (2009)................................................9, 10, 11, 12

OTHER AUTHORITIES

16 C.F.R. § 433.2 ..............................................................................................2

7AA Charles Alan Wright, Arthur R. Miller, et al, *Federal Practice & Procedure* § 1782
     (3d ed. 2012)..............................................................................................21

FED. R. CIV. P. 23(a) ..............................................................................3, 4, 5, 16

FED. R. CIV. P. 23(a) ..............................................................................3, 17, 20

FED. R. CIV. P. 23(a)(1).....................................................................................4

FED. R. CIV. P. 23(a)(2).....................................................................................5, 6

FED. R. CIV. P. 23(a)(3)..............................................................................17, 18

FED. R. CIV. P. 23(a)(4).....................................................................................19

FED. R. CIV. P. 23(b) .....................................................................................3, 20

FED. R. CIV. P. 23(b)(2) .............................................................................20, 21, 22

FED. R. CIV. P. 23(b)(3) .......................................................................12, 20, 22, 24

FED. R. CIV. P. 23(c)(2) .....................................................................................12

FED. R. CIV. P. 23(c)(2)(B)(v)...........................................................................25

FED. R. CIV. P. 23(c)(2)(B)(vi)..........................................................................25

FED. R. CIV. P. 23(g) ...................................................................................19, 20

FED. R. CIV. P. 23(g)(1)(A) ........................................................................................................20

## MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING CLASS CERTIFICATION

Plaintiffs Timothy DuFour and Jeanne DuFour ("Plaintiffs") hereby submit their memorandum in support of their Motion for Class Certification and the points and authorities upon which they rely. Plaintiffs received Defendant Monterey Financial Services, Inc.'s ("Monterey") Motion to Deny Class Certification ("Motion to Deny") a few days prior to filing their own Motion for Class Certification. To facilitate the Court's consideration on the parties' cross-motions on the class certification issue, Plaintiffs have addressed the Motion to Deny's central points in this brief (primarily in Section II.C below).

## I.    Plaintiffs' Class Claims

The DuFours allege that Be's customers did not receive the services to which they paid for because Be stopped all operations and performing on their customers' multi-year contracts by April 2009. (*See* SAC ¶¶108-11, 187, 213.) The DuFours also allege that Be's contracts violated the Advance Fee-Talent Services Act (Cal. Lab. Code §§ 1701-1701.20 (2009)) ("AFTSA"). (*Cf. id.* ¶¶ 57-58, 63-73, 129-33.) Plaintiffs' claims against Monterey also flow from the illegality and invalidity of Be's contracts.

### A.    Be's Contracts Violated California Law

Ruling on their prior motion for preliminary injunction, the Court found that the DuFours were likely to prevail on their claims that their contracts with Be violated AFTSA:

> Based on the evidence attached to Plaintiffs' motion for preliminary relief, Be LLC does indeed qualify as an Advance-fee Talent Service. Plaintiffs have shown that the contracts at issue explain that Be LLC is "an entertainment company that offers a membership comprised of resources, discounts and a support system designed to help individuals get started on a pathway to success." . . . Be LLC's website indicates that it gives "young artists the resources, services, experience and exposure that they need in order to succeed in the entertainment industry." . . . The evidence also shows that Be LLC charges Plaintiffs an advance fee. *This evidence situations Be LLC within AFTSA's broad definition of an advance-fee talent service*. . . . Because Be LLC has been shown to be an advance-fee talent service, California's AFTSA applies and imposes certain requirements on all contracts between such a service and its clients. . . . *According to the copies of contracts attached with Plaintiffs' moving papers, their contracts with Be LLC violated all these provisions of* [*AFTSA*.]

*DuFour v. Be., LLC*, No. 09-3770, 2009 WL 4730897, *4 (N.D. Cal. Dec. 7, 2009) (emphasis added). Monterey has not challenged the fundamental holding in this case: Be's contracts

violated California law.

### B. Monterey Is Liable for Be's Violations

As a matter of California law, Monterey has liability in this action because Be assigned its contracts with the class members to Monterey, and Monterey collected (or tortiously attempted to collect) on those contracts.

> In the instant case, as in many situations in which consumers have been defrauded by a seller, a judgment against the seller alone would represent a Pyrrhic victory because the defrauding seller is insolvent and the victorious consumers remain liable to the finance companies, which as the assignees of the installment contracts claim that they are entitled to payment even if the seller acted fraudulently. . . . *Obviously, if plaintiffs are to be made whole for the wrongs allegedly done to them, the finance company defendants must be held liable as assignees if [the fraudulent seller] is culpable.*

*Vasquez v. Superior Court*, 4 Cal.3d 800, 821-22 (1971) (emphasis added). *Vasquez* acknowledged that this rule imposed significant consequences for the finance companies. *See id*. at 825. *Vasquez* explained the rationale for shifting the risk of a seller's insolvency from consumers to the seller's finance companies:

> "[T]he finance company is better able to bear the risk of the dealer's insolvency than the buyer and in a far better position to protect his interests against unscrupulous and insolvent dealers." [*Mutual Finance Co. v. Martin*, 63 So.2d 649, 653 (Fla. 1953).] Zeal is originally employed by the seller in investigating the credit of the buyer; only a modicum of additional zeal by the lender should be necessary to investigate the good faith of the seller. If any hardship results from the rule we adopt, it is only that hardship inherent in the insistence of the law that honesty and enterprise must remain compatible.

*Id*. "Thus, under California law, any defenses or claims a buyer might assert against a seller may also be asserted by a buyer against an assignee of the seller, such as a finance company." *Music Acceptance Corp. v. Lofing*, 32 Cal.App.4th 610, 626 (1995). Similarly, Monterey can be held liable under the FTC's Holder Rule (16 C.F.R. § 433.2). The Holder Rule "preserve[s] the consumer's claims and defenses against the creditor-assignee [and] reallocate[s] the cost of seller misconduct to the creditor." *Id*. at 628 (citation, punctuation omitted).[1]

The DuFours seek declaratory judgment that Be's contracts are not enforceable. (*See* SAC ¶¶161-67.) This is very important relief for the class; the aggregate balance purportedly due

---

[1] "[T]he plain meaning of the Holder Rule allows the [plaintiffs] to assert all claims against [the finance company] they might otherwise have against [the seller]." *Lafferty v. Wells Fargo Bank*, 13 Cal. Daily Op. Serv. 1397, 2013 WL 412900, *1 (Feb. 4, 2013).

under Class members' contracts is over $3.6 million. (Preston Decl. ¶5.) The DuFours also seek restitution and other remedies against Monterey under the Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code §§ 1788-1788.33) ("RFDCPA"), the Consumer Legal Remedies Act (Cal. Civ. Code, §§ 1750-84) ("CLRA") and the unfair and unlawful prongs of the unfair competition law (Bus. & Prof. Code § 17200) ("UCL") for its conduct in connection with the collection of money under Be's contracts. (*See* SAC ¶¶168-178, 189-202, 210-16.) This is not an exhaustive list of Plaintiffs' claims (*cf.* 179-88, 203-09), and Plaintiffs may well seek to amend their complaint based on the Court's rulings in this action to maximize the relief available to the class proposed below.

