Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866-509-1197 (facsimile)
ep@eplaw.us

Robert M. Bramson (102006)
Michael S. Strimling (96135)
BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
 (925) 945-0200 (telephone)
 (925) 945-8792 (facsimile)
rbramson@bramsonplutzik.com
mstrimling@bramsonplutzik.com

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| TIMOTHY and JEANNE DuFOUR and KENNETH TANNER, individuals, on their own behalves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BE., LLC, DYNAMIC SHOWCASES, LLC, California limited liability companies, MONTEREY FINANCIAL SERVICES, INC., a California corporations, BE MARKETING LIMITED, a private limited company registered in England and Wales, ERIK DeSANDO, BARRY FALCK, JACOB STEINBECK, and DOES 1-100, inclusive,<br><br>Defendants. | No. 09-03770-CRB<br><br>Judge Charles R. Breyer<br><br>**PLAINTIFFS' REPLY BRIEF SUPPORTING CLASS CERTIFICATION**<br><br>Date:      April 19, 2013<br>Time:      10:00 a.m.<br>Location:  Courtroom 6, 17th Floor<br>            450 Golden Gate Avenue<br>            San Francisco, CA 94102 |

# TABLE OF CONTENTS

I.   A Motion for Class Certification Is Not a Substitute for a Motion for Summary Judgment .................................................................................................... 1

    A.   Plaintiffs' Evidence Is Sufficient for Class Certification ....................... 2

    B.   Plaintiffs' Class Definition Properly Excludes Any Merits-Based Determination ........................................................................................... 3

II.  The *Material* Facts Show This Case Is Readily Susceptible to Class Certification .......... 4

    A.   The Date Be Went Out of Business Is a Fact That Is Common to Every Class Member ..................................................................................... 4

    B.   AFTSA Applies to Every Class Members' Contract .............................. 5

    C.   The Evidence Shows Be Operated a Common Scheme on All Class Members .................................................................................... 8

III. Monterey Has Not Rebutted the Evidence that Plaintiffs' Claims Are Appropriate for Class Certification .................................................................... 8

    A.   There Are No Variations Material to Plaintiffs' Contract-Based Claims .............. 8

    B.   Monterey's Efforts to Collect on Be's Contracts Can Be Proved Through Ministerial Review of Monterey's Records ............................................ 9

    C.   Class Certification of the Scienter Claims Is Appropriate Because Be Employed A Scheme Common to Every Class Member ...................................... 10

    D.   Monterey's Knowledge is a Common Fact ......................................... 12

IV.  The DuFours Are Typical and Adequate Class Representatives ...................................... 12

    A.   Monterey Characterization of DuFour's Deposition is Misleading..................... 12

    B.   None of the Differences Between Jeanne DuFour and Other Class Members Render Her Atypical ............................................................ 14

    C.   DuFour Is an Adequate Class Representative......................................... 14

V.   The Class Meets Rule 23(b)'s Requirements.......................................................... 15

VI.  The Plaintiffs' Class Claims Are Meritorious ................................................... 17

    A.   Monterey's Statutory Interpretation Thwarts the Legislature's Intent ................ 17

    B.   Monterey Does Not Distinguish Plaintiffs' Case Law Holding Be's Contracts Void ........................................................................ 18

    C.   Even if Be's Contracts Are "Voidable," Plaintiffs Still Have Viable Claims .......... 18

        1.   Plaintiffs' Claims Do Not Require Be's Contracts to Be Void ............... 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2.    Monterey Distorts Case Law ................................................................. 19

3.    DuFour Has a Valid Breach of Contract Claim ....................................... 20

VII.    Conclusion ............................................................................................................... 20

## TABLE OF AUTHORITIES

FEDERAL CASES                                                                    PAGE(S)

*Alonzo v. Maximus, Inc.*
  275 F.R.D. 513 (C.D. Cal. 2011) .................................................................2

*Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*
  133 S. Ct. 1184 (2013) ...............................................................1, 2, 16, 17

*Blackie v. Barrack*
  524 F.2d 891 (9th Cir. 1975) ................................................................3, 8

*Brown v. American Airlines, Inc.*
  285 F.R.D. 546 (C.D. Cal. 2011) ...............................................................14

*Campion v. Credit Bureau Servs., Inc.*
  206 F.R.D. 663 (E.D. Wash. 2001) .............................................................10

*Connor v. Automated Accounts, Inc.*
  202 F.R.D. 265 (E.D. Wash. 2001) .............................................................10

*Dufour v. Be., LLC*
  No. 09-03770, 2010 WL 2560409 (N.D. Cal. June 22, 2010) ...............................8

*DuFour v. Be., LLC*
  No. 09-3770, 2009 WL 4730897 (N.D. Cal. Dec. 7, 2009) ...................................7

*Evon v. Law Offices of Sidney Mickell*
  688 F.3d 1015 (9th Cir. 2012) ....................................................................7

*Friedman v. 24 Hour Fitness USA, Inc.*
  No. No. 06-6282, 2009 WL 2711956 (C.D. Cal. Aug. 25, 2009) ............................3

*Gonzalez v. Millard Mall Servs., Inc.*
  281 F.R.D. 455 (S.D. Cal. 2012) .................................................................2

*Gray v. Golden Gate Nat. Recreational Area*
  279 F.R.D. 501 (N.D. Cal. 2011) ...............................................................3

*Guadiana v. State Farm Fire & Cas. Co.*
  No. 07-326, 2010 WL 5071069 (D. Ariz. Dec. 7, 2010) ....................................3

*Herrera v. LCS Fin. Servs. Corp.*
  274 F.R.D. 666 (N.D. Cal. 2011) ........................................................3, 7, 17

*Hunt v. Check Recovery Sys., Inc.*
  241 F.R.D. 505 (N.D. Cal. 2007) ...............................................................10

*In re Chase Bank USA, N.A. CHECK LOAN Contract Litig.*
   274 F.R.D. 286 (N.D. Cal. 2011) ............................................................................9

*In re Diasonics Sec. Litig.*
   599 F. Supp. 447 (N.D. Cal. 1984) ......................................................................12

*In re First Alliance*
   471 F.3d 977 (9th Cir. 2006) ..........................................................................11, 13

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*
   268 F.R.D. 652 (S.D. Cal. 2010) ..........................................................................6

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*
   571 F.3d 953 (9th Cir. 2009) ..............................................................................16

*In re Worlds of Wonder Sec. Litig.*
   No. 87-5491, 1990 WL 61951 (N.D. Cal. Mar. 23, 1990) ..................................15

*Joint Equity Committee of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*
   281 F.R.D. 422 (C.D. Cal. 2012) ........................................................................12

*Kamar v. Radio Shack Corp.*
   254 F.R.D. 387 (C.D. Cal. 2008) ........................................................................16

*Keilholtz v. Lennox Hearth Prods. Inc.*
   268 F.R.D. 330 (N.D. Cal. 2010) ..........................................................................2

*Krzesniak v. Cendant Corp.*
   No. 05-05156, 2007 WL 1795703 (N.D. Cal. June 20, 2007) .............................16

*Lewis v. First American Title Ins. Co.*
   265 F.R.D. 536 (D. Idaho 2010) ............................................................................4

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
   244 F.3d 1152 (9th Cir. 2001) ............................................................................16

*Meyer v. Portfolio Recovery Assocs., LLC*
   707 F.3d 1036 (9th Cir. 2012) ............................................................................14