## II.   Plaintiffs' Proposed Class Meets the Requirements of Rule 23

The Motion proposes a class defined as

> all persons listed in the Excel spreadsheet titled "DuFour-Tanner Discovery Spreadsheet (08.22.11).xls.XLS" ("Spreadsheet") which was produced to Plaintiff's counsel by Monterey Financial Services, Inc. on or about August 22, 2011, listed as having signed a Type 2 contract.

(the "Class." *Cf.* Preston Decl. ¶¶3-5.) The Spreadsheet lists 1,754 Class members (*Id.*)[2]

Certification of a class under Rule 23 requires numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). In addition to each element in Rule 23(a), class certification requires that the proposed class fulfill one of the categories under Rule 23(b). *See Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). However, Plaintiffs' "burden at the class certification stage is slight"; the Court "need only be able to make a reasonable judgment that Rule 23 requirements are satisfied." *Marlo v. United Parcel Serv. Inc.*, 251 F.R.D. 476, 487 (C.D. Cal. 2008) (quoted by *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 601 (S.D. Cal. 2010)). Conversely, "weighing competing evidence is inappropriate at [the class certification] stage of the litigation." *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 630 (S.D. Cal. 2010) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)). In light of the evidence supporting this Motion, the Court has more than enough "material sufficient to form a reasonable judgment on each [of these] requirement[s.]" *Blackie v. Barrack*, 524 F.2d 891, 901

---

[2] The phrase "Type 2 contract" refers to those contracts which are not subject to arbitration agreements.  Preston Decl. ¶4.

(9th Cir. 1975) (an "extensive evidentiary showing . . . is not required"). [3]

## A.    The Class Is Readily Ascertainable

"In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists." *Xavier*, 787 F. Supp. 2d at 1089. A class is ascertainable if it is "'administratively feasible for the court to ascertain whether an individual is a member.'" *Brown v. NFL Players Ass'n*, 281 F.R.D. 437, 441 (C.D. Cal. 2012) (citation omitted).

The Class here is plainly acertainable, because the Class members' names and contact information are listed in the Spreadsheet. (See Preston Decl. ¶¶3-5.) *Cf. Brown*, 281 F.R.D. at 441 (class definition was acertainable where class member could be identified with defendant's records); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996) (where defendant maintained records identifying potential class members, "the identity of potential plaintiffs is easily ascertainable such that an identifiable class does exist").

## B.    The Class Is Numerous

The Class is sufficiently numerous because there are 1,754 Class members listed in the Spreadsheet. (Preston Decl. ¶5.) Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "[I]mpracticability does not mean 'impossibility,' but only the difficulty or inconvenience in joining all members of the class." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 487 (C.D. Cal. 2006) (citation, punctuation omitted). "Circuit law teaches that a class as little as thirty-nine individuals is large enough to satisfy the numerosity requirement." *McKenzie v. Federal Exp. Corp.*, 275 F.R.D. 290, 296 (C.D. Cal. 2011) (citing, following *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th

---

[3]  Likewise, appellate review on "'a grant of class certification . . . accord[s] the district court noticeably more deference than . . . a denial of class certification.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010) (quoting *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008)). Where a district court's denial of class certification "fails to make sufficient findings to support its application of the Rule 23 criteria," the denial "is not entitled to the traditional deference given to such a determination." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010) (quoting *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1161 (9th Cir. 2001)).

1    Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (numerosity could likely be satisfied

2    "solely on the basis of the number of ascertained class members, i.e., 39, 64, and 71")).

3         Monterey's Motion to Deny Class Certification argues that the DuFours cannot prove that

4    Be's misrepresentations were "told to a sufficient number of class members" or that "a sufficient

5    number of putative class members"

6         desire(d) to void their Be contracts, [] expressed that desire to Be or Monterey
          before filing the present suit, [or] did not receive the full benefits set forth under
7         their Membership Agreements.

8    (Def.'s Mot. 10, 11.) These arguments are actually directed to commonality. Because these

9    supposedly "individualized" issues are contradicted by the evidence and/or immaterial to the

10   Class's claims under the Class definition, the Class is sufficiently numerous.

11        **C.    The Class Satisfies Rule 23(a)(2)'s Commonality Requirement**

12        Commonality requires "there are questions of law or fact common to the class." Fed. R.

13   Civ. P. 23(a)(2). Be had uniform contracts. (DeSando Decl. ¶17; Am. DeSando Decl. ¶2; Preston

14   Decl. ¶2.) Be used a very small set of written communications to make uniform material

15   representations to its customers. (DeSando Decl. ¶14 [instruction manuals]; Preston Decl. ¶¶6-8

16   [Be's website].) Likewise, Be used systematic sales practices to make uniform material

17   representations to its customers. (DeSando Decl. ¶¶4-20 [describing Be's sales practices].)

18   Further, the legal questions driving the class claims here are common to every Class member:

19   Did Be's contracts violate AFTSA? When did Be stop performing under the contracts? Is

20   Monterey liable if Be's contracts violated AFTSA? Is Monterey liable if Be stopped performance

21   under the contracts? "[C]ommonality only requires a single significant question of law or fact."

22   *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). Commonality can be

23   "easily satisf[ied]" where class members "all base their claims on the same legal theory."

24   *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560 (N.D. Cal. 2007) (citation, punctuation omitted). *See*

25   *also O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 370 (C.D. Cal. 1997) (sufficient

26   commonality for class certification where relief "turn[s] on questions of law applicable in the

27   same manner to each member of the class"). Conversely, commonality does not require

28   uniformity or imply "'complete congruence.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th

Cir. 2010) (quoting *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006)). Hence, Rule 23(a)(2) tolerates significant differences between class members:

> All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) ("individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality").

Assessing commonality requires the Court to decide whether individualized or common issues are *material* to the class claims. "[C]ommon contention[s] . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation, punctuation omitted). Commonality is met when a class action will "generate common answers apt to drive the resolution of the litigation." *Id*. (citation, punctuation omitted). The Court should certify the Class and reject the Motion to Deny because (1) Plaintiffs' evidence undercuts many of its claims about the substantive evidence in this case while (2) Monterey relies on individualized issues that are not material and do not preclude class certification.

### 1. As a Matter of Ninth Circuit Law, Variations in Class Members' Damages Do Not Preclude Class Certification

Monterey's Motion to Deny Certification argues that class treatment is improper because Plaintiffs cannot allege "the contracts of the class members were identical as to the amounts charged or the duration of the contract," and determining "when each class member contracted," "what services they received," and "what payments were made [and] what payments were missed . . . must be determined on an individual basis." (Def.'s Mot. 12, 15.)