*Moeller v. Taco Bell Corp.*
   220 F.R.D. 604 (N.D. Cal. 2004) ........................................................................15

*Nat'l Fed'n of Blind v. Target Corp.*
   582 F. Supp. 2d 1185 (N.D. Cal. 2007) ..............................................................12

*Negrete v. Allianz Life Ins. Co. of N. Am.*
   238 F.R.D. 482 (C.D. Cal. 2006) ......................................................................6, 8

*Nordberg v. Trilegiant Corp.*
    445 F. Supp. 2d 1082 (N.D. Cal. 2006) ...........................................................19

*Rodriguez v. Hayes*
    591 F.3d 1105 (9th Cir. 2010) ......................................................................14

*Stickrath v. Globalstar, Inc.*
    No. 07-1941, 2008 WL 5384760 (N.D. Cal. Dec. 22, 2008).........................12

*Tait v. BSH Home Appliances Corp.*
    No. 10–0711, 2012 WL 6699247 (C.D. Cal. Dec. 20, 2012) ..........................2

*United States v. Woods*
    335 F.3d 993 (9th Cir. 2003) ........................................................................13

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ........................................................................16

*Wal-Mart Stores, Inc. v. Dukes*
    131 S. Ct. 2541 (2011).........................................................................1, 5, 15

*Wiener v. Dannon Co., Inc.*
    255 F.R.D. 658 (C.D. Cal. 2009)...................................................................10

*Wolin v. Jaguar Land Rover N. Am., LLC*
    617 F.3d 1168 (9th Cir. 2010) ......................................................................12

*Xiufang Situ v. Leavitt*
    240 F.R.D. 551 (N.D. Cal. 2007)....................................................................3

CALIFORNIA CASES

*Arias v. Superior Court*
    46 Cal.4th 969 (2009) ...................................................................................18

*Aron v. U-Haul Co. of Cal.*
    143 Cal.App.4th 796 (2006) ..........................................................................19

*Bomersheim v. Los Angeles Gay and Lesbian Center*
    184 Cal.App.4th 1471 (2010) ..........................................................................6

*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.*
    14 Cal.4th 627 (1997) ...................................................................................17

*California v. Altus Fin., S.A.*
    36 Cal.4th 1284 (2005) .................................................................................17

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
    20 Cal.4th 163 (1999).............................................................................18, 19

*Cortez v. Purolator Air Filtration Prods. Co.*
    23 Cal.4th 163 (2000) ................................................................................19

*Duffens v. Valenti*
    161 Cal.App.4th 434 (2008) ........................................................................18

*Eden Township Healthcare Dist. v. Sutter Health*
    202 Cal.App.4th 208 (2011) ........................................................................18

*Lafferty v. Wells Fargo Bank*
    213 Cal.App.4th 545 (2013) ........................................................................20

*People ex rel. State of Cal. v. Drinkhouse*
    4 Cal.App.3d 931 (1970) .............................................................................18

*People v. Glasper*
    113 Cal.App.4th 1104 (2003) ......................................................................18

*People v. Henderson*
    115 Cal. App. 4th 922 (2004) ......................................................................17

*State ex rel. Dockstader v. Hamby*
    162 Cal.App.4th 480 (2008) ........................................................................18

*Superbrace, Inc. v. Tidwell*
    124 Cal.App. 4th 388 (2004) .......................................................................20

*Unite Here Local 30 v. Dep't of Parks and Recreation*
    194 Cal. App. 4th 1200 (2011) ....................................................................20

*Vasquez v. Superior Court*
    4 Cal.3d 800 (1971) ...............................................................................19, 20

**FEDERAL STATUTES**

15 U.S.C. § 1692g(a) ...........................................................................................9

RICO ..............................................................................................................8, 19

**CALIFORNIA STATUTES**

Advance Fee-Talent Services Act (Cal. Lab. Code §§ 1701-1701.20 (2009))..............................4

Cal. Bus. & Prof. Code § 17200 .........................................................................18

Cal. Code Regs., Title 8, § 11752 ........................................................................7

Cal. Code Regs., Title 8, § 11753 ........................................................................7

Cal. Lab. Code § 1701.4(a) (2009) ...................................................................................8, 17

Cal. Lab. Code § 1701.4(a)(4) (2009)....................................................................................8

Cal. Lab. Code § 1701.4(d) (2009) .........................................................................13, 17, 18

Cal. Lab. Code § 1701.13 (2009)..........................................................................................18

Cal. Lab. Code § 1701(a)(1) (2009) ........................................................................................7

Cal. Lab. Code § 1701(a), (b), (c) (2009) ...............................................................................5

Cal. Lab. Code § 1701(b) (2009) ............................................................................................8

Cal. Lab. Code § 1701(c) (2009) ............................................................................................5

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ............................................................................................... passim

Fed. R. Civ. P. 23(a) ................................................................................................1

Fed. R. Civ. P. 23(b)(2)......................................................................................1, 15

Fed. R. Civ. P. 23(b)(3)......................................................................................1, 16

Fed. R. Civ. P. 23(c)(4)..........................................................................................16

Fed. R. Civ. P. 23(f) ...............................................................................................17

Local Rule 7-3(a) ......................................................................................................2

### REPLY BRIEF SUPPORTING CLASS CERTIFICATION

In their Motion, Plaintiffs presented sufficient evidence that the Class proposed in the motion for class certification meets all of the elements under Rule 23(a), and satisfies Rule 23(b)(2) and 23(b)(3) as well.[1] Defendant Monterey Financial Services, Inc.'s ("Monterey") Opposition wholly fails to rebut this evidence.

Monterey confuses Plaintiff's motion for class certification with a motion for summary judgment. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) does not require Plaintiffs to prove their claims on this Motion; Plaintiffs only have to show that the evidence common to the class claims will outweigh individualized evidence. Monterey also opposes class certification by seizing on (largely conjectural) factual variations in Be's marketing and services, Class members' states of mind, their actions, and their damages, and its own conduct and knowledge. Class certification is appropriate because every material fact can be proved through common evidence, can be reasonably inferred from Be's representations and Class members' conduct, or can be determined through a ministerial review of official records. Monterey also attacks Jeanne DuFour's typicality and adequacy as a class representative, but these attacks are based on misleading characterizations of the record and immaterial factual distinctions.

### I.     A Motion for Class Certification Is Not a Substitute for a Motion for Summary Judgment

Monterey contends that, after *Dukes*, Plaintiffs not only had to prove their claims were appropriate for class treatment, but also that the claims would prevail.[2] Monterey fundamentally misstates the relationship between class certification and the merits of the class claims. The Supreme Court recently reiterated the division between class certification and a determination of the merits. *See Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1202-03, 1204 (2013).

Although we have cautioned that a court's class-certification analysis must be

---

[1] Plaintiffs' motion for class certification defined the proposed Class as
all persons listed in the Excel spreadsheet titled "DuFour-Tanner Discovery Spreadsheet (08.22.11).xls.XLS" ("Spreadsheet") which was produced to Plaintiff's counsel by Monterey Financial Services, Inc. on or about August 22, 2011, listed as having signed a Type 2 contract.

[2] *See*, *e.g.*, Def.'s Opp. at 9 ("Plaintiffs' class certification motion must consider whether the claims are even actionable against Monterey").

"rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," [quoting *Dukes*, 131 S. Ct. at 2551], Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—***but only to the extent***—*that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.*

*Id*. at 1194-95 (emphasis added). Hence, the argument that the court "should deny class certification because [plaintiff] will lose on the merits [is] contrary to well-established precedent." *Tait v. BSH Home Appliances Corp.*, No. 10–0711, 2012 WL 6699247, *21 (C.D. Cal. Dec. 20, 2012) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011)). If Plaintiffs have not presented each and every piece of evidence that Monterey would require of them, that is because this is a motion for class certification – not a motion for summary judgment.

### A.    Plaintiffs' Evidence Is Sufficient for Class Certification

On March 20, Monterey filed over twenty pages of objections to the declarations supporting Plaintiffs' motion for class certification. (Dkt. #200-202.) Although these objections are ill-founded, Plaintiffs will not engage in a point-by-point rebuttal here.[3] The Federal Rules of Evidence do not stringently control the evidence used to decide a class certification motion. *Cf. Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 337 n. 3 (N.D. Cal. 2010) ("the Federal Rules of Evidence take on a substantially reduced significance, as compared to a typical evidentiary hearing or trial"; quotation omitted). As class certification involves "no findings of fact" or "ultimate conclusions on [p]laintiffs' claims," the Court "may consider evidence that may not be admissible at trial." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 519 (C.D. Cal. 2011) (quoting *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008)). Rather, the Court "may consider inadmissible evidence at the class certification stage," and Monterey's objections to Plaintiffs' declaration should be overruled because "strict adherence to the Federal Rules of Evidence" is not required in a motion for class certification. *Gonzalez v. Millard Mall*

---

[3]    As a procedural matter, Monterey's objections are untimely (despite a two-week extension) because they should have "contained within [Monterey's opposition] brief." Civil L.R. 7-3(a). Further, if Monterey had included the twenty some pages of objections in its Opposition as Local Rule 7-3(a) requires, the Opposition would have been significantly oversize.

*Servs., Inc.*, 281 F.R.D. 455, 459, 460 (S.D. Cal. 2012).[4] Rather, the Court only needs enough "material sufficient to form a reasonable judgment on each [of Rule 23's] requirement[s.]" *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (an "extensive evidentiary showing . . . is not required"). The declarations supporting Plaintiff's motion for class certification meet this permissive standard.

### B.   Plaintiffs' Class Definition Properly Excludes Any Merits-Based Determination

Monterey faults Plaintiffs' Class definition as being "unusual and awkward because it does not reference any particular harm allegedly suffered by the class or define the class in terms of having relied upon any alleged misrepresentation[.]" (Def.'s Opp. at 7-8.) By the same logic, Monterey argues that Plaintiffs have not established numerosity. (*Id.* at 11, 12, 14.) These arguments are obviously wrong. "There is no requirement that a class be defined to include only those with meritorious claims. Class certification does not depend on the ability of the named plaintiffs or class members to win on the merits." *Friedman v. 24 Hour Fitness USA, Inc.*, No. No. 06-6282, 2009 WL 2711956, *4 (C.D. Cal. Aug. 25, 2009).

These arguments betray Monterey's fundamental misunderstanding of the relationship between a class definition and the merits of the class's claims. A class "must be sufficiently definite," meaning that the "class definition [must be] precise, objective, and presently ascertainable[.]" *Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 508 (N.D. Cal. 2011) (citation, punctuation omitted). Consequently, it is inherently improper to define a class in a way that incorporates a determination of the merits. *See Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 672-73 (N.D. Cal. 2011) ("class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class"; citation omitted).[5] Monterey urges a facially deficient class definition which

---

[4]   *See also Guadiana v. State Farm Fire & Cas. Co.*, No. 07-326, 2010 WL 5071069, *5 (D. Ariz. Dec. 7, 2010).

[5]   *See also Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 558 (N.D. Cal. 2007) (class definition is "improper [where] it would be impossible to determine whether a [person] was a member of the class without reaching the merits of Plaintiffs' claims"). "An identifiable class exists if its members can be ascertained by reference to objective criteria. The order defining the class should avoid . . . terms that depend on resolution of the merits (e.g., persons who were

fundamentally confuses merits and class certification. By the same token, Monterey's argument that Plaintiffs have not proved numerosity because their class definition depends on the individuals identified in the Spreadsheet "without any mention in the class definition of a particular alleged injury" is fundamentally incorrect. (Def.'s Opp. at 11.) The Class satisfies Rule 23's numerosity element, because there are 1,754 Class members under the definition advanced in the Motion. (Preston Decl. ¶¶3-5.)

## II.    The *Material* Facts Show This Case Is Readily Susceptible to Class Certification

Contrary to the Opposition, those facts which are *material* to Plaintiffs' class claims support class certification. Plaintiffs' class claims arise under three basic legal theories. First, Plaintiffs allege that Be breached its contracts when it went out of business and stopped performing on its contracts. (*See* SAC ¶¶108-11, 187, 213.) While Monterey's Opposition largely ignores this theory of liability, it is clear that Be went out of business shortly after this complaint was filed – while many class members' contracts were still in force. (DeSando Decl. ¶¶34-37, 40-41.) Plaintiffs also assert that Be's contracts with Class members violated the Advance Fee-Talent Services Act (Cal. Lab. Code §§ 1701-1701.20 (2009)) ("AFTSA"). (SAC ¶¶57-58, 63-73, 129-33.) As set forth below, Plaintiffs can prove that AFTSA does apply to every Class members' contract by (1) common evidence; (2) reasonable inferences from Be's representations and Class members' conduct; and (3) ministerial review of relevant business records. Finally, Plaintiffs allege that Monterey knowingly participated in a fraudulent scheme to induce Class members into paying money to obtain Be membership. (*Id.* ¶¶120-28, 145-60.) Again, Plaintiffs can show a reasonable inference that Class members' relied on Be's representations through common proof. (*Cf.*, *e.g.*, Preston Decl. ¶8; DeSando Decl. ¶¶5-17.)

### A.    The Date Be Went Out of Business Is a Fact That Is Common to Every Class Member

Monterey does not contest that Be stopped provided its members services when it went out of business in early 2009. (*Cf.* DeSando Decl. ¶¶34-37, 40-41.) After that point, there could be no variations in the services Be provided because Be provided none – the termination of Be's

discriminated against)." Manual for Complex Litigation § 21.222 (4th ed. 2004) (quoted by *Lewis v. First American Title Ins. Co.*, 265 F.R.D. 536, 554 (D. Idaho 2010)).

services in early 2009 is a fact common to each and every Class member. In turn, this common

fact will answer questions about whether Be breached the contracts with Class members. *Cf.*

*Dukes*, 131 S. Ct. at 2551 (commonality exists when a class action will "generate common

answers apt to drive the resolution of the litigation").

**B.    AFTSA Applies to Every Class Members' Contract**

The most significant common question in this case is whether AFTSA section 1701.4

applied to the Class members' contracts. To have section 1701.4 apply, Plaintiffs must show that

(1) Class members were "artists"; (2) Class members paid Be "advance fees"; and (3) Be was an

"advance-fee talent service," consistent with AFTSA's statutory definitions. Cal. Lab. Code §

1701(a), (b), (c) (2009). Each of these elements can be established by common proof, reasonable

inference, or ministerial review of official records.