These issues are relevant to Class members' damages and do not defeat certification. The Ninth Circuit's well-established rule that is "[t]he amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie*, 524 F.2d at 905. "[T]he mere fact that there might be differences in damage calculations is not sufficient to defeat class

certification." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011) (citing *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). *See also In re Chase Bank USA, N.A. CHECK LOAN Contract Litig.*, 274 F.R.D. 286, 291-92 (N.D. Cal. 2011).

> ### 2.   All Material Aspects of Be's Performance of the Contracts Are Subject to Common Proof

Monterey contends that Plaintiffs do not allege that "class members were uniformly denied services under the contracts," and determining "what services each [Class member] was offered [and] received" is an individual inquiry. (Def.'s Mot. 12, 14.) In fact, the DuFours allege that Be went out of business long ago. (*See* SAC ¶¶108-11, 187, 213.) It is undisputed that Be went out of business in 2009. (DeSando Decl. ¶¶34-37, 40-41.) If the class claims hinge on Be's failure to perform the contracts, such failure is a common issue of fact. The precise date Be went out of business – and ceased to provide any services – is common to every class member. Monterey also contends that determining "what services each [Class member] was offered [and] received" is an individual inquiry – but the date Be stopped providing services, and whether its business practices rendered it subject to AFTSA, are both plainly subject to common proof. (Def.'s Mot. 14. *Cf.* DeSando Decl. ¶¶4-20; *DuFour*, 2009 WL 4730897, at *4.)

The other individualized inquiry into Be's services identified in the Motion to Deny, "whether or not [Class members] obtained an agent or employment," is not actually material to any of the class claims. (Def.'s Mot. 15.) For contract-based class claims which hinge on the illegality and invalidity of Be's contracts, it is entirely irrelevant *what* services Be performed. For contract-based class claims that hinge on Be's failure to perform the contracts, the date Be ceased operations and stopped providing services is common to all Class members.

Finally, the scienter-based claims are based on Be inducing Class members to pay them money on the fraudulent representation that Be's criteria for selecting them as customers was based on their capacity for professional success in the entertainment industry. It is immaterial whether Class members actually had professional success if Be was dishonest about its selection criteria. Indeed, it is clear that Plaintiffs have common proof that Be fraudulently represented its selection criteria for customers. Be's former CEO, Erik DeSando, has attested that Be's

employees told prospective customers they would "assess [their children's] screen test to determine whether the child was likely to achieve professional success in the entertainment industry." (DeSando Decl. ¶6.) Likewise, Be's website states:

> Are all the children selected from the screentest?
> Unfortunately no. Only a small percentage of the children screened, meet the industry profile that top agents, talent managers and casting directors are looking for.

(Preston Decl. ¶8. *See also* DuFour Dep. at 184:2-25.) In fact, however, "[i]t was widely understood [at Be] that" Class member's ability to pay was important, and their children's capacity for professional success in the entertainment industry was not. (DeSando Decl. ¶8.) Indeed, "Be never declined to take a lead on as a client because the lead lacked talent or capacity to achieve professional success in the entertainment industry." (*Id*. ¶10. *See also* Brainard Decl. ¶6 ("From my review of the intake packets [which included screentest evaluations and financial information which Be prepared for each prospective client], it is my opinion that Be selected prospective members on the basis of their ability to pay").)

Regardless, even if the Court nonetheless decides that the class claims require some sort of evidence whether or not Class members' children obtained employment in the entertainment industry, that sort of limited individualized inquiry does not bar class certification. Courts have frequently held that similar "individualized inquir[ies]" ***do not* "*preclude finding commonality*"** because they are "limited, straightforward factual determination[s]." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029-30 (9th Cir. 2012) (issue of whether letters debt collector sent to a debtor "'care of' a business address" were sent to consumer's employer) (emphasis added). Thus, "individual inquir[ies]" into whether mortgages were subject to anti-deficiency laws and whether mortgage had been foreclosed "consist[ed] of limited, straightforward factual determinations that would not preclude a finding of commonality." *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 667 (N.D. Cal. 2011).[4] None of the individual issues identified in the

---

[4]   Likewise, even if a class claim requires "an individualized inquiry into the content of the [defendant's recorded] telephone calls," that sort of "limited, basic inquiry does not [preclude] class certification[.]" *Thomasson v. GC Servs. Ltd. P'ship*, 275 F.R.D. 309, 314 (S.D. Cal. 2011). *Cf. Holman v. Experian Info. Solutions, Inc.*, No. 11-0180, 2012 WL 1496203, *9 (N.D.Cal. Apr. 27, 2012) ("[e]ven if the fact-finder must engage in individual

Motion to Deny would involve more onerous inquiries than those permitted in the above cases.

### 3.    Variations in Be or Monterey's Enforcement of the Contracts Do Not Preclude Certification

Monterey asserts that determining which Class members were unable to cancel their contracts, what "actions were taken relating to enforcement of the contract terms by Be or Monterey," and "what collection efforts were attempted must be determined on an individual basis." (Def.'s Mot. 11, 15.) Monterey's enforcement actions are immaterial to the extent that the Class is entitled to restitution of money collected under Be's contracts (whether because the contracts were illegal, fraudulent, or simply not performed by Be).

Still, some of the class claims against Monterey may hinge on whether Monterey, e.g., communicated with individual Class members in trying to collect the unpaid balance on one of Be's contracts.[5] Monterey maintained records of its collection activities against the Class members. (Preston Decl. ¶10.) This inquiry can be easily resolved through a ministerial review of Monterey's records, and does not defeat class certification. *Cf. Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 670 (C.D. Cal. 2009) (certifying class where defendant's product refund records made "determination of whether a potential class member is precluded from obtaining damages . . . a mere mechanical task").

### 4.    Variations in Class Members' State of Mind Do Not Preclude Class Certification of the Contract-Based Class Claims

The Court held Be's contracts violated AFTSA section 1701.4. *DuFour*, 2009 WL 4730897, at *4. The focal point of the Motion to Deny is Monterey's argument that Be's contracts "are valid until a specific declaration is made by a consumer to the contrary," and that "each individual class member will have to be surveyed to determine if, and when, they made any such election." (Def.'s Mot. 15.) As set forth below, Monterey's argument depends on an interpretation of AFTSA's statutory language that is at odds with California law.

**Be's Contracts Are Void:** Monterey's argument hinges on the AFTSA provision that

---

[5]    determinations [to exclude individuals with consumer-initiated tows or judicially-established debts from FCRA class], these are both limited and discrete inquiries").
For instance, Plaintiffs allege that Monterey violated Rosenthal Act by failing to send letters in compliance with 15 U.S.C. § 1692g(a), made applicable to Monterey under Cal. Civ. § 1788.17. (*Cf.* SAC ¶174.)

deficient contracts are "voidable at the election of the artist and, in that case, shall not be enforceable by the advance-fee talent service." Cal. Lab. Code § 1701.4(d) (2009). California law does not support Monterey's hyperliteral construction of this language. For instance, California Government Code section 1090 prohibits public officials from having a financial interest in government contracts made in their official capacity: such contracts "may be avoided at the instance of any party except the officer interested therein." Cal. Gov't Code § 1092. Nonetheless, "[a] contract in violation of section 1090 of the Government Code is *void*," rather than merely voidable. *People ex rel. State of Cal. v. Drinkhouse*, 4 Cal.App.3d 931, 935 (1970).