**Artists:** It can readily be inferred from Be's representations and its contracts that Class

members' children constituted "artists" under AFTSA. *Cf.* Cal. Lab. Code § 1701(c) (2009)

("persons who seek to become . . . actors or actresses . . . and other . . . persons rendering

professional services in motion picture, theatrical, radio, television, and other entertainment

enterprises"). Here, "[t]he gist of [Be's marketing] was that Be had the experience, connections,

and the relationships to facilitate its clients' professional success in the entertainment industry."

(DeSando Decl. ¶15.) For instance, both versions of Be's marketing manuals used the exact same

language to instruct Class members how to register online to look for work in the entertainment

industry. (Dkt. #187-3 at 8; Dkt. #187-5 at 9.) Both versions of Be's marketing manuals extolled

the opportunities to obtain an agent through Be's services:

> Agents, managers and casting directors are always looking for new talent. Talent
> showcases are your opportunity to interview with several of these professionals at
> once with the goal of gaining representation. Showcases give you a chance to
> experience a real audition. . . . The agents will personally contact you if they are
> interested in representation.

(Dkt. #187-3 at 14; Dkt. #187-5 at 7.) Likewise, each version of Be's contracts contain the same

language which strongly implies the motivation inherent in retaining Be's services:

> We are an entertainment company that offers a membership comprised of a
> collection of resources, discounts and a support system designed to help
> individuals get started on a pathway to success. . . . Purchaser acknowledges and

agrees that none of the offerings of be. [sic] include any promise or guarantee of employment in the entertainment industry, whether oral or written, expressed or implied.

(Dkt. #187-6 at 2; Dkt. #187-7 at 2; Dkt. #187-10 at 4.) Given the foregoing, the most logical

inference is that Class members relied on these representations and sought professional

employment in the entertainment industry:

> Generalized proof that the common, uniform written sales marketing materials are misleading . . . would give rise to a common sense inference that no rational class member would purchase the [services] in question[]. . . [R]eliance can be shown where it provides the "common sense" or "logical explanation" for the behavior of plaintiffs and the members of the class.

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 491-92 (C.D. Cal. 2006) (citing, e.g.,

*Peterson v. H & R Block*, 174 F.R.D. 78, 85 (N.D. Ill. 1997)). The "common sense inference"

here is that Class members' paid Be because their children in fact sought professional

employment in the entertainment industry. It is "logical" to hold that consumer's purpose in

obtaining a service is a common question appropriate for certification where "[c]onsumers are

nearly certain to rely on prominent (and prominently marketed) features of a [service] which they

purchase." *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 665 (S.D. Cal.

2010). Such inferences apply to other states of mind besides reliance. In *Bomersheim v. Los

Angeles Gay and Lesbian Center*, 184 Cal.App.4th 1471 (2010), the court held it was reasonable

to infer that it was the defendant's disclosure to the class members that it had provided them with

the wrong medication that motivated class members to obtain additional medical testing and

treatment. *Id*. at 1485. "It is not necessary to show an individual's motivation by direct evidence.

Whether one party's conduct induced another party's response can often be inferred from the

circumstances attending the transaction." *Id*. at 1484 (citing *Vasquez v. Superior Court*, 4 Cal.3d

800, 814 (1971)). Stated more categorically, "[i]n the class context, *where individuals are

uniformly subjected to a material stimulus and thereafter uniformly act in a manner consistent

with a reasonable response, a classwide inference is raised that the stimulus caused the

response*." *Id*. at 1485 (emphasis supplied).

**Advance Fees:** AFTSA defined an "advance fee" as any fee "due from or paid by an

artist prior to the artist obtaining actual employment as an artist or prior to the artist receiving

1   actual earnings as an artist or that exceeds the actual earnings received by the artist as an artist."

2   Cal. Lab. Code § 1701(a)(1) (2009). Again, it can be readily inferred from Be's marketing and

3   contracts that Class members had not obtained professional employment in the entertainment

4   industry – precisely because they sought such employment through Be's services.

5           Monterey has argued that Plaintiffs must present evidence of "the outcome of [Class

6   members'] Be membership." (Def.'s Opp. at 23. *See also id*. at 21.) If the Court finds (based on

7   this argument) that it needs more concrete evidence about whether and when Class members

8   obtained professional employment in order to determine whether the sums paid to Be/Monterey

9   were "advance fees" under AFTSA, such evidence is readily available. Be's marketing was

10  directed at minors. (DeSando Decl. ¶4.) In California, "minor[s] desiring to be employed in the

11  entertainment industry must obtain an Entertainment Work Permit" from the Division of Labor

12  Standards Enforcement (DLSE). Cal. Code Regs., tit. 8, § 11753. Employers also need to obtain

13  permits to employ minors in the entertainment industry from the DLSE. *See* Cal. Code Regs., tit.

14  8, § 11752. Hence, the DLSE maintains a centralized repository of work permits that would

15  permit Plaintiffs to prove that Class members' children did or did not work in the entertainment

16  industry prior to entering into their contract with Be. (Preston Decl. ¶3.) Even if further inquiry is

17  required on Class members' employment in the entertainment industry, that is "a limited,

18  straightforward factual determination that would not preclude finding commonality." *Evon v.*

19  *Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029-30 (9th Cir. 2012) (whether defendant

20  addressed letters to class members' employers). "Even if some individual inquiry is required, it

21  will consist of limited, straightforward factual determinations that would not preclude a finding

22  of commonality." *Herrera*, 274 F.R.D. at 667 (whether anti-deficiency laws applied to loans).

23          **Advance-Fee Talent Service:** Based on the contents of Plaintiffs' individual contracts

24  and Be's website, the Court previously held Be fell "within AFTSA's broad definition of an

25  advance-fee talent service." *DuFour v. Be., LLC*, No. 09-3770, 2009 WL 4730897, *4 (N.D. Cal.

26  Dec. 7, 2009). Plaintiffs' evidence establishes Be used the same language in all of its contracts

27  and marketing materials. (DeSando Decl. ¶¶14-15, 17; Amended DeSando Decl. ¶2.) It follows

28  that there is sufficient evidence that Be constituted an "advance-fee talent service" under AFTSA

with respect to each Class member. Cal. Lab. Code § 1701(b) (2009).

**Section 1701.4 Applies to Every Class Member's Contract with Be:** Section 1701.4 imposed various requirements on "[e]very contract or agreement between an artist and an advance-fee talent service for an advance fee[.]" Cal. Lab. Code § 1701.4(a) (2009). Class members' contracts were all virtually identical (*cf.* Dkt. #187-6; Dkt. #187-7; Dkt. #187-10) and none of them complied with section 1701.4, most significantly with the requirement to notify consumers of their right to refund and right to cancel under AFTSA. *Cf.* Cal. Lab. Code § 1701.4(a)(4) (2009). While Monterey is fixated on the question of whether this renders Be's contracts merely "voidable" rather than "void," that question goes to the case's merits – not about class certification. (Def.'s Opp. at 4, 13-14, 22.)

### C.   The Evidence Shows Be Operated a Common Scheme on All Class Members

The Court previously held that Plaintiffs could allege claims of common law fraud and civil RICO arising from Be's misrepresentations that Plaintiffs "were led to believe that being selected [by Be] at all was some indicator of talent and possibility of success," when in fact "there was no process that selected only those who 'meet the industry profile' [and] [e]verybody who could pay was selected." *Dufour v. Be., LLC*, No. 09-03770, 2010 WL 2560409, 5, 11 (N.D. Cal. June 22, 2010). As set forth above, Be made relevant common representations in its contracts, its marketing materials, and on its website. (DeSando Decl. ¶¶14-17; Amended DeSando Decl. ¶2; Preston Decl. ¶¶6-8.) In addition, Be used a common video presentation in every one of its sales pitches. (DeSando Decl. ¶¶14-15.) This is a sufficient basis for a classwide inference of reliance. *See, e.g., Blackie*, 524 F.2d at 908; *Negrete*, 238 F.R.D. at 491-92.