> Notwithstanding the language that such contracts "may be avoided" – ***the courts have often held that a contract in which a public officer is interested is void, rather than voidable as the statute indicates***. . . . The principle . . . is that where a statute pronounces a penalty for an act, a contract founded on such act is void, although the statute does not pronounce it void nor expressly prohibit it.

*Id*. (citations, punctuation omitted; emphasis added). *See also Eden Tp. Healthcare Dist. v. Sutter Health*, 202 Cal.App.4th 208, 217 n. 5 (2011) (the phrase stating contracts in violation of statute "may be avoided" means that such contracts are "void, not merely voidable," citing *Thomson v. Call*, 38 Cal.3d 633, 646 n. 15 (1985)). The same principal applies generally, and specifically to Be's contracts.

> Contracts contrary to express statutes or to the policy of express statutes are illegal. Such illegality voids the entire contract . . . [Where a statute prohibits] the making of a particular kind of a contract except in a certain manner, [the statute] renders such contract void if made in any other way. . . . [Such contracts are] void because the statute prescribes the only method in which a valid contract can be made.

*Duffens v. Valenti*, 161 Cal.App.4th 434, 454, 455 (2008).

**Monterey's Construction of AFTSA § 1701.4(d) Frustrates Legislative Intent:**

AFTSA is plainly a "remedial statute," "designed to correct abuses that have long been recognized" and was "enacted for the protection of those seeking employment [i.e., the artists]." *Waisbren v. Peppercorn Productions, Inc.*, 41 Cal.App.4th 246, 254 (1995) (concerning closely related Talent Agencies Act, citation, punctuation omitted). Hence, AFTSA "should be liberally construed to promote the general object sought to be accomplished; it should 'not be construed within the narrow limits of the letter of the law.'" *Id*. (same).

> [The] reasons for refusing to enforce an illegal agreement, . . . are particularly strong in cases in which the statute invalidating the contract envisions the protection of one class of persons from the unlicensed and unsupervised activities of another.

*Yoo v. Robi*, 126 Cal.App.4th 1089, 1103 (2005). Here, however, most Class members will not know that Be's contracts violate AFTSA, or that they are "voidable." None of the Class members know what is required to "void" their contracts, because the Court has not construed section 1701.4(d). The Court should construe section 1701.4(d) in a manner that promotes class resolution, because a failure of justice will result otherwise. "[O]ften consumers do not know that a potential defendant's conduct is illegal. [Faced with technical violations of the law,] few know or even sense that their rights are being violated." *Gentry v. Superior Court*, 42 Cal.4th 443, 461 (2007) (citations, punctuation omitted). Where "individual consumers are most likely unaware of their rights" under AFTSA, "the likelihood of individual actions is remote." *Hunt v. Check Recovery Systems, Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007). For this reason, a class action is the only practical avenue for Be's customers to vindicate their statutory rights. Class actions "to enforce compliance with consumer protection laws" are "desirable and should be encouraged," because they provide "an opportunity to educate a segment of the public, those included in the class," about their statutory rights. *Duran v. Credit Bureau of Yuma, Inc.*, 93 F.R.D. 607, 610 (D. Ariz. 1982) (quoting *Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980) (consumer education might be "the greatest single benefit derived in an area of regulation in which the responsibility of policing falls principally on the shoulders of the private citizen and private counsel")).

In contrast, Monterey seeks a construction of section 1701.4(d) that only serves to defeat class certification. None of the Class members can benefit from enforcing their contracts because Be is out of business. It would plainly frustrate AFTSA's legislative purpose to allow Monterey to retain Class members' money simply because they did not know that they *could* void Be's contracts or because no one ever explained how they could do so. The Court must construe AFTSA in a manner that is "consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal.4th 554, 567 (2007).

**Class Opt-Out Procedure Provides Ideal Mechanism for Voiding Be's Contracts:** To the extent the Court nonetheless construes section 1701.4(d) to require Class members to elect to void Be's contracts, class certification under Rule 23(b)(3) requires notice to the Class members that affords them an opportunity to exclude themselves from the Class. Fed. R. Civ. P. 23(c)(2)(B)(v), (vi). If necessary, this procedure would be an ideal mechanism for Class members to demonstrate that they elect to void their contracts with Be.

**Plaintiffs Still Have Contract-Based Class Claims Even If Be's Contracts Were Not Voided:** Plaintiffs still have sound class claims against Monterey, even if the Court holds that their contracts with Be were never technically voided. Monterey's failure to disclose that Class members could void the contracts at will under section 1701.4(d) was misleading and violated the UCL and CLRA. "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable" under the CLRA and UCL. *Aron v. U-Haul Co. of Cal.*, 143 Cal.App.4th 796, 807 (2006) (quoting *Day v. AT&T Corp.*, 63 Cal.App.4th 325, 332-33 (1998). See also Cal. Civ. Code, § 1770 (a)(14) (CLRA prohibits representations "that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law").) Likewise, Monterey's collection of Be's contracts would independently violate the UCL's unfair prong. Unfairness must be "tethered to some legislatively declared policy." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187 (1999). This means that unfair conduct "violates the policy or spirit of [a law] because its effects are comparable to or the same as a violation of the law[.]" *Id*. Even if the Court holds that Be contracts were never voided, Monterey's collection of the proceeds of Be's contract would still be unfair.

**Class Certification Is Appropriate Even If Be's Contracts Were Not Voided:** Finally, even if the Court construes AFTSA section 1701.4(d) to require some sort of individualized inquiry about whether Class members wish to continue with their Be contract notwithstanding any of the foregoing, this is a limited, straightforward inquiry that will not derail class certification based on the authorities cited in Section II.C.2, *supra*.

**5.     Monterey's Knowledge Is Immaterial to the Contract-Based Class Claims**

Monterey also argues that Plaintiffs' theory of class certification ignores "what knowledge Monterey had when it collected on the Membership Agreements[.]"(Def.'s Mot. 11.) But Monterey's knowledge of Be's business practices and whether Be was still operating would be a fact common to every Class member. More to the point, however, Monterey's knowledge is irrelevant to the class contract-based claims.