### III.   Monterey Has Not Rebutted the Evidence that Plaintiffs' Claims Are Appropriate for Class Certification

The Opposition presents a long laundry list of possible factual variations that purportedly derail class certification. On examination, however, it is clear that this scattershot approach relies heavily on variations that are not material to the class claims, overstatement, and conjecture. Those material variations which actually do exist can be readily resolved with ministerial review.

### A.   There Are No Variations Material to Plaintiffs' Contract-Based Claims

While Monterey repeatedly tries to argue that variations in the services Be provided Class members preclude class certification, this falls apart on cursory examination. (Def.'s Opp. at 4, 13, 14, 16, 22.) Monterey argues that Plaintiffs need to prove "what services [Class members] received," but it does not contest that Be went out of business or that Be stopped providing services when it did so. (*Cf. id.* at 22-23.) There is a date when Be stopped performing its contracts common to every Class member. Monterey argues that Plaintiffs need to prove "what services each [Class member] was offered," but it is clear from common evidence (including Be's website, its three sales contracts, and two marketing manuals) exactly what services Be offered. (*Id.* at 22. *Cf.* DeSando Decl. ¶¶14-17; Amended DeSando Decl. ¶2; Preston Decl. ¶¶6-8.) Monterey argues that Plaintiffs have to prove "who [Class members] dealt with at Monterey and Be," but provides absolutely no explanation why this is relevant. (Def.'s Opp. at 23.) Monterey also argues that Plaintiffs need to prove "when each [Class] member contracted [with Be] . . . what payments were made [and] what payments were missed[.]" (*Id.* at 22-23.) But this information is already contained in the Spreadsheet. (Preston Decl. ¶3.) Moreover, this information could only be relevant to damages, and differences in class members' damages "do not defeat certification, even where individualized evidence may be necessary for purposes of a damages calculation." *In re Chase Bank USA, N.A. CHECK LOAN Contract Litig.*, 274 F.R.D. 286, 292 (N.D. Cal. 2011) (citation omitted). For the same reason, it is irrelevant to class certification whether Class members are "identical as to the amounts charged or the duration of the contract[.]" (Def.'s Opp. at 16.)

### B.    Monterey's Efforts to Collect on Be's Contracts Can Be Proved Through Ministerial Review of Monterey's Records

Certain of the Plaintiffs' class Rosenthal Act claims will hinge on Monterey's communications with class members. (*Cf.*, *e.g.*, SAC ¶174 (Monterey failed to send written notice required under 15 U.S.C. § 1692g(a) after communicating with Class members, thereby violating Cal. Civ. § 1788.17).) Monterey maintains records of its communications with Class members (Preston Decl. ¶10) but contends that resolving those claims nonetheless requires a "thorough review and analysis of the content of those communications [and] testimony from, at

the very least, Monterey and the consumer." (Def.'s Opp. at 17.)

Monterey misapprehends Rule 23's application to the Rosenthal Act claims. The need for some ministerial review does not instantly derail class certification. Monterey baldly asserts that the Rosenthal Act claims "cannot be resolved simply with a 'ministerial' review of records to see who Monterey did or did not contact." (Def.'s Opp. at 17.) Many other courts have used ministerial review to resolve exactly these sorts of factual questions in class actions. *Cf. Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 670 (C.D. Cal. 2009) (class certification proper because defendant's records made "determination of whether a potential class member is precluded from obtaining damages . . . a mere mechanical task").[6] Monterey offers absolutely no explanation why ministerial review would be inappropriate here, when it was appropriate in these cases.

C.      **Class Certification of the Scienter Claims Is Appropriate Because Be Employed A Scheme Common to Every Class Member**

Monterey relies heavily on conjectured factual variations to argue against class certification of the scienter-based claims. For instance, Monterey assumes there were variations in the representations by Be's scouting companies which occurred outside Be's presence. (*Cf.* Def.'s Opp. at 12 *with* DeSando Decl. ¶4.) This is immaterial, because the gravamen of Plaintiffs' scienter claims is the representations Be made in the sales pitch *after* the screen test. (DeSando Decl. ¶¶5-17.)

To the extent it identifies specific factual variations relevant to certification of the scienter claims, Monterey consistently overstates them. For instance, Monterey cavails that Be had "multiple versions of the marketing manual" – but Monterey is referring to two virtually identical manuals. (*Cf.* Def.'s Opp. at 12 *with* DeSando Decl. ¶14.) Likewise, Monterey also argues that the DeSando declaration does not indicate Be's sales pitch was "scripted or in any

------

[6]      *See also Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007) (where "legal issues arising from Defendant's demand letters are the same for each class member," "only individual issues are ministerial, e.g. identifying class members and calculating actual damages"); *Campion v. Credit Bureau Servs., Inc.*, 206 F.R.D. 663, 676 (E.D. Wash. 2001) (class certification permitted where "a straightforward, ministerial review of Defendants' documents" would identify class members); *Connor v. Automated Accounts, Inc.*, 202 F.R.D. 265, 271 (E.D. Wash. 2001) (class certification appropriate where class members could be identified "by conducting a ministerial review of [defendant's] records [that would] not overwhelm the common central legal question").

way uniform." (*Cf.* Def.'s Opp. at 15.) In fact, DeSando identifies a video presentation that was at the center of Be's sales pitch. (DeSando Decl. ¶¶14-15.)

Most importantly, Monterey overstates the legal significance of these variations. Monterey contends that *any* variations in "representations do create a lack of commonality and specifically preclude a presumption of common reliance." (Def.'s Opp. at 16.) The Ninth Circuit has specifically rejected the argument that class plaintiffs in a fraud case must show

> a specifically-worded false statement repeated to each and every borrower of the plaintiff class . . . The class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims.

*In re First Alliance*, 471 F.3d 977, 992 (9th Cir. 2006). *See also id.* at 990 (rejecting argument that representations had to be made "in a uniform manner and that the uniform misrepresentations came directly from the written, standardized sales pitch"). "***The exact wording of the oral misrepresentations, therefore, is not the predominant issue. It is the underlying scheme which demands attention***." *Id.* at 991. (citation omitted, emphasis added). To the extent Monterey's authorities hold otherwise, they are inconsistent with *In re First Alliance*, which is binding authority on this Court. (*Cf.* Def.'s Opp. at 16.) In light of *In re First Alliance* and Be's common sales practices and common marketing materials, it is sufficient for Plaintiffs to show that "[t]he gist of [Be's marketing] was that Be had the experience, connections, and the relationships to facilitate its clients' professional success in the entertainment industry," but that in fact Class members were selected on the basis of their ability to pay. (DeSando Decl. ¶15. *Cf. id.* ¶11-12.) *In re First Alliance* rebuts Monterey's assertion that Plaintiffs must prove "what each putative class member was specifically told, by whom, and when." (Def.'s Opp. at 21.) Conversely, the Class members' "talent," "relative 'ability to pay,'" and their subsequent success in the entertainment industry are irrelevant, because they do not rebut the evidence that Be misrepresented its criteria for selecting clients. (*Id.* at 13, 21. *Cf.* DeSando Decl. ¶8, 10 (describing Be's actual criteria for selecting clients).) Be had thousands of clients and some would have surely succeeded with or without Be. By analogy, a stopped clock might be right two times a day – but that does not change the fact that it is not broken and

consistently misstates the time.