**UCL and CLRA:** Plaintiffs do not need to prove Monterey's state of mind to prevail on their UCL and CLRA claims. "'A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief' under the UCL." *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009). Thus, the UCL "imposes **strict liability** when property or monetary losses are occasioned by conduct that constitutes an unfair business practice." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 181 (2000) (emphasis added). Likewise, "only three of the five elements of fraud are necessary to state a claim under the CLRA: misrepresentation, reliance, and damages." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009) (emphasis added). Plaintiffs do not need to establish either Monterey's knowledge or intent to prove their CLRA claim. *Cf. id*. at 997.[6]

**Rosenthal Act:** Plaintiffs' Rosenthal Act claims also do not require proof of Monterey's knowledge. The Rosenthal Act incorporates the prohibitions under sections 1692b to 1692j and the remedies under section 1692k of the federal Fair Debt Collections Practices Act and applies them against RFDPCA's broader definition of debt collectors. *See* Cal. Civ. Code § 1788.17.[7] Because the collection of unenforceable debts violates the FDCPA, it must also violate the RFDCPA.[8] "The FDCPA is a strict liability statute; there is no mental state required to violate

---

[6]     The CLRA is "not a fraud statute": requiring "plaintiffs [to] prove more than the statute itself requires would undercut the intent of the legislature in creating a remedy separate and apart from common-law fraud." *Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082, 1097 (N.D. Cal. 2006).

[7]     *See also Alkan v. Citimortgage, Inc.*, 336 F. Supp. 2d 1061, 1065 (N.D. Cal. 2004).

[8]     *See Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1174, 1177, 1178 (9th Cir. 2006); *Riley v. Giguiere*, 631 F. Supp. 2d 1295, 1309 (E.D. Cal. 2009) ("acts to enforce a

it." *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 997 (9th Cir. 2012). The same strict liability standard applies to Plaintiffs' RFDCPA claims. *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1075 n. 7 (E.D. Cal. 2007).

**Declaratory Judgment and Restitution:** Plaintiffs' other contract-based claims (declaratory judgment and restitution/rescission) rest on whether the contracts are valid, not on Monterey's subjective understanding. California employs the "objective theory of contracts," under which "it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Cedars-Sinai Med. Ctr. v. Shewry*, 137 Cal.App.4th 964, 980 (2006) (citation, punctuation omitted). This general rule applies to a contract's validity as well: "[t]he test of the validity of the contract thus does not turn on the subjective contemplation of the parties . . . but upon the objective language of the contract itself." *In re Marriage of Dawley*, 17 Cal.3d 342, 350 (1976). Thus, for example, invalidating a contract for usury "does not require a conscious attempt, with knowledge of the law, to evade it." *Ghirardo v. Antonioli*, 8 Cal.4th 791, 798 (1994) (citation, punctuation omitted). *See also McClung v. Saito*, 4 Cal.App.3d 143, 153 (1970) (usurer's "mistaken belief [that a contract] would be legal and enforceable does not make it so"). This same analysis extends to Monterey:

> If the contract is void it is both void as to the assignor and the assignee, for the assignee stands in the shoes of his assignor and take subject to all equities and defenses existing in favor of the obligor prior to notice of the assignment. It is not material that the assignee had no notice or knowledge of the equities or defenses.

*Rosman v. Cuevas*, 176 Cal.App.2d Supp. 867, 870 (1959). Monterey's knowledge is immaterial to Plaintiffs' claims for declaratory judgment and restitution.

### 6. For the Class's Scienter-Based Claims, the Court Can Infer Classwide Reliance

Monterey also contends that the Court will need to individually assess Class member's reliance and expectations. (Def.'s Mot. 15.) Again, this is not the rule in the Ninth Circuit where Be applied the same marketing practices to each Class member. (*See* DeSando Decl. ¶¶4-20.) Indeed, Be's common marketing practices are better evidence of the Class members' states of

---

debt that was not authorized by law" could "be found to have violated § 1692e(2), as misrepresentations of the legal status of a debt").

1   mind than their own direct testimony. The Ninth Circuit has held that reliance "can be adequately

2   established indirectly, by proof of materiality coupled with the common sense that a stock

3   purchaser does not ordinarily seek to purchase a loss in the form of artificially inflated stock."

4   *Blackie*, 524 F.2d at 908.

5        The rule that the Court can infer Class members' state of mind, however, applies beyond

6   securities sales. "'[R]eliance upon alleged false representations may be inferred from the

7   circumstances attending the transaction which *oftentimes afford much stronger and more*

8   *satisfactory evidence* of the inducement which prompted the party defrauded to enter into the

9   contract than his direct testimony to the same effect." *Plascencia v. Lending 1st Mortg.*, 259

10  F.R.D. 437, 447 (N.D. Cal. 2009) (quoting *Vasquez*, 4 Cal.3d at 814). *See also In re Park West*

11  *Galleries, Inc.*, 732 F. Supp. 2d 1181, 1186 (W.D. Wash. 2010) ("underlying factual allegations

12  regarding [defendant's] statements regarding value raise an inference of reliance"). Common

13  representations are a sufficient basis to infer a classwide state of mind, when those

14  representations provide the logical explanation for the class members' behavior:

15           If class plaintiffs can show . . . that uniform representations were made to all class
             members which were misleading . . . then plaintiffs may be able to show that they
16           have available a means of demonstrating reliance on a class-wide basis.
             Generalized proof that the common, uniform written sales marketing materials are
17           misleading . . . would give rise to a common sense inference that no rational class
             member would purchase the [services] in question[]. . . [R]eliance can be shown
18           where it provides the "common sense" or "logical explanation" for the behavior
             of plaintiffs and the members of the class.
19

20  *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 491-92 (C.D. Cal. 2006) (citing, e.g.,

21  *Peterson v. H & R Block*, 174 F.R.D. 78, 85 (N.D. Ill. 1997)). Thus, class members' reliance on

22  the defendants' representations that it was able to provide services was the "only logical

23  explanation" for the transactions with the defendant, because it is "inconceivable that the class

24  members would rationally choose to pay a fee for a service they knew was unavailable[.]"

25  *Peterson*, 174 F.R.D. at 85 (quoted by *Negrete*, 238 F.R.D. at 492 n. 10). Here, the central

26  representation in Be's marketing practices was that Be's services could lead to professional

27  employment in the entertainment industry. (DeSando Decl. ¶4, 14-15, 21-22.) The common

28  sense explanation for Class members' payments to Be is that their children in fact sought

---

professional employment in the entertainment industry. "Finding that reliance is a common question in this case is logical. Consumers are nearly certain to rely on prominent (and prominently marketed) features of a [service] which they purchase." *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 665 (S.D. Cal. 2010). Likewise, where "promotional materials" were "distributed to all investors, whether or not the disclaimers [contained in those materials] preclude reliance is a question that can be answered on a class-wide basis." *Joint Equity Comm. of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 433 (C.D. Cal. 2012).  *See also In re Ferrero Litig.*, 278 F.R.D. 552, 560 (S.D. Cal. 2011) (commonality satisfied where defendant "made a material misrepresentation regarding the nutritious benefits of Nutella," because "any injury suffered by a class member in this case stems from Defendant's common advertising campaign of Nutella").