### D.     Monterey's Knowledge is a Common Fact

Monterey contends that its knowledge is an individualized fact. (Def.'s Opp. at 4, 13.) This makes no sense. Monterey "either knew of [Be's] scheme to defraud and took steps substantially to advance the scheme or it didn't. Either way, its knowledge and assistance (if any) predominates as a common issue." *Joint Equity Committee of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 434 (C.D. Cal. 2012) (citation omitted).[7]

## IV.     The DuFours Are Typical and Adequate Class Representatives

Monterey's attacks on the typicality and adequacy of Jeanne DuFour as a class representative are inherently suspect. (Def.'s Opp. at 16-19.) A defendant "prefer[s] not to be successfully sued by anyone"; having the defendant weigh in on class representatives' typicality and adequacy "is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house." *In re Diasonics Sec. Litig.*, 599 F. Supp. 447, 452 (N.D. Cal. 1984) (citation omitted). Hence, Monterey's attacks on "the typicality and adequacy of the plaintiffs' class representatives is somewhat problematic." *Id*. First, Monterey attacks Jeanne DuFour, but does not dispute that Timothy DuFour (or another Class member) could serve as representative in her stead.[8] Second, Monterey relies on misleading characterizations of Jeanne DuFour's testimony at her deposition. Third, none of the "problems" Monterey identifies actually impair DuFour's typicality or adequacy.

### A.     Monterey Characterization of DuFour's Deposition is Misleading

While most of Monterey's mischaracterizations of DuFour's testimony are not literally false, they are misleading. Most significantly, Monterey contends "DuFour was never told as an inducement to her signing up that Be members were selected on the basis of talent or marketability." (Def.'s Opp. at 19.) Monterey relies on DuFour's testimony about what she was

---

[7]   *See also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (whether defendant "was aware of the existence of the alleged defect" was a common issue, citing *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005)).

[8]   *See, e.g.*, *Stickrath v. Globalstar, Inc.*, No. 07-1941, 2008 WL 5384760, *7-8  (N.D. Cal. Dec. 22, 2008); *Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185 (N.D. Cal. 2007).

told *prior* to the screen test. (*Id.* at 7, 18.) But this is not the complete story: DuFour testified she

viewed the following statements on Be's website:

> "Are all the children selected from the screentest? Unfortunately no. Only a small
> percentage of the children screened, meet the industry profile that top agents,
> talent managers and casting directors are looking for."

(DuFour Dep. 184:2-25.) Moreover, the DuFours "found out what the expectations could be, that

they could earn money" during the sales pitch *after* the screen test, when Be explained "what

potentially [it] could, quote, unquote, do for [them] and [their] child." (*Id.* at 70:23-71:3.) Based

on Be's sales pitch, DuFour believed "it was virtually assured that [her] child would be in

television and films." (*Id.* at 146:5-25.)

> That was the pitch. If you did what [Be] asked you to do and you went to
> everything that [Be] told you to do and you did the Dynamic Showcases, that
> pretty much your kid would be working, whether it was on one of their local
> productions or in the regular TV and movies.

(*Id.* at 145:14-19.) While DuFour did not recall specific language from Be's sales pitch (*id.* at

69:16-77:12), that is immaterial where there is "evidence of a 'centrally orchestrated strategy'"

and "the 'center of gravity of the fraud transcends the specific details of oral communications.'"

*In re First Alliance*, 471 F.3d at 991 (citation omitted). *See also id.* ("exact wording of the oral

misrepresentations . . . is not the predominant issue [but] the underlying scheme") (same).

Plaintiffs' scienter claims do not require a specific false statement or a specific omission" to

prevail on the merits, so long as they prove there was "a scheme reasonably calculated to

deceive." *United States v. Woods*, 335 F.3d 993, 998, 999 (9th Cir. 2003) (citation omitted).

Monterey mischaracterizes DuFour's testimony on other significant points. Monterey

repeatedly asserts that DuFour never cancelled her contract (Def.'s Opp. at 17, 18, 19), but what

DuFour actually testified was that she did not "seek to cancel [her Be] membership *within three*

*days* [after signing Be's contract]." (DuFour Dep. at 88:18-20 (emphasis added).) Be's contracts

contained a three day cancellation provision (in violation of, e.g., AFTSA's requirement for a

ten-day cancellation provision). (*Cf.* Dkt. #187-6 at 3; Dkt. #187-7 at 3 with Cal. Lab. Code §

1701.4(d) (2009).) The issue is not whether DuFour cancelled her contract, but whether she

could obtain a refund of the fees paid to Be/Monterey. In fact, ***DuFour repeatedly asked to have***

*her fees refunded*. (*See id*. at 158:16-159:8.) Likewise, Monterey asserts that the DuFours'

daughter obtained "work" (Def.'s Opp. at 17, 18, 19), but she was merely acted (on one

occasion) as an unpaid extra in one of Be's own television show. (DuFour Dep. at 98:14-15.)

Monterey indicates DuFour had no expectations for Be's screen test (Def.'s Opp. at 19), but

DuFour's complete testimony was that the significance of the screen tests was not explained to

her "[a]t that time. . . You didn't find that out until after they were selected or you got a call

back." (DuFour Dep. 58:14-18. *Cf. id*. at 70:23-71:3.)

Monterey outright misrepresents the record on other points. Monterey contends that

DuFour "admits she received everything she bargained for." (Def.'s Opp. at 18.) Monterey does

not support this assertion with any citation to the record, because Dufour never said anything of

the sort. While *Monterey* repeatedly contends DuFour "received the benefit of her bargain," this

is just not true. As DuFour paid for five years of service in 2009, Be was obligated to provide

services to her through March 2014, which it clearly did not do. (*Cf*. Dkt. #7-2 at 6.)

### B.    None of the Differences Between Jeanne DuFour and Other Class Members Render Her Atypical

In sum, Monterey can at most contend that Be represented to DuFour that her daughter

was selected on merit via the Internet (rather than orally), that DuFour's daughter appeared one

time on Be's television as an unpaid extra, that DuFour did not cancel her contract within three

days after signing it, and she did not seek services from My Talent Services after Be shut down.

These variations do not make DuFour atypical. "[T]he typicality requirement is 'permissive[.]'"

*Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted). A class plaintiff's

claims are typical "if they are reasonably co-extensive with those of absent class members; [but]

they need not be *substantially identical*." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d

1036, 1042 (9th Cir. 2012) (same; emphasis added). "Cases 'challenging the same unlawful

conduct which affects both the named plaintiffs and the putative class' usually satisfy the

typicality requirement, 'irrespective of the varying fact patterns underlying the individual

claims.'" *Brown v. American Airlines, Inc.*, 285 F.R.D. 546, 557 (C.D. Cal. 2011) (same).