### 7. Variations in Monterey's Scienter and Be's Marketing Practices Do Not Preclude Class Certification

Monterey asserts that Plaintiffs' scienter-based claims will require individualized determination of "what each putative class member was specifically told, by whom, and when, must be factually determined." (Def.'s Mot. 15.) This is not consistent with how courts apply Rule 23 in the Ninth Circuit. Again, Be used a common marketing practice to induce Class members to sign its contracts. (DeSando Decl. ¶¶4-20.) This common marketing practice renders the case appropriate for class certification. "Class treatment has been permitted in fraud cases where . . . a standardized sales pitch is employed." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006)).  The Ninth Circuit "favors class treatment of fraud claims stemming from a 'common course of conduct.'" *Id.* at 990 (quoting *Blackie*, 524 F.2d at 902).

> When the modern class action rule was adopted, it was made clear that "common" did not require complete congruence. The Advisory Committee on Rule 23 considered the function of the class action mechanism in the context of a fraud case and explained that . . . a "fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action ...." [Fed. R. Civ. P. 23 advisory committee's note on 1966 amendment]

*Id.* Hence, "the common sense approach" supports class treatment of "purchasers allegedly defrauded over a period of time by similar misrepresentations" because they are "united by a common interest in determining whether a defendant's course of conduct is in its broad outlines

1  actionable, which is not defeated by slight differences in class members' positions." *Blackie*, 524

2  F.2d at 902 (quoted by *In re First Alliance*, 471 F.3d at 990).

3      **D.**      **The DuFours Satisfy Rule 23(a)(3)'s Typicality Requirement**

4      Because the DuFours share the foregoing common factual and legal issues with the other

5  Class members, they also satisfy the typicality requirement. "The commonality and typicality

6  requirements of Rule 23(a) tend to merge." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158

7  n.13, 102 S. Ct. 2364, 2371 n.13 (1982) cited by, e.g., *McPhail v. First Command Fin. Planning,*

8  *Inc.*, 247 F.R.D. 598, 611 (S.D. Cal. 2007) ("the commonality and typicality inquiries overlap in

9  their focus on the similarities in class claims")); *Armstrong*, 275 F.3d at 868 (typicality and

10  commonality share many "underlying issue[s]").

11      Monterey contends that Mrs. DuFour is not typical of the Class, because "[n]o

12  representation was made to Plaintiff regarding why she was asked to meet with Be after the

13  screen test or why she was invited to be a Be member." (Def.'s Mot. 13.) Monterey does not

14  provide a complete statement of the relevant record. Mrs. DuFour testified that she was told Be

15  selected her child for Be membership because she was "talented" and "did well in the screen

16  test." (Preston Decl, Ex. H, DuFour Dep. at 186:9-15, 188:22-23.) Moreover, Mrs. DuFour

17  testified reviewing representations on Be's website that Be's screen tests were used to select

18  children likely to succeed in the entertainment industry:

19          Q     If you look at paragraph 92 on page 31, it says on line 25: "Be conducted a

20                 'screen test' prior to making its ultimate sales pitch. As part of the sales pitch, Be indicated that the Class members were 'selected' on the basis of

21                 talent and/or marketability. Gonnabe.com reinforced the suggestion that an offer of Be membership was exclusive: "Are all the children selected from

22                 the screentest? Unfortunately no. Only a small percentage of the children screened, meet the industry profile that top agents, talent managers and

23                 casting directors are looking for." You don't remember seeing that on the Gonnabe.com Website, do you?

24          A     This part I do, yes. Now that I see it in here, yes, it was.

25          Q     When do you remember seeing it?

26          A     I went on the Website several times. So within those several times, popping through the Website.

27  (Preston Decl., Ex. H, DuFour Dep. 184:2-25.) For the purposes of typicality under Rule

28

23(a)(3), it is immaterial whether Mrs. DuFour remembers Be's employee making the relevant representations orally, because she received these representations via the Internet. "[T]he typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020). Hence, Monterey's assertion that Jeanne DuFour is not typical because "the representations identified in the complaint were not even made to" her orally is misplaced; it is immaterial for purposes of Rule 23(a)(3) whether Mrs. DuFour received Be's representations via the Internet or orally. (Def.'s Mot. 11-12.) Likewise, the fact that the DuFour's child was able to participate in Be's television shows is also immaterial to her class claims and therefore to typicality. (*Cf. id.* at 13-14.) Typicality only requires "that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong*, 275 F.3d at 869. *See also Xiufang Situ*, 240 F.R.D. at 561 ("[t]ypicality requires that named plaintiffs be members of the class they represent and possess the same interest and suffer the same injury as class members," citation, punctuation omitted). *Cf. Smith v. Univ. of Wa. Law Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) ("Typicality turns on the defendant's actions toward the plaintiff class, not particularized defenses against individual class members."). Mrs. DuFour satisfies Rule 23(a)(3).

Even if the Court holds that Mrs. DuFour is somehow atypical, that does not mean Mr. DuFour is atypical. And even if both DuFours are held to be atypical, courts in the Ninth Circuit regularly allow the addition or substitution of class plaintiffs prior to or contemporaneous with class certification.[9] Certainly, judicial economy favors allowing Plaintiffs to find substitute class representatives now, rather than denying class certification for lack of typical class

---

[9] *See Wiener*, 255 F.R.D. 658 (denying class certification on the basis of typicality, granting plaintiff leave to substitute in an appropriate class representative); *Stickrath v. Globalstar, Inc.*, No. 07-1941, 2008 WL 5384760, *7-8 (N.D. Cal. Dec. 22, 2008) (granting leave to amend to substitute class representative after summary judgment granted against putative class representative); *Hernandez v. Balakian*, 251 F.R.D. 488, 489-91 (E.D. Cal. 2008) (granting leave to amend to substitute class representative after denying the plaintiff's motion for class certification); *Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185 (N.D. Cal. 2007) (simultaneously granting class certification, and ordering plaintiffs to substitute in another class representative for the nationwide class).

1   representatives and forcing the parties and the Court to start all over again with new class

2   representatives. *Cf. Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 76 n.8 (D. Me. 2010).

3          **E.      The DuFours Are Adequate Class Representatives**

4          Rule 23(a)(4) requires that Plaintiffs fairly and adequately protect the Class's interests.

5   The adequacy test has two elements: (1) are there conflicts between Plaintiff and the other Class

6   members, and (2) will Plaintiff and his counsel vigorously prosecute the class action? *See*

7   *Hanlon*, 150 F.3d at 1020. *See also Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003)

8   (adequacy "depends on . . . an absence of antagonism, a sharing of interests between

9   representatives and absentees, and the unlikelihood that the suit is collusive"). No potential

10  conflicts exist here: the DuFours share the same claims as the rest of the Class, and have an acute

11  interest in establishing Defendants' liability. "[C]ourts have generally declined to consider

12  conflicts . . . sufficient to defeat class action status at the outset unless the conflict is apparent,

13  imminent, and on an issue at the very heart of the suit." *Blackie*, 524 F.2d at 909. The Ninth

14  Circuit "does not favor denial of class certification on the basis of speculative conflicts."

15  *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citation omitted). The burden is on the

16  party opposing certification to show that the named plaintiff will be an inadequate representative.