### C.    DuFour Is an Adequate Class Representative

1    Monterey contends DuFour is an inadequate class representative because "[s]he does not

2    have the same interest [because] she did not suffer the alleged injury." (Def.'s Opp. at 19

3    (citation omitted).) This contention is meritless: DuFour has the same interest in invalidating any

4    debt to Monterey under Be's contract and obtaining restitution from Monterey as every other

5    Class member. None of the asserted differences between DuFour and the other Class members

6    alters this basic interest in any way.

7    Monterey also contends that DuFour cannot be an adequate class representative because

8    she did not know "what benefits other Be members received through their membership" or what

9    representations Be made to the other Class members. (Def.'s Opp. at 19.) This does not mean

10   DuFour is inadequate. The level of "knowledge required to qualify a class representative is low;

11   a party . . . will be deemed inadequate only if she is "startlingly unfamiliar" with the case."

12   *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004). "It is not necessary that a

13   representative 'be intimately familiar with every factual and legal issue in the case;' rather, it is

14   enough that the representative understand the gravamen of the claim." *Id.* (quoting *In re Worlds

15   of Wonder Sec. Litig.*, No. 87-5491, 1990 WL 61951, *3 (N.D. Cal. Mar. 23, 1990)). "Requiring

16   more [knowledge] risks undermining the class vehicle"; adequacy cannot be so onerous that it

17   "convert[s] the class action into a device usable only by individuals [so sophisticated] that they

18   would be capable of acting as their own attorneys *Id.* at 612 (citation omitted). "[T]he reality of

19   complex cases of this type is that clients must defer a great amount of discretion to their

20   lawyers." *In re Worlds of Wonder*, 1990 WL 61951, *3. DuFour's knowledge is sufficient to

21   fulfill Rule 23's adequacy requirement.

22   **V.   The Class Meets Rule 23(b)'s Requirements**

23   **Rule 23(b)(2) Certification:** Monterey points out that Plaintiffs cannot certify their

24   claims for restitution under Rule 23(b)(2). (Def.'s Opp. at 20.) This is obvious after *Dukes*, and

25   Plaintiffs do not dispute it. However, the presence of those claims does not prevent certifying a

26   class under Rule 23(b)(2) which is limited to *statutory* damages, as well as declaratory and

27   injunctive relief. "[A]n action may be brought or maintained as a class action with respect to

28   particular issues." Fed. R. Civ. P. 23(c)(4). "Even if the common questions do not predominate

over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule [23(c)(4)] and proceed with class treatment of these particular issues." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

**Predominance:** Opposing certification under Rule 23(b)(3), Monterey again cites a laundry list of possible variations that purportedly preclude class certification. (Def.'s Opp. at 21-23.) Predominance concerns "the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). "Rule 23(b)(3) . . . does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof, [but only] that common questions predominate over any questions affecting only individual class members." *Amgen*, 133 S. Ct. at 1196 (emphasis in original; citations, punctuation omitted). Common issues predominate when "[i]ndividualized issues are few, and most of them are likely to be relatively easy [to resolve]." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1166 (9th Cir. 2001). *See also Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) ("[i]ndividual issues do not render class certification inappropriate so long as such issues may effectively be managed"). Monterey has not shown that any of the thorny individualized questions it presents are in fact necessary to resolve the Class's claims. Conversely, those few individualized inquiries that may end up being material are easy to administer.

**Superiority:** Monterey argues that a class action is not superior, citing a "complete lack of individual actions." (Def.'s Opp. at 23.) Monterey misunderstands the significance of these facts. "The lack of other litigation mitigates in favor of, not against, a finding of superiority." *Krzesniak v. Cendant Corp.*, No. 05-05156, 2007 WL 1795703, *19 (N.D. Cal. June 20, 2007) (citing *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001)). Class actions are preferable where

> plaintiffs may not know their rights are being violated, may not have a monetary incentive to individually litigate their rights, and may be unable to hire competent counsel to protect their rights. A class action is judicially efficient in lieu of clogging the courts with thousands of individual suits.

1    *Herrera*, 274 F.R.D. at 682 (citation omitted). The fact that few Class members know their

2    contracts with Be violated AFTSA brings the superiority of a class action into sharp relief.

3    **VI.     The Plaintiffs' Class Claims Are Meritorious**

4              Again, the law is clear that Plaintiffs do not need to prove their claims at this juncture.

5    *See Amgen*, 133 S. Ct. at 1194-95. Nonetheless, the class certification decision is outcome-

6    determinative and Plaintiffs need a complete record if there is an appeal under Rule 23(f). Hence,

7    in an abundance of caution, Plaintiffs respond below to Monterey's attacks on the merits of the

8    class claims.

9              **A.     Monterey's Statutory Interpretation Thwarts the Legislature's Intent**

10             The central theme in Monterey's Opposition is that Be's contracts are voidable, rather

11   than void. (Def.'s Opp. *passim*.) AFTSA provided that contracts which violated section 1701.4

12   were "voidable at the election of the artist and, in that case, shall not be enforceable by the

13   advance-fee talent service." Cal. Lab. Code § 1701.4(d) (2009). Monterey contends class

14   certification is improper because "Plaintiff has not pointed to a single class member who elected

15   to void their contract with Be." (Def.'s Opp. at 14.) At the outset, the Court should not let this

16   argument go on without requiring Monterey to divulge whatever secret handshake it contends is

17   necessary for Class members to void their contracts. Moreover, Monterey's interpretation of

18   section 1701.4(d) violates "[t]he most important canon of statutory construction[;] that each

19   statute must be interpreted to give effect to the Legislature's intent." *People v. Henderson*, 115

20   Cal. App. 4th 922, 930 (2004).[9] The Legislature's intent in requiring advance-fee talent services

21   to incorporate the statutorily-required refund and cancellation provisions into their contracts

22   could not be clearer: the Legislature wanted to ensure consumers were informed about their

23   statutory rights. *Cf.* Cal. Lab. Code § 1701.4(a) (2009). Given section 1701.4(a)'s obvious

24   function of informing consumers about their rights, it would perversely thwart the Legislature's

25   intent to interpret section 1701.4 in a manner that frustrated Class members' claims because Be's

26   ────────────────
     [9]   *California v. Altus Fin., S.A.*, 36 Cal.4th 1284, 1295 (2005) ("fundamental task" of statutory
27         construction under California law "is to ascertain the intent of the lawmakers so as to
           effectuate the purpose of the statute"); *California Teachers Assn. v. Governing Bd. of Rialto
28         Unified School Dist.*, 14 Cal.4th 627, 632  (1997) ("intent of the Legislature" is "touchstone
           of statutory interpretation").

contracts failed to notify them about their rights under AFTSA to begin with. "A literal construction of a [statute] will not control when such a construction would frustrate the manifest purpose of the enactment as a whole." *Arias v. Superior Court*, 46 Cal.4th 969, 979 (2009).[10] Monterey's interpretation of section 1701.4(d) should be rejected.

### B. Monterey Does Not Distinguish Plaintiffs' Case Law Holding Be's Contracts Void

Plaintiffs cited *Eden Township Healthcare Dist. v. Sutter Health*, 202 Cal.App.4th 208 (2011) and *People ex rel. State of Cal. v. Drinkhouse*, 4 Cal.App.3d 931, 935 (1970) for the proposition that contracts in violation of a statute are void, *even when the statute states such contracts are voidable*. Monterey's effort to distinguish these cases on the basis that they involve "a penal statute" (Def.'s Opp. at 14) must fail. AFTSA was a penal statute, too: any "person who willfully violates any provision of [chapter 1701, i.e., AFTSA] is guilty of a misdemeanor." Cal. Lab. Code § 1701.13 (2009). The general principle (applicable here) is that, when a statute imposes certain restrictions on a contract, the statute "renders such contract void if made in any other way. . . . [Such contracts are] void because the statute prescribes the only method in which a valid contract can be made." *Duffens v. Valenti*, 161 Cal.App.4th 434, 454, 455 (2008). Monterey has not tried to distinguish *Duffens*.