17  *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 140 (D.N.J. 1984). Plaintiffs satisfy Rule

18  23(a)(4).

19         **F.      Plaintiffs' Counsel Are Adequate**

20         "Adequate representation is usually presumed in the absence of contrary evidence."

21  *Californians for Disability Rights, Inc. v. California Dep't. of Transp.*, 249 F.R.D. 334, 349

22  (N.D. Cal. 2008). Rule 23(g) was added in 2003 to provide an analysis of class counsel adequacy

23  that is independent and separate from the analysis of class representative adequacy under Rule

24  24(a)(4). *See* Fed. R. Civ. P. 23(g) advisory committee's note on 2003 amendment. Rule 23(g)

25  provides that the Court must consider:

26                 (i)      the work counsel has done in identifying or investigating potential claims
                            in the action;

27
                   (ii)     counsel's experience in handling class actions, other complex litigation,
28                          and the types of claims asserted in the action;

---

1          (iii)     counsel's knowledge of the applicable law; and

2          (iv)     the resources that counsel will commit to representing the class.

3    Fed. R. Civ. P. 23(g)(1)(A). Plaintiff's counsel have diligently litigated this case (as well as

4    related state court cases and an adversary proceeding in Erik DeSando's bankruptcy) for several

5    years. (*Cf.* DeSando Decl. ¶38 ["Absent Plaintiffs' adversary proceeding in my bankruptcy case,

6    I would not have produced my computer [which contained relevant evidence which DeSando

7    previously denied possessing]"].) Further, Plaintiff's counsel are generally well qualified and

8    experienced in litigating consumer class actions, and specifically have successfully litigated

9    other consumer class actions in the past. (*See* Preston Decl. ¶12 and Exhs. I and J.) Counsel have

10   advanced the costs of litigation, representing the Class on a contingent fee basis, and have

11   provided adequate representation to the class pursuant to Rule 23(g). (*Id.*) Plaintiff's counsel are

12   adequate to represent the class. *Cf. Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 524 (C.D. Cal.

13   2011); *McKenzie v. Federal Exp. Corp.*, 275 F.R.D. 290, 302-03 (C.D. Cal. 2011).

14         **G.     The Class Meets the Requirements of Rule 23(b)**

15        In addition to each element in Rule 23(a), class certification requires that the proposed

16   class fulfill any one of the Rule 23(b) subcategories. *See Xavier*, 787 F. Supp. 2d at 1089;

17   *Californians for Disability Rights*, 249 F.R.D. at 349. Here, the DuFours can certify the Class

18   under both Rule 23(b)(2) and Rule 23(b)(3).

19         **1.     The Class Meets the Requirements of Rule 23(b)(2)**

20        Rule 23(b)(2) provides for certification where

21           the party opposing the class has acted or refused to act on grounds that apply
             generally to the class, so that final injunctive relief or corresponding declaratory
22           relief is appropriate respecting the class as a whole.

23   Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) certification is proper where the class action will "settl[e]

24   the legality of the behavior [at issue] with respect to the class as a whole[.]" Fed. R. Civ. P.

25   23(b)(2) advisory committee notes on 1966 amendments. The DuFours seek a declaratory

26   judgment that Be's contracts are illegal and invalid, as well as injunctive relief flowing from

27   such a judgment. This is a significant aspect of the case: the aggregate value of this declaratory

28   relief is significantly higher than the aggregate amount paid under the Class's contracts. (*Cf.*

Preston Decl. ¶5.) Declaratory and injunctive relief are consistent with Rule 23(b)(2):

> Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate [under Rule 23(b)(2)]. . . . "All the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)."

*Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) (quoting 7A Charles Alan Wright, Arthur R. Miller, et al, *Federal Practice & Procedure* § 1775 (2d ed. 1986)). *See also* Fed. R. Civ. P. 23(b)(2) advisory committee's notes on 1966 amendments (Rule 23(b)(2) provides for certification even if a defendant's conduct "has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class"). Hence, Rule 23(b)(2) certification is appropriate without regard to the variation of injuries between individual class members.

Certification under Rule 23(b)(2) is also appropriate for statutory damages. The Supreme Court recently construed Rule 23(b)(2) in *Dukes*. *Dukes* held that the "key to the (b)(2) class is the indivisible nature of [the] remedy," and that "claims for ***individualized*** [monetary] relief" cannot be certified under Rule 23(b)(2), but never foreclosed certification of non-individualized damages under Rule 23(b)(2). *Dukes*, 131 S. Ct. at 2557 (emphasis in original). Since *Dukes*, the Court has held that

> monetary recovery is not entirely prohibited in the (b)(2) class context. For example, *class claims for statutory or punitive damages* that do not turn on the individual circumstances of class members may be sufficiently "incidental" to warrant certification under (b)(2).

*Ries v. Arizona Beverages USA LLC*, No. 10-01139, 2012 WL 5975247, 18 (N.D.Cal. Nov. 27, 2012). Where statutory damages under the RFDCPA would automatically flow from a determination that Monterey collected or sought to collect on Be's contracts, certification under Rule 23(b)(2) is also appropriate there. Claims "for statutory damages" do not "preclude certification under [Rule 23(b)(2)] because [of] the ease of calculation of those damages . . ." 7AA Charles Alan Wright, Arthur R. Miller, et al, *Federal Practice & Procedure* § 1782 (3d ed. 2012). This is consistent with pre-*Dukes* authority, which routinely certified class actions for

---

statutory damages under Rule 23(b)(2).[10] Thus, while damage claims that require "complicated, individual-specific calculus . . . preclud[e] (b)(2) certification," statutory damages do not because they are uniform for each Class member. *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 452 (N.D. Cal. 1994) (certifying Rule 23(b)(2) which sought statutory minimum damages). The Class can be certified under Rule 23(b)(2), at least for purposes of declaratory and injunctive relief, as well as statutory damages.

### 2.    The Class Meets the Requirements of Rule 23(b)(3)

The Class can also be certified under Rule 23(b)(3). Certification under Rule 23(b)(3) requires the Court find (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements cover cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Amcham Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). "Plaintiffs need not establish that there are no individual issues, only that the class issues predominate and that a class action is superior." *Phelps v. 3PD, Inc.*, 261 F.R.D. 548, 559 (D. Or. 2009) (citing, e.g., *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001)).

**Predominance:** "The main concern in the predominance inquiry [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). The material issues common to the Class significantly outweigh the individual issues.

> When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.