### C. Even if Be's Contracts Are "Voidable," Plaintiffs Still Have Viable Claims

Even if Be's contracts are "voidable," rather than void, Plaintiffs still have viable class claims. Monterey distorts case law to try to impose an unwarranted scienter requirement on Plaintiffs' class contract claims. Finally, DuFour has a valid breach of contract claim.

#### 1. Plaintiffs' Claims Do Not Require Be's Contracts to Be Void

Even if the Court holds Be's contracts are "voidable," Plaintiffs have viable class claims. For instance, the UCL prohibits "any unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200, and establishes three independent bases for a UCL action. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). Monterey

---

[10]   *State ex rel. Dockstader v. Hamby*, 162 Cal.App.4th 480, 488 n.2 (2008) ("[i]nterpreting statutes literally, without regard to statutory context, may undermine or frustrate legislative intent"); *People v. Glasper*, 113 Cal.App.4th 1104, 1114 (2003).

1    does not dispute that Be's contracts violated AFTSA; it cannot offer any support for its assertion

2    that they are not also illegal. Even if they were not unlawful, Be's contracts would certainly be

3    unfair. *Id.* at 187 (unfair conduct "violates the policy or spirit of [a law] because its effects are

4    comparable to or the same as a violation of the law"). Plaintiffs' have a viable class claim under

5    the UCL's unlawful and unfair prongs.

6         Monterey also directly violated the law by collecting on Be's contracts without disclosing

7    to Class members that they had the right to void the contracts at any time. Such an omission

8    would certainly be misleading under the UCL and CLRA:  "[a] perfectly true statement couched

9    in such a manner that it is likely to mislead or deceive the consumer, such as by failure to

10   disclose other relevant information, is actionable" under the CLRA and UCL. *Aron v. U-Haul

11   Co. of Cal.*, 143 Cal.App.4th 796, 807 (2006) (citation omitted).

12                    **2.        Monterey Distorts Case Law**

13        Monterey contends it has no liability for the defects in Be's contracts, but it

14   mischaracterizes the case law which holds Plaintiffs do not need to prove scienter on their

15   contract-based claims. Monterey characterizes *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d

16   1082 (N.D. Cal. 2006) as ruling that one defendant "could not be held liable under RICO,

17   CLRA, or UCL" without knowledge of the other defendants' "bad conduct." (Def.'s Opp. at 8.)

18   The passage cited by Monterey, however, relates only to the association-in-fact element of a

19   RICO claim – it has nothing to do with a scienter requirement in the CLRA or UCL. Monterey

20   also tries to distinguish *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163 (2000) on

21   the basis that *Cortez* decided whether back wages were available under the UCL. (Def.'s Opp. at

22   9.) Indeed, *Cortez also* decided that normally a "plaintiff need not show that a UCL defendant

23   intended to injure anyone through its unfair or unlawful conduct [because the] UCL imposes

24   strict liability[.]" *Cortez*, 23 Cal.4th at 181. Likewise, Monterey characterizes *Vasquez v.

25   Superior Court*, 4 Cal.3d 800 (1971) as holding that the "holder in due course" rule is only a

26   defense for consumers and does not permit restitution claims against a finance company. This is

27   demonstrably false. *Vasquez **explicitly*** rejected the argument that

28              plaintiffs may not bring an affirmative action against [a finance company] for

rescission but may only assert [a] defense of fraud in an action by the finance companies to collect on the contracts and then only to the extent of the amount still owing.

*Id*. at 823. "[T]he plain meaning of the Holder Rule allows the [purchaser] to assert ***all claims*** against [the finance company] they might otherwise have against [the seller]." *Lafferty v. Wells Fargo Bank*, 213 Cal.App.4th 545, 551 (2013) (emphasis added).

### 3.      DuFour Has a Valid Breach of Contract Claim

DuFour's breach of contract claim is simple: she paid for five years of service in 2009, so Be should have provided her services through March 2014. (*Cf*. Dkt. #7-2 at 6.) While many Class members are in the same boat, Monterey attacks DuFour's claim on the basis that DuFour did to choose to receive services from My Talent Services ("MTS") which supposedly offered the same services that Be did. (Def.'s Opp. 1-2, 6.) But MTS was not an acceptable substitute. Again, "[t]he gist of [Be's marketing] was that Be had the experience, connections, and the relationships to facilitate its clients' professional success in the entertainment industry." (DeSando Decl. ¶15.) Assignment of a contractual performance is prohibited where there is "evidence that a personal skill, promise, or performance was expected by one of the contracting parties." *Superbrace, Inc. v. Tidwell*, 124 Cal.App. 4th 388, 404 (2004).[11] Given the representations about Be's services, Class members did not have to accept substitute performance from MTS. Indeed, DuFour testified that she did not retain MTS's services because Be had closed, she did not want to accept services from an unknown company, and because she did not want to expose her daughter to additional trauma. (DuFour Dep. at 117:11-118:5; 119:24-120:1.)

### VII.   Conclusion

Monterey has not pointed to any factual variation between Class members that is actually material to the class claims. There are no material factual variations that cannot be overcome through well-supported, reasonable inferences about Class members' states of mind or ministerial reviews of official records. The Class has viable claims that can be readily certified.

---

[11]   *See also Unite Here Local 30 v. Dep't of Parks and Recreation*, 194 Cal. App. 4th 1200, 1213 (2011) ("[w]here a contract calls for the skill, credit or other personal quality of the promisor, it is not assignable"; citation omitted).

1 │ Dated: March 29, 2013                   By:   s/Ethan Preston

2 │                                               Ethan Preston (263295)
  │                                               PRESTON LAW OFFICES
3 │                                               8245 North 85th Way
  │                                               Scottsdale, Arizona 85258
4 │                                               (480) 269-9540 (telephone)
  │                                               (866-509-1197 (facsimile)
5 │                                               ep@eplaw.us

6 │                                               Robert M. Bramson (102006)
  │                                               Michael S. Strimling (96135)
7 │                                               BRAMSON, PLUTZIK, MAHLER &
  │                                               BIRKHAEUSER, LLP
8 │                                               2125 Oak Grove Road, Suite 120
  │                                               Walnut Creek, California 94598
9 │                                               (925) 945-0200 (telephone)
  │                                               (925) 945-8792 (facsimile)
10│                                               rbramson@bramsonplutzik.com
  │                                               mstrimling@bramsonplutzik.com
11│
  │                                               David C. Parisi (162248)
12│                                               Suzanne Havens Beckman (188814)
  │                                               PARISI & HAVENS LLP
13│                                               15233 Valleyheart Drive
  │                                               Sherman Oaks, California 91403
14│                                               (818) 990-1299 (telephone)
  │                                               (818) 501-7852 (facsimile)
15│                                               dcparisi@parisihavens.com
  │                                               shavens@parisihavens.com
16│
17│
18│
19│
20│
21│
22│
23│
24│
25│
26│
27│
28│