---

[10]    *See Del Campo v. Am. Corrective Counseling Servs., Inc.*, 254 F.R.D. 585, 595-96 (N.D. Cal. 2008); *Hunt v. Check Recovery Sys., Inc.*, 05-04993, 2007 WL 2220972, 2 & n.3 (N.D. Cal. Aug. 1, 2007) (citing multiple cases).

*Las Vegas Sands*, 244 F.3d at 1162 (quoting *Hanlon*, 150 F.3d at 1022). Hence, predominance is satisfied when "[a] common nucleus of facts and potential legal remedies dominates th[e] litigation." *Hanlon*, 150 F.3d at 1022. Be's marketing practices, the illegality of its contracts, and the corresponding illegality of Monterey's collection on Be's contracts are the common factual and legal nucleus relevant to this case. Likewise, the "predominant issue" is whether all class members "would have been exposed" to the Be's marketing practices: "when plaintiffs are exposed to a common advertising campaign, common issues predominate." *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558 (S.D. Cal. 2012) (*Cf*. DeSando Decl. ¶¶4-20.)

As set forth above, the number and significance of the *material* individualized issues identified by the Monterey to Deny are truly minimal. The mere existence of some individualized facts does not defeat predominance, just as it does not rule out commonality. "To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1065 (N.D. Cal. 2007). Common issues predominate in this case where "[i]ndividualized issues are few, and most of them are likely to be relatively easy [to resolve]." *Las Vegas Sands*, 244 F.3d at 1166. "[T]he existence of certain individualized or deviating facts will not preclude certification if most class members were subjected to a [defendant's] polic[ies] in a way that gives rise to consistent liability or lack thereof." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008). "Individual issues do not render class certification inappropriate so long as such issues may effectively be managed." *Id*. (citation omitted). *See also Akaosugi v. Benihana Nat. Corp.*, 282 F.R.D. 241, 251 (N.D. Cal. 2012) (if the "common method of proof . . . cover[s] the predominance of fact issues," the Court "can tolerate a limited number of individual issues with discrete proof"); *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534, 541 (N.D. Cal. 2010) ("even if the [defendant's] disclosures were not identical, claims need only be reasonably co-extensive to satisfy the predominance requirement"). None of the material individual issues identified by Monterey would require an onerous or unmanageable individual inquiry.

**Superiority:** Predominance overlaps some aspects of superiority. "Implicit in the

1   satisfaction of the predominance test is the notion that the adjudication of common issues will

2   help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.

3   1996). *See also Vinole*, 571 F.3d at 944 (same). Moreover, the Court can only assess whether the

4   Class meets Rule 23(b)(3)'s superiority element by comparing it to 1,754 separate actions, rather

5   than no litigation whatsoever. The test for superiority "necessarily involves a comparative

6   evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. The

7   alternative to the class proposed herein is individual litigation, which would require a multitude

8   of Be's customers to mount their own lawsuits over a few thousand dollars on technical statutory

9   claims which few Class members (if any) are competent to prosecute. It is plain that a class

10  proceeding is the superior means of vindicating the Class members' rights. The "purpose of Rule

11  23(b)(3) [is] 'to allow integration of numerous small individual claims into a single powerful

12  unit.'" *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010) (quoting *Blackie*,

13  524 F.2d at 899). Rule 23(b)(3) was intended for

14       [the] vindication of "the rights of groups of people who individually would be
         without effective strength to bring their opponents into court at all. . . . The policy
15       at the very core of the class action mechanism is to overcome the problem that
         small recoveries do not provide the incentive for any individual to bring a solo
16       action prosecuting his or her rights. A class action solves this problem by
         aggregating the relatively paltry potential recoveries into something worth
17       someone's (usually an attorney's) labor.

18  *Amchem Prods*, 521 U.S. at 617 (citation, punctuation omitted). In comparison, individual

19  litigation by Class members "would not only unnecessarily burden the judiciary, but would prove

20  uneconomic for potential plaintiffs. In most cases, litigation costs would dwarf potential

21  recovery." *Hanlon*, 150 F.3d at 1023. Class proceedings are superior where many consumers

22  would "be unable to proceed as individuals because of the disparity between their litigation costs

23  and what they hope to recover." *Las Vegas Sands*, 244 F.3d at 1163. *See also Hanlon*, 150 F.3d

24  at 1023 (class action superior to individual action, when individual action means "less litigation

25  or settlement leverage, significantly reduced resources and no greater prospect for recovery");

26  *Kamar*, 254 F.R.D. at 406 (class treatment is a superior mechanism where "all members of the

27  class have a mutual interest in proving [the defendant's] liability [but] the individual damages are

28  not high enough for class members to pursue individually"). In this case, a class action is

---

1  preferable to a multitude of individual actions.

2  **Manageability:** The proposed Class is readily manageable. Plaintiffs' proposed plan for

3  managing this case does require the Court to construe AFTSA and identify what individualized

4  proof the Plaintiffs' class claims require, if any. If Class members' contracts uniformly violated

5  AFTSA, the parties could then proceed directly to summary judgment as to declaratory relief,

6  injunctive relief and Monterey's liability. In the alternative, even if Plaintiff credits Monterey

7  with every material individualized issue identified above (Monterey's enforcement actions, Class

8  members' election to void Be's contracts, and whether Class members' children obtained

9  professional employment in the entertainment industry), these are limited and straightforward

10 inquiries.[11] It would not require much adminstrative effort or adjudication to identify the Class

11 members' contracts that violated AFTSA, and the parties could again proceed to summary

12 judgment.

13 If the Plaintiffs can certify their contract-based class claims, they would likely forego

14 litigating the scienter-based claims. The parties will need to complete discovery in the unlikely

15 event that the scienter-based claims are certified, but the contract-based claims are not certified.

16 **III.   Conclusion**

17 The Court should certify the Class for the reasons described herein, and appoint the

18 DuFours and their attorneys the representatives of the Class.

19

20 Dated: February 15, 2013          By:   s/Ethan Preston
                                          Ethan Preston (263295)
21                                        PRESTON LAW OFFICES
                                          8245 North 85th Way
22                                        Scottsdale, Arizona 85258
                                          (480) 269-9540 (telephone)
23                                        (866-509-1197 (facsimile)
                                          ep@eplaw.us
24
                                          Robert M. Bramson (102006)
25                                        Michael S. Strimling (96135)
                                          BRAMSON, PLUTZIK, MAHLER &
26                                        BIRKHAEUSER, LLP
                                          2125 Oak Grove Road, Suite 120
27
─────────────────────
[11]   Plaintiffs reiterate that, if the Court requires Class members to individually elect to void their
28     contracts with Be, the notice and exclusion procedure under Rule 23(c)(2)(B)(v) and (vi) is
       an ideal mechanism for them to do so.

Walnut Creek, California 94598
(925) 945-0200 (telephone)
(925) 945-8792 (facsimile)
rbramson@bramsonplutzik.com
mstrimling@bramsonplutzik.com

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com